1  Gregory J. Yu (State Bar No. 133955)
   GLOBAL LAW GROUP
2  2015 Pioneer Court, Suite P-1
   San Mateo, CA  94403
3  Telephone:  (650) 570-4140
   Facsimile:  (650) 570-4142
4  E-mail:  glgroup [at] inreach [dot] com

5  Attorney for Plaintiffs and Proposed Class and Subclass

6

7

8                UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                   SAN JOSE DIVISION

11  KINDERSTART.COM LLC, a California          Case No. C 06-2057 RS
    limited liability company, on behalf of itself and
12  all others similarly situated,             **CLASS ACTION**

13       Plaintiffs,                           **COMPLAINT FOR INJUNCTIVE AND
                                               DECLARATORY RELIEF AND
14       v.                                    DAMAGES**

15  GOOGLE, INC., a Delaware corporation,      **DEMAND FOR JURY TRIAL**

16       Defendant.

17

18

19       Plaintiff KinderStart.com LLC ("KSC"), by and through its attorney, brings this action

20  on behalf of itself and all other similarly situated persons, companies and entities ("Class

    Members") (KSC and Class Members together are the "Class" or "Plaintiffs") and hereby alleges
21
    upon personal knowledge and belief as to their own acts, and upon information and belief (based
22
    on  investigation by KSC and counsel) as to all other matters, as to which allegations Plaintiffs
23
    believe substantial evidentiary support exists or will exist after a reasonable opportunity for
24
    further investigation and discovery of evidence, as follows:
25
                              **INTRODUCTION**
26
         1.   This action arises from an aggregation of federal and California constitutional
27
    violations, federal antitrust violations, and state unfair trade, defamatory and good faith and fair
28

Class Action Complaint                                    Case No. C 06-2057 RS

Dockets.Justia.com

dealing violations due to conduct and practices by the world's most widely used search engine and seemingly ubiquitous global leader focusing on how people connect with information and how they will connect with information in the future, which individually and together warrant declaratory and injunctive relief as well as monetary damages according to proof under applicable law based on injuries to Plaintiffs' person, property, and businesses.

2.    Notwithstanding its public statements that it will make its "vast online index" "freely available" and that its "search results will be objective," from a dominant and monopolistic position in certain markets, Defendant Google, Inc. ("Google"), by and through its search engine, unilaterally and summarily terminated the free flow of speech, traffic and commerce that otherwise would have run by virtue of the normal search engine operation from thousands of users to a sundry of Websites, including those of Plaintiffs.  These unilateral and unreasonable acts constitute an ongoing practice of blockage of such Websites, referred to herein as "Blocking" or "Blockage"[1].  This Blockage is contrary to Google's publicly sworn statements regarding its objectivity and free availability of "relevant information."  Furthermore, each and every one of these Websites, including that of Plaintiff KSC, are entitled to exercise their constitutionally guaranteed freedom of speech in a open, publicly accessible forum and their right to compete fairly in cyberspace, free of oppressive conduct and practices of a monopolist in these markets.  Defendant Google singularly occupies and exploits this role.

## THE PARTIES

3.    Plaintiff KSC is a California limited liability company whose principal offices are located in Norwalk, California.

4.    Defendant Google is a Delaware corporation, with its principal place of business located within Santa Clara County, the State of California, at 1600 Amphitheatre Parkway, Mountain View, California  94043.

---

[1] Internet "Blogs" discussing Google's temporary or permanent blocking of websites have variously called Google's act of blocking "sandboxing," "penalizing" and "whacking", and the state of limbo for such handicapped sites as "the Google Sin Bin," "Google Purgatory," the "Google Bench" and "Google Jail."

**JURISDICTION AND VENUE**

5.   This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) because this is a class action where "any member of a class of plaintiffs is a citizen of a state different from any defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs."

6.   This Court has original jurisdiction over Plaintiffs' "Count One" under the First Amendment of the United States Constitution, which guarantees Plaintiffs their constitutional right of free speech.  Such jurisdiction lies within 28 U.S.C. § 1331.

7.   This Court has original jurisdiction over Plaintiffs' "Count Two" under Section 4 of the Clayton Act, 15 U.S.C. § 15(a) in that it seeks damages and other relief for violations of Section 2 of the Sherman Act, 15 U.S.C. § 2.  Such jurisdiction lies within 15 U.S.C. § 26 and 28 U.S.C. §§ 1331 and 1337(a).

8.   This action relates to other counts in this complaint of Plaintiffs which are so related to the First Count and the Second Count in that all such other counts form part of the same case or controversy under Article III of the United States Constitution, as hereinafter more fully presented.  Therefore, this Court has jurisdiction over such state claims pursuant to 28 U.S.C. § 1367.

9.   This is a class action brought in diversity between the Class of Plaintiffs and Defendant Google, wherein jurisdiction lies under 28 U.S.C. § 1332.

10.  Defendant Google, a resident of the State of California, is the sole defendant from whom relief is sought by members of the Class, and whose alleged conduct forms the basis for the claims asserted by the Class.

11.  Venue is proper in this District under the provisions of 15 U.S.C. §§ 15, 22, and 26, and 28 U.S.C. § 1391 because:  (i) Google transacts business, committed an act alleged to be unconstitutional, illegal or tortious, and/or is found within this district; and (ii) a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

12.  **Intradistrict Assignment.**  Assignment to the San Jose division of this District is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events, conduct

Class Action Complaint                    -3-

1    and omissions giving rise to this action occurred within this District and division.

2                    **INTERSTATE TRADE AND COMMERCE**

3    13. At all times relevant hereto, Google was engaged in a continuous flow of interstate

4    business processing search requests and marketing and publishing advertising on its results

5    pages presented on its own site and on millions of other Websites.  Google regularly conducts

6    business in this jurisdiction and in other locations of the United States and the world.

7    14. Google's business activities that are the subject of this complaint were within the

8    flow of and substantially affected interstate trade and commerce.

9                         **FACTUAL BACKGROUND**

10    15. This action responds to Google's pervasive monopolistic practices in the conduct of

11    trade or commerce.  Such practices achieve three distinct consequences – denial of both federal

12    and California constitutional guarantees of free speech exercisable by participants in

13    communication in cyberspace, prevention and destruction of competition in horizontal markets,

14    and extraction of predatory pricing in the Internet advertising market.

15    16.    At one time, KinderStart.com ("KS.com") was one of the choicest Internet

16    destinations for thousands of parents, caregivers, educators, nonprofit and advocacy

17    representatives, and federal, state and local officials in the United States and worldwide to access

18    vital information about infants and toddlers – basically from prenatal to infancy to age 7.

19    Plaintiff's website KS.com is a directory and search engine that offers vital links to information

20    and sites on key subjects affecting young children, including child rearing, child care, child

21    development, food and nutrition, and education, under the tagline "Because kids don't come with

22    instructions™".

23    17.    Plaintiff KSC originally launched KS.com in May 2000 with active and intense

24    development of its content, directory, index and search engine capabilities.  Steady, organic

25    growth in visits and page views, without financial or artificial incentives, accompanied the

26    efforts of Plaintiff KSC.  At its peak, KS.com was presenting in excess of 10,000,000 page views

27    to visitors on a monthly basis.

28    18.    Beginning in 2003, Plaintiff KSC enrolled into Defendant Google's AdSense

Class Action Complaint                    -4-

Program and placed a series of sponsored links for compensation from Google under this program.  Following enrollment into the program by Plaintiff KSC, in or about August 2003, Plaintiff KSC began placement of a series advertisements out of the Google Network onto KSC.com and began to receive fee payments from Defendant Google for rendering these services under the AdSense Program.

19. Defendant Google's Form 10-K for the fiscal year ended December 31, 2005 (the "Google 2005 10-K"), in Part 1, Item 1. Business on file with the Securities and Exchange Commission as of March 16, 2006 states in no uncertain terms:

> We maintain the largest, most comprehensive index of web sites and other content, and we make this information *freely available to anyone with an Internet connection.*

(Emphasis added.)

20.    Defendant Google has ownership and control over a computer process known as "PageRank", which is an automated, computer algorithm that generates a score that reflects the extent and nature of hyperlinking within the Internet to a particular Website and its web pages. In a simplified sense, if there are more third-party hyperlinks into a Website's web page, there are a greater number of points mathematically awarded to such page under PageRank.  This process is analogous to a means to quantify the cross-citations among all scientific periodicals ever published and indexed for this purpose.  Therefore, PageRank is not a mere statement of opinion of the innate value or human appeal of a given Website and its web pages.  Instead, it is a mathematically-generated product of measuring and assessing the quantity and depth of all hyperlinks on the Web that tie into PageRanked Website, under programmatic determination by Defendant Google.  Google's "ToolBar" explains that "PageRank is Google's measure of the importance of [a] page."

21. Defendant Google operates a public, openly accessible search engine (the "Google Engine") that actively invites to "anyone with an Internet connection" worldwide to perform searches for Websites and Webpages (collectively "Web Content") through the input of one or more key words into the user's Web browser.  The results of a search performed by the Google

Engine for Web Content are presented on the user's screen as a "Search Engine Results Page" ("Results Page"). The Results Page purport to present various Web Content destinations listed in a numerical rank on the left side of the user's screen.

22.    On information and belief, Defendant Google is directly and solely responsible for launching and using the practice of Blockage of independently owned and managed Websites. One purported description of this process is that a Website is catalogued and isolated from open search queries until, under Defendant's sole and absolute discretion, such site has served sufficient time in probation inside the "Sandbox" before release by Defendant Google. On information and belief, Google does not explain why some Websites remain in a probationary period for a short period while others in a longer period. Furthermore, Google as a corporation does not formally acknowledge this probationary period generally or with respect to any specific Website and Google does not provide an explicit justification of these actions.

23.    On information and belief, another purported description of the process of Blockage is the "penalization" of Web sites presumably based on either stated or unstated "quality guidelines." In one example of this scenario, a Website which previously had a high PageRank and appeared favorably in search results pages might overnight find that their PageRank is low or even zero and appearing unfavorably in the results pages. Google does not generally inform Websites that they have been penalized nor does it explain in detail why the Website was penalized.

24.    On information and belief, Defendant Google exercised Blockage upon unknowing members of the Class that effectively choked off search-driven traffic into the multitude of Websites owned and managed by such Class members. On information and belief, Blockage may occur at any time during the life of a Website that previously was receiving referrals through the otherwise normal, objective and/or programmatic operation of the Google Engine.

25.    On information and belief, it has been and continues to be, impossible for a Class member to move its Website out of the probationary Sandbox Blockage by calling, e-mailing or otherwise notifying Defendant Google, and there is no process to get a report of whether or why

1  a Website might have been penalized and thereby Blocked.

2      26.    On March 19, 2005, Plaintiff KSC's Website kinderstart.com suffered a

3  cataclysmic fall of 70% or more in its monthly page views and traffic.  Thereafter, KSC.com's

4  monthly average of page views for the last 11 calendar months through February 2006 was a

5  meager 30% of monthly levels prior to March 2005.  Initially, KSC did not know why its Web

6  traffic had dropped so dramatically -- it had not been provided any notices, and certainly no

7  advance notices, whether or why its Web traffic might decrease.  Eventually, KSC realized that

8  common key word searches on Defendant Google's search engine no longer listed

9  www.kinderstart.com as a result with any of its past visibility.

10      27.    By April 2005, Plaintiff KSC's monthly AdSense revenue suffered an equally

11  precipitous fall by over 80%.  With the sharp fall-off in search engine referrals from

12  www.google.com, quite naturally and automatically click-throughs for the sponsored ads on

13  KSC.com would drop proportionately with the actual key word search traffic sent from

14  Defendant Google.

15      28.    In March 2005, the top referring site for KS.com was Defendant Google

16  (www.google.com).  In April 2005 and for every single month since, www.google.com no longer

17  even made the top 10 URL referrers.  Since that time, the percentage of referrals from Defendant

18  Google as to KS.com has fallen to less than 0.01%.  The KSC.com site was officially, practically

19  and illegally Blocked by Defendant Google.

20      29.    Although Google initially denied the existence of Blockage, at pertinent times

21  including during a public technology conference in San Jose in August 2005, an employee of

22  Defendant Google acknowledged that it indeed practiced some form of Blockage.  Defendant's

23  employees now euphemistically labels this practice of Blocking Websites as "search quality

24  improvement."

25      30.    On information and belief, though Defendant claims that it engages in "search

26  quality improvement" to remove undesirable content, Google recently identified a fairly

27  significant number of Websites with content it assessed to be "good" that had been blocked

28  without notification of any kind.  Some of these Websites might still not know that they are

Class Action Complaint    -7-

being Blocked. On information and belief, the number of Websites in the initial identification and assessment approached one hundred.

31.     On information and belief, Defendant negligently, willfully and/or intentionally interposed and continues to interpose one or more filters as Blockage upon a multitude of Websites of the Nationwide Class, including that of Plaintiff KSC. There was and is no notice or understanding from the public, the cyberspace community or webmasters at large as to (a) which sites are Blocked, (b) how and why they are Blocked, and (c) when, if ever, they can ever be unblocked and have the filter lifted. On information and belief, Defendant Google has embarked on a program of communication to either refrain from further disclosure altogether or engage in active denial, misinformation or disinformation concerning the role of Blockage in Defendant's processing of over 250 million key word search requests each day.

32.     Plaintiff KSC has never been notified by telephone, mail or in person of the fact that Defendant Google Blocked KSC.com, or why this occurred to KS.com. Further, Plaintiff KSC never received any notice or instruction on what method or procedure, if any, could or should be used by Plaintiff KSC to cause Defendant Google or the Google Engine to cease the Blockage of KS.com.

33.     On information and belief, hundreds and hundreds of Websites as owned and operated by the Class members suffer an identical malady – Blockage for anywhere from a couple of weeks to 18 months or more, with absolutely no notice or warning whatsoever.

34.     On information and belief, a multitude of Websites of Class members consistently receive significantly and relatively high rankings and referrals from other search engines such as MSN and Yahoo, but suffer deflated ratings and rankings from search engine results presented by Defendant Google's Engine.

35.     Defendant Google now dominates the search engine industry and is the largest and most popular search engine not only within the United States but worldwide. By now, Defendant generates and processes search queries of the more than 10 billion Web pages currently indexed by Defendant Google on its tens of thousands of servers. Any Website seeking to gain visibility, site traffic and page views must rely upon Defendant Google's Google

Class Action Complaint            -8-

Engine as an essential facility for receiving search query hits.  Among the purported reasons for this domination as a search engine are:  Massive accumulation of intellectual and technology resources arising from its initial public offering, monopolistic pricing, expansive market capitalization, and economic exploitation of internet advertising channels as a sole-source buyer and sole-source seller.  As other competitors in this market are not focused principally on search technology,  their respective market shares in search engine usage have steadily fallen.  The construct of Defendant's worldwide channeling network and market positioning has become the prohibitive barrier to entry by prospective competitors and has harmed and continues to harm competition.

36.    To attract and retain search users for the Google Engine and to increase the appeal and value of its advertising initiatives and programs for the members of the Class and owners and operators of Websites worldwide, Defendant Google touts its search results as "objective" search results.

37.    Defendant Google also states that "[i]t is Google's policy not to censor search results.  However, ... [w]hen we remove search results ... we display a notice on our search results pages."

38.    Defendant Google during 2005 previously posted in its Google Help Center the question, "Does Google ever manipulate its search results?"  The previously posted reply by Defendant to its own question was:  "The order and contents of Google search results are completely automated.  No one ever hand picks a particular result for a given search query...."  This query and associated reply in their entirety cease to exist on the Google Help Center.

39.    On information and belief, Plaintiffs allege that Defendant Google has at least 75% of the relevant market for search-driven Internet advertising, which includes AdWords advertising.  Defendant is easily the largest and best recognized online advertising network in the United States for millions of third-party Websites.

40.    On information and belief, Plaintiffs allege that as of February 2006, Plaintiffs are informed and believe that Defendant Google has garnered in excess of 50% market share of all

closed and open access search engine use on a combined basis and in excess of 70% market share of all open access search engine use.

41.     Defendant Google derives at least 98% of its total company revenues from the search-driven advertising, which exceeded $3.1 billion for the year ended December 31, 2004. Search-driven advertising revenues for the industry as a whole during the 2004 fiscal year was approximately $3.9 billion.  Thus for the 2004 fiscal year, Google attained a market share based on revenues alone that exceeds 80% of the search-driven advertising industry revenues.  For the fiscal year ended December 31, 2005 according to the Google 2005 10-K, Google online advertising revenue to reach approximately $3.3 billion, while the industry as a whole within the United States is estimated to reach $5 billion in such revenues.  On a worldwide basis, Defendant Google's  advertising revenues for the 2005 fiscal year exceeded $6 billion.

42.     On information and belief, no other search engine except for Google acting as a monopolist, engages in the pattern and practice of Blockage of innocent and unsuspecting Websites owned and operated by members of the Class.  On information and belief, Defendant Google's Search Results for Websites of Class members are substantially different in content and ranking from those generated by other search engines such as MSN and Yahoo.

43.     Plaintiff KSC and certain other Class Members compete against Defendant Google in the following two separate but related markets -- search engines over the Internet and sponsored link advertising on Websites.

44.     At all pertinent times since the launch of KS.com, never has Defendant Google notified that Plaintiff KSC or KSC.com was in violation of any guidelines or rules of Defendant as to Website content or management or advertising that may have been in effect or disseminated from time to time among and throughout the Google Network.

45.     Never has Plaintiff KSC hired or utilized any services for search engine optimization that actually and effectively increased visits or views at KS.com.  Never has Plaintiff KSC taken any steps or actions to remove Website Content of KSC.com from Defendant Google's index.

Class Action Complaint                    -10-

46.     To the best of Plaintiff KSC's knowledge, never has any Web Content or links, whether sponsored or not, of KS.com violated the AdSense Program Policies of Defendant Google on Site Content.

47.     Since its inception in 2000, KS.com has never carried any hidden text pages that could ever constitute Web spam under any proper, objective definition.

48.     To the best of Plaintiff KSC's knowledge, KSC has never violated Defendant Google's Webmaster Guidelines as to KS.com and Google has not notified KSC of any such violation.

49.     Never has Defendant Google notified Plaintiff KSC of any possible or actual violation by KSC of the terms or conditions set forth in the AdSense Program Agreement.

50.     As a result of the conditions alleged above, the PageRank for Plaintiff KSC's website was at all pertinent times calculated and assigned by Defendant Google's Toolbar as '0'.

51.     On the same Results Page to the left or on top are one or more boxes containing "Sponsored Links" having two-to-four lines of text.  These Sponsored Links are hyperlinked advertisements of organizations and businesses ("Sponsors") that promote goods or services under the auspices of Defendants' "AdWords" program.  Sponsors pay a fee to Google for each time a visitor views a Results Page and clicks through to Sponsored Link. Each time such a click occurs, an AdWords Advertiser must pay Defendant as sum of money.

52.     Defendant Google regularly represents and affirms that the Results Page is generated programmatically using a computer algorithm which is claimed to be a trade secret. On its Technology Overview page appearing on Defendant Google's Website, Google states: "There is no human involvement or manipulation of results, which is why users have come to trust Google as a source of objective information untainted by paid placement."

53.     Defendant Google's Form 10-K (the "Google 2004 10-K"), in Part 1, for the fiscal year ended December 31, 2004 on file with the Securities and Exchange Commission states in no uncertain terms:

> Our dedication to putting users first is reflected in three key commitments we have made to our users:

Class Action Complaint          -11-

- We will do our best to provide the most relevant and useful search results possible, independent of financial incentives. <u>Our search results will be objective</u>, and we will not accept payment for inclusion or ranking in them.
- We will do our best to provide the most relevant and useful advertising. If any element on a result page is influenced by payment to us, we will make it clear to our users. Advertisements should not be an annoying interruption.
- We will never stop working to improve our user experience, our search technology and other important areas of information organization.

(Emphasis added.)

The above statements are material representations made by Defendant Google that are relied upon by the search user community, the public, the investment community, and Website owners and managers. A robust and objective search engine affords mutual benefit and protection for all participants in the search engine process.

54.    The Google 2004 10-K, in Part 2, also states[2]:

Some of the key benefits we offer to users include:
*Pertinent, Useful Commercial Information.* The search for information often involves an interest in commercial information – researching a purchase, comparing products and services or actively shopping. We help people find commercial information through our search services and advertising products. Among our search services, we offer Froogle, a search engine for finding products for sale online.

Therefore, it is the express intent and practice of Defendant Google to operate as an Internet mall, open 24-7 to any and all cyberspace visitors from the public for a multitude of reasons, including obtaining information, data and images, communicating on any subject or matter using Gmail, and engaging in advertising, purchasing and selling goods and services.

55.    The Google 2004 10-K, in Part 2, for the same year also states[3]:

Google indexes a huge amount of information in order to provide relevant results to our users. Our users do searches and are directed to relevant web sites. Google provides a significant amount of traffic to web sites with which we have no business relationship. Many web sites are able to generate revenue from that

---

[2] These statements and representations are essentially repeated verbatim in Defendant Google's Form 10-K for the fiscal year ended December 31, 2005, on file with the Securities and Exchange Commission on March 16, 2006.
[3] See footnote 2 above.

traffic, but others have difficulty doing so.  We are enthusiastic about helping sites make money and thereby facilitating the creation of better content to search. If there is better content on the web, people are likely to do more searches, and we expect that will be good for our business and for users.  To address this opportunity, we created Google AdSense.  Our Google AdSense program enables the web sites – large and small – that make up the Google Network to deliver AdWords ads that are relevant to the search results or content on their pages.  We share most of the revenue generated from ads shown by a member of the Google Network with that member – creating an additional revenue stream for them.

56.    A series of press releases, blogs and other public communications by Defendant Google state that the Results Pages generated from searches are purportedly objective and neutral – but they are not.  Accordingly, Defendant Google thereby induces users, the public, and the cyberspace community at large to expect and believe that the Results Page generated from a search every single time will be objective and neutral, untrammeled by human intervention or preference and free of any arbitrariness.

57.    On information and belief, Plaintiffs allege that Defendant Google does in fact monitor, manipulate and censor the output and content on Results Pages, whether programmatically through a computer or individually through the intervention and discretion of a human decision-maker under the employ, direction, supervision and/or oversight of Defendant Google.

58.    Defendant does not directly charge or bill users for their use of the Search Engine. While this service is offered by Defendant without charge to users, Defendants have instigated, developed and promoted with great success an advertising program known as "AdWords."

59.    There is no possible way to determine whether a user has a legitimate interest in the product, service, or message appearing in the Ad link.  Therefore, an anonymous or unknown user, without any authentication or verification, may simply click on the Ad link and compel the Advertiser, which is more generally known as "Click Fraud."

60.    On or about March 10, 2006, Defendant Google tentatively settled class action litigation with a class of aggrieved merchants who claimed that they were directly victimized and financially harmed by Click Fraud on terms which include approximately $90 million worth of credits for future AdWords usage by the class of aggrieved merchants.

**CLASS ACTION ALLEGATIONS**

61.     Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiff KSC bring this action on behalf of itself and the Class, particularly the following Nationwide Class of similarly situated persons defined as:

> All persons, companies or other entities owning Websites or Web pages on or after January 1, 2001 that suffered one or more of the following: (a) delisting or Blockage from Defendant Google's Results Pages, (b) assignment, either manually or programmatically, of a PageRank of 0 immediately after having a PageRank of 2 or more, (c) penalization or other placement to a lower priority on Google's Results Pages in connection with alleged failure to meet written or unwritten quality guidelines or WebSpam rules, or (d) placement to a lower priority on Google's Results Pages using one or filters based on age, content or other criteria unknown in each such instance by the foregoing persons, companies or other entities.

62.     The Nationwide Class seeks certification of claims for declaratory relief and injunctive relief for violations of the First Amendment to the United States Constitution.

63.     Plaintiff KSC also brings certain of the claims, identified, on behalf of itself and a portion of the Class described as the California Subclass as follows:

> All persons, companies or other entities residing within the State of California owning Websites or Web pages on or after January 1, 2001 that suffered one or more of the following: (a) delisting or Blockage from Defendant Google's Results Pages, (b) assignment, either manually or programmatically, of a PageRank of 0 immediately after having a PageRank of 2 or more, (c) penalization or other placement to a lower priority on Google's Results Pages in connection with alleged failure to meet written or unwritten quality guidelines or WebSpam rules, or (d) placement to a lower priority on Google's Results Pages using one or filters based on age, content or other criteria unknown in each such instance by the foregoing persons, companies or other entities.

64.     The California Subclass seeks certification of claims against Defendant Google for declaratory and injunctive relief pursuant to California Constitution article 1, § 2, and for declaratory and injunctive relief and for restitution pursuant to the Unfair Competition Law (Cal. Bus. And Prof. Code §§ 17200 *et seq.*

65.     Excluded from the Nationwide Class and California Subclass are the officers, directors, and employees of Defendant Google and their respective legal representatives, heirs, successors and assigns.

Class Action Complaint                          -14-

66.    This action is brought as a class action and may properly be so maintained pursuant to the provisions of Federal Rule of Civil Procedure 23.  Plaintiff reserves the right to modify the Nationwide Class and the California Subclass definitions and the class period pursuant to discovery that is conducted hereafter.

67.    **Numerosity of the Nationwide Class and the California Subclass:**  Members of the Nationwide Class and the California Subclass are so numerous that their individual joinder is impractical.  The precise identities, numbers and addresses of members of the Nationwide Class and the California Subclass are unknown to the Plaintiffs, but may and should be known with proper and full discovery of Defendant, third parties, and their respective records.

68.    **Existence of Common Questions of Fact and Law**.  There is a well-defined commonality and community of interest in the questions of fact and law involved affecting the members of the Nationwide Class and the California Subclass.  The common questions of fact and law include:

a)    Whether and to what extent Defendant's practices and conduct with respect to the Blockage of referrals to Websites of members of the Nationwide Class Defendant violated the First Amendment right of free speech enjoyed by members of the Nationwide Class, or is currently doing so;

b)    Whether Defendant holding monopoly power in one or more relevant markets unlawfully restrained trade by refusing to deal with members of the Nationwide Class and use or override its Search Engine to Block referrals of users to Websites owned by such members in violation of Sections 1 and 2 of the Sherman Act, or is currently doing so;

c)    Whether and to what extent Defendant's practices and conduct with respect to the Blockage of referrals to Websites of members of the California Subclass violated the California constitutional right of free speech enjoyed by members of the California Subclass, or is currently doing so;

d)    Whether Defendant's practices and conduct with respect to the Blockage of referrals to Websites of members of the California Subclass constitute unfair, unlawful, and/or fraudulent business practices in violation of California's Unfair Competition Law;

Class Action Complaint                    -15-

e)   Whether Defendant's practices and conduct with respect to the Blockage of referrals to Websites of members of the California Subclass constitute unfair, unlawful, and/or fraudulent business practices in violation of California's Unfair Practices Law;

f)   Whether Defendant's practices, conduct and statements with respect to the Blockage of referrals to Websites or the assignment of PageRank values to such Websites of members of the California Subclass constitute defamation or slander;

g)   Whether Defendant's practices and conduct with respect to the Blockage of referrals to Websites of members of the California Subclass constitute negligent interference of prospective economic advantage;

h)   Whether Plaintiff KSC and California Subclass members are entitled to restitution, disgorgement of profits, or other equitable relief to remedy Defendant's unfair, unlawful and/or fraudulent business practices;

i)   Whether Plaintiff KSC and class members are entitled to recover compensatory, exemplary, trebled, statutory or punitive damages based on Defendant's fraudulent, illegal, monopolistic, anticompetitive, defamatory conduct or practices and/or otherwise; and

j)   Whether Plaintiff KSC and class members are entitled to an award of reasonable attorneys' fees, prejudgment interest, and costs of suit.

69.   **Typicality**:  Plaintiff KSC's claims are typical of the claims of the members of the Nationwide Class and the California Subclass because Plaintiff KSC is or was properly exercising its rights of free speech and the recipient of the unhindered flow of referrals through the normal operation of Defendant's search engine.  Plaintiff KSC and all members of the Nationwide Class and the California Subclass have similarly suffered harm arising from Defendant's violations of law as alleged herein.

70.   **Adequacy**:  Plaintiff KSC is an adequate representative of the Nationwide Class and the California Subclass because its interests do not conflict with the interests of the members of the classes it seeks to represent.  Plaintiff KSC has retained competent counsel for this class action and Plaintiff KSC intends to prosecute this action vigorously.  Plaintiff KSC and its

counsel will fairly and adequately protect the interests of the members of the Nationwide Class and California Subclass.

71.     This suit may also be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because Plaintiff KSC and both the Nationwide Class and the California Subclass seek declaratory and injunctive relief, and all of the above factors of numerosity, common questions of fact and law, typicality and adequacy are present.  Moreover, Defendant has acted on grounds generally applicable to Plaintiff KSC and both the Nationwide Class and the California Subclass as a whole, thereby making declaratory and/or injunctive relief proper and suitable as remedies.

72.     **Predominance and Superiority**.  This suit may also be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law common to the Nationwide Class and the California Subclass predominate over the questions affecting only individual members of the classes and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual class member may disproportionate to the burden and expense of individual prosecution of complex and extensive litigation to proscribe Defendant's conduct and practices. Additionally, effective redress for each and every class member against Defendant may be limited or even impossible where serial, duplicitous, or concurrent litigation occurs on these disputes.  Even if individual class members could afford or justify the prosecution of their separate claims, the court system may not be up to the task.  Individualized litigation may lead to incongruous and conflicting judgments against Defendant.  To the contrary, a class action procedure involving all class members, Defendant and the court present fewer management difficulties, and provide the benefit of a single adjudication, economy of scale, and judicial efficiency and fairness.

## COUNT ONE

## VIOLATION OF RIGHT TO FREE SPEECH UNDER THE U.S. CONSTITUTION AND THE CALIFORNIA CONSTITUTION

73.     Plaintiffs reallege and incorporate herein by reference each and every allegation

1   contained in paragraphs 1 through 60, inclusive.

2       74.   The First Amendment to the United States Constitution, in relevant part, states:

3   "Congress shall make no law respecting an establishment of religion, or prohibiting the free

4   exercise thereof; or abridging the freedom of speech."

5       75.   Article I, Section 2 of the California Constitution states:  "Every person may freely

6   speak, write and publish his or her sentiments on all subjects."

7       76.   Defendant Google, as a speech intermediary and a freely accessible, nationwide

8   forum in cyberspace for the exchange of information, regularly, intentionally and repeatedly

9   blocks Search Engine results showing Website Content and other communications of Plaintiff

10   KSC and other Class members that should otherwise automatically or programmatically emerge

11   from key word search requests submitted by members of the public that solicit information on all

12   forms of political and nonpolitical subjects ("Solicitors").  In so doing, Defendant Google has

13   violated and continues to violate constitutionally protected rights of Plaintiffs to exercise their

14   rights of free speech.

15       77.   As an indirect and direct result of Defendant Google's actions and practices,

16   Plaintiffs as a class of aggrieved persons and entities suffer irreparable harm in the suppression

17   of their thoughts, facts, opinions, information and communications that should have otherwise

18   been accessed and received by Solicitors.

19       78.   On information and belief, Plaintiffs allege Defendant Google has exercised no

20   reasonable regulation of time, place or manner of restriction to the exercise of free speech by

21   Plaintiffs, and instead have imposed a completely arbitrary and unconstitutional prior restraint on

22   free speech as protected by the federal and California constitutions.

23       79.   On information and belief, Plaintiffs allege that there is a strong likelihood that

24   Defendant is now engaging in and will continue to engage in the above-described violations of

25   Plaintiff KSC's and class members' constitutional rights, and that likelihood constitutes an

26   credible threat of immediate or imminent harm to those rights

27                          **COUNT TWO**

28           **SHERMAN ACT SECTION 2:  MONOPOLIZATION**

80.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 60, inclusive.

81.   By its conduct, practices and intent, Defendant Google has attempted to create a monopoly in the relevant markets of search engine usage and search-driven Internet advertising. This constitutes a direct violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

82.   Defendant Google possesses monopoly power in the relevant markets of search engine usage and search-driven Internet advertising.  Through the anticompetitive conduct described herein, Defendant Google has willfully acquired and maintained its monopoly power in these two relevant markets to the detriment and harm of Plaintiff KSC and other members of the Nationwide Class.

83.   Defendant Google has acted with an intent to illegally acquire and/or maintain its monopoly power within the aforesaid relevant markets and its anticompetitive conduct has enabled it to do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

84.   Defendant Google, intent or a lack of intent notwithstanding, used its monopoly power in the aforesaid relevant markets, to deny linking and referrals to Websites and artificially depress PageRanks of Websites owned and managed by members of the Nationwide Class, including Plaintiff KSC, and in fact caused such denial of activity and transactions to destroy competition in the aforesaid relevant markets.

85.   As a result of its past and ongoing violations of Section 2 of the Sherman Act, Defendant Google has unfairly and intentionally used its position as an essential carrier to harm and eliminate horizontal competition in the aforesaid relevant markets.

## COUNT THREE

### UNFAIR COMPETITION UNDER CALIFORNIA BUS. & PROF. CODE §§ 17200 *et seq.*

86.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 60, inclusive.

87.   By engaging in the above-described practices and actions, Defendant Google has committed one or more acts of unfair competition within the meaning of California Business and Professions Code §§ 17200 *et seq.*  As used in this Complaint, and in BPC § 17200, "unfair

competition" means (1) an unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, untrue or misleading advertising; and/or (3) an act prohibited by Chapter 1 (commencing with BPC § 17500) of Part 3 of Division 7 of the BPC. This conduct as alleged is actionable pursuant to BPC §§ 17200 and 17203.

88.    Beginning on a date unknown to Plaintiffs and continuing to the present, Defendant Google has engaged in, and continues to engage in, such unfair competition. Defendant's acts and practices are wrongful, arbitrary, without reasonable business or commercial justification, unethical, oppressive, and have caused substantial harm and injury to Plaintiff KSC and other members of the California Subclass.

89.    Defendant Google's unlawful business acts and practices are described herein and include, without limitation, denial of automated search engine referrals to websites of Plaintiff KSC and other members of the California Subclass, falsely and artificially calculating and presenting a deflated PageRank below the actual figure or all the way down to '0' for one or more of these Websites, and using and employing unconscionable commercial practices, deception and concealment and omission of material facts as to the operation and execution of the AdSense Program for owners and operators of Websites.

90.    Members of the public are likely to be deceived by Defendant Google's AdSense Program Agreement in believing and anticipating that through their Website they can realize adequate value and financial benefit by posting linked advertisements as offered by Defendant Google under the program.

91.    Defendant Google's conduct, as described above, is unlawful, unfair, and deceptive, and violate BPC §§ 17200 *et seq.* and constitute, *inter alia*, breach of contract and unjust enrichment.

92.    Plaintiff KSC and members of the California Subclass have been injured by Defendant Google's conduct as to the Class' owned and operated Websites, by way of deflated PageRank values and massive reductions in search engine referrals and accompanying site visits and page views.

93.    Plaintiff KSC has suffered injury in fact and have lost money, property, value,

Class Action Complaint                    -20-

1     business opportunities as a result of Defendant Google's actions and practices and bring this

2     cause of action on behalf of itself and on behalf of all other similarly situated and injured

3     California Subclass members, pursuant to BPC §§ 17200 *et seq.*

4           94.     Defendant Google maintains its headquarters and principal place of business in

5     California, and its unfair, unlawful and fraudulent business actions and practices against the

6     California Subclass as alleged above occur, originate and emanate from within Google's offices

7     in California.

8                             **COUNT FOUR**

9      **UNFAIR PRACTICES UNDER CALIFORNIA BUS. & PROF. CODE §§ 17040 *et seq.***

10          95.     Plaintiffs reallege and incorporate herein by reference each and every allegation

11     contained in paragraphs 1 through 60, inclusive.

12          96.     For each member of the California Subclass, including Plaintiff KSC, there were a

13     multitude of owners and operators of Websites subject to similar terms and conditions as to their

14     application of the Google Engine to their site and receiving appearances and positions on the

15     Results Pages.

16          97.     Defendant Google engaged in surreptitious price discrimination by secretly

17     offering to other sites favored and special benefits, services and privileges to certain Websites

18     that appeared on Results Pages while simultaneously harming Plaintiff KSC and all members of

19     the California Subclass whose Websites were placed into the Sandbox by Defendant Google.

20     Those favored and special benefits, services and privileges include, without limitation, the higher

21     placement of other Websites over those of the California Subclass members on the Results

22     Pages, even though the normal and objective functioning of the Google Engine would place the

23     discriminated Websites at a higher position on the Results Pages.

24          98.     Defendant Google lacks any business, commercial justification for discriminating

25     among Websites as to appearances on Results Pages for locality or functional classifications to

26     the detriment and harm of members of the California Subclass whose Websites posed no actual

27     harm, cost or burden to Defendant Google and the Google Engine.

28          99.     This unlawful conduct tended to and tends to destroy competition in the markets

occupied by members of the California Subclass, in violation of California BPC § 17045.

**COUNT FIVE**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

100.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 60, inclusive.

101.   The AdSense Program necessarily contemplates and includes the implied covenant of good faith and fair dealing.

102.   Defendant Google has an affirmative duty not to commit acts or engage in practices that would improperly deprive Plaintiff KSC and members of the California Subclass of the benefit of the AdSense Program by which they allocate precious and limited Webpage content space to Defendant Google's sponsored links offered to them under the AdSense Program.

103.   A principal benefit for which Plaintiff KSC and the California Subclass members contracted into the AdSense Program was opportunity and ability to increase the appeal and traffic volume to their respective Websites and thereby generate advertising revenue with each additional page view and visitor to their Websites.  However, the denial and blockage of referral of visitors from Search Results by Defendant Google with its Search Engine meant that potential visitors were redirected to other Websites that may otherwise receive advertising revenues and/or other benefits from page views and visits wrongfully caused Defendant Google's override or manipulation of the Google Engine.

104.   As a result of Defendant Google's wrongful conduct, including without limitation Sandboxing, Plaintiff KSC and California Subclass members have suffered and continue to suffer economic and financial losses and other general and specific damages, all in an amount and of a nature to be determined according to proof at time of trial.

**COUNT SIX**

**DEFAMATION AND LIBEL**

105.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 60, inclusive.

106.    Defendant Google has for nearly one continuous year determined and presented for public viewing a Page Rank of '0' when the Website KS.com of Plaintiff KSC is visited by the public and cyberspace community.

107.    On information and belief, Plaintiffs allege that Defendant Google has determined and presented for public viewing artificially depressed PageRanks for members of the Nationwide Class.

108.    Defendant Google, and not Plaintiff KSC, has independent and complete control over the determination and presentation of a PageRank for any given Website, including that of Plaintiff KSC and members of the Nationwide Class.

109.    This statement is false because Plaintiff's site KS.com, in spite of Defendant Google's wrongful conduct as alleged above, maintains extensive Website Content and links within its directory and index that are fully and remain actively hyperlinked throughout the Internet, and continues to generate sustainable level of traffic and PageViews from visitors. Further, upon information and belief, Plaintiff KSC alleges that a Page Rank of '0' is mathematically impossible within the normal operation of the algorithm within the Google Engine.

110.    Defendant's defamatory statements about Plaintiff KSC's Website KS.com and those sites of members of the Nationwide Class are factually and programmatically verifiable.

111.    Defendant Google's statement has caused and continues to cause irreparable harm and damage to the goodwill, value and revenue-generating capabilities of Plaintiff KSC's Website KS.com and those sites of members of the Nationwide Class.

## COUNT SEVEN

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

112.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 60, inclusive.

113.    Plaintiffs KSC had an existing contractual relationship with Defendant Google through the AdSense Program.  Plaintiff at all pertinent times was advertising sites from the Google Network and was receiving advertising revenue from Defendant Google for placing links

Class Action Complaint                -23-

on Plaintiff KSC's own Website.  This relationship to provide advertising links offered by Defendant Google was first created in 2003 and continues to date.

114.    Defendant Google owed a duty of care to Plaintiff KSC to undertake all reasonable steps and actions to allow a continuous flow of referrals from the Google Engine onto the KSC.com website.

115.    After Defendant Google placed KSC.com into the Sandbox, Plaintiff KSC's Website referrals from the Google Engine and visits sharply dropped.  Revenue paid to Plaintiff KSC from Defendant Google arising from the AdSense program  also sharply dropped.  This constituted a wrongful interference with the contractual relationship between Defendant Google and Plaintiff KSC and proximately resulted in a direct economic and business loss to Plaintiff KSC.

116.    All members of the California Subclass that had an AdSense Program in effect with Defendant Google at pertinent times also suffered from Defendant's wrongful interference with that contractual relationship which created a duty of care and caused damages in economic and business losses to all such members of the California Subclass.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff KSC and each member of the Class pray that the Court:

1.    Certify the proposed Nationwide Class and California Subclass herein and appointing Plaintiff KSC and the undersigned counsel of record to represent the each class;

2.    Declare that Defendant Google's practices and actions do indeed violate the free speech rights of Plaintiffs and Nationwide Class members under the United States Constitution and the free speech rights of Plaintiffs and California Subclass members under the California constitution and impose suitable and equitable injunctive relief for all members of such classes;

3.    Assess damages as well as trebled damages to Plaintiff KSC and Nationwide Class members against Defendant Google for its willful and deliberate acts and conduct to create a monopoly and for its acts and conduct as a monopolist, as

provided for by 15 U.S.C. § 26;

4.  Declare that the rights and relief under the AdSense Program be properly and fairly established to the benefit of Plaintiff KSC and all Class members;

5.  Award compensatory damages to Plaintiff KSC and each member of the Classes the full restitution value of all benefits and enrichment Defendant Google has obtained and continued to obtain through its actions and practices;

6.  Award to Plaintiff and members of the California Subclass exemplary damages for unfair competition practices and actions and for unfair practices and actions

7.  Award to Plaintiff and members of the Nationwide Class exemplary damages for defamatory and libelous statements by Defendant Google;

8.  Award restitution, disgorgement, injunctive relief and all other relief allowed under Cal. Bus. Prof. Code §§ 17200 *et seq.* and for negligent conduct and/or omissions to Plaintiff KSC and members of the California Subclass;

9.  Assess prejudgment interest on the damages so awarded and computed above;

10. Award to Plaintiffs their attorneys' fees, costs of suit as provided under applicable law; and

11. Grant such further relief as the parties may fashion and agree to or as the Court may deem just and proper.

Dated: March 17, 2006              GLOBAL LAW GROUP

                                   By:    ____/s/ Gregory J. Yu_____
                                          Gregory J. Yu, Esq.

                                   Attorney for Plaintiff KinderStart.com LLC and
                                          for the proposed Class and Subclass


### DEMAND FOR JURY TRIAL and RESERVATION OF RIGHTS

Plaintiffs hereby demand a trial by jury on all issues so triable.

Plaintiffs' investigation of the matters alleged herein is ongoing.  Pursuant to such investigation and as allowed by the Court, Plaintiffs expressly reserve the right to amend or supplement the claims herein in accordance with Fed.R.Civ.P. 15.

Class Action Complaint              -25-

1   //

2   Dated: March 17, 2006                GLOBAL LAW GROUP

3                                        By:    ____/s/ Gregory J. Yu_____
                                                Gregory J. Yu, Esq.
4
                                         Attorney for Plaintiff KinderStart.com LLC and
5                                             for the proposed Class and Subclass

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint              -26-