1　Gregory J. Yu (State Bar No. 133955)
　　GLOBAL LAW GROUP
2　2015 Pioneer Court, Suite P-1
　　San Mateo, CA　94403
3　Telephone: (650) 570-4140
　　Facsimile: (650) 570-4142
4　E-mail: glgroup [at] inreach [dot] com

5　Attorney for Plaintiffs and Proposed Class and Subclasses

6

7

8　　　　　　　　　　　UNITED STATES DISTRICT COURT

9　　　　　　　　　　NORTHERN DISTRICT OF CALIFORNIA

10　　　　　　　　　　　　SAN JOSE DIVISION

| | |
|---|---|
| 11　KINDERSTART.COM LLC, a California limited liability company, on behalf of itself and all others similarly situated,<br><br>12<br><br>13　　　　Plaintiffs,<br><br>14　　v.<br><br>15　GOOGLE, INC., a Delaware corporation,<br><br>16　　　　Defendants. | Case No. C 06-2057 RS<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

17

18

19　　　　Plaintiff KinderStart.com LLC ("KSC"), by and through its attorney, brings this federal

20　action on behalf of itself and all other similarly situated persons, companies and entities ("Class

21　Members") (KSC and Class Members together are the "Class" or "Plaintiffs") and hereby alleges

22　in this First Amended Complaint, upon personal knowledge and belief as to their own acts and

23　upon information and belief based on past investigation by KSC and counsel and further

24　reasonable investigation and discovery, as follows:

25　　　　　　　　　　　　　　**INTRODUCTION**

26　　　　1.　　This action arises from an aggregation of federal and California constitutional

27　violations, federal antitrust and communications law violations, and state unfair trade,

28　defamatory and good faith and fair dealing violations due to conduct, omissions and practices by

First Amended Class Action Complaint　　　　　　　　　　　　Case No. C 06-02057 RS

Defendant Google, Inc. ("Google").  As the world's most widely used and increasingly ubiquitous search engine, millions of Websites of persons, businesses and organizations in the United States are not accessible, seen or heard by a multitude of persons, businesses and organizations as users if the electronic link or connection is severed by the search engine. Further, many of these Websites that are improperly and/or unlawfully severed from connection through the search engine, are in the very same competitive markets as Defendant.  Such violations, individually and together, warrant declaratory and injunctive relief as well as monetary damages according to proof under applicable law based on injuries to Plaintiffs' person, property, and businesses.

2.      Defendant Google operates a public, openly accessible search engine (the "Google Engine") that actively invites to "anyone with an Internet connection" worldwide to perform searches for Websites and Webpages (collectively "Web Content") through the input of one or more key words into the user's Web browser.  The results of a search performed by the Google Engine for Web Content are presented on the user's screen as a "Search Engine Results Page" ("Results Page").  Results Pages purport to present various Web Content destinations listed in a numerical rank on the left side of the user's screen.

3.      Notwithstanding its public statements that it will make its "vast online index" "freely available" and that its "search results will be objective," from a dominant, controlling position in certain markets Defendant Google, by and through the Google Engine, unilaterally and summarily terminated the free flow of speech, traffic and commerce from a sundry of Websites, including those of Plaintiffs to thousands of users in the public domain.  These consequences are accomplished by an ongoing practice of blockage, delisting, de-indexing and censoring of such Websites, collectively referred to herein as "Blocking" or "Blockage"[1].  This Blockage is contrary to Google's publicly sworn statements regarding its objectivity and free availability of "relevant information" within Websites on the Internet.  Furthermore, each and

---

[1] Internet "Blogs" discussing Google's temporary or permanent blocking of websites have variously called Google's act of blocking "sandboxing," "penalizing" and "whacking", and the state of limbo for such handicapped sites as "the Google Sin Bin," "Google Purgatory," the "Google Bench" and "Google Jail."

every one of these Websites, including that of Plaintiff KSC, are entitled to exercise their constitutionally guaranteed freedom of speech in a open, publicly accessible forum and their right to compete fairly in cyberspace, free of oppressive conduct and practices of the largest and most powerful player in the search engine and related markets.  Defendant Google, as the master of the Google Engine, Website indexing, Website ratings, and search results, is and continues to be the sole steward of this public forum.

## THE PARTIES

4.    Plaintiff KSC is a California limited liability company whose principal offices are located in Norwalk, California.  Members of the Class as defined below in paragraph 88 below comprise all remaining Plaintiffs in this action.

5.  Defendant Google is a Delaware corporation, with its principal place of business located within Santa Clara County, the State of California, at 1600 Amphitheatre Parkway, Mountain View, California  94043.

## JURISDICTION AND VENUE

6.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action is brought by at least one Plaintiff against Defendant in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . [c]itizens of different States."

7.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) because this is a class action where "any member of a class of plaintiffs is a citizen of a state different from any defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs."

8.    This Court has original jurisdiction over Plaintiffs' "Count One" under the First Amendment of the United States Constitution, which guarantees Plaintiffs their constitutional right of free speech.  Such jurisdiction lies within 28 U.S.C. § 1331.

9.    This Court has original exclusive jurisdiction over Plaintiffs' "Count Two" and "Count Three" under Section 4 of the Clayton Act, 15 U.S.C. § 15(a) in that they seek damages and other relief for violations of Section 2 of the Sherman Act, 15 U.S.C. § 2.  Such jurisdiction

1  lies within 15 U.S.C. § 26 and 28 U.S.C. §§ 1331 and 1337(a).

2          10.     This Court has original jurisdiction over Plaintiffs' "Count Four" under the

3  Communications Act of 1934, 47 U.S.C. § 207, in that they seek damages for Defendant's

4  violations of this Act.

5          11.     This action relates to other counts in this complaint of Plaintiffs which are so

6  related to the First, Second, Third and Fourth Counts in that all such other counts form part of

7  the same case or controversy under Article III of the United States Constitution, as hereinafter

8  more fully presented.  Therefore, this Court has jurisdiction over such state claims pursuant to 28

9  U.S.C. § 1367.

10          12.     This is a class action brought in diversity between the Class of Plaintiffs and

11  Defendant Google, wherein jurisdiction lies under 28 U.S.C. § 1332.

12          13.     Defendant Google, a resident of the State of California, is the principal defendant

13  from whom relief is sought by members of the Class, and whose alleged conduct forms the basis

14  for the claims asserted by the Class.

15          14.     Venue is proper in this District under the provisions of 15 U.S.C. §§ 15, 22, and

16  26, and 28 U.S.C. § 1391 because:  (i) Google transacts business, committed an act alleged to be

17  unconstitutional, illegal or tortious, and/or is found within this district; and (ii) a substantial

18  portion of the affected interstate trade and commerce described below has been carried out in

19  this district.

20          15.     **Intradistrict Assignment.**  Assignment to the San Jose division of this District is

21  proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events, conduct

22  and omissions giving rise to this action occurred within this District and division.

23                          **INTERSTATE TRADE AND COMMERCE**

24          16.     At all times relevant hereto, Google was engaged in a continuous flow of

25  interstate business processing search requests and marketing and publishing advertising on

26  Results Pages showing links to millions of Websites on the Internet.  Google regularly conducts

27  business in this jurisdiction and in other locations of the United States and the world.

28          17.     Google's business activities that are the subject of this complaint were within the

First Amended Class Action Complaint          -4-                    C 06-02057 RS

flow of and substantially affected interstate trade and commerce.

**FACTUAL BACKGROUND**

18.    This action responds to Google's pervasive monopolistic practices in the conduct of trade or commerce.  Such practices achieve three distinct consequences – denial of both federal and California constitutional guarantees of free speech exercisable by participants in communication in cyberspace, prevention and destruction of competition in horizontal markets, and extraction of predatory pricing in the search-led advertising market.

19.    At one time, www.kinderstart.com ("KS.com") was one of the choicest Internet destinations for thousands of parents, caregivers, educators, nonprofit and advocacy representatives, and federal, state and local organizations and officials in the United States and worldwide to access vital information about infants and toddlers – basically from prenatal to infancy to age 7.  KSC.com is a directory and search engine that offers vital links to information and sites on key subjects affecting young children, including child rearing, child care, child development, food and nutrition, and education, under the tagline "Because kids don't come with instructions™".

20.    Plaintiff KSC originally launched KS.com in May 2000 with active and intense development of its content, directory, index and search engine capabilities.  Steady, organic growth in visits and page views, without financial or artificial incentives, accompanied the efforts of Plaintiff KSC.  At its peak, KS.com was presenting in excess of 10,000,000 page views to visitors on a monthly basis.

21.    Beginning in 2003, Plaintiff KSC enrolled into Defendant Google's AdSense Program and placed a series of sponsored links for compensation from Google under this program.  Following enrollment into the program by Plaintiff KSC, in or about August 2003, Plaintiff KSC began placement of a series advertisements out of the Google Network onto KSC.com and began to receive fee payments from Defendant Google for rendering these services under the AdSense Program.

22.     Defendant Google's Form 10-K for the fiscal year ended December 31, 2005 (the "Google 2005 10-K"), in Part 1, Item 1, Business, on file with the Securities and Exchange Commission as of March 16, 2006 states in no uncertain terms:

> We maintain the largest, most comprehensive index of web sites and other content, and we make this information *freely available to anyone with an Internet connection.*

(Emphasis added.)

23.     Defendant Google has commenced a program to digitally copy and archive the complete university libraries of Stanford University and the University of Michigan.  Defendant Google has developed a plan to initially digitize five academic libraries to formulate an indexible, searchable digital archive the content of all such university libraries.

24.     Defendant Google has commenced a program to create a digital, searchable archive of published books, which has the potential to be the functional equivalent and scale of the U.S. Library of Congress.  The maintenance, control, publication, copying and use of the archive is subject to the ownership rights, if any, held authors of such books.

25.     In 2005, Defendant Google donated the sum of $3 million to the U.S. Library of Congress to begin a World Digital Library.  Defendant Google has agreed to work with the Library of Congress on developing standards for indexing the digital collections and by providing computer equipment.  Google Co-Founder and President of Technology Sergey Brin has stated, "Google supports the World Digital Library because we share a common mission of making the world's information universally accessible and useful. To create a global digital library is a historic opportunity, and we want to help the Library of Congress in this effort."

26.     Defendant Google now owns and maintains the world's largest searchable digital library and archive of Web Content, Websites, data, images and information.

27.     Defendant Google regularly represents and affirms that its Results Pages are generated programmatically using one or more computer algorithms, the indexing of Websites, the presenting of Results Pages, and PageRanks.  These actions and processes are claimed by Defendant Google to be trade secrets.  On its Technology Overview page appearing on

Defendant Google's Website, Google states: "There is no human involvement or manipulation of results, which is why users have come to trust Google as a source of objective information untainted by paid placement."

28.    Defendant Google's Form 10-K (the "Google 2004 10-K"), in Part 1, for the fiscal year ended December 31, 2004 on file with the Securities and Exchange Commission states in no uncertain terms:

> Our dedication to putting users first is reflected in three key commitments we have made to our users:
>
> - We will do our best to provide the most relevant and useful search results possible, independent of financial incentives. Our search results will be objective, and we will not accept payment for inclusion or ranking in them.
> - We will do our best to provide the most relevant and useful advertising. If any element on a result page is influenced by payment to us, we will make it clear to our users. Advertisements should not be an annoying interruption.
> - We will never stop working to improve our user experience, our search technology and other important areas of information organization.

(Emphasis added.)

The above statements are material representations made by Defendant Google that are relied upon by the search user community, the public, the investment community, and Website owners and managers. A robust and objective search engine affords mutual benefit and protection for all participants in the search engine process.

29.    The Google 2004 10-K, in Part 2, also states[2]:

> Some of the key benefits we offer to users include:
>     *Pertinent, Useful Commercial Information.* The search for information often involves an interest in commercial information – researching a purchase, comparing products and services or actively shopping. We help people find commercial information through our search services and advertising products. Among our search services, we offer Froogle, a search engine for finding products for sale online.

---

[2] These statements and representations are essentially repeated verbatim in Defendant Google's Form 10-K for the fiscal year ended December 31, 2005, on file with the Securities and Exchange Commission on March 16, 2006.

First Amended Class Action Complaint        -7-        C 06-02057 RS

Therefore, it is the express intent and practice of Defendant Google to channel information and communication on a 24-7 basis to any and all cyberspace visitors from the public for obtaining and viewing Web Content and information, data and images.

30.     The Google 2004 10-K, in Part 2, for the same year also states[3]:

> Google indexes a huge amount of information in order to provide relevant results to our users. Our users do searches and are directed to relevant web sites. Google provides a significant amount of traffic to web sites with which we have no business relationship. Many web sites are able to generate revenue from that traffic, but others have difficulty doing so. We are enthusiastic about helping sites make money and thereby facilitating the creation of better content to search. If there is better content on the web, people are likely to do more searches, and we expect that will be good for our business and for users. To address this opportunity, we created Google AdSense. Our Google AdSense program enables the web sites – large and small – that make up the Google Network to deliver AdWords ads that are relevant to the search results or content on their pages. We share most of the revenue generated from ads shown by a member of the Google Network with that member – creating an additional revenue stream for them.

31.     A series of press releases, blogs and other public communications by Defendant Google state that the Results Pages generated from searches are purportedly objective and neutral – but they are not. Accordingly, Defendant Google thereby induces users, the public, and the cyberspace community at large to expect and believe that Results Pages generated from a search every single time will be objective and neutral, untrammeled by human intervention or preference and free of any arbitrariness.

32.     Defendant Google has ownership and control over a computer process known as "PageRank™", which is an automated, computer algorithm that generates a score as a whole number up to "10". PageRank reflects the extent and nature of hyperlinking within the Internet to a particular Website and its web pages. Defendant Google states under "Toolbar Features" IE Version 3 under "PageRank Display" the following: "Wondering whether a new website is worth your time? Use the Toolbar's PageRank™ display to tell you how Google's algorithms assess the importance of the page you're viewing."

33.     Under PageRank, in a simplified sense, if there are more third-party hyperlinks

---

[3] See footnote 2 above.

into a Website's web page, there are a greater number of points mathematically awarded to such page. This process is analogous to a means to quantify the cross-citations among all scientific periodicals ever published and indexed for this purpose. Therefore, PageRank is not a mere statement of opinion of the innate value or human appeal of a given Website and its web pages. Instead, it is a mathematically-generated product of measuring and assessing the quantity and depth of all the hyperlinks on the Web that tie into PageRanked Website, under programmatic determination by Defendant Google.

34.    Defendant Google now dominates the search engine industry and is the largest and most popular search engine not only within the United States but worldwide. By now, Defendant generates and processes search queries of the more than 10 billion Web pages currently indexed by Defendant Google on its tens of thousands of servers. Obtaining and seeking data on the Internet is almost completely dependent upon using a search engine because a typical searcher encounters of the myriad of uniform resource locators (URLs) that are followed by a multitude of trailers (e.g., .com, .net, .org, .info, etc.). Likewise, given how many sites a searcher may visit and wish to return to, the process of bookmarking uniformly and consistently is difficult where searchers use a series of computer access points from the office, home, portable devices, as well as public and borrowed devices. Therefore, search queries with key words facilitate the identification and location of a Website and the underlying organization, business or person without the human recall of the unique Uniform Resource Locator (URL) or Website address.

35.    To attract and retain search users for the Google Engine and to increase the appeal and value of its advertising initiatives and programs for the members of the Class and owners and operators of Websites worldwide, Defendant Google touts its search results as "objective" search results, free of human intervention or manipulation.

36.    Defendant Google also states that "[i]t is Google's policy not to censor search results. However, ... [w]hen we remove search results ... we display a notice on our search results pages."

37.     Defendant Google during 2005 previously posted in its Google Help Center the question, "Does Google ever manipulate its search results?"  The previously posted reply by Defendant to its own question was:  "The order and contents of Google search results are completely automated.  No one ever hand picks a particular result for a given search query...."  This query and associated reply cease to exist on the Google Help Center.

38.     Defendant Google states in its Website under "Google Information for Webmasters" the following unqualified representation:

> We're committed to providing thorough and unbiased search results for our users. We stop indexing pages of a site **only at the request of the webmaster who's responsible for those pages**, when it's spamming our index, or as required by law.  This policy is necessary to ensure that pages aren't inappropriately removed from our index.

(Emphasis in original.)  On information and belief, Defendant Google stops indexing pages of a Website for reasons other than those listed above, and the removal of a Website and its pages from Google's index is indeed inappropriately removed by Defendant Google.

39.     Defendant Google is an information conduit between public users who electronically transmit search queries, on the one hand, and Websites with content to be accessed, heard and viewed, on the other hand.

40.     Defendant Google is vested with a public trust in that the only reasonable means of the public to identify and access millions Websites across the worldwide web is to utilize a search engine that purportedly offers and delivers the most relevant and useful search results.

41.     Defendant Google is a common carrier that makes a public offer to provide communications facilities for subscribers to freely use its facilities to link to and connect with one or more Websites that are hosted on the Internet.  As such, Defendant Google cannot and does not make individualized decisions to control the intent or acts of members of the public to search and communicate with such sites.

42.     The user of the Google Engine submits key words that are accepted and processed to identify and link such user with pre-existing content already contained and available for viewing at various Websites.  Accordingly, Defendant Google can neither control the origin or

situs of the key word submissions, nor does Google control or reformulate the native content of Websites on the Internet, either before, during or after a search query is presented by the user.

43.    Defendant Google's search engine and Results Pages operate as an open, algorithmic directory of Websites of businesses, organizations, nonprofits and individuals.  On a Results Page, key word queries purportedly yield a listing of Websites objectively and methodically presented, free of human intervention.  A paradigm would be the paper-based or electronic white pages of a telephone company that lists all persons, companies and entities in alphabetical order.  In one or more discrete locations on the Results Pages are sponsored links of participants in the "AdWords" feature offered by Defendant Google.  This is similar in function to yellow page advertisements that appear in a category of business or service when the user seeks listings of certain service or product providers.

44.    Defendant Google states in on its Website page "Google Information for Webmasters" the following:

> [Y]our page may have been manually removed from our index if it didn't conform with the quality standards necessary to assign accurate PageRank. We won't comment on the individual reasons a page was removed, and we don't offer an exhaustive list of practices that can cause removal. However, certain actions such as cloaking, writing text that can be seen by search engines but not by users, or setting up pages/links with the sole purpose of fooling search engines may result in permanent removal from our index. You may want to review our Quality Guidelines for more guidance. If you think your site may fall into this category, you might try "cleaning up" the page and contacting us with a re-inclusion request. We don't make any guarantees about if or when we'll re-include your site.

45.    Defendant Google lists on its Website the following as "Quality Guidelines – Specific Recommendations:

- Avoid hidden text or hidden links.

- Don't employ cloaking or sneaky redirects.

- Don't send automated queries to Google.

- Don't load pages with irrelevant words.

- Don't create pages that install viruses, trojans, or other badware.

- Don't create multiple pages, subdomains, or domains with substantially duplicate content.

First Amended Class Action Complaint          -11-          C 06-02057 RS

- Avoid "doorway" pages created just for search engines, or other "cookie cutter" approaches such as affiliate programs with little or no original content.

46.    It is the belief and practice maintained by Defendant Google that as a private enterprise it is entitled at any time, for any reason or no reason at all, to block or remove referrals, listings and indexing of any Website on the Internet.

47.    It is the belief and practice maintained by Defendant Google that it exercises its right to free speech to refer, list or index any Website on the Internet, subject to applicable laws, regulations, contracts, and court orders.

48.    It is the belief and practice maintained by Defendant Google that it exercises its right to free speech to interrupt, suspend, or terminate indefinitely the referral, listing or indexing of any Website on the Internet, subject to applicable laws, regulations, contracts, and court orders.

49.    Any Website seeking to gain visibility, site traffic and page views must rely upon Defendant Google's Google Engine as an essential facility for receiving search query hits. Among the purported explanations given for this domination as a search engine are:  Massive accumulation of intellectual and technology resources secured by public offerings of securities, monopolistic pricing, expansive market capitalization, and economic exploitation of search-led internet advertising channels as a sole-source buyer and sole-source seller.

50.    The search engine market has extremely high barriers to entry.  The economies of scale for hardware, software development and maintenance, and massive bandwidth, matched with indexing and tracking millions of sites and billions of Webpages, often repel new entrants. The construct of Defendant's worldwide channeling network and market positioning has become the prohibitive barrier to entry by prospective competitors, even those with formidable resources, funding, know-how and manpower.

51.    On information and belief, Plaintiffs allege that Defendant Google has at least 75% of the relevant market for search-driven Internet advertising, which includes AdWords advertising.  Defendant is easily the largest and best recognized online advertising network in the United States for millions of third-party Websites.

52.     On information and belief, Plaintiffs allege that as of February 2006, Plaintiffs are informed and believe that Defendant Google has garnered in excess of 50% market share of all closed and open access search engine use on a combined basis and in excess of 70% market share of all open access search engine use.

53.     Google's CEO has stated about America Online the following:  "AOL has been our longest and in many ways tightest partner for many, many years.  We hope it will be true forever."  In 2005, up to 10% of all of Google's search advertising revenues emanated from AOL sites.  AOL, with an alliance and investment from Google, uses the Google Engine as its Web search engine.  When the AOL search market share based on the Google Engine is combined with Google's native search market share from its own URL, Google Engine is used in excess of 60% of all search queries over the Worldwide Web.

54.     MSN and Yahoo, as the other competitors in the search engine market, are not focused principally on search technology and search-driven advertising  Their respective market shares in the relevant markets have steadily fallen since January 2005.

55.     Over 90% of search marketers place advertising with Google for their Websites or their clients' Websites.

56.     All Websites of businesses, organization, government entities and persons throughout the United States, once indexed by Defendant Google, are assignable with a PageRank ranging from "0" to "10" by Defendant Google.  On information and belief, PageRank as promulgated and propagated by Defendant Google throughout the Internet, has become the most widely accepted relative measure of the appeal, popularity and relevance of a Website on the Internet.  As such, Defendant Google has created and now manages and controls the de facto and prevailing standard of PageRank for rating Websites throughout the United States.

57.     Defendant Google derives at least 98% of its total company revenues from the search-driven advertising, which exceeded $3.1 billion for the year ended December 31, 2004.  Search-driven advertising revenues for the industry as a whole during the 2004 fiscal year was approximately $3.9 billion.  Thus for the 2004 fiscal year, Google attained a market share based on revenues alone that exceeds 80% of the search-driven advertising industry revenues.  For the

fiscal year ended December 31, 2005 according to the Google 2005 10-K, Google online advertising revenues within the United States reached approximately $3.3 billion, while the industry as a whole within the United States is estimated to reach $5 billion in such revenues. Thus, within the U.S. market for search-driven advertising based on revenues, Defendant Google enjoyed at comfortable market share in excess of 65% of the entire market.  According to the Google 2005 10-K, Defendant Google's  advertising revenues worldwide for the 2005 fiscal year exceeded $6 billion.

58.     On information and belief, no other search engine except for Google acts as a monopolist, engages in the pervasive, methodical pattern and practice of Blockage of innocent and unsuspecting Websites owned and operated by members of the Class.  On information and belief, Defendant Google's Search Results for Websites of certain Class members are substantially different in content and ranking from those generated by other search engines such as MSN and Yahoo.

59.     Plaintiff KSC and certain other Class Members compete against Defendant Google in the following two separate but related markets -- search engines over the Internet and sponsored link advertising on Websites.

**FACTS OF UNLAWFUL CONDUCT AND BEHAVIOR**

60.     On information and belief, Defendant Google is directly responsible for launching and using the practice of Blockage of independently owned and managed Websites.  One purported description of this process is that a Website is catalogued and isolated from open search queries until, under Defendant's sole and absolute discretion, such site has served sufficient time in probation inside the "Sandbox" before release by Defendant Google.  On information and belief, Google does not explain why some Websites remain in a probationary period for a short period while others in a longer period.  Furthermore, Google as a corporation does not formally acknowledge this probationary period generally or with respect to any specific Website and Google does not provide an explicit justification of these actions.

61.     On information and belief, another purported description of the process of Blockage is the "penalization" of Web sites presumably based on either stated or unstated

1  "quality guidelines."  In one example of this scenario, a Website which previously had a high

2  PageRank and appeared favorably in Results Pages might suddenly discover that their PageRank

3  is lowered or even set at '0' and fall or disappear completely on relevant Results Pages.  Google

4  does not generally inform a Website that it has been penalized, why the Website was penalized,

5  or how it can rehabilitate and recover the indexing and viewer access to the Website.

6      62.    On information and belief, Defendant Google exercised Blockage upon

7  unknowing members of the Class that effectively choked off search-driven traffic into the

8  multitude of Websites owned and managed by such Class members.  On information and belief,

9  Blockage may occur at any time during the life of a Website that previously was receiving

10  referrals through the otherwise normal, objective and/or programmatic operation of the Google

11  Engine.

12      63.    On information and belief, it has been and continues to be, difficult if not

13  impossible for a Class member to move its Website out of the probationary or permanent

14  Blockage by calling, e-mailing or otherwise notifying Defendant Google, and there is no process

15  to get a report of whether or why a Website might have been penalized and thereby Blocked.

16      64.    Although Google initially denied the existence of Blockage, at pertinent times

17  including during a public technology conference in San Jose in August 2005, an employee of

18  Defendant Google acknowledged that it indeed practiced some form of Blockage.  Defendant's

19  employees now euphemistically label this practice of Blocking Websites as "search quality

20  improvement" or anti-Webspamming.

21      65.    On information and belief, though Defendant claims that it engages in "search

22  quality improvement" to remove undesirable content, Google recently identified a fairly

23  significant number of Websites with content it assessed to be "good" that had been Blocked

24  without notification of any kind.  Some of these Websites might still not know that they are

25  being Blocked.  On information and belief, the number of Websites in the initial identification

26  and assessment by Defendant Google approximated 100 in number.

27      66.    On information and belief, Defendant negligently, willfully and/or intentionally

28  interposed and continues to interpose one or more filters as Blockage upon a multitude of

First Amended Class Action Complaint        -15-        C 06-02057 RS

Websites of the Nationwide Class, including that of Plaintiff KSC. There was and is no notice or understanding from the public, the cyberspace community or webmasters at large as to (a) which sites are Blocked, (b) how and why they are Blocked, and (c) when, if ever, they can ever be unblocked or have the filter lifted. On information and belief, Defendant Google has embarked on a program of communication to either refrain from further disclosure altogether or engage in active denial, misinformation or disinformation concerning the role of Blockage in Defendant's processing of over 200 million key word search requests each day.

67.    On the same Results Page to the left or on top are one or more boxes containing "Sponsored Links" having two-to-four lines of text. These Sponsored Links are hyperlinked advertisements of organizations and businesses ("Sponsors") that promote goods or services under the auspices of Defendants' "AdWords" program. Sponsors pay a fee to Google for each time a visitor views a Results Page and clicks through to Sponsored Link. Each time such a click occurs, an AdWords Advertiser must pay Defendant as sum of money.

68.    Defendant Google claims under its Webmaster Guidelines that "Advertising with Google [with AdWords] neither helps nor hurts a site's rankings in Google."

69.    On information and belief, the representation in Paragraph 68 is false and misleading because of multiple instances of Websites of Class members whereby the failure and/or the reduction in AdWords advertising has directly correlated with the change in the rankings or listings for their sites on the Results Pages for various key word searches.

70.    On information and belief, Plaintiffs allege that Defendant Google does in fact monitor, manipulate and censor the output and content on Results Pages, whether programmatically through a computer or individually through the intervention and discretion of one or more human decision-makers under the employ, direction, supervision and/or oversight of Defendant Google.

71.    Defendant does not directly charge or bill users for their use of the Search Engine. While this service is offered by Defendant without charge to users, Defendants have instigated, developed and implemented a highly profitable and popular advertising program known as "AdWords."

First Amended Class Action Complaint        -16-        C 06-02057 RS

72.     There is no possible way to determine whether a user has a legitimate interest in the product, service, or message appearing in the Ad link.  Therefore, an anonymous or unknown user, without any authentication or verification, may simply click on the Ad link and compel the Advertiser, which is more generally known as "Click Fraud."

73.     On or about March 10, 2006, Defendant Google tentatively settled class action litigation with a class of aggrieved merchants who claimed that they were directly victimized and financially harmed by Click Fraud on terms which include approximately $90 million worth of credits for future AdWords usage by the class of aggrieved merchants.

## FACTS CONCERNING HARM TO PLAINTIFFS

74.     On March 19, 2005, Plaintiff KSC's Website KinderStart.com suffered a cataclysmic fall of 70% or more in its monthly page views and traffic.  Thereafter, KSC.com's monthly average of page views for the last 11 calendar months through February 2006 was a meager 30% of monthly levels prior to March 2005.  Initially, KSC did not know why its Web traffic had dropped so dramatically.  It had not been provided any notices from Defendant Google, and certainly no advance notices, whether or why its Web traffic might decrease.  Eventually, KSC realized that common key word searches on Defendant Google's search engine no longer listed KSC.com as a result with any of its past visibility.

75.     By April 2005, Plaintiff KSC's monthly AdSense revenue suffered an equally precipitous fall by over 80%.  With the sharp fall-off in search engine referrals from www.google.com, quite naturally and automatically click-throughs for the sponsored ads on KSC.com dropped proportionately with the actual key word search traffic sent from Defendant Google.

76.     In March 2005, the top referring site for KS.com was Defendant Google (www.google.com).  In April 2005 and for every single month since, www.google.com no longer even made the top 10 URL referrers.  Since that time, the percentage of referrals from Defendant Google as to KS.com has fallen to less than 0.01%.  The KSC.com site was officially, practically and illegally Blocked by Defendant Google.

77.     On information and belief, over 100 other sites of California and nationwide

First Amended Class Action Complaint          -17-                    C 06-02057 RS

1  Websites that participated in AdSense suffered a loss of traffic and referrals as a result of

2  Blockage by Defendant Google.

3         78.    Plaintiff KSC has never been notified by telephone, mail or in person of the fact

4  that Defendant Google Blocked KSC.com, or why this occurred to KS.com.  Further, Plaintiff

5  KSC never received any notice or instruction on what method or procedure, if any, could or

6  should be used by Plaintiff KSC to cause Defendant Google or the Google Engine to cease the

7  Blockage of KS.com.

8         79.    On information and belief, hundreds and hundreds of Websites as owned and

9  operated by the Class members suffer an identical malady – Blockage for a duration of anywhere

10 from several days to 18 months or more, with absolutely no notice or warning whatsoever from

11 Defendant Google.

12        80.    On information and belief, a multitude of Websites of Class members consistently

13 receive significantly and relatively high rankings and referrals from other search engines such as

14 MSN and Yahoo, but suffer deflated ratings and rankings from search engine results presented

15 by Defendant Google's Engine.

16        81.    At all pertinent times since the launch of KS.com, never has Defendant Google

17 notified that Plaintiff KSC or KSC.com was in violation of any guidelines or rules of Defendant

18 as to Website content or management or advertising that may have been in effect or disseminated

19 from time to time among and throughout the Google Network.

20        82.    Never has Plaintiff KSC hired or utilized any services for search engine

21 optimization that actually and effectively increased visits or views at KS.com.  Never has

22 Plaintiff KSC taken any steps or actions to remove Website Content of KSC.com from

23 Defendant Google's index.

24        83.    To the best of Plaintiff KSC's knowledge, never has any Web Content or links,

25 whether sponsored or not, of KS.com violated the AdSense Program Policies of Defendant

26 Google on Site Content.

27        84.    Since its inception in 2000, KS.com has never carried any hidden text pages that

28 could ever constitute Web spam under any proper, objective definition.

First Amended Class Action Complaint          -18-              C 06-02057 RS

85.    To the best of Plaintiff KSC's knowledge, KSC has never violated Defendant Google's Webmaster Guidelines as to KS.com and Google has not notified KSC of any such violation.

86.    Never has Defendant Google notified Plaintiff KSC of any possible or actual violation by KSC of the terms or conditions set forth in the AdSense Program Agreement.

87.    As a result of the conditions alleged above, the PageRank for Plaintiff KSC's website was at all pertinent times calculated and assigned as '0' by Defendant Google's Toolbar.

### CLASS ACTION ALLEGATIONS

88.    Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiff KSC bring this action on behalf of itself and the Class, particularly the following Nationwide Class of similarly situated persons defined as:

> All persons, companies or other entities owning Websites or Web pages on or after January 1, 2001 that suffered one or more of the following: (a) delisting or Blockage from Defendant Google's Results Pages, (b) assignment, either manually or programmatically, of a PageRank of 0 immediately after having a PageRank of 2 or more, (c) penalization or other placement to a lower priority on Google's Results Pages in connection with alleged failure to meet written or unwritten quality guidelines or WebSpam rules, or (d) placement to a lower priority on Google's Results Pages using one or filters based on age, content or other criteria unknown in each such instance by the foregoing persons, companies or other entities.

89.    The Nationwide Class seeks certification of claims for declaratory relief and injunctive relief for violations of the First Amendment to the United States Constitution.

90.    Plaintiff KSC also brings certain of the claims, identified, on behalf of itself and a portion of the Class described as "California Subclass I" as follows:

> All persons, companies or other entities residing within the State of California owning Websites or Web pages on or after January 1, 2001 that suffered one or more of the following: (a) delisting or Blockage from Defendant Google's Results Pages, (b) assignment, either manually or programmatically, of a PageRank of 0 immediately after having a PageRank of 2 or more, (c) penalization or other placement to a lower priority on Google's Results Pages in connection with alleged failure to meet written or unwritten quality guidelines or WebSpam rules, or (d)

placement to a lower priority on Google's Results Pages using one or filters based on age, content or other criteria unknown in each such instance by the foregoing persons, companies or other entities.

91.    Plaintiff KSC also brings certain of the claims, identified, on behalf of itself and a portion of the Class described as "California Subclass II" as follows:

> All members of California Subclass I that participated in Google's AdSense Program on or after January 1, 2001 and experienced a loss in AdSense revenue at all pertinent times as a result of suffering any of the events listed in paragraph 90 above.

92.    California Subclass I seeks certification of claims against Defendant Google for declaratory and injunctive relief pursuant to California Constitution article 1, § 2, and for declaratory and injunctive relief and for restitution pursuant to the Unfair Competition Law (Cal. Bus. And Prof. Code §§ 17200 *et seq.*

93.    Excluded from the Nationwide Class and California Subclasses are the officers, directors, and employees of Defendant Google and their respective legal representatives, heirs, successors and assigns.

94.    This action is brought as a class action and may properly be so maintained pursuant to the provisions of Federal Rule of Civil Procedure 23.  Plaintiff reserves the right to modify the Nationwide Class and the California Subclass definitions and the class period pursuant to discovery that is conducted hereafter.

95.    **Numerosity of the Nationwide Class and the California Subclasses:**  Members of the Nationwide Class and the California Subclasses are so numerous that their individual joinder is impractical.  The precise identities, numbers and addresses of members of the Nationwide Class and the California Subclasses are unknown to the Plaintiffs, but may and should be known with proper and full discovery of Defendant, third parties, and their respective records.  In each case, the number of members exceeds 100 in number

96.    **Existence of Common Questions of Fact and Law**.  There is a well-defined commonality and community of interest in the questions of fact and law involved affecting the members of the Nationwide Class and the California Subclasses.  The common questions of fact and law include:

a)   Whether and to what extent Defendant's practices and conduct with respect to the Blockage of referrals to Websites of members of the Nationwide Class Defendant violated the First Amendment right of free speech enjoyed by members of the Nationwide Class, or is currently doing so;

b)   Whether Defendant holding monopoly power in one or more relevant markets unlawfully restrained trade by refusing to deal with members of the Nationwide Class and use or override its Search Engine to Block referrals of users to Websites owned by such members in violation of Section 2 of the Sherman Act, or is currently doing so;

c)   Whether Defendant attempted to create a monopoly in one or more relevant markets as demonstrated by its intent, conduct, and behavior, with the natural result of causing anticompetitive effect and harming consumers;

d)   Whether Defendant violated the Communications Act in a manner and with the effect of causing loss to members of the Nationwide Class

e)   Whether and to what extent Defendant's practices and conduct with respect to the Blockage of referrals to Websites of members of California Subclass I violated the California constitutional right of free speech enjoyed by members of California Subclass I, or is currently doing so;

f)   Whether Defendant's practices and conduct with respect to the Blockage of referrals to Websites of members of California Subclass I constitute unfair, unlawful, and/or fraudulent business practices in violation of California's Unfair Competition Law;

g)   Whether Defendant's practices and conduct with respect to the Blockage of referrals to Websites of members of California Subclass I constitute unfair, unlawful, and/or fraudulent business practices in violation of California's Unfair Practices Law;

h)   Whether Defendant's practices and conduct with respect to the Blockage of referrals to Websites of members of California Subclass II constitute breach of implied covenant of good faith and fair dealing.

i)   Whether Defendant's practices, conduct and statements with respect to the Blockage of referrals to Websites or the assignment of PageRank values to such Websites of

First Amended Class Action Complaint          -21-                    C 06-02057 RS

members of the Nationwide Class constitute defamation or slander;

j)   Whether Defendant's practices and conduct with respect to the Blockage of referrals to Websites of members of California Subclass I constitute negligent interference of prospective economic advantage;

k)   Whether Plaintiff KSC and California Subclass I and II members are entitled to restitution, disgorgement of profits, or other equitable relief to remedy Defendant's unfair, unlawful and/or fraudulent business practices;

l)   Whether Plaintiff KSC and Class members are entitled to recover compensatory, exemplary, trebled, statutory or punitive damages based on Defendant's fraudulent, illegal, monopolistic, anticompetitive, defamatory conduct or practices and/or otherwise; and

m)  Whether Plaintiff KSC and Class members are entitled to an award of reasonable attorneys' fees, prejudgment interest, and costs of suit.

97.    **Typicality**:  Plaintiff KSC's claims are typical of the claims of the members of the Nationwide Class and the California Subclasses because Plaintiff KSC is or was properly exercising its rights of free speech and the recipient of the unhindered flow of referrals through the normal operation of Defendant's search engine.  Plaintiff KSC and all members of the Nationwide Class and the California Subclasses have similarly suffered harm arising from Defendant's violations of law as alleged herein.

98.    **Adequacy**:  Plaintiff KSC is an adequate representative of the Nationwide Class and the California Subclasses because its interests do not conflict with the interests of the members of the classes it seeks to represent.  Plaintiff KSC has retained competent counsel for this class action and Plaintiff KSC intends to prosecute this action vigorously.  Plaintiff KSC and its counsel will fairly and adequately protect the interests of the members of the Nationwide Class and the California Subclasses.

99.    This suit may also be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because Plaintiff KSC and both the Nationwide Class and the California Subclasses seek declaratory and injunctive relief, and all of the above factors of

numerosity, common questions of fact and law, typicality and adequacy are present.  Moreover,

Defendant has acted on grounds generally applicable to Plaintiff KSC and both the Nationwide

Class and the California Subclasses as a whole, thereby making declaratory and/or injunctive

relief proper and suitable as remedies.

100.    **<u>Predominance and Superiority</u>**.  This suit may also be maintained as a class

action under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law

common to the Nationwide Class and the California Subclasses predominate over the questions

affecting only individual members of the classes and a class action is superior to other available

means for the fair and efficient adjudication of this dispute. The damages suffered by each

individual class member may disproportionate to the burden and expense of individual

prosecution of complex and extensive litigation to proscribe Defendant's conduct and practices.

Additionally, effective redress for each and every class member against Defendant may be

limited or even impossible where serial, duplicitous, or concurrent litigation occurs on these

disputes.  Even if individual class members could afford or justify the prosecution of their

separate claims, the court system may not be up to the task.  Individualized litigation may lead to

incongruous and conflicting judgments against Defendant.  To the contrary, a class action

procedure involving all class members, Defendant and the court present fewer management

difficulties, and provide the benefit of a single adjudication, economy of scale, and judicial

efficiency and fairness.

## COUNT ONE

## VIOLATION OF RIGHT TO FREE SPEECH UNDER THE U.S. CONSTITUTION

## AND THE CALIFORNIA CONSTITUTION

101.    Plaintiffs reallege and incorporate herein by reference each and every allegation

contained in paragraphs 1 through 100, inclusive.

102.    The First Amendment to the United States Constitution, in relevant part, states:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free

exercise thereof; or abridging the freedom of speech."

103.    Article I, Section 2 of the California Constitution states:  "Every person may freely

First Amended Class Action Complaint          -23-          C 06-02057 RS

1    speak, write and publish his or her sentiments on all subjects."

2    104.    Defendant Google created and now manages a freely accessible, nationwide public

3    forum in cyberspace for the exchange of information and flow of speech by virtue of the Google

4    Engine.  Defendant Google, by and through the Google Engine, is a speech intermediary.

5    105.    Defendant Google actively performs a variety of government, state-like functions

6    including without limitation the creation, management and stewardship of a universal, public,

7    Internet-accessible index, archive and repository of the world's Internet content and information

8    that cover all essential topics and subject matter for use by the general public.

9    106.    Defendant Google enjoys and exercise complete and arbitrary discretion on the

10    form, content, and application of the its Webmaster Guidelines as to the finding, indexing and

11    ranking of Websites on the Internet, including those of Class members.  At all relevant times,

12    such Guidelines are applied, enforced and exercised by Defendant Google in an inconsistent,

13    arbitrary and indiscriminate manner, and such actions are undertaken by entities, persons and

14    individuals under the employ and/or direction of Defendant Google.

15    107.    Defendant Google regularly, intentionally and repeatedly blocks Search Engine

16    results showing Website Content and other communications of Plaintiff KSC and other Class

17    members that should otherwise automatically or programmatically emerge from key word search

18    requests submitted by members of the public that solicit information on all forms of political and

19    nonpolitical subjects ("Solicitors").  In so doing, Defendant Google has violated and continues to

20    violate constitutionally protected rights of Plaintiffs to exercise their rights of free speech.

21    108.    As an indirect and direct result of Defendant Google's actions and practices,

22    Plaintiffs as a class of aggrieved persons and entities suffer irreparable harm in the suppression

23    of their thoughts, facts, opinions, information and communications that should have otherwise

24    been accessed and received by Solicitors.

25    109.    On information and belief, Defendant Google, in operating the Google Engine in a

26    public forum over the Internet and/or in a state-like function, has failed to exercise any

27    reasonable regulations of time, place or manner of restriction as to the exercise of free speech by

28    Plaintiffs, and instead have imposed a completely arbitrary and unconstitutional prior restraint on

free speech as protected by the federal and California constitutions.

110.   On information and belief, there is a strong likelihood that Defendant is now engaging in and will continue to engage in the above-described violations of Plaintiff KSC's and Class members' constitutional rights, and that likelihood constitutes an credible threat of immediate or imminent harm to those rights.

111.   On information and belief, there is a case or controversy constituting grounds for declaratory relief on the exercise of free speech rights of Plaintiffs and Defendant because Defendant Google has asserted, and on information and belief intends to assert, its free speech rights in the publication of PageRank of Websites and in Blockage of Websites on the Internet.

**COUNT TWO**

**SHERMAN ACT SECTION 2:  ATTEMPTED MONOPOLIZATION**

112.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 100, inclusive.

113.   Plaintiff KSC and one or more of the Class members compete against Defendant Google in the relevant market of search engine design, implementation and usage (the "Search Engine Market").

114.   Plaintiff KSC and one or more of the Class members compete against Defendant Google in the relevant market of search-driven Internet advertising (the "Search Ad Market").

115.   Defendant Google, based on its creation, control and use of PageRank, has a dominant position in share of the market for the rating of Websites in the United States on the Internet (the "Website Rating Market").

116.   By virtue of its statements, behavior , conduct, acts and omissions, Defendant Google harbors and evinces specific intent to destroy competition in the Search Engine Market and the Search Ad Market.

117.   By virtue of its statements, behavior , conduct, acts and omissions, Defendant Google harbors and evinces specific intent to control prices in the Search Ad Market.

118.   Defendant Google has engaged in predatory conduct or anti-competitive conduct directed toward achieving the objective of controlling prices and/or destroying competition in

the relevant markets of the Search Engine Market, the Search Ad Market, and the Website Rating Market.

119.   Defendant Google has sufficient intent, power, and resources to create a dangerous probability that it will succeed in monopolization of the above relevant markets.

120.   Defendant Google has violated and continues to violate Section 2 of the Sherman Act, 15 U.S.C. § 2.

121.   Defendant Google's unlawful conduct of PageRank devaluation and Website Blockage has caused, and continues to cause, the decline and loss of revenue, returning and new traffic and goodwill of one or more of the respective Websites owned and operated by Plaintiff KSC and each and every member of the Class engaged in lawful, interstate commerce.

122.    Defendant Google's unlawful conduct of PageRank devaluation and Website Blockage has caused, and continues to cause, the decline and loss of revenue, returning and new traffic and goodwill of one or more of the respective Websites owned and operated by Plaintiff KSC and each and every member of the Class which is a competitor of Defendant Google in one or more the aforesaid relevant markets.

**COUNT THREE**

**SHERMAN ACT SECTION 2:  MONOPOLIZATION**

123.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 100, inclusive.

124.   Defendant Google possesses monopoly power in the relevant market referred as the Search Engine Market.

125.   Defendant Google is an essential facility or essential medium for a multitude of businesses, Websites, and competitors in the Search Engine Market whereby the indexing, linking and referrals to such content afforded by Plaintiffs over the Internet are essential to the operations, Web traffic, commerce, communications, and expression of speech by Class members.

126.   Defendant Google possesses monopoly power in the relevant market referred as the Search Ad Market.

127.   Defendant Google has willfully acquired or maintained its monopoly power in the Search Engine Market by means and tools other than as a consequence of a superior product, business acumen or historical accident.

128.   One effective tool employed by Defendant Google to acquire and/or maintain its monopoly power in the Search Engine Market is to falsely represent and falsely advertise that the Google Engine is objective and not subjected to human manipulation, when in fact the Results Pages are subjective, and subject to human intervention by way of Blockage of Websites that would otherwise place in a higher position on Results Pages, but for such human intervention and manipulation.

129.   Defendant Google has willfully acquired or maintained its monopoly power in the Search Ad Market by means and tools other than as a consequence of a superior product, business acumen or historical accident.

130.   One effective means employed by Defendant Google to acquire and/or maintain its monopoly power in the Search Ad Market is to exert pressure on search engine marketers and Webmasters to purchase or purchase increased Adwords placements on Results Pages in order to avoid deleterious impact on one or more of the following:  (a) PageRank devaluation; (b) temporary, extended or permanent Blockage of Websites; and (c) delisting or de-indexing of Websites.

131.   Defendant Google has willfully acquired or maintained its monopoly power in the Website Rating Market by means and tools other than as a consequence of a superior product, business acumen or historical accident.

132.   One effective means employed by Defendant Google to acquire and/or maintain its monopoly power in the Website Rating Market is to assign PageRanks of various commercial Websites and competitive Websites to induce certain behaviors or to penalize certain behaviors of such sites, all to Google's ill-conceived gain and advantage.

133.   The conduct, acts and omissions of Defendant Google constituting monopolization of one or more of the relevant markets identified above caused detriment and harm to Plaintiff KSC and other members of the Nationwide Class and to competition in the relevant markets.

134.   Defendant Google's anticompetitive behavior and conduct, including without limitation its denial of access or other benefit as an essential facility to Websites by search users in one or more of the above relevant markets is in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

135.   Defendant Google, intent or a lack of intent notwithstanding, used its monopoly power in one or more of the above relevant markets, to deny indexing, linking and referrals to Websites and/or artificially depress PageRanks of Websites owned and managed by members of the Nationwide Class, including Plaintiff KSC, and in fact caused such denial of activity and transactions to destroy competition in the above relevant markets.

## COUNT FOUR

### VIOLATIONS OF THE COMMUNICATIONS ACT (47 U.S.C. §§ 201 et seq.)

136.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 100, inclusive.

137.   Defendant Google is a telecommunications carrier, a common carrier, or both, under applicable Federal law and regulations.

138.   Defendant Google, with its Google Engine, provides basic rather than enhanced information transport in that it merely refers or links its users to an online location with a URL on the Internet.

139.   Defendant Google holds itself out publicly and indiscriminately to clientele users as accepting any person with Internet access to use the Google Engine to perform key word search queries and receive intrastate and interstate electronic linkage and connection to Websites as presented to and selected by the users.

140.   Defendant Google's Google Engine, Website index, shared cables and Internet bandwidth, hardware, middleware and software together constitute network elements under 47 U.S.C. § 153(29) that offer connectivity and functionality to other search engines, indices and directories on the Internet.

141.   Defendant Google owns and maintains a national and international network of servers that index and connect Websites based on URLs and that together constitutes a network

element under 47 U.S.C. § 153(29).

142.    Defendant Google has failed to fairly and evenly afford access to its network elements to other competitors in the relevant markets on a rational basis.

143.    Defendant Google has engaged in unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by means of granting or allowing the placement of higher or preferred rankings on Results Pages based on the payment of fees for AdWords advertising and, on information and belief, conferral of other benefits to Defendant Google.

144.    Defendant Google has made or has given undue or unreasonable preference or advantage to one or more particular persons, classes of persons, or localities, or to subject one or more particular persons, classes of persons, or localities to any undue or unreasonable prejudice or disadvantage by means of Blockage and PageRank devaluation of Websites owned and managed by the Class members.

**COUNT FIVE**

**UNFAIR COMPETITION UNDER CALIFORNIA BUS. & PROF. CODE §§ 17200 *et seq.***

145.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 100, inclusive.

146.    By engaging in the above-described practices and actions, Defendant Google has committed one or more acts of unfair competition within the meaning of California Business and Professions Code ("BPC") §§ 17200 *et seq.*  As used in this Complaint, and in BPC § 17200, "unfair competition" means (1) an unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, untrue or misleading advertising; and/or (3) an act prohibited by Chapter 1 (commencing with BPC § 17500) of Part 3 of Division 7 of the BPC.  This conduct as alleged is actionable pursuant to BPC §§ 17200 and 17203.

147.    Beginning on a date unknown to Plaintiffs and continuing to the present, Defendant Google has engaged in, and continues to engage in, such unfair competition.  Defendant's acts and practices are wrongful, arbitrary, without reasonable business or commercial justification, unethical, oppressive, and have caused substantial harm and injury to Plaintiff KSC and other

1  members of California Subclass I.

2  148.   Defendant Google's unlawful business acts and practices are described herein and

3  include, without limitation, denial of automated search engine referrals to websites of Plaintiff

4  KSC and other members of California Subclass I, falsely and artificially calculating and

5  presenting a deflated PageRank below the actual, correctly computed figure or all the way down

6  to '0' for one or more of these Websites, using and employing unconscionable commercial

7  practices, and deception and concealment and omission of material facts as to the operation and

8  execution of the AdSense Program for owners and operators of Websites.

9  149.   Members of the public are likely to be deceived by Defendant Google's AdSense

10  Program Agreement in believing and anticipating that through their Website they can realize

11  adequate value and financial benefit by posting linked advertisements as offered by Defendant

12  Google under the program.

13  150.   Defendant Google's conduct, as described above, is unlawful, unfair, and

14  deceptive, and violate BPC §§ 17200 *et seq.* and constitute, *inter alia*, breach of contract and

15  unjust enrichment.

16  151.   Plaintiff KSC and members of California Subclass I have been injured by

17  Defendant Google's conduct as to the subclass's owned and operated Websites, by way of

18  deflated PageRank values and massive reductions in search engine referrals and accompanying

19  site visits and page views.

20  152.   Plaintiff KSC has suffered injury in fact and have lost money, property, value,

21  business opportunities as a result of Defendant Google's actions and practices and bring this

22  cause of action on behalf of itself and on behalf of all other similarly situated and injured

23  California Subclass I members, pursuant to BPC §§ 17200 *et seq.*

24  153.   Defendant Google maintains its headquarters and principal place of business in

25  California, and its unfair, unlawful and fraudulent business actions and practices against

26  California Subclass I as alleged above occur, originate and emanate from within Google's offices

27  in California.

28                                    **COUNT SIX**

First Amended Class Action Complaint          -30-                    C 06-02057 RS

**UNFAIR PRACTICES UNDER CALIFORNIA BUS. & PROF. CODE §§ 17040 *et seq.***

154.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 100, inclusive.

155.   For each member of California Subclass I , including Plaintiff KSC, there were a multitude of owners and operators of Websites subject to similar terms and conditions as to their application of the Google Engine to their site and receiving appearances and positions on the Results Pages.

156.   On information and belief, Defendant Google engaged in surreptitious price discrimination by secretly offering to other sites favored and special benefits, services and privileges to certain Websites that appeared on Results Pages while simultaneously harming Plaintiff KSC and all members of California Subclass I whose Websites that were subjected to Blockage and PageRank devaluation imposed by Defendant Google.  Those favored and special benefits, services and privileges include, without limitation, the higher placement of other Websites over those of California Subclass I members on the Results Pages, even though the normal and objective functioning of the Google Engine would place the discriminated Websites at a higher position on the Results Pages.

157.   Defendant Google lacks any business, commercial justification for discriminating among Websites as to appearances on Results Pages for locality or functional classifications to the detriment and harm of members of California Subclass I whose Websites posed no actual harm, cost or burden to Defendant Google and the Google Engine.

158.   This unlawful conduct tended to and tends to destroy competition in the markets occupied by members of California Subclass I, in violation of California BPC § 17045.

**COUNT SEVEN**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

159.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 100, inclusive.

160.   The AdSense Program necessarily contemplates and includes the implied covenant of good faith and fair dealing.

161.   Defendant Google has an affirmative duty not to commit acts or engage in practices that would improperly deprive Plaintiff KSC and members of California Subclass II of the benefit of the AdSense Program by which they allocate precious and limited Webpage content space to Defendant Google's sponsored links offered to them under the AdSense Program.

162.   A principal benefit for which Plaintiff KSC and California Subclass II members contracted into the AdSense Program was opportunity and ability to increase the appeal and traffic volume to their respective Websites and thereby generate advertising revenue with each additional page view and visitor to their Websites.  However, Blockage of referral of visitors from Search Results by Defendant Google with the Google Engine meant that potential visitors were redirected to other Websites that may otherwise receive advertising revenues and/or other benefits from page views and visits wrongfully caused Defendant Google's override or manipulation of the Google Engine.

163.   As a result of Defendant Google's wrongful conduct, including without limitation Blockage, Plaintiff KSC and California Subclass II members have suffered and continue to suffer economic and financial losses and other general and specific damages, all in an amount and of a nature to be determined according to proof at time of trial.

**COUNT EIGHT**

**DEFAMATION AND LIBEL**

164.   Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 100, inclusive.

165.   Defendant Google has for nearly one continuous year, and at all pertinent times, determined and presented for public viewing a Page Rank of '0' when the Website KS.com of Plaintiff KSC is visited and viewed by the public and cyberspace community.

166.   On information and belief, Plaintiffs allege that Defendant Google has determined and presented for public viewing artificially depressed PageRanks for members of the

1  Nationwide Class.

2  167.    Defendant Google, and not Plaintiff KSC or any other member of the Class, has

3  independent and complete control over the determination and presentation of a PageRank for any

4  given Website, including that of Plaintiff KSC and members of the Nationwide Class.

5  168.    This statement is false because Plaintiff's site KS.com, in spite of Defendant

6  Google's wrongful conduct as alleged above, maintains extensive Website Content and links

7  within its directory and index that are fully and remain actively hyperlinked throughout the

8  Internet, and continues to generate sustainable level of traffic and PageViews from visitors.

9  Further, upon information and belief, a PageRank of '0' for any Website is mathematically

10  impossible within the normal operation of the algorithm within the Google Engine.

11  169.    Defendant's defamatory and libelous statements about Plaintiff KSC's Website

12  KS.com and those sites of members of the Nationwide Class are openly displayed and

13  disseminated over the Internet and are public viewable by anyone with Internet access.

14  170.    Defendant Google's statements have caused and continue to cause irreparable

15  harm and damage to the goodwill, value and revenue-generating capabilities of Plaintiff KSC's

16  Website KS.com and those sites of members of the Nationwide Class.

## COUNT NINE

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

19  171.    Plaintiffs reallege and incorporate herein by reference each and every allegation

20  contained in paragraphs 1 through 100, inclusive.

21  172.    Plaintiffs KSC and members of the California Subclass II had an existing

22  contractual relationship with Defendant Google through the AdSense Program.  Plaintiffs at all

23  pertinent times was advertising sites from the Google Network and was receiving advertising

24  revenue from Defendant Google for placing links on Plaintiffs Websites, including KSC.com.

25  This relationship to provide advertising links offered by Defendant Google was created and was

26  in existence at all pertinent times.

27  173.    Defendant Google owed a duty of care to Plaintiff KSC and members of the

28  California Subclass II to undertake all reasonable steps and actions to allow a continuous flow of

1    referrals from the Google Engine onto the Website of all members of California Subclass II.

2        174.    After Defendant Google Blocked KSC.com and other Websites of the California

3    Subclass II, referrals from the Google Engine and visits sharply dropped.  Consequently, revenue

4    paid to members of California Subclass II from Defendant Google arising from the AdSense

5    program  also fell.  This constituted a wrongful interference with the contractual relationship

6    between Defendant Google and members of California Subclass II and proximately resulted in a

7    direct economic and business loss to these Plaintiffs.

8        175.    All members of California Subclass II that had an AdSense Program in effect with

9    Defendant Google at all pertinent times suffered from Defendant's wrongful interference with

10    that contractual relationship which created a duty of care and caused damages in economic and

11    business losses to all such members of California Subclass II.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff KSC and each member of the Class pray that the Court:

1.    Certify the proposed Nationwide Class and California Subclasses herein and
      appointing Plaintiff KSC and the undersigned counsel of record to represent the
      each class;

2.    Declare that Defendant Google's practices and actions do indeed violate the
      free speech rights of Plaintiffs and Nationwide Class members under the United
      States Constitution and the free speech rights of Plaintiffs and California
      Subclass members under the California constitution as to their Websites and
      impose suitable and equitable injunctive relief for all members of such classes;

3.    Assess damages as well as trebled damages to Plaintiff KSC and Nationwide
      Class members against Defendant Google under Section 4 of the Clayton Act,
      15, U.S.C. § 15, arising from and in connection with the harm they have
      sustained and will have sustained as a result of the federal antitrust violations
      by Defendant under Section 2 of the Sherman Act, 15 U.S.C. § 2.

4.    Award injunctive relief against threatened loss or damage by ongoing and
      future violations of the antitrust laws by Defendant in seeking to secure a

monopoly and to engage in unlawful acts and conduct as a monopolist, as provided for by 15 U.S.C. § 26;

5.   Assess damages to Plaintiff KSC and Nationwide Class members against Defendant Google for violations of the Communications Act of 1934, 47 U.S.C. §§ 206, 207, together with reasonable attorneys' fees;

6.   Declare that the rights and relief under the AdSense Program be properly and fairly established to the benefit of Plaintiff KSC and all California Subclass II members;

7.   Award compensatory damages to Plaintiff KSC and each member of the Classes the full restitution value of all benefits and enrichment Defendant Google has obtained and continued to obtain through its actions and practices;

8.   Award to Plaintiff and members of California Subclass I exemplary damages for unfair competition practices and actions and for unfair practices and actions;

9.   Award to Plaintiff and members of the Nationwide Class compensatory and exemplary damages for defamatory and libelous statements by Defendant Google;

10.  Award restitution, disgorgement, injunctive relief and all other relief allowed under Cal. Bus. Prof. Code §§ 17200 *et seq.* and for negligent conduct and/or omissions to Plaintiff KSC and members of California Subclass I;

11.  Assess prejudgment interest on the damages so awarded and computed above;

12.  Award to Plaintiffs their attorneys' fees, costs of suit as provided under applicable law; and

13.  Grant such further relief as the parties may fashion and agree to or as the Court may deem just and proper.

Dated: April 12, 2006                              GLOBAL LAW GROUP

1

2                                    By:    ____/s/ Gregory J. Yu_____
                                            Gregory J. Yu, Esq.
3
                                     Attorney for Plaintiff KinderStart.com LLC and
4                                           for the proposed Class and Subclasses

5   \\

6   \\

7   \\

8   \\

9   \\

10  \\

11

12              **DEMAND FOR JURY TRIAL and RESERVATION OF RIGHTS**

13          Plaintiffs hereby demand a trial by jury on all issues so triable.

            Plaintiffs' investigation of various matters concerning Defendant is ongoing.  Pursuant to
14
    such investigation and as allowed by the Court, Plaintiffs expressly reserve the right to amend or
15
    supplement the claims herein in accordance with Fed.R.Civ.P. 15.
16
    Dated:  April 12, 2006                  GLOBAL LAW GROUP
17

18
                                     By:    _____/s/ Gregory J. Yu_____
19                                          Gregory J. Yu, Esq.

20                                   Attorney for Plaintiff KinderStart.com LLC and
                                            for the proposed Class and Subclasses
21

22

23

24

25

26

27

28