1  DAVID H. KRAMER, State Bar No. 168452
   LISA A. DAVIS, State Bar No. 179854
2  BART E. VOLKMER, State Bar No. 223732
   WILSON SONSINI GOODRICH & ROSATI
3  Professional Corporation
   650 Page Mill Road
4  Palo Alto, CA 94304-1050
   Telephone:  (650) 493-9300
5  Facsimile:  (650) 565-5100
   DKramer@wsgr.com
6
   JONATHAN M. JACOBSON
7  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
8  12 East 49th Street, 30th Floor
   New York, NY  10017-8203
9  Telephone:  (212) 999-5800
   Facsimile:  (212) 999-5899
10 JJacobson@wsgr.com

11 Attorneys for Defendant
   Google Inc.
12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                    SAN JOSE DIVISION

16

17 KINDERSTART.COM, LLC, a California        )   CASE NO.:  C 06-2057 JF (RS)
   limited liability company, on behalf of itself and )
18 all others similarly situated,             )   **DEFENDANT GOOGLE INC.'S**
                                              )   **NOTICE OF MOTION AND**
19            Plaintiffs,                      )   **MOTION TO DISMISS THE FIRST**
                                              )   **AMENDED COMPLAINT;**
20        v.                                   )   **MEMORANDUM OF POINTS AND**
                                              )   **AUTHORITIES**
21 GOOGLE INC., a Delaware corporation,       )
                                              )   Before:  Hon. Jeremy Fogel
22            Defendant.                        )   Date:  June 30, 2006
                                              )   Time:  9:00 a.m.
23                                             )   Courtroom:  3
                                              )
24 _____ )

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ...................................................................................................1

MEMORANDUM OF POINTS & AUTHORITIES ....................................................1

I.    INTRODUCTION.................................................................................................1

II.   STATEMENT OF THE CASE ...........................................................................2

III.  ARGUMENT .......................................................................................................4

      A.    KinderStart States No Claim Under the First Amendment or the California
            Constitution ...........................................................................................5

            1.    Google Is Not a State Actor, and Therefore Has No Duty to
                  Safeguard KinderStart's Right to Speak ....................................5

            2.    Plaintiff Seeks Remedies That Would Violate Google's
                  Constitutional Right to Free Speech............................................8

      B.    KinderStart States No Claim for Defamation or Libel............................9

      C.    KinderStart States No Claim for Negligent Interference with Prospective
            Economic Advantage ...........................................................................11

      D.    KinderStart States No Claim Under the Sherman Act ..........................12

      E.    KinderStart States No Claim Under Cal. B&P Code Section 17045 ....................15

      F.    KinderStart States No Claim Under the Communications Act .............................16

      G.    KinderStart States No Claim Under Cal. B&P Code Section 17200 et. seq.........18

            1.    KinderStart Has No Standing to Assert Any 17200 Claim Because It
                  Can Identify No Redressable Injury...........................................19

            2.    KinderStart Fails to State a Claim Under Any Prong of California's
                  Unfair Competition Claim...........................................................20

                  a.    KinderStart Fails to State a 17200 Claim Based on
                        Fraudulent Business Acts or Deceptive Advertising....................20

                  b.    KinderStart Fails to State a 17200 Claim Based on Unfair
                        Business Acts .........................................................................22

                  c.    KinderStart Fails to State a 17200 Claim Based on Unlawful
                        Business Acts .........................................................................23

      H.    KinderStart States No Claim for Breach of the Implied Covenant .....................23

IV.   CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ABC Int'l Traders, Inc. v. Matsushita Elec. Corp. of Am.*, 14 Cal. 4th 1247 (1997) .................... 16

*ARP Pharmacy Svs., Inc. v. Gallagher Bassett Svs., Inc.*,
___Cal. App. ___, 2006 WL 1101613 (Apr. 27, 2006) ................................................. 9, 20

*Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536 (9th Cir. 1991)................................ 14

*Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106 (2003) ........................................................ 7

*America Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851 (E.D. Va. 1999) ........................... 18

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ................................. 12

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985)) ................................ 13

*Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 375 F. Supp. 2d 950 (N.D. Cal. 2005) ........................ 21

*Aviation Charter, Inc. v. Aviation Research Group/US*,
416 F.3d 864 (8th Cir. 2005)....................................................................................... 11

*Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006) ............................................. 21

*Baymiller v. Guarantee Mutual Life Co.*, No. SA CV99-1566,
2000 WL 33774562 (C.D. Cal. Aug. 3, 2000) ............................................................. 25

*Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033 (1986) ......................................... 8, 11, 12, 23

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999)...................................................................................... 3, 16

*Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal. App. 4th 1134 (2003) ................................... 22

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
2 Cal. 4th 342 (1992).................................................................................................. 24

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ................... 22

*Chip-Mender Inc. v. Sherwin-Williams Co.*, No. C 05-3465,
2006 WL 13058 (N.D. Cal. Jan. 3, 2006) ................................................................... 21

*Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113 (C.D. Cal. 1998),
*aff'd*, 210 F.3d 1036 (9th Cir. 2000) ............................................................................ 9

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006) ..................................... 19

*CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015 (S.D. Ohio 1997)................ 6, 18

*Cortez v. Purolator Air Filtration Prods. Co*, 23 Cal. 4th 163 (2000) ....................................... 19

*Covad Commc'ns Co. v. Bell Atlantic Corp.*, 398 F.3d 666 (D.C. Cir. 2005) .............................. 13

*Cyber Promotions, Inc. v. America Online, Inc.*, 948 F. Supp. 436 (E.D. Pa. 1996)..................... 6

*Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376 (1995)........................... 12

*Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.*,
    16 Cal. App. 4th 202 (1993)........................................................... 16

*Eddins v. Redstone*, 134 Cal. App. 4th 290 (2005) ........................................ 16

*FCC v. Midwest Video Corp.*, 440 U.S. 689 (1979) ........................................ 17

*Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988) ........................................ 24

*George v. Pacific-CSC Work Furlough*, 91 F.3d 1227 (9th Cir. 1996) ........................ 6

*Golden Gateway Center v. Golden Gateway Tenants Ass'n*,
    26 Cal. 4th 1013 (2001)............................................................... 7

*Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000) ................................ 5, 17

*Hudgens v. NLRB*, 424 U.S. 507 (1976) .................................................. 5

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995) ................................................................. 9

*In re Second Computer Inquiry*, 77 F.C.C.2d 384, 1980 WL 233301 (Apr. 7, 1980) ................. 17

*Island Online, Inc. v. Network Solutions, Inc.*,
    119 F. Supp. 2d 289 (E.D.N.Y. 2000)................................................ 6

*Jefferson County School Dist. v. Moody's Inv. Servs., Inc.*,
    175 F.3d 848 (10th Cir. 1999)...................................................... *passim*

*Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958 (1993) ................................ 11

*Jo Kim v. Regents of the Univ. of Cal.*, 80 Cal. App. 4th 160 (2000) ......................... 24

*Kasparian v. County of Los Angeles*, 38 Cal. App. 4th 242 (1995).......................... 12

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)....................... 19

*Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179 (1998) ...................................... 12

*Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005)....................... 21

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ........................................ 5

*Lundin/Weber Co. v. Brea Oil Co.*, 117 Cal. App. 4th 427 (2004).......................... 23, 25

*Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241 (1974) ................................... 9, 20

*Miller v. Continental Airlines, Inc.*, 260 F. Supp. 2d 931 (N.D. Cal. 2003) ................... 4

*Morningstar v. Superior Court*, 23 Cal. App. 4th 676 (1994) ....................................... 9

*Nat'l A-1 Adver., Inc. v. Network Solutions, Inc.*,
    121 F. Supp. 2d 156 (D.N.H. 2000) ..................................................................... 6

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 125 S. Ct. 2688 (2005) ................. 17

*Nike, Inc. v. Kasky*, 539 U.S. 654 (2003) ................................................................ 19, 210

*Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532 (E.D. Va. 2003) ...................................... 6

*Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446 (E.D.N.Y. 2004) ........................................ 18

*Official Airline Guides, Inc. v. FTC*, 630 F.2d 920 (2d Cir. 1980) ........................................ 14, 22

*Olympia Equip. Leasing Co. v. Western Union Tel. Co.*,
    797 F.2d 370 (7th Cir. 1986) ........................................................................... 13

*Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001) .............................................................. 5

*Pacific Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1 (1985) ........................ 7, 20

*Parker v. Google Inc.*, __F. Supp. 2d __, 78 U.S.P.Q.2d 1212 (E.D. Pa. 2006) ........................ 18

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ................................................................. 18

*Robins v. Pruneyard Shopping Center*, 23 Cal. 3d 899 (1979),
    *aff'd*, 447 U.S. 74 (1980) ............................................................................. 7

*Search King, Inc. v. Google Tech., Inc.*, No. CIV-02-1457,
    2003 WL 21464568 (W.D. Okla. May 27, 2003) ...................................... *passim*

*Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798 (2002) ........................................ 9

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) .............................................. 13

*Thomas v. Network Solutions, Inc.*, 176 F.3d 500 (D.C. Cir. 1999) .................................... 6

*TMJ Implants, Inc. v. Aetna, Inc.*, 405 F. Supp. 2d 1242 (D. Colo. 2005) ............................ 11

*Trader Joe's Co. v. Progressive Campaigns, Inc.*, 73 Cal. App. 4th 425 (1999) ..................... 7, 8

*Van Buskirk v. Cable News Network*, 284 F.3d 977 (9th Cir. 2002) ...................................... 24

*Verizon Commc'ns Inc. v. Law offices of Curtis V. Trinko LLP*,
    540 U.S. 398 (2004) ............................................................................ 12, 13, 14

*Vermont Agency of Natural Res. LLP v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000) ................. 19

*Violante v. Communities Southwest Dev. & Const. Co.*,
    41 Cal. Rptr. 3d, 673 (2006) .......................................................................... 23

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ............................................................. 19

1

**STATUTES**

2    47 U.S.C. § 153(h) ............................................................................................. 17

3    47 U.S.C. § 201 ................................................................................................... 16

4    47 U.S.C. §223(e)(6) ........................................................................................... 18

5    47 U.S.C. § 230 ................................................................................................... 18

6    Cal. Bus. & Prof. Code § 17200............................................................................ *passim*

7    Cal. Bus. & Prof. Code § 17045 ................................................................... 15, 16

8

**RULES**

9    47 C.F.R. § 64.702(a) .......................................................................................... 17

10    Fed. R. Civ. P. 12(b)(1) ................................................................................... 1, 20

11    Fed. R. Civ. P. 12(b)(6).......................................................................................... *passim*

12

**MISCELLANEOUS**

13
U.S. Const. amend. I............................................................................................ 5

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION**

2       PLEASE TAKE NOTICE that on June 30, 2006 at 9:00 a.m., or as soon thereafter as

3   counsel may be heard by the above-entitled Court, located at 280 South First Street, Courtroom

4   3, 5th Floor, San Jose, California, 95113, in the courtroom of the Honorable Jeremy Fogel,

5   defendant Google Inc. ("Google") will and hereby does move the Court, pursuant to Rule

6   12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure, for an order dismissing the

7   First Amended Complaint ("FAC" or "Amended Complaint") in its entirety.  This motion is

8   based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed

9   herewith, the Declaration of Bart E. Volkmer and the exhibits attached thereto, the pleadings and

10  papers on file herein, and upon such other matters as may be presented to the Court at the time of

11  the hearing.

12

**MEMORANDUM OF POINTS & AUTHORITIES**

13  **I.    INTRODUCTION**

14      The Amended Complaint, in almost 200 paragraphs, raises what amounts to a single

15  question:  Who should determine how an Internet search engine identifies those websites that are

16  most likely to be of relevance to its users?  Since its inception, Defendant Google, like every

17  other search engine operator, has made that determination for its users, exercising its judgment

18  and expressing its opinion about the relative significance of websites in a manner that has made

19  it the search engine of choice for millions.  Plaintiff KinderStart contends that the judiciary

20  should have the final say over that editorial process.  It has brought this litigation in the hopes

21  that the Court will second-guess Google's search rankings and order Google to view

22  KinderStart's site more favorably.  If KinderStart were right, and websites could use the courts to

23  dictate what the results of a search on the Google search engine should be, neither Google nor

24  any other search engine could operate as it would constantly face lawsuits from businesses

25  seeking more favorable positioning.  Fortunately, KinderStart's position finds no support in the

26  law.

27      KinderStart's approach has been tried before.  Over the years, authors who felt their

28  books belonged on bestseller lists, airlines who thought their flights should be featured more

prominently in airline flight listings, bond issuers dissatisfied with their ratings, and even website owners angry about Google's ranking of their sites, have turned to litigation seeking to override such judgments. Each time, the courts have rejected such claims, recognizing that private businesses have a right to express these opinions freely. KinderStart's many legal theories do not justify a different result. Because the First Amendment protects Google's right to share its opinions about the relative significance of websites, KinderStart's complaint must be dismissed.

## II.    STATEMENT OF THE CASE

### The Parties

Plaintiff KinderStart.com LLC ("KinderStart") is a limited liability company with headquarters in Norwalk, California. FAC ¶ 4. KinderStart owns and operates KinderStart.com, a website providing information about parenting and related topics. *Id.* ¶ 19.

Google is a publicly-traded corporation headquartered in Mountain View, California that owns and operates Google.com. *Id.* ¶¶ 5, 26. Google "maintain[s] the largest, most comprehensive index of web sites and other content, and . . . make[s] this information freely available to anyone with an Internet connection." Id. ¶ 22. The index contains billions of webpages. *Id.* ¶ 34. Google's competitors in the search industry include Microsoft and Yahoo. *Id.* ¶ 58.

### Google's Search Engine

Anyone with access to the Internet can search Google's index for free by inputting a keyword or search query into a field provided by Google. *Id.* ¶ 2. Google's "search engine" then locates websites or other data on the Internet that it believes relates to the query, and presents a list of such sites and information as "search results." *Id.*[1] These results are generated by a number of complex algorithms. FAC ¶ 27. In these results, Google expresses its view of the most relevant and useful web pages for a particular query and displays them in the order it

---

[1] The Ninth Circuit generally has described a search engine as follows: "When a keyword is entered, the search engine processes it through a self-created index of web sites to generate a (sometimes long) list relating to the entered keyword. Each search engine uses its own algorithm to arrange indexed materials in sequence, so the list of web sites that any particular set of keywords will bring up may differ depending on the search engine used." *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999).

1    believes will be of most relevance to a user.  *Id.* ¶ 28.  To this end, Google does not engage in

2    any paid placement of search results.  *Id.* ¶¶ 27-28.  That is, a website will appear at the same

3    spot in Google's search results regardless of whether the company or individual owning the

4    website has any business or financial relationship with Google.  Further, if a website does not

5    conform to Google's standards of quality, Google may choose not to include that site in its index.

6    *Id.* ¶ 44.  Google explicitly discloses this practice:  "We won't comment on the individual

7    reasons a page was removed, and we don't offer an exhaustive list of practices that can cause

8    removal."  *Id.*

9            **PageRank**

10           A component of Google's search engine is a process called PageRank.  *Id.* ¶ 32.

11   PageRank is a sophisticated algorithm that provides "a numerical representation of the relative

12   significance of a particular web site."  *Search King Inc. v. Google Tech., Inc.*, No. CIV-02-1457,

13   2003 WL 21464568, at *1 (W.D. Okla. May 27, 2003).  One factor that affects the PageRank of

14   a website is the number of other websites that have linked to it.  FAC ¶ 33.  The PageRank that

15   Google assigns to a particular website is visible through use of the "Google toolbar" – a separate

16   software program that users may download and install.  *See id.* ¶¶ 32, 87.  "Google does not sell

17   PageRanks, and the web sites that are ranked have no power to determine where they are ranked,

18   or indeed whether they are included on Google's search engine at all."  *Search King*, 2003 WL

19   21464568, at *1.

20           **AdSense**

21           Under Google's AdSense program, third party websites enter into a contractual

22   agreement with Google (the "AdSense Agreement") under which Google agrees to deliver

23   advertisements to those websites.  FAC ¶ 30.  If a user visiting the site of an AdSense participant

24   clicks on one of the ads Google delivers, the advertiser pays Google for the click.  *Id.*  Google

25   then splits this revenue with the AdSense participant.  *Id.*  In August of 2003, KinderStart

26   entered into the AdSense Agreement with Google under which Google agreed to provide

27   advertisements for display on KinderStart's website.  *Id.* ¶¶ 21, 162.

28

1    **Procedural Status**

2        KinderStart filed its original complaint on March 17, 2006, but never served it.  After

3    nearly a month, KinderStart filed and served the FAC on April 12, 2006.  While the original

4    complaint contained seven claims for relief and spanned 116 paragraphs, the FAC has ballooned

5    to nine claims set forth in 175 paragraphs.

6        The FAC is brought as a putative class action on behalf of owners of websites who are

7    unhappy about the manner in which Google treats their sites in its search results, or are unhappy

8    about the PageRank Google assigns to their sites.  *Id.* ¶¶ 88-91.  KinderStart alleges that its poor

9    PageRank or placement in Google's search results led to a decrease in user traffic, which in turn

10   led it to lose revenue from the AdSense program, and that Google should be held legally liable

11   for this chain of events.  *Id.* ¶¶ 74-77.

12       KinderStart seeks relief based on a host of wildly divergent legal theories under state and

13   federal law, claiming that by choosing not to include the KinderStart.com website in its search

14   results and by assigning it a particular PageRank, Google: (1) violated KinderStart's right to free

15   speech under the United States and California Constitutions; (2) violated the monopolization

16   provisions of Section 2 of the Sherman Act; (3) violated the Communications Act; (4) violated

17   California's Unfair Competition Law and Unfair Practices Law; (5) breached the implied

18   covenant of good faith and fair dealing; (6) committed defamation and libel; and (7) negligently

19   interfered with a prospective economic advantage.  *Id.* ¶ 96.  At their core, all of these claims

20   challenge Google's First Amendment right to do exactly what Google does best: comparatively

21   rank websites on the Internet and provide that information to the public.

22   **III.    ARGUMENT**

23       Under Fed. R. Civ. P. 12(b)(6), a complaint will be dismissed where, assuming the

24   specific facts alleged to be true, and giving the plaintiff the benefit of all reasonable inferences,

25   the complaint does not state a claim on which relief can be granted.  Pleading standards are

26   liberal, but "they are not so liberal as to allow purely conclusory statements to suffice to state a

27   claim that can survive a motion to dismiss under [Rule] 12(b)(6)."  *Miller v. Continental*

28   *Airlines, Inc.*, 260 F. Supp. 2d 931, 935 (N.D. Cal. 2003).  "[C]onclusory allegations of law and

1    unwarranted inferences are insufficient to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d

2    817, 821 (9th Cir. 2001).

3        **A.    KinderStart States No Claim Under the First Amendment or the California
            Constitution**

4

5        It is, to say the least, ironic that KinderStart invokes the First Amendment as the basis for

6    its primary claim for relief in this action.  By asking this Court to dictate what Google must say

7    about KinderStart's site, it is KinderStart, not Google, who contravenes the free speech

8    guarantees of the United States and California Constitutions.

9        Google is a private party, not a state actor.  It thus can face no liability for alleged

10   violations of KinderStart's right to speak.  In contrast, Google has an absolute right to express its

11   views on the relative importance of websites through the operation of its search engine, and that

12   right cannot be usurped as KinderStart requests.  For both reasons, KinderStart's free speech

13   claims fail as a matter of law.

14        **1.    Google Is Not a State Actor, and Therefore Has No Duty to Safeguard
            KinderStart's Right to Speak**

15

16        The First Amendment provides that "*Congress* shall make no law . . . abridging freedom

17   of speech."  U.S. Const. amend. I (emphasis added).  Applied to the states through the Fourteenth

18   Amendment, "the constitutional guarantee of free speech is a guarantee only against abridgement

19   by government."  *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976).  Put differently, the First

20   Amendment governs state actors, not private parties.  *Lugar v. Edmondson Oil Co.,* 457 U.S.

21   922, 937 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the

22   deprivation of a federal right be fairly attributable to the State.")

23        The determination of whether a party is a state actor and obligated to safeguard the First

24   Amendment rights of others, is a pure question of law for the Court and is routinely decided on

25   motions to dismiss.  *See, e.g., Howard v. America Online Inc.*, 208 F.3d 741, 754 (9th Cir. 2000)

26   (affirming dismissal of First Amendment claim against Internet service provider on ground that it

27   was not a state actor despite plaintiff's contention that it is a "quasi-public utility" that

28   "involv[es] a public trust" and is responsible for Internet access and communications for millions

of users); *Cyber Promotions, Inc. v. America Online, Inc.*, 948 F. Supp. 436, 441 (E.D. Pa. 1996) (dismissing First Amendment claim against AOL as a matter of law on ground that it is not a state actor); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd*, 2004 WL 602711 (4th Cir. 2004) (same); *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1025-26 (S.D. Ohio 1997) (dismissing First Amendment claim against Internet service provider as a matter of law due to absence of state action).  In this case, the question is easily resolved.  KinderStart's allegations make clear that Google is a for-profit, private corporation, owned by its shareholders.  *See* FAC ¶¶ 5 (Google is a Delaware corporation); 22, 28-29 (Google filed 10-Ks with the SEC), 57 (discussing Google's annual revenues).  It is not a state actor.

Not surprisingly, KinderStart pleads no facts to suggest Google satisfies the state action requirement.  The closest it comes is the conclusory assertion that Google performs a "state function" by creating and managing a "universal, public, Internet-accessible index, archive and repository of the world's Internet content . . . for use by the general public."  FAC ¶ 105.  But this falls far short of the required pleading, because nowhere does KinderStart aver Google has any relationship whatsoever with the government.  *See George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1231 (9th Cir. 1996) (affirming dismissal of complaint based on the First Amendment which failed to "plead a nexus between the government and the complained-of action").[2]  Plaintiff does not allege that Google is funded by the government or that the government directs, regulates, or plays any role whatsoever in Google's operations.  It certainly does not contend that the operation of search engines has ever been a state prerogative.  Without

---

[2] Google does not mean to suggest that the mere presence of some relationship with the government transforms a private party into a state actor.  To the contrary, courts have repeatedly held that private businesses, even those with substantial, government-sponsored control over Internet communications, are not state actors unless they effectively serve as agents for the government.  *See, e.g., Thomas v. Network Solutions, Inc.,* 176 F.3d 500 (D.C. Cir. 1999) (corporation with government-authorized monopoly over Internet domain name system and responsible for all Internet-related activity, not a state actor; management of Internet domain name system not a "quintessential" government service); *Island Online, Inc. v. Network Solutions, Inc.,* 119 F. Supp. 2d 289 (E.D.N.Y. 2000) (same); *Nat'l A-1 Adver., Inc. v. Network Solutions, Inc.,* 121 F. Supp. 2d 156 (D.N.H. 2000) (same).  In this case, however, the Court need not evaluate the extent to which Google's activities are intertwined with the government's, as KinderStart has not alleged (and could not, in good faith allege) any governmental involvement at all.

1   more than its properly disregarded legal conclusion that Google performs a "state function,"

2   KinderStart cannot sustain its First Amendment claim.[3]

3           KinderStart's claim for alleged violation of its free speech rights under California's

4   Constitution fares no better.  While California's guarantee of free speech has, in the past, been

5   construed to provide slightly more protection than its federal counterpart, the California Supreme

6   Court has confirmed that the provision remains limited to actions by the state.  *Golden Gateway*

7   *Center v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013, 1022-31 (2001) (holding that the

8   free speech clause of the California Constitution only protects against state action).  The one

9   exception to the state action requirement in California is that the actions of a private owner of a

10  publicly-accessible shopping center may constitute state action for purpose of California's free

11  speech clause.  *See Robins v. Pruneyard Shopping Center*, 23 Cal. 3d 899, 910 (1979), *aff'd*, 447

12  U.S. 74 (1980).  Google's search engine plainly does not fall within this very limited exception

13  which is applicable only where private property serves as the functional equivalent of a town

14  square.  *See, e.g., Golden Gateway*, 26 Cal. 4th at 1033 ("private property must be public in

15  character before California's free speech clause may apply"); *Albertson's, Inc. v. Young*, 107

16  Cal. App. 4th 106 (2003) (rejecting claim that major supermarket should be treated as state actor;

17  California's exception to state action requirement does not apply merely because property is

18  open to the public; rather, property must function as equivalent to town square); *Trader Joe's*

19  *Co. v. Progressive Campaigns, Inc.*, 73 Cal. App. 4th 425, 432-437 (1999) (grocery store is not

20  open for public speech and therefore the free speech clause of the California constitution does

21  not apply to its conduct).

22          Google's search engine bears no resemblance to a town square.  Indeed, Google's search

23  engine does not provide real (or personal) property that is open and free for public speech.

24  _____

25      [3] In reality, KinderStart's speech has in no way has been suppressed, or even affected, by
26  Google.  KinderStart speaks through its website, KinderStart.com.  Regardless of whether or
    where KinderStart appears in Google's search results, KinderStart is free to engage in the exact
27  same speech in the exact same way.  KinderStart's right to speak simply does not entitle it to free
    promotion of its message via Google.  *See, e.g., Pacific Gas & Elec. Co. v. Pub. Utilities*
28  *Comm'n of Cal.*, 475 U.S. 1, 20-21 (1985) (striking down an order requiring utility company to
    allow a political group to use its envelopes to distribute its speech).

1   While the public may use Google's service – its search engine – and review search results for

2   free, it is Google alone, not the public, who is speaking through those results. KinderStart

3   nowhere alleges that Google has ever opened its search engine or search results for public

4   discourse. In short, Google's index and its search results are a private forum for Google's

5   speech. *See Trader Joe's*, 73 Cal. App. 4th at 434 (grocery store not subject to California free

6   speech clause because it "opens its property to the public so the public can buy goods. It does

7   not offer its property for any other use"). Accordingly, California's free speech obligations

8   could not possibly apply to Google's search engine. KinderStart's claim under California's

9   Constitution cannot stand.

10              **2.    Plaintiff Seeks Remedies That Would Violate Google's Constitutional
                        Right to Free Speech**

11

12          KinderStart's claims actually turn the First Amendment and the free speech clause of

13   California's Constitution on their heads. The speech that is threatened in this case is *Google's*.

14   As KinderStart itself has acknowledged, Google's search results and its PageRank reflect

15   Google's view of the relative significance of websites. FAC ¶ 56 (PageRank is a "relative

16   measure of the appeal, popularity and relevance of a Website on the Internet."). Put differently,

17   Google's search results are themselves constitutionally protected speech in the form of opinions.

18   *Search King*, 2003 WL 21464568, at *4. As the *Search King* court held when faced with

19   precisely this issue, "PageRanks are opinions – opinions of the significance of particular web

20   sites as they correspond to a search query . . . . [They] are entitled to 'full constitutional

21   protection. . . .'" *Id.* (explaining that "[o]ther search engines express different opinions, as each

22   search engine's method of determining relative significance is unique."). In expressing its view

23   on the significance of a particular website, Google is engaged in precisely the same type of

24   speech that courts have repeatedly held to be protected. *See Blatty v. N.Y. Times Co.*, 42 Cal. 3d

25   1033 (1986) (defendant's decision not to include author's book in well-known "Best Sellers" list

26   held absolutely protected); *Jefferson County School Dist. v. Moody's Inv. Servs., Inc.*, 175 F.3d

27   848 (10th Cir. 1999) (defendant's decision regarding plaintiff's bond rating held absolutely

28   protected).

1    The very free speech guarantees that KinderStart purports to invoke serve as a bar to the

2    relief it seeks.  Forcing Google to assign a certain PageRank to a website or to alter its search

3    results in a prescribed manner would amount to compelled speech in violation of the First

4    Amendment and California's Constitution.  *See Hurley v. Irish-American Gay, Lesbian &*

5    *Bisexual Group of Boston*, 515 U.S. 557 (1995) (requiring defendants to alter the expressive

6    content of their parade violated the First Amendment); *Miami Herald Pub. Co. v. Tornillo*, 418

7    U.S. 241, 258 (1974) (striking down a law that required newspapers to conspicuously publish

8    replies to attacks on an election candidate's character); *ARP Pharmacy Svs., Inc.  v. Gallagher*

9    *Bassett Svs. Inc.*, ___ Cal. App. ___, 2006 WL 1101613, at *8 (Apr 27, 2006) (affirming grant of

10   anti-SLAPP motion and ruling that a statute requiring prescription drug claims processors to

11   submit drug processing costs to their clients was unconstitutional because it improperly

12   compelled speech).  For this reason as well, KinderStart's free speech claims cannot proceed.

**B.    KinderStart States No Claim for Defamation or Libel**

14   KinderStart accuses Google of defamation and libel because Google has "determined and

15   presented for public viewing a PageRank of '0' when the Website KS.com of Plaintiff KSC is

16   visited and viewed by the public and cyberspace community."  FAC ¶ 165.  Google faced an

17   identical charge in the *Search King* case.  There, the district court rightly dismissed the case

18   because Google's PageRank is an opinion not capable of being proved to be true or false and

19   because Google's display of its PageRank is absolutely protected speech under the First

20   Amendment.  *See Search King*, 2003 WL 21464568, at *4.  The result should be no different

21   here.

22   To state a defamation or libel claim under California law, a plaintiff must be able to

23   demonstrate that defendant published a provably false statement of fact.  *See Morningstar v.*

24   *Superior Court*, 23 Cal. App. 4th 676, 686 (1994) ("[t]he dispositive question . . . is whether a

25   reasonable fact finder could conclude the published statements imply a provably false

26   assertion.").  This inquiry is a question of law for the Court.  *Id.* at 686-87; *Seelig v. Infinity*

27   *Broad. Corp.*, 97 Cal. App. 4th 798, 810 (2002); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d

28   1113, 1120 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000) (dismissing defamation claim

1   with prejudice under Rule 12(b)(6) where statements at issue were not susceptible of being

2   proved true of false).  Here, KinderStart cannot demonstrate that Google published a provably

3   false statement of fact.

4        In *Search King*, plaintiff attacked Google's alleged reduction in PageRank for several of

5   its websites, including a rank of "4" for one website and a rank of "0" for another.  *Search King*,

6   2003 WL 21464568, at *1.  Plaintiff alleged that Google reduced these ranks "purposefully and

7   maliciously" because plaintiff was competing with Google.  *Id*. at *2.  The court recognized that

8   the PageRank Google assigns to any particular website is "the numerical representation of the

9   relative significance of a particular website [and] is fundamentally subjective in nature."  *Id*. at

10  *3.  The court found unimportant any statements made by Google regarding the objective nature

11  of the PageRank algorithm: "Just as the alchemist cannot transmute lead into gold, Google['s] . .

12  . statements as to the purported objectivity of the PageRank system cannot transform a subjective

13  representation into an objectively verifiable fact."  *Id*. at *4.  The court concluded: "there is no

14  conceivable way that to prove that the relative significance assigned to a given web site is false."

15  *Id.*

16       This ruling comports with common sense: while many of the variables that comprise the

17  ultimate PageRank are based on mathematical algorithms, those algorithms are written by

18  humans who subjectively determine which aspects of a website should be deemed relevant to an

19  assessment of a site's significance, and then subjectively determine how much weight to give

20  each factor.  *Search King*, 2003 WL 21464568, at *3-4.  The end result – the PageRank –

21  expresses Google's opinion regarding the relative importance of websites on the Internet.  *See*

22  FAC ¶ 56 (PageRank represents "a relative measure of the appeal, popularity and relevance of a

23  Website on the Internet.").  Internet users, as well as other companies operating search engines,

24  hold divergent opinions regarding qualities that make a website "important," but there is no

25  possible way to objectively measure importance, which is inherently in the eye of the beholder.

26  *Search King*, 2003 WL 21464568, at *4 ("Other search engines express different opinions, as

27  each search engine's method of determining relative significance is unique.")  Google simply

28  offers its own point of view on the issue.  This expression cannot be proved false.   KinderStart

cannot, therefore, state a claim for libel or defamation. *See Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 871 (8th Cir. 2005) (air safety rating for a carrier could not be proved true or false where it was "a subjective interpretation of multiple objective data points leading to a subjective conclusion about aviation safety"); *Jefferson County*, 175 F.3d at 855 (bond rating of "negative outlook" was not provably false: "[l]ike the statement of a product's value, a statement regarding the creditworthiness of a bond issuer could well depend on a myriad of factors, many of them not provably true or false"); *TMJ Implants, Inc. v. Aetna, Inc.*, 405 F. Supp. 2d 1242, 1252 (D. Colo. 2005) (resulting opinion from a multi-factor evaluation of a medical device was protected because it was based "at least in part, on factors not provably true or false"); *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 971 (1993) (statements made in performance review were not actionable as libel because they "were statements of opinion, not false statements of fact").

KinderStart's defamation claim also fails for the related reason that Google's expression manifested in PageRank is itself protected by the First Amendment. In *Search King*, the court applied Oklahoma law and found that PageRank was protected speech and therefore could not give rise to tort liability. *Search King*, 2003 WL 21464568, at *4. Google's speech associated with PageRank is absolutely protected under the First Amendment and cannot support a defamation or libel cause of action.[4]

**C.    KinderStart States No Claim for Negligent Interference with Prospective Economic Advantage**

KinderStart's Ninth Claim for Relief is labeled "Negligent Interference with Prospective Economic Advantage." The allegations underlying this claim, however, accuse Google of "wrongful interference with the contractual relationship" between Google and KinderStart regarding the AdSense program. FAC ¶¶ 174-75. If that is indeed KinderStart's claim, it must fail because parties to a contract cannot sue one another for interference with their own contract.

---

[4]  To the extent that KinderStart claims that Google's failure to include KinderStart's website in the Google web index (as opposed to the assignment of a particular PageRank) is implicitly defamatory, *Blatty* bars such a claim as a matter of law. *Blatty*, 42 Cal. 3d at 1045-48.

1   *See Kasparian v. County of Los Angeles*, 38 Cal. App. 4th 242, 262 (1995) (interference with

2   contract claim "can only be asserted against a stranger to the relationship"); *Applied Equip.*

3   *Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994) ("the tort cause of action for

4   interference with a contract does not lie against a party to the contract").

5       Even if KinderStart were alleging that Google interfered with an as yet-unidentified

6   advantage unmoored from the AdSense Agreement, its claim still cannot survive.  KinderStart

7   has not pled and cannot show that Google's alleged interference was "independently wrongful"

8   apart from the interference itself, as required by *Della Penna v. Toyota Motor Sales, USA, Inc.*,

9   11 Cal. 4th 376, 393 (1995).  *See Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1189 (1998)

10  (invoking the "independently wrongful" requirement in the context of a negligent interference

11  claim).  To the contrary, the allegedly interfering conduct at issue – choosing not to include the

12  KinderStart website in Google's index – could not be independently wrongful as a matter of law

13  because Google's right to speak in the form of its index is absolutely protected.  *See Blatty*, 42

14  Cal. 3d at 1045-48 (First Amendment bars tortious interference claim); *Search King*, 2003 WL

15  21464568, at *4 (same).

16       **D.     KinderStart States No Claim Under the Sherman Act**

17      Counts 2 and 3 of the Amended Complaint allege claims for attempted monopolization

18  and monopolization (respectively), of markets defined as the "Search Engine Market," the

19  "Search Ad Market," and the "Website Rating Market" in violation of Sherman Act § 2.

20  Although the means and mechanisms by which Google is being accused of monopolizing these

21  markets are entirely unclear (itself a sufficient reason for dismissal), the essence of the claims

22  appears to be that Google's exercises of its free speech rights – the so-called "PageRank

23  devaluation and Website Blockage" – have harmed KinderStart as a competitor in the alleged

24  Search Engine and Search Ad markets.  FAC ¶¶ 118, 128-33.

25      Even assuming that KinderStart has alleged sufficient facts to establish the relevant

26  markets it asserts, as well as Google's "monopoly power" within those markets, its claims under

27  Section 2 of the Sherman Act still fail.  A plaintiff suing under Section 2 must also prove that the

28  defendant has engaged in predatory or exclusionary conduct.  *See Verizon Commc'ns Inc. v. Law*

1   *Offices of Curtis V. Trinko LLP*, 540 U.S. 398, 407 (2004) ("To safeguard the incentive to

2   innovate, the possession of monopoly power will not be found unlawful unless it is accompanied

3   by an element of anticompetitive conduct."); *accord, e.g., Spectrum Sports, Inc. v. McQuillan*,

4   506 U.S. 447, 457-60 (1993).  In this case, however, the complaint's allegations on that score are

5   insufficient as a matter of law.  Removing KinderStart from Google search results and/or

6   lowering its PageRank are not predatory because the antitrust laws do not obligate business

7   firms, even monopolists, to come to the aid of their rivals.  *See Trinko*, 540 U.S. at 407-10

8   ("insufficient assistance in the provision of service to rivals is not a recognized antitrust claim");

9   *see Covad Commc'ns Co. v. Bell Atlantic Corp.*, 398 F.3d 666, 673 (D.C. Cir. 2005) (same).

10          KinderStart describes itself as a competitor of Google's in the Search Engine market and

11  the Search Ad Market.  Accepting those allegations as true, it is inconceivable that laws designed

12  to *promote* competition among rivals would require one search engine to promote another

13  through a prominent display in its search results, or by giving the rival a high favorable

14  PageRank.  *Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 797 F.2d 370, 373-80 (7th

15  Cir. 1986).  If KinderStart's complaint had merit, then Yahoo, Microsoft, Ask.com, and every

16  other search engine would have the same complaint and be entitled to the same remedy.  The

17  courts would be embroiled in determining whether Google should list Yahoo first, or Ask, or

18  KinderStart, depending on the query.  As the Supreme Court explained in *Trinko*, 540 U.S. at

19  408, enforced assistance of rivals is to be avoided because it "requires antitrust courts to act as

20  central planners, identifying the proper price, quantity, and other terms of dealing – a role for

21  which they are ill-suited.  Moreover, compelling negotiation between competitors may facilitate

22  the supreme evil of antitrust:  collusion."

23          Although a monopolist is under no general duty to assist its competitors, the courts have

24  recognized a few very limited circumstances in which "a refusal to cooperate with rivals can

25  constitute anticompetitive conduct and violate § 2."  *Trinko*, 540 U.S. at 408 (citing *Aspen Skiing

26  Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601 (1985)).  But no court has ever

27  suggested that Section 2 liability could stem from a failure to rank a rival in the manner in which

28  the rival would prefer.  On the contrary, the courts presented with that kind of fact pattern have

1    invariably held that there is no Section 2 violation. *Jefferson County*, 175 F.3d at 859-60; *Alaska*

2    *Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 541-43 (9th Cir. 1991).

3        KinderStart seeks to invoke the so-called "essential facilities doctrine," under which

4    some courts have held that liability may be imposed "when one firm, which controls an essential

5    facility, denies a second firm reasonable access to a product or service that the second firm must

6    have in order to compete with the first." *Alaska Airlines*, 948 F.2d at 542. There is significant

7    doubt whether the essential facilities doctrine survived the Supreme Court's 2004 decision in

8    *Trinko*. *See* 540 U.S. at 410-11 ("We have never recognized such a doctrine."). But even if it

9    did, it would be of no use to KinderStart. Under the Ninth Circuit's decision in *Alaska Airlines*,

10   Google's search engine is not an essential facility as a matter of law because "[a] facility . . . will

11   be considered 'essential' only if control of the facility carries with it the power to *eliminate*

12   competition in the downstream market." 948 F.2d at 544 (emphasis in original). Plaintiff does

13   not (and indeed cannot) allege that Google's search results or PageRanks empower it to eliminate

14   competition from other search engines or websites. By KinderStart's own admission, it still gets

15   "hits" generated from other referring sites. FAC ¶ 80. The very existence of Yahoo, MSN, Ask,

16   and other search engines precludes any argument that Google is an "essential facility."

17       Moreover, even if the complaint is liberally construed as one of a customer, rather than a

18   competitor, KinderStart still has no claim. The Second Circuit's decision in *Official Airline*

19   *Guides, Inc. v. FTC*, 630 F.2d 920, 923-24 (2d Cir. 1980), involving the OAG's systematic

20   discrimination against commuter airlines in its listings, is squarely on point. The case involved

21   OAG's refusal to list commuter lines in the same portions of its monopoly airline flight guide

22   where the major airline listings were found. The Second Circuit acknowledged that this was a

23   practice that put the commuter carriers at a significant competitive disadvantage. It nevertheless

24   concluded that the OAG had no antitrust-based duty to its customers, and therefore no duty to list

25   the commuter carriers in the more prominent space that they desired, and dismissed the case

26   accordingly. The same result is warranted here.

27       Finally, even if KinderStart's antitrust allegations otherwise stated a claim, dismissal

28   would still be required under the Tenth Circuit's analysis in *Jefferson County School*, 175 F.3d

1   859-60.  In that case, the plaintiff school district declined to select Moody's to rate its new bond

2   offering; Moody's responded by rating the bonds anyway and providing a "negative outlook,"

3   which the school district alleged to be false.  Just like KinderStart here, the school district alleged

4   that this was attempted and actual monopolization.  But because the complaint was attacking

5   protected speech, the court held that the claims were properly dismissed under Rule 12(b)(6).  *Id.*

6   ("the First Amendment does not allow antitrust claims to be predicated solely on protected

7   speech.").  KinderStart's antitrust claims fail for the same reason.

8        **E.    KinderStart States No Claim Under Cal. B&P Code Section 17045**

9        KinderStart alleges on information and belief that Google engaged in "price

10  discrimination" by secretly offering special benefits, services and privileges to certain websites –

11  which Plaintiff does not identify – and not to others, such as KinderStart.com.  FAC ¶ 156.  The

12  only benefit, service or privilege that KinderStart identifies is the "higher placement" of these

13  unidentified Websites over those of KinderStart and the "California Subclass" on Google's

14  search results pages.  *Id.*  KinderStart further alleges, in conclusory fashion, that this conduct by

15  Google tended and tends to destroy competition in violation of California Business &

16  Professions Code § 17045.  FAC ¶ 158.

17       Even a cursory review of the statute upon which KinderStart purports to rest its claim

18  reveals the claim as specious.  Under Section 17045:

19       The *secret* payment or allowance of rebates, refunds, commissions, or unearned
         discounts, whether in the form of money or otherwise, or *secretly* extending to
20       certain purchasers special services or privileges not extended to all *purchasers
         purchasing upon like terms and conditions*, to the injury of a competitor and where
21       such payment or allowance tends to destroy competition, is unlawful.

22  Cal. Bus. & Prof. Code § 17045 (emphasis added).  In this case, KinderStart nowhere alleges that

23  it was *purchasing* anything from Google, let alone that it was purchasing placement in Google's

24  search results.[5]  Similarly, KinderStart nowhere alleges that it made any purchases from Google

25  on like terms and conditions *vis-a-vis* its competitors.  Plaintiff's claim under section 17045 must

26

27       [5]  KinderStart could not make such an allegation.  Google does not sell PageRank or
28  placement in its search results.  *See Search King*, 2003 WL 21464568, at *1 ("Google does not
    sell PageRanks."); *see also* FAC ¶ 28.

1    be dismissed for this reason alone.  *See Diesel Elec. Sales & Serv., Inc. v. Marco Marine San*

2    *Diego, Inc.*, 16 Cal. App. 4th 202, 216 n.5 (1993); *Eddins v. Redstone*, 134 Cal. App. 4th 290,

3    332-35 (2005) (summarizing case law regarding statutory requirement of "purchasing upon like

4    terms and conditions").

5           Separately, KinderStart's own allegations regarding the public display of Google's search

6    results make it impossible for it to plead or prove that Google engaged in the *secret* delivery of

7    placements to some website owners and not to others.  *See* FAC ¶ 2 (plaintiff avers that Google's

8    search results are publicly accessible).  The placement of KinderStart.com relative to competing

9    websites in Google's search results is anything but secret.  If KinderStart wishes to find out how

10   Google is ranking its supposed competitors in relation to KinderStart.com, it can simply query

11   Google's search engine and examine the results.[6]  Accordingly, KinderStart's Section 17045

12   claim fails for the additional reason that it has not and cannot allege the secrecy of the "higher

13   placement" that Google has supposedly extended to KinderStart's competitors.

14           **F.     KinderStart States No Claim Under the Communications Act**

15          KinderStart's claim against Google under the Communications Act is frivolous.  The

16   provision of the Communications Act upon which KinderStart bases its claim prohibits

17   "common carriers" from discriminating in the services they provide.  *See* 47 U.S.C. § 201.  But

18   KinderStart does not and could not possibly allege facts to suggest that Google is a common

19   carrier subject to this regulatory regime.[7]

20

21

_____

22       [6]  This situation stands in stark contrast to the problem to which Section 17045 is addressed:
23   a manufacturer from whom a large retailer has extracted special concessions that the
     manufacturer might well prefer to keep secret from other retailers.  *See ABC Int'l Traders, Inc. v.*
24   *Matsushita Elec. Corp. of Am.*, 14 Cal. 4th 1247, 1267 (1997).  In that context, the retailer
     discriminated against has no way to identify the secret privileges the manufacturer is providing
25   to his competitor.  There is nothing remotely similar at issue here.

26       [7]  KinderStart's claim is truly nonsensical.  A search engine, by its very nature, serves to
     prioritize one site over another based on its view of what information is most likely to be of
27   interest to users.  *See generally, Brookfield Communications*, 174 F.3d at 1045 (discussing
     operation of search engines).  If KinderStart is correct that a search engine is a common carrier,
28   the search engine's discrimination among sites, and hence its entire operation, would be
     unlawful.

1    A common carrier is a service that "makes a public offering to provide *communications*

2   *facilities* whereby all members of the public who choose to employ such facilities may

3   *communicate or transmit intelligence of their own design and choosing.*" *FCC v. Midwest Video*

4   *Corp.*, 440 U.S. 689, 701 (1979) (interpreting definition of "common carrier" in 47 U.S.C §

5   153(h)) (emphasis added); *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 125 S. Ct.

6   2688, 2697 (2005) (affirming FCC's determination that broadband Internet service providers are

7   not common carriers under the Communications Act); *Howard*, 208 F.3d 741 (affirming

8   dismissal of alleged discriminatory practices claim against Internet service provider under

9   Communications Act as a matter of law on grounds that ISP was not a common carrier).  Google

10  does no such thing.  It simply operates a website offering an Internet search engine. FAC ¶ 2.

11  Google does not, and is not alleged to, provide communications facilities.  Indeed, it does not,

12  and is not alleged to, "carry" anything.  Google's search engine certainly does not, and is not

13  alleged to, enable users to communicate material of their choosing to others.  To the contrary,

14  according to KinderStart, Google alone selects the information displayed to users of its search

15  engine.  *Id.*[8]

16      KinderStart seems to believe that Google qualifies as a common carrier merely because

17  its website is open to the public and provides hyperlinks allowing users to connect to other sites.

18  But virtually every website is open to the public, and virtually every site provides hyperlinks

19  pointing users to other sites.  There is no absolutely no authority for the proposition that these

20

21  _____

22      [8]  KinderStart's own allegations regarding Google's operations make clear that Google
    provides "enhanced" rather than basic services to its users by collecting user queries and
23  returning search results from Google's index of websites.  FAC ¶ 2; *See In re Second Computer
    Inquiry*, 77 F.C.C.2d 384, 417-23, 1980 WL 233301 (Apr. 7, 1980) (final decision); 47 C.F.R. §
24  64.702(a) ("'*[E]nhanced service*' shall refer to services . . . which employ computer processing
    applications that act on the format, content, code, protocol or similar aspects of the subscriber's
25  transmitted information;  provide the subscriber additional, different, or restructured information;
    or involve subscriber interaction with stored information.").  The Federal Communications
26  Commission, charged with interpreting and enforcing the Communications Act has made clear
    that providers of "enhanced services are not regulated [as common carriers" under Title II of the
27  [Communications] Act."  *Id.  See also Howard*, 208 F.3d at 752-53 (ISP not a common carrier
    because it provides enhanced rather than basic services); *Brand X*, 125 S. Ct. at 2697 (cable
28  provider not a common carrier because it provides enhanced services).  KinderStart's common
    carrier charge, and thus its Communications Act claim, fail for this reason as well.

1    functionalities transform mere websites into regulated common carriers under the

2    Communications Act.[9]

3        In fact, a recent amendment to the Communications Act makes clear that Congress does

4    not intend for online services to be regulated as common carriers.  In the Telecommunications

5    Act of 1996 (amending the Communications Act and codified at § 47 U.S.C. 230(c)), Congress

6    stated its desire "to preserve the vibrant and competitive free market that presently exists for the

7    Internet and other interactive computer services, unfettered by Federal or State regulation." 47

8    U.S.C. § 230(b).  Congress went on to explain that: "Nothing in this section [of the

9    Communications Act] shall be construed to treat interactive computer services as common

10   carriers or telecommunications carriers." 47 U.S.C. § 223(e)(6).  No such statement would have

11   been necessary if, as KinderStart contends, interactive computer services, like Google, were ever

12   intended to be classified as common carriers in the first place.  *See Parker v. Google Inc.* ___ F.

13   Supp. 2d ___, 78 U.S.P.Q.2d 1212, 1218 (E.D. Pa. 2006) (Google is an interactive computer

14   service subject to the protections of 47 U.S.C. § 230); *Novak v. Overture Servs., Inc.*, 309 F.

15   Supp. 2d 446, 452-53 (E.D.N.Y. 2004) (same).  Indeed, this statute demonstrates Congress'

16   explicit intent to prevent such a classification.

17       The analysis goes no further.  Google is not a common carrier and KinderStart's claim for

18   violation of the Communications Act should be dismissed out of hand.

19       **G.    KinderStart States No Claim Under Cal. B&P Code Section 17200 et. seq.**

20       KinderStart vaguely asserts that, by engaging in all of the conduct alleged in the

21   Amended Complaint, Google has committed one or more acts of unfair competition in violation

22   of Cal. Bus. & Prof. Code § 17200 *et seq*.  FAC ¶ 146.  However, KinderStart has failed to state

23   a claim for two reasons.  First, KinderStart's allegations are insufficient to establish Article III

24

25       [9]  Courts have uniformly held that even Internet Service Providers are not common carriers,
26   though they carry user-created communications, such as email, and carry user requests for
     information from one point to another.  *See, e.g.*, *America Online, Inc. v. GreatDeals.Net*, 49 F.
27   Supp. 2d 851, 855-57 (E.D. Va. 1999); *CompuServe Inc.*, 962 F. Supp. 2d at 1025; *Religious
     Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369 n.12 (N.D. Cal.
28   1995).  If ISPs that actually serve to transport user communications are not common carriers,
     mere search engines like Google certainly cannot be.

1   standing for *any* of its 17200 claims.  Second, KinderStart has failed to allege conduct by Google

2   that violates California's Unfair Competition Law ("UCL"), whether that conduct is

3   characterized as unfair, unlawful, or fraudulent, or as false or deceptive advertising.

**1.    KinderStart Has No Standing to Assert Any 17200 Claim Because It Can Identify No Redressable Injury**

6       KinderStart's allegations do not satisfy the "case or controversy" limitation of Article III

7   requiring that a plaintiff have standing in order to bring *any type of claim* in federal court.  *See*

8   *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (hereinafter

9   "*Stevens*").  A litigant must specifically set forth facts sufficient to satisfy both the "causation"

10  and "redressability" prongs of Article III's standing requirements by showing that his injury

11  "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable

12  decision."  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citations omitted); *see also Nike,*

13  *Inc. v. Kasky*, 539 U.S. 654, 667 (2003).  KinderStart's unfair competition claims are all subject

14  to dismissal because it has not, and cannot, identify any *redressable* injury.

15      To support a finding of redressability, plaintiff must demonstrate "a 'substantial

16  likelihood' that the requested relief will remedy the alleged injury in fact."  *Stevens*, 529 U.S. at

17  771.  KinderStart's Section 17200 claims establish nothing of the kind because the remedies

18  under Section 17200 are limited to restitution and injunctive relief.  *See Korea Supply Co. v.*

19  *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).

20      With respect to restitution, no relief can be granted because KinderStart does not allege

21  that it paid Google anything.  *Korea Supply*, 29 Cal. 4th at 1149 ("object of restitution is to

22  restore the status quo by returning to the plaintiff funds in which he or she has an ownership

23  interest"); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 177 (2000) (restitution

24  award is for "money that had once been in the possession of the person to whom it [is] to be

25  restored"); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 697-98 (2006)

26  (same).  The injunction KinderStart seeks to remedy the alleged injury in fact – deflated

27  PageRank values and reductions in search engine referrals – is also unavailable as a matter of

28  law.  *See* FAC ¶ 151.  The First Amendment bars KinderStart from obtaining an injunction

1    compelling Google to speak and evaluate the KinderStart website or include KinderStart in its

2    index.  *See, e.g., PG&E*, 475 U.S. at 20-21 (striking down order requiring utility company to

3    allow political group to use its envelopes to distribute group's speech); *Miami Herald*, 418 U.S.

4    at 258 (striking down law requiring newspapers to conspicuously publish replies to attacks on

5    election candidate's character); *ARP Pharmacy*, 2006 WL 1101613, at *8 (striking down law

6    requiring prescription drug claims processors to submit drug processing costs to their clients).

7    Because it has not stated a claim for entitlement to either of the remedies provided by the UCL,

8    KinderStart's unfair competition claim should be dismissed under Rule 12(b)(1).

9                    **2.    KinderStart Fails to State a Claim Under Any Prong of California's
                            Unfair Competition Claim**

10

11           Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and

12   unfair, deceptive, untrue or misleading advertising."  KinderStart has failed to state a claim under

13   any of these prongs.

14                          **a.    KinderStart Fails to State a 17200 Claim Based on Fraudulent
                                  Business Acts or Deceptive Advertising**

15

16           KinderStart's allegations based on fraudulent business acts or deceptive advertising fail

17   to state a claim under California's UCL for two reasons.  First, KinderStart has not identified any

18   allegedly deceptive statements forming the basis for its claim.  Second, KinderStart's allegations

19   fail to comply with Proposition 64, which created a standing requirement for claims brought

20   under the UCL.

21           KinderStart vaguely alleges that Google's AdSense Program Agreement constitutes false

22   advertising under the UCL because it is likely to deceive "members of the public" – a group that

23   presumably includes KinderStart itself, although this fact is not alleged – into believing that by

24   participating in the AdSense program, they will realize "adequate value and financial benefit."

25   FAC ¶ 149.  This claim fails for the most basic of reasons: it does not identify a specific

26   representation or statement by Google either within or without the AdSense Program Agreement

27   to the effect that participants in the AdSense program would realize "adequate value and

28   financial benefit."  *Id.*  Under the false advertising and fraud provisions of the UCL, a plaintiff

1    must plead *facts* showing that the defendant made a deceptive representation.  *Bardin v.*

2    *DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006) (sustaining demurrer under the

3    UCL where the statement in question "merely concludes the public would likely be deceived,

4    without pleading any facts showing the basis for that conclusion").

5            Additionally, in order to plead an unfair competition claim following the passage of

6    California's Proposition 64 in November 2004, KinderStart must show that it has suffered actual

7    injury in fact and that "such injury occurred *as a result of* the defendant's alleged unfair

8    competition or false advertising." *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194

9    (S.D. Cal. 2005) (dismissing false advertising and unfair competition claims for lack of standing)

10   (emphasis added); *Chip-Mender Inc. v. Sherwin-Williams Co.*, No. C 05-3465, 2006 WL 13058,

11   at *10 (N.D. Cal. Jan. 03, 2006) (dismissing unfair competition claim for failure adequately to

12   allege standing); *Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 375 F. Supp. 2d 950, 955 (N.D. Cal.

13   2005) (dismissing unfair competition claim).[10]  In the context of a claim involving fraud or false

14   advertising, such as KinderStart's here, a plaintiff who fails to allege that it actually relied on

15   false or misleading statements to its detriment cannot possibly show that it was suffered an injury

16   in fact "as a result of" the false or misleading statements as required by Proposition 64.  *Laster*,

17   407 F. Supp. 2d at 1194.  Nowhere in the Amended Complaint does KinderStart allege that it

18   actually relied on *any* representation by Google, in the AdSense Program Agreement or

19   elsewhere, and been injured as a result.  KinderStart has failed to state a claim for relief under the

20   statutory standing requirement effectuated by Proposition 64.

21

22

23

24   _____

25       [10] Prior to the passage of Proposition 64, a UCL plaintiff in California state court did not
     need to demonstrate any injury whatsoever, let alone causation, and could file suit as a private
26   attorney general.  *Laster*, 407 F. Supp. 2d at 1193.  For this reason, a substantial body of the pre-
     Proposition 64 jurisprudence in the area of false advertising is no longer good law.  Of course,
27   Section 17200 litigants in federal court have always been constrained by Article III's standing
     requirement, which KinderStart also fails to satisfy, because of the Supremacy Clause.  *See Nike*,
28   539 U.S. at 661 (plaintiff who brought UCL claim as a private attorney general in state court
     "would not have had standing to commence suit in federal court").

1

### b.    KinderStart Fails to State a 17200 Claim Based on Unfair Business Acts

2

3      To state a claim of unfair competition under the "unfair" prong of the Unfair Competition

4  Law, KinderStart must show "conduct that threatens an incipient violation of an antitrust law, or

5  violates the policy or spirit of one of those laws because its effects are comparable to or the same

6  as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech*

7  *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999).  This

8  KinderStart has failed to do.

9      The "unfair" prong of the UCL is the California state equivalent of section 5 of the

10  Federal Trade Commission Act's prohibitions against unfair methods of competition.  *See Cel-*

11  *Tech*, 20 Cal. 4th at 185-86.  In *Official Airline Guides*, 630 F.2d at 923-24, the Second Circuit

12  Court of Appeals held that conduct identical in all relevant respects to Google's alleged conduct

13  did not violate section 5 of the FTC Act.  There, the FTC alleged that the OAG, which

14  maintained airline schedule listings critical to travel agents and travelers, systematically

15  discriminated against commuter carriers by listing their flights less prominently, inaccurately,

16  and sometimes not at all, thus harming competition between certificated and commuter carriers.

17  Even though the Second Circuit agreed that the OAG had "arbitrarily" refused to publish the

18  connecting flight schedules of commuter carriers, the Court held that the monopolist OAG's

19  challenged practice of discriminating among its customers in its listings did not violate section 5

20  of the FTC Act.

21      Under the holding in *Official Airline Guides*, Plaintiff's allegations that Google denied

22  "automated search engine referrals to websites of Plaintiff KSC" and "falsely and artificially

23  calculate[ed] and present[ed] a deflated PageRank" (FAC ¶ 148) fail to state a claim under the

24  UCL and must be dismissed.  Moreover, because the actions on which KinderStart premises

25  liability are protected by the First Amendment, they certainly cannot be "unfair" under the UCL.

26  *See Jefferson County*, 175 F.3d at 859-60; *Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal.

27  App. 4th 1134, 1147 (2003) ("A business practice that might otherwise be considered unfair or

28  deceptive cannot be the basis of a section 17200 cause of action if the conduct has been deemed

1    lawful"); *Blatty*, 42 Cal. 3d at 1048-49 (unfair competition claim could not be premised on

2    protected speech).

3                    c.        **KinderStart Fails to State a 17200 Claim Based on Unlawful**
                              **Business Acts**

4

5              As established above, each of KinderStart's claims based on laws other than the UCL

6    itself must be dismissed for failure to state a claim.  KinderStart therefore cannot base its 17200

7    claim on Google's allegedly "unlawful" business acts.  *See Violante v. Communities Southwest*

8    *Dev. & Const. Co.*, 41 Cal. Rptr. 3d 673, 678 (2006) (dismissing UCL claim where there was no

9    underlying wrongful conduct).

10             In sum, whether for lack of standing or for failure to allege conduct sufficient to state a

11   claim, KinderStart's unfair competition claims must be dismissed.

12           **H.       KinderStart States No Claim for Breach of the Implied Covenant**

13             According to KinderStart, it "contracted into" the advertising program, known as

14   AdSense, that Google offers to third party websites.  FAC ¶¶ 160, 162.  KinderStart also

15   obtusely states that the agreement governing the AdSense Program (the "AdSense Agreement")

16   contained an implied covenant of good faith and fair dealing.  *Id.* ¶ 160 (alleging "the AdSense

17   Program necessarily contemplates" an implied covenant).  And while never expressly identifying

18   any breach, KinderStart's seventh claim for relief appears to charge Google with breaching the

19   implied covenant in the AdSense Agreement by failing to include KinderStart in its search

20   results.  FAC ¶ 162.

21             The first step in determining whether a contract contains an implied covenant is to

22   examine the express terms of the contract.  *See Lundin/Weber Co. v. Brea Oil Co.*, 117 Cal. App.

23   4th 427, 432 (2004).  Under the terms and conditions of the AdSense Agreement, Google agrees

24   to provide advertisements for display on a particular website and to share with the publisher of

25   that website the revenues that Google earns if users click on the ads.  *See* AdSense Agreement,

26

27

28

1  ¶¶ 1, 11; Volkmer Decl., Ex. A.[11]  The website publisher agrees, *inter alia*, to display the

2  advertisements and comply with certain technical specifications.  *Id*. at ¶ 2.

3       Google's duties under the AdSense Agreement apply irrespective of whether the

4  publisher's site appears in Google's search results, regardless of the position in which that site

5  may appear, and regardless of the PageRank that Google may assign to the site.  The AdSense

6  Agreement, in other words, is simply about serving advertisements and sharing revenue that

7  those ads may generate.  The agreement has nothing to do with Google's search results.

8  Nevertheless, KinderStart asks the Court to invent and insert a covenant into the AdSense

9  Agreement, obligating it to provide AdSense participants preferential treatment in Google's

10  search results.  Specifically, KinderStart claims that this supposed covenant requires Google to

11  include all AdSense participants in Google's search results and to provide them some

12  unspecified level of "traffic volume" and "appeal" from Google users.

13       The covenant KinderStart concocts is far afield from anything contemplated by the

14  AdSense Agreement.  Nothing in the text of the agreement could possibly be read as even

15  hinting at a promise by Google to promote the websites of AdSense participants or ensure them a

16  certain level of "traffic volume."  The AdSense Agreement concerns the delivery of

17  advertisements; nothing more.  As a matter of law, a covenant of good faith can only be implied

18  to protect the express terms of a contract.  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690

19  (1988) (affirming dismissal of tortious breach of implied covenant claim); *Jo Kim v. Regents of*

20  *the Univ. of Cal.*, 80 Cal. App. 4th 160, 164 (2000) (affirming dismissal of breach of implied

21  covenant claim).  A covenant cannot be used to further objectives that are not contemplated by

22  the contract.  *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373

23  (1992).  KinderStart seeks to engraft onto the AdSense Agreement a covenant that fundamentally

24  alters the very nature of the Agreement.  For this reason alone, its claim must fail.

25

26  _____

27       [11]  The provisions of the agreement are properly before the Court for purposes of this motion
as a consequence of KinderStart's reference to the agreement in the Amended Complaint.  *See Van*

28  *Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

1    KinderStart's claim suffers from a second and more fundamental flaw: its hypothetical

2   covenant is at odds with the express provisions of the AdSense Agreement.  The agreement

3   affirmatively rejects the notion that Google has *any* obligation to drive traffic to participating

4   sites or to ensure they receive some level of advertising revenue:

5           Google makes no guarantee regarding the level of impressions of Ads or clicks on
        any Ad or Referral Button, the timing or delivery of such impressions and/or
6           clicks, the completion of Referral Events, or the or the amount of any payment to
        be made to You under this Agreement.
7

8   AdSense Agreement, ¶ 8; Volkmer Decl., Ex. A.  More telling still, *Google expressly disclaims*

9   *all warranties, express or implied, regarding* "*SEARCH, REFERRALS, AND OTHER SERVICES*

10  . . . ." *Id*. ¶ 9.  That is, Google makes clear that it is not making express or implied guarantees to

11  AdSense participants about Google's search services, referrals or any other service that Google

12  may operate.  In short, the implied obligation that KinderStart seeks to impose upon Google is

13  expressly refuted by the AdSense Agreement.  For this reason as well, KinderStart's implied

14  covenant claim thus fails as a matter of law.  *See Lundin/Weber*, 117 Cal. App. 4th at 436

15  ("where parties have chosen not to extend [an] obligation . . . a court should not insert

16  obligations in direct conflict with the limitation expressed by the parties"); *Baymiller v.*

17  *Guarantee Mut. Life Co.*, No. SA CV99-1566, 2000 WL 33774562, at *4 (C.D. Cal. Aug. 3,

18  2000) (dismissing implied covenant claim with prejudice where proposed covenant was at odds

19  with the express provisions of the agreement).

20  **IV.    CONCLUSION**

21          For the foregoing reasons, Google respectfully requests that the Court dismiss the

22  Amended Complaint in its entirety, with prejudice.

23

24  Dated:  May 2, 2006                         WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation
25

26                                          By: /s/ David H. Kramer
                                               David H. Kramer
27
                                            Attorneys for Defendant
28                                          Google Inc.