DAVID H. KRAMER, State Bar No. 168452
LISA A. DAVIS, State Bar No. 179854
BART E. VOLKMER, State Bar No. 223732
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
DKramer@wsgr.com

JONATHAN M. JACOBSON
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12 East 49th Street, 30th Floor
New York, NY 10017-8203
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
JJacobson@wsgr.com

Attorneys for Defendant
Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KINDERSTART.COM, LLC, a California limited liability company, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC., a Delaware corporation,<br><br>Defendant. | CASE NO.: C 06-2057 JF (RS)<br><br>**DEFENDANT GOOGLE INC.'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PURSUANT TO CCP § 425.16**<br><br>Before: Hon. Jeremy Fogel<br>Date: June 30, 2006<br>Time: 9:00 a.m.<br>Courtroom: 3 |

GOOGLE'S SPECIAL MOTION TO STRIKE
CASE NO. C 06-2057 JF (RS)

2867947.3

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ............................................................................................................. 1

POINTS AND AUTHORITIES ................................................................................................ 1

I.  INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF THE CASE .................................................................................... 2

III. ARGUMENT ................................................................................................................ 2

    A.  The Anti-SLAPP Statute Applies in Federal Court ............................................. 2

    B.  KinderStart's Claims for Relief Subject to This Motion "Arise From" Google's Exercise of its Free Speech Rights ............................................. 3

    C.  Google's Protected Speech Took Place In A Place Open to the Public and In Connection with a Public Issue or an Issue of Public Interest ............................... 4

    D.  KinderStart Cannot Demonstrate a Probability of Prevailing on its Claims ........... 7

        1.  KinderStart Cannot Prevail on its Free Speech Claim ................................ 7

        2.  KinderStart Cannot Prevail on its Defamation and Libel Claim ................. 8

        3.  KinderStart Cannot Prevail on its Negligent Interference Claim ................ 9

    E.  Section 425.17 Does Not Apply to this Case ....................................................... 10

        1.  The Section 425.17(b) Public Interest Exemption Does Not Apply ......... 10

        2.  The Section 425.17(c) Commercial Speech Exemption Does Not Apply .................................................................................................... 10

        3.  The Entirety of Section 425.17 Is Inapplicable Because Google Is Engaged in the Creation of a Literary Work ............................................ 12

    F.  Google Requests its Attorney's Fees Incurred in Bringing this Motion ............... 14

IV. CONCLUSION ........................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106 (2003) ................................................................ 8

*Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569 (2005) .................................................................. 6

*Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322 (2004) ............................. 6

*Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903 (2004) ......................................................... 10

*Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033 (1986) .................................................................. 3, 9, 12

*Carver v. Bonds*, 135 Cal. App. 4th 328 (2005) .............................................................................. 6

*Club Members For an Honest Election v. Sierra Club*,
    137 Cal. App. 4th 1166 (2006) ................................................................................................ 10

*Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468 (2000) ....................................... 5, 6

*Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376 (1995) ......................................... 9

*DuPont Merck Pharm. Co. v. Superior Court*, 78 Cal. App. 4th 562 (2000) .................................. 5

*Feist Pub'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ..................................................... 13

*Fontani v. Wells Fargo Invs., LLC*, 129 Cal. App. 4th 719 (2005) ................................................. 6

*Found. for Taxpayer & Consumer Rights v. Garamendi*,
    132 Cal. App. 4th 1375 (2005) ................................................................................................ 12

*Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005) .............................. 3

*George v. Pacific-CSC Work Furlough*, 91 F.3d 1227 (9th Cir. 1996) .......................................... 8

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
    63 F. Supp. 2d 1127 (N.D. Cal. 1999) ...................................................................................... 3

*Golden Gateway Center v. Golden Gateway Tenants Ass'n*,
    26 Cal. 4th 1013 (2001) ............................................................................................................ 7

*Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000) ....................................................... 8

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) .............................................................................. 10, 11

*Kasparian v. County of Los Angeles*, 38 Cal. App. 4th 242 (1995) ................................................ 9

*Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179 (1998) ..................................................................... 9

*Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972) .................................................................................. 7

*New.Net, Inc. v. Lavasoft,* 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ................................... 5, 6, 7, 11

*Pfeiffer Venice Props. v. Bernard*, 101 Cal. App. 4th 211 (2002) ................................................ 14

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*,
    136 Cal. App. 4th 464 (2006) ........................................................................................ 7

*Search King Inc. v. Google Tech., Inc.*, No. CIV-02-1457,
    2003 WL 21464568 (W.D. Okla. 2003) ............................................................ 4, 5, 8, 9, 13

*Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798 (2002) ....................................................... 6, 8

*Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226 (1999) ................................................... 7

*Trader Joe's Co. v. Progressive Campaigns, Inc.*, 73 Cal. App. 4th 425 (1999) ............................ 8

*U.S. ex. rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999) ........................................................................................... 2

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................................. 2, 3

*Vogel v. Felice*, 127 Cal. App. 4th 1006 (2005) .............................................................................. 5

**STATUTES**

17 U.S.C. § 101 .............................................................................................................................. 12

17 U.S.C. § 102(a)(1) ..................................................................................................................... 13

Cal. Civ. Proc. Code § 425.16 ................................................................................................ *passim*

Cal. Civ. Proc. Code § 425.17 ..................................................................................... 10, 11, 12, 13

**MISCELLANEOUS**

1 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 2.04
    (Dec. 2005) ..................................................................................................................... 13

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 30, 2006 at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 280 South First Street, Courtroom 3, 5th Floor, San Jose, California, 95113, in the courtroom of the Honorable Jeremy Fogel, defendant Google Inc. ("Google") will and hereby does move the Court, pursuant to Cal. Civ. Proc. Code § 425.16, for an order striking the following claims for relief from the First Amended Complaint ("FAC" or "Amended Complaint") of plaintiff KinderStart LLC ("KinderStart"): (1) violation of the First Amendment and the California Constitution; (2) Defamation and Libel; and (3) Negligent Interference with Prospective Business Advantage.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Bart E. Volkmer and the exhibits attached thereto, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

## POINTS AND AUTHORITIES

### I.  INTRODUCTION

In this lawsuit, KinderStart asks that the Court compel Google to alter its speech and seeks damages for that speech, because KinderStart does not like what Google has to say. The California legislature, however, has provided a means for the summary dismissal of such claims.

Under Cal. Civ. Proc. Code § 425.16, a defendant may move to strike from a complaint claims for relief arising from defendant's exercise of its free speech rights in connection with a public issue. In this case, all of KinderStart's claims, but most obviously its free speech, defamation, and negligent interference claims, arise from Google's protected speech. These claims seek to hold Google liable for expressing its opinion about the relative importance of Internet websites to the public (i.e., "PageRank") through the operation of its well known Internet search engine. Put simply, KinderStart does not like the opinion that Google holds and shares with users about the significance (or lack thereof) of KinderStart's website.

1  By KinderStart's own admission, Google's speech concerns matters of public interest.
2  Accordingly, KinderStart's claims challenging that speech must be stricken unless KinderStart
3  can demonstrate a probability that it will prevail on them. This KinderStart cannot possibly do.

4  KinderStart's free speech claim is frivolous because Google is not a state actor.
5  KinderStart's defamation claim fails because Google's PageRank is a matter of opinion, and
6  does not express a provable assertion of fact. And KinderStart's negligent interference claim
7  fails both because a defendant cannot be charged in tort with interfering with its own contract
8  and because the alleged act of interference by Google is not independently wrongful as required
9  by California law.

10  Because these claims challenge Google's exercise of its free speech rights on a matter of
11  public interest, and because KinderStart cannot demonstrate a probability of prevailing on them,
12  Google respectfully requests that the Court strike the claims and award Google its attorney's fees
13  and costs incurred in defending against them.

14  **II.   STATEMENT OF THE CASE**

15  The background of this case has been described in Google's concurrently filed motion to
16  dismiss. Rather than repeat that discussion, Google incorporates the memorandum supporting its
17  motion to dismiss by reference here.

18  **III.   ARGUMENT**

19  **A.   The Anti-SLAPP Statute Applies in Federal Court**

20  California's anti-SLAPP statute, found in California Civil Procedure Code Section
21  425.16, was enacted "to encourage continued participation in matters of public significance, and
22  that this participation should not be chilled through abuse of the judicial process." Cal. Civ.
23  Proc. Code § 425.16(a). The statute provides that a claim for relief "shall be subject to a special
24  motion strike" if it "aris[es] from any act . . . 'in furtherance of that person's . . . right of . . . free
25  speech under the United States Constitution or California Constitution . . . .'" The Ninth Circuit
26  has repeatedly held that this special motion to strike is available in federal court. *See U.S. ex.*
27  *rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999); *Vess v.*
28  *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109-1111 (9th Cir. 2003). California's legislature has

made clear in the statute's text that the protections of this statute are to be "construed broadly." Cal. Civ. Proc. Code § 425.16(a).[1]

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry. First, a defendant 'must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech.'" *Vess*, 317 F.3d at 1110, citing *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999). "[O]nce the defendant has made a prima facie showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Id*. If the plaintiff cannot carry this evidentiary burden, the claims at issue should be stricken.

**B.    KinderStart's Claims for Relief Subject to This Motion "Arise From" Google's Exercise of its Free Speech Rights**

Google easily carries its burden to demonstrate that KinderStart's claims for relief "arise from" its protected speech. KinderStart's free speech claim and its negligent interference claim both seek to hold Google liable for its decision not to include KinderStart in the results that Google communicates to users of its search engine. *See* FAC ¶ 107 (basing Google's supposed liability on the allegation that Google "repeatedly blocks Search Engine results showing Website Content and other communications of Plaintiff KSC"); FAC ¶ 174 (alleging liability for negligent interference on the purported fact that "Google Blocked KSC.com and other Websites of the California Subclass II"). The California Supreme Court case of *Blatty* makes plain that Google's choice regarding which websites to include in the index and the results it presents to users of its search engine are absolutely protected by the First Amendment. *See Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1048 (1986) (holding that a newspaper cannot be held liable for

---

[1] Notably, "California and federal courts have repeatedly permitted defendants to move to strike under the anti-SLAPP statute despite the fact that they were neither small nor championing individual interests." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (affirming grant of special motion to strike with respect to the motion of two corporate defendants against an individual plaintiff); *see also Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005) (granting Associated Press' special motion to strike in case brought against it by individual military personnel).

1  failing to include a book on its "Best Sellers" list because the paper's speech in choosing whom
2  to include on the list is absolutely protected by the First Amendment).
3        KinderStart's defamation claim also attacks Google's speech, this time its display of the
4  PageRank that Google assigns to particular websites. *See* FAC ¶ 165. By its very nature, a
5  defamation claim takes issue with a defendant's speech, and KinderStart's claim is no different:

> Defendant Google has for nearly one continuous year, and at all pertinent times, determined and *presented for public viewing* a Page Rank of '0' when the Website KS.com of Plaintiff KSC is visited and viewed by the public and cyberspace community.

*Id.* (emphasis added). As KinderStart's own allegations make plain, it is suing Google because Google is (or was) telling users that KinderStart's PageRank is "0." *Id.* There can be no dispute that this claim arises from Google's exercise of its speech rights. Indeed, in a case virtually identical to this one, another federal district court concluded that the PageRank Google assigned to a particular site was a matter of opinion, entitled to full First Amendment protection. *See Search King Inc. v. Google Tech., Inc.*, No. CIV-02-1457, 2003 WL 21464568, at *4 (W.D. Okla. 2003) (dismissing plaintiff's claims arising from the allegedly defamatory PageRank that Google assigned to plaintiff's website).

**C.     Google's Protected Speech Took Place In A Place Open to the Public and In Connection with a Public Issue or an Issue of Public Interest**

To carry the remainder of its burden under the anti-SLAPP statute, Google need only show that its speech occurred in a place open to the public and that it was in connection with an issue of public interest. *See* Cal. Civ. Proc. Code § 425.16(e)(3) (speech within the purview of the anti-SLAPP statute includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"). Section 425.16(e)(4) further extends the anti-SLAPP statute to "*any other conduct* in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest" (emphasis added). These requirements are easily satisfied.

KinderStart's Amended Complaint concedes that Google's speech at issue occurred "in a place open to the public" under Cal. Civ. Proc. Code § 425.16(e)(3). *See* FAC ¶ 16 ("Google

was engaged in a continuous flow of interstate business processing search requests and marketing and publishing advertising on Results Pages showing links to millions of Websites on the Internet"). *See also Vogel v. Felice*, 127 Cal. App. 4th 1006, 1015 (2005) (speech made on the Internet is open to the public for the purposes of California's anti-SLAPP statute).

The speech challenged by KinderStart's claims and Google's related conduct were also made "in connection with an issue of public interest" because Google's speech "impacts a broad segment of society." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000) (the public interest requirement has been "broadly construed"). The Court in *Search King* explicitly held as much, stating: "PageRanks relate to matters of public concern . . . ." *Search King*, 2003 WL 21464568, at *4. Indeed, KinderStart itself repeatedly avers that the content of Google's search results and PageRank impact the public at large:

- "PageRank as promulgated and propagated by Defendant Google throughout the Internet, has become the most widely accepted relative measure of the appeal, popularity and relevance of a Website on the Internet. As such, Defendant Google has created and now manages and controls the de facto and prevailing standard of PageRank for rating Websites throughout the United States." FAC ¶ 56.
- "Defendant Google is vested with a public trust in that the only reasonable means of the public to identify and access millions Websites across the worldwide web is to utilize a search engine that purportedly offers and delivers the most relevant and useful search results." FAC ¶ 40.
- Google maintains a "universal, public, Internet-accessible index, archive and repository of the world's Internet content and information that cover all essential topics and subject matter for use by the general public." FAC ¶ 105.

Even without the *Search King* precedent, KinderStart's own allegations are sufficient to demonstrate that Google's speech concerns a matter of public interest. *See, e.g., DuPont Merck Pharm. Co. v. Superior Court,* 78 Cal. App. 4th 562, 567 (2000) (finding public interest requirement satisfied based on plaintiff's own allegations).

The case of *New.Net, Inc. v. Lavasoft* drives the point home further. 356 F. Supp. 2d 1090 (C.D. Cal. 2004). There, defendant Lavasoft distributed software that detected and allowed users to remove harmful programs (e.g., "spyware") from their personal computers. *Id*. at 1095-96. When the Lavasoft software detected a New.net program and identified it as potentially harmful, New.net sued Lavasoft for (1) unfair competition; (2) trade libel; (3) and tortious

interference with prospective economic advantage. *Id*. at 1097. Lavasoft responded with an anti-SLAPP motion, claiming it was being sued for exercising its free speech rights. *Id*. at 1099. On the question of whether Lavasoft's speech concerned a matter of public interest, the court explained: "Because the issue of public awareness of, and protection from, the unknown are at the heart of the public information service Defendant provides and because that service is of public significance, speech in this area should not be chilled by litigation brought by Plaintiff who seeks to stifle speech to enhance its profits." *Id*. at 1106. The court went on to grant Lavasoft's anti-SLAPP motion. *Id*. at 1114-15.

Google's speech here is similarly protected. Given its breadth, the Internet would be far less useful without effective search tools. Google's search results and PageRank allow web users to find the relevant web pages in response to their queries. Google's search engine is popular precisely because users have found that Google's opinion regarding the relative importance of websites is an effective way to locate content they are looking for on the web. Google's ability to freely express these opinions to users – like Lavasoft's ability to freely express its views about potentially harmful software on users' computers – is undoubtedly important to the public at large, and thus concerns a matter of public interest within the meaning of the anti-SLAPP statute. *See also Carver v. Bonds*, 135 Cal. App. 4th 328, 344 (2005) (newspaper article that "served as a warning against [a doctor's] method of self-promotion" involved a matter of public concern); *Fontani v. Wells Fargo Invs., LLC*, 129 Cal. App. 4th 719, 733 (2005) (statement in a regulatory filing concerned "conduct capable of affecting a significant number of investors" and thus was a matter of public interest); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576-77 (2005) (Internet postings about corporate activity of a publicly traded company concerned the public interest); *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322 (2004) (statements contained on an organization's website regarding abortion concerned a matter of public interest); *Seelig v. Infinity Broadcasting Corp.*, 97 Cal. App. 4th 798, 807 (2002) ("on-air discussion between [] talk-radio cohosts and their on-air producer about a television show of significant interest to the public and the media" concerned a matter of public interest); *Damon*, 85 Cal. App. 4th at 475-480 (communications regarding "the manner in which

a large residential community would be governed" concerned issues of public interest); *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 238 (1999) ("allegations of physical and verbal abuse against a prominent media strategist by two former wives" concerned a public issue).

**D.    KinderStart Cannot Demonstrate a Probability of Prevailing on its Claims**

As Google has carried its burden under the anti-SLAPP statute, KinderStart's claims must be stricken "unless the court determines that that [KinderStart] has established that there is a probability that [it] will prevail on the claim[s]." Cal. Civ. Proc. Code § 425.16(b)(1). "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2). "In order to establish a probability of prevailing on the claim . . . a plaintiff responding to an anti-SLAPP motion must state and substantiate a legally sufficient claim." *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Ass'n*, 136 Cal. App. 4th 464, 476 (2006) (citations and internal quotations omitted). That is, the plaintiff must demonstrate that its claims are not only adequately pled, but demonstrate with *evidence* that the claims are "'supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Id.*; *Lavasoft,* 356 F. Supp. 2d at 1099. Here, KinderStart cannot possibly establish a probability of prevailing on the claims subject to this motion.

While each of KinderStart's claims is discussed in detail in Google's concurrently filed motion to dismiss, Google briefly highlights the dispositive flaws in the claims at issue here.

**1.    KinderStart Cannot Prevail on its Free Speech Claim**

KinderStart's first claim for relief is premised, ironically, on Google's supposed violation of *KinderStart's* free speech rights. However, as a general matter, only state actors are bound by the First Amendment or the free speech clause of the California constitution. *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 567 (1972); *Golden Gateway Center v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013 (2001). Google is a corporation owned by its shareholders, not a government entity. *See* FAC ¶¶ 5 (Google is a Delaware corporation); 22, 28-29 (Google filed 10-Ks with the SEC), 57 (discussing Google's annual revenues). As a matter of law, Google is simply not a

1   state actor no matter how fancifully KinderStart pleads to the contrary.  *See Howard v. America*

2   *Online Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (affirming dismissal of First Amendment claim

3   against Internet service provider on ground that it was not a state actor); *George v. Pacific-CSC*

4   *Work Furlough*, 91 F.3d 1227, 1231 (9th Cir. 1996) (affirming dismissal of complaint based on

5   the First Amendment which failed to "plead a nexus between the government and the

6   complained-of action").  Nor could California's narrow exception to the state action doctrine –

7   for a shopping center serving as the functional equivalent of a town square – possibly apply in

8   this case.  *See Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106 (2003) (rejecting claim that

9   major supermarket should be treated as state actor; California's exception to state action

10  requirement does not apply merely because property is open to the public; rather, property must

11  function as equivalent to town square); *Trader Joe's Co. v. Progressive Campaigns, Inc.*, 73 Cal.

12  App. 4th 425, 432-437 (1999) (stand alone grocery store does not have a public character with

13  respect to speech and therefore the free speech clause of the California constitution does not

14  govern its conduct).  The fact that Google is not a state actor, by itself, bars KinderStart's First

15  Amendment and California free speech claims.

16   **2.    KinderStart Cannot Prevail on its Defamation and Libel Claim**

17   KinderStart likewise cannot prevail on its defamation and libel claim because it does not

18  charge Google with making a provably false assertion of fact.  Google's view of the relative

19  significance of the KinderStart website, as expressed in its PageRank, is not provably false.

20  According to the holding in *Search King*:

21   PageRanks do not contain provably false connotations.  PageRanks are opinions –
    opinions of the significance of particular web sites as they correspond to a search
22   query.  Other search engines express different opinions, as each search engine's
    method of determining relative significance is unique.  The Court simply finds
23   there is no conceivable way to prove that the relative significance assigned to a
    given web site is false.

24

25  *Search King*, 2003 WL 21464568, at * 4.  As the *Search King* court recognized, the

26  determination that Google's PageRank is a matter of opinion and not provably false, is to be

27  made as a matter of law.  *Id.; See also Seelig*, 97 Cal. App. 4th at 810-11 (statements of opinion

28

by radio host were not actionable as a matter of law). That legal determination dooms KinderStart's claim for defamation/libel.

### 3. KinderStart Cannot Prevail on its Negligent Interference Claim

Finally, KinderStart cannot prevail on its negligent interference claim. While the basis for this claim remains unclear, it appears that KinderStart is accusing Google of interfering with the AdSense contract between Google and KinderStart. FAC ¶¶ 172-73. As a matter of law, however, a party to a contract cannot be charged in tort with interfering with its own contract. *See Kasparian v. County of Los Angeles*, 38 Cal. App. 4th 242, 262 (1995). Accordingly, the claim cannot stand.

If KinderStart instead means to suggest that Google is liable for negligently interfering with some other, unspecified prospective advantage it might have come to enjoy, the claim again fails because Google's purported interference does not consist of independently wrongful acts as required by *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376, 393 (1995) (to state claim for tortious interference, plaintiff must allege wrongful conduct by defendant that is independent from the fact of the interference itself); *see also Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1189 (1998) (invoking the "independently wrongful" requirement in the context of a negligent interference claim).

Here, to satisfy the "independently wrongful" requirement, KinderStart relies on Google's supposed misconduct in failing to include KinderStart's site in search results and ascribing a particular PageRank to it. But as a matter of law, such conduct is not independently wrongful. Rather, Google's right to speak through its web index and PageRank is absolutely protected speech. *See Search King*, 2003 WL 21464568, at *4 (dismissing plaintiff's claim for tortious interference against Google based upon allegedly defamatory PageRank that Google assigned to plaintiff's site); *Blatty*, 42 Cal. 3d at 1045-48 (content for best sellers list is protected First Amendment speech and selection cannot give rise to tort liability). Accordingly, KinderStart's negligent interference claim based upon such conduct must fail.

### E. Section 425.17 Does Not Apply to this Case

Google's special motion to strike satisfies all of the requirements of Section 425.16. The only question remaining is whether the recently-enacted exemption to the anti-SLAPP statute, embodied in Section 425.17, removes this action from the statute's protections. The answer is no because: (1) KinderStart's claims are not brought solely in the public interest; (2) the commercial speech exemption does not apply; and (3) Google is engaged in the creation and dissemination of a literary work.

#### 1. The Section 425.17(b) Public Interest Exemption Does Not Apply

"Section 425.16 does not apply to any action brought solely in the public interest." Cal. Civ. Proc. Code § 425.17(b). It is obvious, however, that this is not such an action. Here, KinderStart seeks monetary recovery for itself and its motivation in bringing this action is plainly personal gain. *See* FAC ¶ 75 (noting that the lawsuit stems from a "precipitous fall by over 80%" in KinderStart's advertising revenue). This alone is fatal to the public interest exemption of Section 425.17(b). *See Club Members For an Honest Election v. Sierra Club*, 137 Cal. App. 4th 1166, 1179 (2006) ("the phrase 'solely in the public interest' in the introductory language of subdivision (b) appears to contemplate that any kind of personal stake in the action takes a litigant outside of the shelter of section 425.17"); *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 913-17 (2004) (action not subject to public interest exemption where it was motivated by personal gain).[2]

#### 2. The Section 425.17(c) Commercial Speech Exemption Does Not Apply

The anti-SLAPP statute is also inapplicable to certain actions arising from commercial speech. Cal. Civ. Proc. Code §425.17(c). Unlike the speech challenged here, commercial speech concerns *factual* representations, not statements of opinion. *See Kasky v. Nike, Inc.*, 27

---

[2] In addition, KinderStart cannot meet *any* of the three other requirements for application of Section 425.17(b)'s public interest exemption. *See* Cal. Civ. Proc. Code § 425.17(b)(1) (exception does not apply if plaintiff seeks relief "greater than or different from" the general public or the class); § 425.17(b)(2) (exception only applies to those actions which "would enforce an important right affecting the public interest, and would confer a significant benefit . . . on the general public"); § 425.17(b)(3) (exception only applies where "[p]rivate enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter").

Cal. 4th 939, 946 (2002) (to qualify as commercial speech, "the *factual content* of the message should be commercial in character") (emphasis added). For this reason, it comes as no surprise that Google's speech does not fall within the statutory commercial speech exemption.

To invoke the commercial speech exemption, a plaintiff must first show that the defendant is "primarily engaged in the business of selling or leasing goods or services." Cal. Civ. Proc. Code § 425.17(c). This requirement was discussed at length in *Lavasoft*. *Lavasoft*, 356 F. Supp. 2d at 1103-04. There, plaintiff argued that the requirement was satisfied because Lavasoft "operates a business and sells software products." *Id*. at 1103. The court rejected this argument: "Just because Defendant operates a business and sells software products, does not mean that Defendant is *primarily* engaged in the business of selling goods. In fact, in addition to providing a public service, it is not seriously disputed that a bulk of Defendant's business involves giving away, not selling, its goods." *Id*.

Like Lavasoft, Google is undoubtedly a commercial enterprise. But also like Lavasoft, Google is not "primarily engaged in the business of selling or leasing goods or services" under Section 425.17 because Google's search engine is offered for use for free to anyone in the world. *See* FAC ¶¶ 22 (Google "maintain[s] the largest, most comprehensive index of web sites and other content, and [Google] make[s] this information *freely available to anyone with an Internet connection*."); 28 (Google does "not accept payment for inclusion or ranking" in search results); 66 (Google processes over "200 million key word search requests each day").

In any event, the commercial speech exemption of Section 425.17(c) is inapplicable because the speech at issue does not "consist[] of representations of *fact* about [defendant's] or a business competitor's business operations, goods or services, that is made for the purpose of . . . promoting . . . [defendant's] goods or services, or . . . in the course of delivering the [defendant's] good or services." Cal. Civ. Proc. Code § 425.17(c)(1) (emphasis added). The speech challenged by KinderStart here does not consist of assertions of *fact* at all. Rather, the challenged speech expresses Google's protected opinion regarding the relative importance of websites.

The California Supreme Court's decision in *Blatty* is instructive in this regard. *Blatty*, 42 Cal. 3d at 1048 n.3. The plaintiff in *Blatty* challenged the New York Times' publication of its "Best Sellers" list, claiming its work was wrongfully left off the list. The plaintiff argued that the newspaper's list was merely "commercial speech" and not subject to full First Amendment protection. *Id.* The Supreme Court disagreed: "That the Times is alleged to have marketed the list for its newspaper profit does not affect the result: commercial motivation does not transform noncommercial speech into commercial speech." *Id*. Google's index of the relative importance of websites is even more subjective than the "Best Sellers" list in *Blatty* and more closely resembles a "recommended reading" list than a best sellers list. The fact that Google generates its index for commercial purposes does not transform the index or Google's opinions into commercial speech.

Because Google is not primarily engaged in the business of selling or leasing goods and services within the meaning of Section 425.17(c), and because the challenged speech here does not consist of facts, but rather of Google's protected opinion, the commercial speech exemption to the anti-SLAPP statute does not apply.

### 3. The Entirety of Section 425.17 Is Inapplicable Because Google Is Engaged in the Creation of a Literary Work

Under Cal. Civ. Proc. Code § 425.17(d)(2), the exemption to the anti-SLAPP statute is inapplicable in "[a]ny action against any person or entity based upon the creation, dissemination, exhibition . . . or other similar promotion of any . . . literary . . . work . . . ." In *Found. for Taxpayer & Consumer Rights v. Garamendi*, 132 Cal. App. 4th 1375, 1391 (2005), the California Court of Appeal explained that the types of works that are subject to Section 425.17(d)(2) are those "work[s] of a kind that might be subject to copyright protection."

Here, Google is being sued for the creation and distribution of its web index and the search results derived from the index. Google's index and its search results reflect Google's creative expression and certainly qualify as "literary works" under the Copyright Act. *See* 17 U.S.C. § 101 ("'Literary works' are works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material

1  objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in
2  which they are embodied."); 1 Melville B. Nimmer and David Nimmer, Nimmer on Copyright §
3  2.04[B] (Dec. 2005) ("[t]he definition of 'literary works' . . . is broad enough to include catalogs
4  and directories, and this was, indeed, the legislative intent"); *Id*. at § 2.04[C] ("[t]he statutory
5  definition of 'literary works' is broad enough to include computer data bases and programs").

6  As the present case demonstrates, in developing its index of websites and the search
7  results generated from it, Google is engaged in a process of assessing and ranking the
8  significance of those websites and sharing that information with the world. There are myriad
9  creative decisions made by Google in this process, from its choice of what attributes its
10 algorithms should consider in evaluating a particular site, to how much weight each selected
11 attribute should be given by the algorithm, to whether sites should be removed from the index or
12 have their importance reduced. *Search King*, 2003 WL 21464568, at *3. ("[E]very algorithm
13 employed by every search engine is different, and will produce a different representative of the
14 relative significance of a particular web site depending on the various factors, and the weight of
15 the factors, used to determine whether a web site corresponds to a search query."). These
16 editorial decisions imbue Google's web index and the search results it produces with creative
17 expression, rendering the index and results fully subject to copyright protection as a literary
18 work. *See* 17 U.S.C. § 102(a)(1) ("Copyright protection subsists . . . in original works of
19 authorship . . . . Works of authorship include . . . literary works"); *Feist Pub'n, Inc. v. Rural Tel.*
20 *Serv. Co.*, 499 U.S. 340, 348 (1991) ("even a directory that contains absolutely no protectible
21 written expression, only facts, meets the constitutional minimum for copyright protection if it
22 features an original selection or arrangement").

23 Because this is an action against Google based upon its "creation, dissemination,
24 exhibition . . . or other similar promotion of any . . . literary . . . work," the exemption of Section
25 425.17 is inapplicable, and the protections of California's anti-SLAPP statute remain in full
26 force.

27
28

**F.     Google Requests its Attorney's Fees Incurred in Bringing this Motion**

Under Cal. Civ. Proc. Code § 425.16(c), a defendant who prevails on an anti-SLAPP motion "shall be entitled to recover his or her attorney's fees and costs." An award of attorney fees to a prevailing defendant on a special motion to strike is mandatory. *See Pfeiffer Venice Props. v. Bernard*, 101 Cal. App. 4th 211, 215 (2002). An award of attorney's fees is especially appropriate here. Plaintiff filed an original complaint containing the same claims for relief that are subject to this motion. Counsel for Google alerted plaintiff's counsel that these claims lacked merit and that they interfered with Google's free speech rights. Volkmer Decl., Ex. B (March 30, 2006 letter from KinderStart's counsel acknowledging Google's free speech position). Instead of removing these claims in the Amended Complaint, KinderStart continued to pursue them and thereby forced Google to incur the expense of addressing them.

The fees that Google will incur in defense of the claims at issue here cannot be determined until this motion and Google's motion to dismiss are resolved. At that point, Google will submit evidence to support a claim for its expenses at a time and in a manner that is convenient for the Court.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant Google Inc. respectfully requests that the Court grant its anti-SLAPP motion in its entirety.

Dated: May 2, 2006

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ David H. Kramer
       David H. Kramer

Attorneys for Defendant
Google Inc.