1  Gregory J. Yu (State Bar No. 133955)
   GLOBAL LAW GROUP
2  2015 Pioneer Court, Suite P-1
   San Mateo, CA  94403
3  Telephone: (650) 570-4140
   Facsimile:  (650) 570-4142
4  E-mail:  glgroup [at] inreach [dot] com

5  Attorney for Plaintiffs and Proposed Class and Subclasses

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11 | KINDERSTART.COM LLC, a California | Case No. C 06-2057 JF
   | limited liability company, on behalf of itself and |
12 | all others similarly situated, | **OPPOSITION TO DEFENDANT'S**
   | | **SPECIAL MOTION TO STRIKE**
13 | Plaintiffs, | **PURSUANT TO CCP § 425.16**
14 | v. | Judge:    Hon. Jeremy Fogel
   | | Date:     June 30, 2006
15 | GOOGLE, INC., a Delaware corporation, | Time:     9:00 a.m.
   | | Courtoom: 5th Floor, Room 3
16 | Defendant. |

OPPOSITION TO DEFENDANT'S SPECIAL MOTION                    Case No. C 06-2057 JF
TO STRIKE UNDER CCP § 425.16

Dockets.Justia.com

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................1

    A. The Real Motives behind the Motion. ...............................................................1

    B. Issue Presented by the Motion. ..........................................................................1

II. UNDERLYING AND PROCEDURAL FACTS............................................................2

III. THE SPECIAL MOTION FALLS OUTSIDE OF ANTI-SLAPP BOUNDARIES. ...........2

    A. False PageRanks are Commercial Speech, a Clear Exception to Anti-SLAPP. .....................................................................................................3

    B. Blockage Against and PageRank of One Website does not Touch Public Interest or a Public Issue...........................................................................6

    C. Plaintiff has a Probability of Prevailing on Count One (Free Speech)................10

    D. Plaintiff has a Probability of Prevailing on its Count Nine (Negligent Interference Claim). ..........................................................................................10

    E. Plaintiff has a Probability of Prevailing on Count Eight (Defamation and Libel). ..........................................................................................................12

IV. EVEN IF THE MOTION HAS VALID SUPPORT, IT OTHERWISE REQUIRES DISCOVERY FOR COMPLETE AND PROPER RESOLUTION. ............14

V. CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033 (1986) (en banc), *cert. denied*, 485 U.S. 934, 99 L. Ed. 2d 268, 108 S. Ct. 1107 (1988) .................................................................................................. 9

*Board of Trustees, State Univ. of N. Y. v. Fox,* 492 U.S. 469, 474, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989) .................................................................................................. 3

*Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000) ................................ 8

*Du Charme v. International Brotherhood of Electrical Workers, Local 45*, 110 Cal App. 4th 107, 1998, 1 Cal. Rptr. 4d 501 (2003) .................................................................................................. 6

*Global Telemedia International, Inc. v. Does 1-35*, 132 F. Supp. 2d 1261, 1271 (C.D. Cal. 2001) .................................................................................................. 14

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127 (N.D. Cal. 1999) .................................................................................................. 7

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 960-61, 45 P.3d 243, 119 Cal.Rptr.2d 296 (2002), *cert. denied*, 539 U.S. 654, 123 S. Ct. 2554, 156 L. Ed. 2d 580 (2003) .................................................................................................. 3, 4

*Lafayette Morehouse, Inc. v. Chronicle Publishing Company*, 37 Cal. App. 4th 855, 868, 44 Cal. Rptr. 2d 46 (1995) .................................................................................................. 14

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) .................................................................................................. 7

*Riley v. National Federation of the Blind*, 487 U.S. 781, 108 S. Ct. 2667, 101 L. Ed. 2d 669 (1988) .................................................................................................. 3

*Rivero v. American Federation Of State, County And Municipal Employees*, 105 Cal. App. 4th 913, 130 Cal. Rptr. 2d. 81 (2003) .................................................................................................. 3

*Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 171 F.3d 1208, 1217-18 (9th Cir. 1999), *republish.* 190 F.3d 963 (1999), *cert. denied.*, 530 U.S. 1203, 120 S. Ct. 2196, 147 L. Ed. 2d 232 (2000) .................................................................................................. 14

*Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481-82; 115 S. Ct. 1585; 131 L. Ed. 2d 532 (1995) .................................................................................................. 12

*Search King, Inc. v. Google Tech., Inc.* No. CIV-02-1457, 2003 WL 21464568 (W.D. Okla. 2003) .................................................................................................. 9

*Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 763, 48 L. Ed. 2d 346, 96 S. Ct. 1817 (1976) .................................................................................................. 12

*Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132-33 (2003) .................................................................................................. 8

## STATUTES

*CCP* § 425.16(b)(1) .................................................................................................. 2

*CCP* § 425.17(c)(1) ............................................................................................................................ 2

**OTHER AUTHORITIES**

Burkeman O. & Johnson B., "*Google Signals U-Turn over Chinese Site*", The Guardian, June 8, 2006. ........................................................................................................................... 8

## I. INTRODUCTION

### A. The Real Motives behind the Motion.

From conception, this motion is highly questionable  The mere ranking of a Website with an algorithm as PageRank™ is plainly not speech on a "public issue" or a "public interest" matter.  This thinking violates the very heart of what the California legislature intended for anti-SLAPP remedies.[1]  Anti-SLAPP protects free speech, not suppressing and disparaging unsuspecting Websites, whether competitors or otherwise.  When Google recklessly slaps a '0' PageRank onto an innocent Website, this is defamatory commercial speech the site is totally worthless to a visitor.  Meanwhile, when Google imposes wholesale Blockage[2] against Websites, this is illicit conduct and not speech.  Even Google admits to Blockage publicly.

Google theorizes that PageRank is the gravamen of this action.  However, the complaint alleges two independent patterns of wrongful conduct against Websites – Blockage and censorship, and PageRank devaluation.  Therefore, treating PageRank as so-called public "participation" by Google wholly misses the core of two of the three targeted Counts.  It is in fact the wrongful *conduct* of Blockage that activated both Count One on free speech violations [*FACAC* ¶ 107] and  Count Nine on negligent interference [*FACAC* ¶ 174].  Google's misuse of PageRank forms the grounds for Count Eight on defamation and libel [*FACAC* ¶¶ 165, 166].  As to all counts here, speech on public matters is totally missing.  When properly understood, Google's near obliteration of a nationwide class of Websites requires nothing short of full discovery, class certification, resolution on the merits, and proper relief.

### B. Issue Presented by the Motion.

Does a search engine's Blockage or PageRank devaluation against Websites without any notice or business justification truly a public issue or public interest matter deserving of anti-SLAPP protection against a suit alleging (1) violation of the Websites' *independent* free speech rights, (2) defamation and libel, and (3) negligent interference?

---

[1] Anti-SLAPP refers to a preemptive strike against a "Strategic Lawsuit Against Public Participation", first codified under California Code of Civil Procedure ("CCP") §§ 425.16 *et seq.*

[2] "Blockage" is defined as "Google's temporary or permanent blocking of websites" in the First Amended Class Action Complaint ("*FACAC*"), ¶ 3.  Other labels include de-indexing, de-listing and censorship of websites.

OPPOSITION TO DEFENDANT'S SPECIAL MOTION                                                                  Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16                              - 1 -

## II. UNDERLYING AND PROCEDURAL FACTS

Google is a worldwide, commercial enterprise enjoying a market capitalization of over $100 billion. It search engine drives up to 99% of its U.S. advertising revenues, which eclipsed $3.3 billion in 2005. Google has made PageRank a *de facto* standard for the relevance, worth or value of any given Website or Webpage. [*FACAC* ¶¶ 32-33, 56.] Like Google, plaintiff KinderStart.com LLC ("KSC") itself is a search engine and index, so they are compete within the same industry. During the relevant period, Google persistently saddled www.kinderstart.com ("KS.com") with a '0' PageRank in spite of its 20,000-plus Webpage links. *See Declaration of Victor B. Goodman* ("Goodman Dec."), attached as Exhibit 1 hereto, ¶ 4; *Declaration of Randall McCarley* ("McCarley Dec.") , attached as Exhibit 2 hereto, ¶ 4. Contrary to the motion, Google knows and represents that PageRank is a mathematical calculation and algorithm of hyperlinks -- "automatically" generated. A PageRank of '0' is provably false. To a large degree, all essential facts about PageRank calculation rest within the control of Google and nowhere else. Therefore, only in the remote chance that this motion goes forward, meaningful discovery is first necessary.

## III. THE SPECIAL MOTION FALLS OUTSIDE OF ANTI-SLAPP BOUNDARIES.

After 10 years of California's anti-SLAPP law, Governor Davis signed into law CCP § 425.17, which states in subsection (a) that "a disturbing abuse of Section 425.16 . . . has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16." Anti-SLAPP is *not* available for any "statement or conduct consists of representations of fact about that person's or a business competitor's business operations." *CCP* § 425.17(c)(1). Google's disparaging PageRanks of and against KSC fall precisely into this. A concrete anti-SLAPP motion carries the dual threshold of two elements for success: (i) The defendant must have been engaged in "an act in furtherance of a person's right of petition or free speech under the United States Constitution or California constitution in connection with a public issue"; and (ii) Once the first condition is satisfied, the plaintiff must fail to establish that there is a probability of prevailing on the underlying cause of action. *CCP* § 425.16(b)(1). If defendant cannot pass the first

threshold, a court need not pass on the probability of success on the merits. *Rivero v. American Federation Of State, County And Municipal Employees*, 105 Cal. App. 4th 913, 130 Cal. Rptr. 2d. 81 (2003).

### A. False PageRanks are Commercial Speech, a Clear Exception to Anti-SLAPP.

This motion should stop in its tracks because PageRank is commercial speech undeserving of an Anti-SLAPP remedy. Excluded actions by statute cover:

> (c) any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . arising from any statement or conduct by that person if both of the following conditions exist
>
> (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.
>
> (2) The intended audience is an actual or potential buyer or consumer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . notwithstanding that the conduct or statement concerns an important public issue.

*CCP* § 425.17(c )(1) & (2)

At common law, three elements define commercial speech: (1) the speaker is engaged in commerce, (2) an intended commercial audience is present; and (3) representations of fact are commercial in nature. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 960-61, 45 P.3d 243, 119 Cal.Rptr.2d 296 (2002), *cert. denied*, 539 U.S. 654, 123 S. Ct. 2554, 156 L. Ed. 2d 580 (2003). The fact that Google harbors some altruistic motive behind PageRank, site indexing, or Blockage is immaterial and does not convert its statements or conduct into noncommercial speech. Intertwined commercial and noncommercial speech does not make the speech the latter for First Amendment protection. The U.S. Supreme Court addressed this succinctly in two cases. *Riley v. National Federation of the Blind*, 487 U.S. 781, 108 S. Ct. 2667, 101 L. Ed. 2d 669 (1988) (speech was related only to regulating charitable solicitations); *Board of Trustees, State Univ. of N. Y. v. Fox,* 492 U.S. 469, 474, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989) (speech with both commercial and noncommercial elements not intertwined, unless there is legal or

practical compulsion to combine them).

The highest court in California stated, "[s]peech is commercial in its content if it is likely to influence consumers in their commercial decisions." *Kasky, supra*, 27 Cal.4th at 969. PageRank is a whole number affixed automatically to millions of Websites and Webpages. The Court needs to look no further than Google's publicly filed Form 10-K in 2004: "The search for information often involves an interest in commercial information – researching a purchase, comparing products and services or actively shopping. *We help people find commercial information through our search services and advertising products.* (Emphasis added.) With over $3.3 billion in search-led advertising revenues in the U.S. during fiscal 2005, Google is unquestionably engaged in "commerce." Its business and revenues have yielded tremendous value to its shareholders and partners on the Internet for this publicly-traded entity. The formula here is clear. Search begets traffic to Websites; increasingly visible Websites gain hyperlinks and higher PageRanks; sales, purchases and search ad revenues mean more commerce for all.

The requirement under CCP § 425.17(c) looks at whether the speaker is engaged in "selling" goods or services. Google is plainly in the business of generated Web traffic through its search engine. Under Google's rather tortured reading of anti-SLAPP, every single media firm, television station or newspaper that gives away "free" content, Web traffic, shows or articles could be guaranteed an escape from the state legislature's carve-out of CCP § 425.16 for speech and conduct by such firms against any and all of their competitors. However, Google's own 10-K of 2004 refers to its "advertising products", which is an admission that Google indeed sells goods or services. Moreover, media and information firms occupy a preferred position in society in that they control and disseminate news and information to the public. In essence, they can literally make any subject, topic or act a "public issue." Without the effective check and balance of § 425.17, media and information firms as Google could insulate themselves from any defamation action in California or any other anti-SLAPP state by merely publishing the underlying conduct or statement in the name of "public interest." Section 425.17 gives a claimant as KSC the right to at least begin defending its own free speech and other rights against Google, which sells advertising and is fully engaged in the Internet advertising business.

OPPOSITION TO DEFENDANT'S SPECIAL MOTION                                    Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16                    - 4 -

The first statutory condition of CCP § 425.17(c) is met. PageRank is a representation of fact against a competitor, KSC, and its Website and Internet services. Commercial speech happens in the course of delivering the person's goods or services. Google uses AdWords[3] with perennial success and gains. Google's Toolbar can be affixed on top of every site visited by a browser. Upon entering key words in the search bar and viewing results, the visitor sees the AdWords sponsored links on the top and right margins of the framed Webpage. Any linked site clicked through would also show the ToolBar where Google automatically presents a PageRank simply when the mouse moves onto PageRank in the ToolBar. PageRank accompanies the delivery of services in the form of AdWords advertising links of Google to the advertiser and the user. The financial and marketing link among Google's search results, PageRank, and sponsored-link advertising for both the user and advertiser is unmistakable.

The second condition for the commercial speech exception is also easily satisfied. The audience here needs to include "an actual or potential buyer or consumer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer." When evaluating other websites as potential link partners to further market their own goods and services, any given site will turn immediately to PageRanks of these other sites. It has been shown that "over 90% of search marketers place advertising with Google for their Websites." [*FACAC* ¶ 55.] PageRank goes to a core value of advertising for Google. By way of example only, one particular Website (a potential Class member) recounts in detail how its depressed PageRank of '0' from Google was seen and "repeated" by others, thereby influencing potential partners and buyers to refuse to do business at all or anymore with this defamed Website. [*Declaration of Glenn Canady*, attached as Exhibit 3 hereto, ¶¶ 3, 5.] Certainly wary and misled

---

[3] An appreciation for how AdWords works is in order. When a search user sees listings on results pages proffered by Google, she will naturally see opportunities to choose the products and services of any favorably ranked site, in addition to seeing a "PageRank" for the site she clicks through. Alternatively, sponsored links on results are almost all about commerce and sales. No search user will ever click and purchase something from a given Website, unless she used Google's engine in the first place and was carried to the automatically generated search results and a host of "sponsored links". If she clicks through a "sponsored link" of a Google AdWords advertiser, that means revenue straight to Google, as paid by the sponsor. So all the traffic into Google's search engine naturally draws the interest and funds of advertisers. Google is in the business of selling its services, which is ad space on its search results pages. Plainly, this is commerce.

OPPOSITION TO DEFENDANT'S SPECIAL MOTION    Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16          - 5 -

sites viewing a deflated PageRank are potential buyers of AdSense, AdWords, and other services and products from Google.

As both conditions of CCP § 425.17(c) are fully satisfied, it becomes inconceivable that anti-SLAPP works for this defendant, particularly when deflated PageRanks often accompany Blockage and censorship of the very same site. The motion should be denied immediately, simply based on the commercial speech exception.

### B. **Blockage Against and PageRank of One Website does not Touch Public Interest or a Public Issue.**

Even if Google's "speech" and wrongful conduct is not deemed commercial speech, this motion fails because Google cannot pretend its way into a public issue or controversy with a mathematical formula or a new brand of censorship. Counts One and Nine properly survive the motion they are grounded in Blockage, *not* PageRank. There, Plaintiffs challenge conduct, not speech. Acts of censorship cannot possible be a free speech exercise because under anti-SLAPP censorship is not "participation" in any sense. Count Eight, based on PageRanking for Websites, does not revolve around a public issue or public interest.

Only two of the four classifications of public speech under CCP § 425.16(e) offer meager grounds for protection. For clause (3) (statement on public interest interest issue) and clause (4) (other conduct on public issues or public interest) to apply, a court must focus precisely on a matter of public interest. It is not enough that speech occurred in public or was published but what is to be protected speech under the statute. A recent California Court of Appeal enunciated the boundaries of such speech:

> We therefore hold that in order to satisfy the public issue/issue of public interest requirement of section 425.16, subdivision (e)(3) and (4) of the anti-SLAPP statute, in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance.

*Du Charme v. International Brotherhood of Electrical Workers, Local 45*, 110 Cal App. 4th 107,

OPPOSITION TO DEFENDANT'S SPECIAL MOTION         Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16         - 6 -

1  1998, 1 Cal. Rptr. 4d 501 (2003) (emphasis in original).  The requirement of public interest is
2  not that something was made public.  The Court of Appeal properly pinpointed the underlying
3  purpose of anti-SLAPP – a cause of action should be stricken only if the activity realizes the
4  public policy of encouraging "participation" in public issues.  The legislative intent is plain – an
5  issue means something is being disputed and of public concern.  Speech and conduct should be
6  protected when linked to an "ongoing controversy, dispute or discussion."  *Id.*

7        Contrary to Google's theory, the dissemination of information over the Internet in public
8  does not make a certain act or statement a public issue or one of public interest.  Only when the
9  Internet speech relates to matters of public importance is CCP § 425.16 proper.  The Central
10 District in *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090  (C.D. Cal. 2004), correctly applied
11 anti-SLAPP to speech about Ad-aware.  Although Google relies on *Lavasoft* for the motion,
12 New.Net and Lavasoft were simply not competitors in any sense.  The Court handily confirmed
13 an ongoing public controversy brewing at the time -- the surreptitious, pernicious downloading
14 of software (of *plaintiff* New.Net's own creation) that invades one's PC privacy.  KSC has done
15 nothing of that sort to generate *any* controversy whatsoever.

16       Anti-SLAPP motions are particularly suspect where the so-called speech is itself
17 defamation against a competitor.  The Northern District in *Globetrotter Software, Inc. v. Elan*
18 *Computer Group, Inc.*, 63 F. Supp. 2d 1127 (N.D. Cal. 1999), cited by Google, actually supports
19 denial of this motion.  There, anti-SLAPP was denied *prior to* the enactment of the section
20 425.17 commercial speech exception enacted in 2003.  The court properly denied the motion
21 because public interest could not be associated with potentially libelous statements by a
22 competitor.  *Id.*, at 1130.  KSC and Class members are tackling defamatory PageRanking from
23 the very largest of competitors.  As in *Globetrotter*, public interest is nowhere in sight.

24       In fact and at law, Google offers no such public "controversy, dispute or discussion"
25 encircling PageRank.  All seven Court of Appeal cases cited by Google on public interest
26 involve or cover some topic or activity that garnered media attention.  For PageRanks of millions
27 of Websites displayed on Google's Toolbar, on one "speaks" of public interest.  If pressed to
28 demonstrate its "public participation" as to PageRank, Google's has even less to say.  It cannot

OPPOSITION TO DEFENDANT'S SPECIAL MOTION                                    Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16            - 7 -

1  even point to any harm akin to New.Net that has been propounded by KS.com, a parents and

2  kids-oriented site.  Further, the motion is completely silent on Blockage as a "public issue" or

3  Google's "participation" on the issue.

4        Google cannot suddenly make out a public ranking system to be a "public interest"

5  matter.  The fact that this free speech and defamation defendant is in the business of public

6  information does not *ipso facto* convert any and all of its conduct and communications into anti-

7  SLAPP speech.  Google's motion merely advances the ubiquitous belief that search engines are

8  helpful to find online content.  The very importance of search engine use or of Web content on

9  the Internet is not in dispute here.  Dialogue about censorship and Blockage,[4] can be a matter of

10  public interest, but not the censorship itself.

11        The real issue for the Anti-SLAPP Motion then is Blockage and censorship of Websites

12  as conduct, not speech as Google would prefer.  Other than this suit itself brought by KSC, the

13  motion brought by Google is glaringly devoid of any genuine public controversy or discussion

14  concerning KSC's PageRank or PageRank in general.  [*Goodman Dec.*, ¶ 5.]  Indeed, there are

15  millions of Websites that automatically are assigned a PageRank.  No participation concerning a

16  public issue is really at risk for Google.  The sum total of speech here is a commercially-driven

17  numerical value that about a competitor's Website. That is all.  If the case proceeds on the merits

18  of KSC's free speech, defamation and related claims, Google is in no way "chilled" to use

19  speech to engage in public policymaking, public participation, or political activity.

20        In *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000), the Court

21  of Appeal granted anti-SLAPP protection to a residential management organization because its

22  statements tied directly to how the planned community was handling the living conditions of a

23  very interested group – the residents of the community.  Another Court of Appeal noted that

---

[4] Google could argue now in its reply that Blockage is actually "speech" under anti-SLAPP.  If Google now engaged in public debate or participation about censorship or Blockage of Websites here in the U.S. (as it did so with censorship of sites on www.google.cn before Congress -- *see Plaintiffs' Motion for Preliminary Injunction*, on file herein, p. 23, n.11), it should remain free from SLAPP actions.  But censorship in the form of Blockage against Class members cannot possibly be considered free speech for anti-SLAPP purposes.  Even Google now as decided to reconsider the censorship (aka Blockage) it imposes on sites in China.  Burkeman O. & Johnson B., "*Google Signals U-Turn over Chinese Site*", The Guardian, June 8, 2006.
http://www.guardian.co.uk/china/story/0,,1792638,00.html#article_continue (*visited* Jun. 8, 2006)

OPPOSITION TO DEFENDANT'S SPECIAL MOTION                                               Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16                     - 8 -

public interest is not "mere public curiosity or a broad amorphous public interest", but some "political, legal or criminal controversy" at stake. *Weinberg v. Feisel*, 110 Cal. App. 4th 1122 , 1132-33 (2003). For Google, its '0' PageRank of KS.com is out in public, but a select group of stakeholders dealing with some level of controversy is completely missing here.

Defendant urges liberal use of *Search King, Inc. v. Google Tech., Inc.* No. CIV-02-1457, 2003 WL 21464568 (W.D. Okla. 2003), even going as far to label it as "precedent" for this motion. However, *Search King* bears only nominal relevance, if any, here. First, it is an unreported and unpublished decision of another court outside the Ninth Circuit, which cannot serve as precedent here. Any findings of fact made from the Western District of Oklahoma in *Search King* regarding PageRank do not bind this Court's assessment of speech concerning Blockage of Websites or the '0' PageRank here. The Ninth Circuit under *Wyatt v. Terhune*, 315 F. 3d 1108, 1113-14 (9th Cir. 2002) held that one court may not accept as true the factual findings of another court. Here, the veracity of PageRank is surely in dispute between the parties as a factual matter, and should not lead this Court to simply adopt a factual finding in the unreported decision of *Search King*.[5] Further, that case was decided under Oklahoma state common law where the same defendant as here used the First Amendment as an affirmative defense. The court was not faced with anti-SLAPP, a California-law based procedural tool to strike plaintiff's claim prior to any discovery or even an answer to the complaint.[6]

Defendant also cites *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033 (1986) (en banc), *cert. denied*, 485 U.S. 934, 99 L. Ed. 2d 268, 108 S. Ct. 1107 (1988), where the California Supreme Court protected the First Amendment right of a newspaper to omit an author's book from its best sellers list. This decision, however, was rendered prior to California's anti-SLAPP law in 1993, which requires that the speech cover a public issue or matter of public importance. Excluding an item from a best sellers list is hardly a public issue. At best, *Blatty* is relevant on the ultimate merits of KSC's negligent interference claim, but it fails to support an anti-SLAPP motion as a

---

[5] Federal Rule of Evidence 201 allows judicial notice of a fact not subject to reasonable dispute if (1) "generally known" within the territorial jurisdiction of the trial court and (2) capable of accurate and ready determination.
[6] An additional factor makes *Search King* inapposite in this case because a motion to strike fails where the speech claimed is commercial rather than noncommercial speech under CCP § 425.17, as discussed in Section III.A, *supra*.

1  procedural remedy at this juncture of the case.

### C. Plaintiff has a Probability of Prevailing on Count One (Free Speech).

It is clear that Google's acts and omissions under Count One alleged by plaintiff are not about PageRank as commercial speech but focus on Google's wrongful conduct of Blocking and censoring Websites.  Commercial speech that is demonstrably defamatory with PageRank enjoys no First Amendment or free speech protection.  As to Blockage of Websites, the Anti-SLAPP motion is silent on where Google's speech lies, if any, behind censorship and banning of sites.  Even if Google were to now to somehow carry the burden of establishing that Blockage is protectible speech on a public issue, Plaintiff amply establishes that its free speech claim under both the Federal and California Constitutions have a "reasonable probability" of success through its Motion for Preliminary Injunction against Further Free Speech Violations (the "Injunction Motion") on file herein May 26, 2006.  In support of Plaintiffs' likelihood of success on the merits of free speech violations alleged in Count One, Plaintiffs incorporate by reference herein the argument and points and authorities set forth in Section III.A of their concurrently filed Opposition to Defendant's Motion to Dismiss.

### D. Plaintiff has a Probability of Prevailing on its Count Nine (Negligent Interference Claim).

For negligent interference, a defendant's conduct is blameworthy if "it was *independently wrongful* apart from the interference itself." *Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1187 (1998).  Prior to Count Nine, the Amended Complaint alleges eight other counts that Blockage and/or PageRank constitute Federal and state law violations against Plaintiffs.  For example, in the factual allegations, Plaintiffs allege that with PageRank and Blockage, Google acted as a monopolist and hurts competitors.  *FACAC* ¶¶ 3, 58.  It is therefore unmistakable that "independently wrongful" conduct is present.  With a probability of success on any of these other eight counts against Google (including Count One *supra* and Count Eight *infra*), then Count Nine should remain intact.

Google's acts and omissions under Count Nine alleged by plaintiff are not about PageRank as commercial speech but about Blockage of sites.  Even if Google were to now to

carry the burden of establishing that Blockage is protectible "public issue" speech, this claim is clearly viable and likely to be successful.  Plaintiffs' negligent interference claim relates to Blockage of a multitude of Websites.  *FACAC* ¶ 174.  Naturally, Blockage and censorship of sites normally is outside of a contract between any such sites that are Blocked and Google.  As traffic to certain sites falls or completely drops by the acts of Google, Count Nine properly alleges KSC and Plaintiffs as Class members experienced sudden and ongoing Blockage of their sites.  *FACAC* ¶ 66.  Google publicly acknowledges Blockage [*FACAC* ¶ 64], and is attempting to explore and deal with the problem of Blockage of undeserving Websites [FACAC ¶ 65; *Attachment of Matt Cutts Blog* to *Declaration of Randall McCarley* attached as Exhibit 4, to the Injunction Motion.]   The purported value of AdSense to a particular site is directly tied to the amount of search engine use and traffic of other sites that refer to and that are back-linked to the AdSense advertising site.

> "Every day we serve millions of users who know our no-paid-inclusions policy means they're getting totally unbiased results. And the better user experience that Google search offers means your visitors will spend more time on your site and return more often. Google AdSense combines Google's search technology with thousands of keyword advertisers to deliver targeted text-based ads to search result pages.

https://www.google.com/adsense/ws-overview (visited June 7, 2006).

Google could easily foresee the harm to plaintiffs from the negligent interference. Plaintiff amply demonstrates that (1) its revenues are derived principally from AdSense revenue that is paid by third-parties as browsers who click-through on ads posted on KS.com , and (2) those revenues are a function of the level and degree of page views as brought through traffic and referrals coming through search engines as Google.  [*Goodman Dec.*, ¶ 4.]  Google's Blockage of KS.com, even if accidental or negligent, denied valuable traffic to KSC's site.  Since Google could clearly foresee that revenues payable to KSC with AdSense would fall with the decline in traffic caused by Blockage, KSC is likely to prevail for relief here.

Negligent interference by Google, then, refers to all of the sites that should regularly and organically lead users, either through Google's search engine, or by click-throughs by a site's link partners.  Therefore, Blockage by Google affecting hundreds and perhaps thousands of

1  Websites that may not necessarily have a contractual relationship through Websites with
2  AdWords. It is the collective Blockage of sites that link to those sites carrying AdSense ads with
3  Google that constitutes the alleged negligent interference by Google. Affected Websites on the
4  Internet, including those of Class members are link partners by agreement. When Google uses
5  Blockages to arbitrarily cut off traffic to these sites, that indeed is interference. Discovery on
6  Blockage will confirm Google's interference and harm among hundreds of interdependent,
7  linked sites of California Subclass II Class members.

### E. Plaintiff has a Probability of Prevailing on Count Eight (Defamation and Libel).

Defamation occurs when a statement made is provably false. In *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481-82; 115 S. Ct. 1585; 131 L. Ed. 2d 532 (1995), the Supreme Court held that alcoholic content of a beverage was indeed commercial speech that had only limited First Amendment protection. The Court recognizes a "particular consumer's interest in the free flow of commercial information . . . may be as keen, if not keener by far, than his interest in the day's most urgent political debate." *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 763, 48 L. Ed. 2d 346, 96 S. Ct. 1817 (1976).

Despite Google's generous use of the unreported decision of *Search King* and its claim of PageRank as subjective, PageRank is, and always has been, supposedly an "automatically generated" number between '0' and '10' based on an algorithm. Just as the commercial speech of "alcohol content" in *Coors Brewing* is ultimately verified by science and math, the same can be said of Google's PageRank, which is the numerical output a computer algorithm performed on KS.com and Websites of other Class members. Google seeks to cast PageRank a mere subjective human opinion but that completely belies PageRank's eight-year history. The original U.S. patent (No. 6,285,999 issued on September 4, 2001) behind PageRank states in claim 1 that it is a "computer implemented method of scoring a plurality of linked documents." It is a computer, not a human, doing the processing. The fact that the computation may be complex does not, as a matter of law, make PageRank as to KS.com or any other Website of the Class incapable of factual or mathematical verification. Therefore, the statement by the *Search*

OPPOSITION TO DEFENDANT'S SPECIAL MOTION                                    Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16          - 12 -

1  *King* judge that "PageRanks are opinions"[7] falls short of stating that it is impossible to verify
2  accurate PageRank for a given Website. If PageRank was conceived as an patented invention to
3  calculate the number of hyperlinks among Websites, it is conceivable to verify whether a '0'
4  PageRank for KS.com is indeed the proper result of the PageRank algorithm. That is far
5  different when the *Search King* judge said that it is not "conceivable" to prove the falsity of
6  "relative significance" of a Website. The judge did not address the calculation of PageRank
7  itself as whole number.

8      In addition, Google encourages each visitor to its site to "[u]se Toolbar's PageRank™
9  display to tell [her] how *Google's algorithm's* assess the importance of the page you're
10  viewing." *FACAC* ¶ 32 (emphasis added). This at least is Defendant's representation that an
11  "algorithm", not a person or editorial board, determines PageRank. Google is surely motivated
12  to stress the automation and objectivity behind the PageRank system. It knows true (or at least
13  apparent) objectivity and accuracy will induce greater use, visits and advertising revenues
14  associate with search results. Further, a higher PageRank for any given site can generate more
15  traffic and indeed revenue for that site.

16      Finally, when a site as KS.com has over 20,000 back links, a PageRank of '0' is quite
17  impossible mathematically. [*McCarley Dec.*, ¶ 4.] Even to the uninformed or layperson, with
18  the content appearing on KS.com and the amount of Web traffic earned up to March 2005, a
19  "relative significance" of nothing. The word "zero" as a noun mathematically means "a cardinal
20  number indicating the *absence* of any or all units under consideration, or "an argument at which
21  the value of a function *vanishes*," and as an adjective if informally means "absent, inoperative,
22  or *irrelevant* in specified circumstances." www.dictionary.com, *defining* "zero" (emphasis
23  added). A PageRank of '0' for KS.com is false under any sensible interpretation. Accordingly,
24  plaintiff KSC clearly does establish a reasonable probability of success that Google's assignment
25  and publication of a '0' PageRank for KS.com is both defamatory and libelous, causing serious

---

27  [7] PageRank, in operation, is the output of a series of computational steps. If the PageRank algorithm yields, for example, a '5', Google should not somehow override that computation by placing a '0' in the PageRank Toolbar for
28  display. As to what a browser or user may think of a '0' or '5' PageRank – that is when and where the "opinion" of relative significance of the site emerges.

OPPOSITION TO DEFENDANT'S SPECIAL MOTION                                  Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16     - 13 -

harm to plaintiff as alleged in the FACAC.

## IV. EVEN IF THE MOTION HAS VALID SUPPORT, IT OTHERWISE REQUIRES DISCOVERY FOR COMPLETE AND PROPER RESOLUTION.

A CCP § 425.16 motion should not proceed in certain cases where all the facts lie within the purview and control of a defendant seeking to strike the cause of action. One Federal Court in this Circuit held:

> if a defendant desires to make a special motion to strike based on the plaintiff's lack of evidence, the defendant may not do so until discovery has been developed sufficiently to permit summary judgment under Rule 56. Once the nonmoving party has been given the opportunity to conduct discovery, the special motion can be heard and attorney's fees will be available as provided in § 425.16(c).

*Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999) (*citing United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 171 F.3d 1208, 1217-18 (9th Cir. 1999), *republish.* 190 F.3d 963 (1999), *cert. denied.*, 530 U.S. 1203, 120 S. Ct. 2196, 147 L. Ed. 2d 232 (2000). Certainly, under *Global Telemedia International, Inc. v. Does 1-35*, 132 F. Supp. 2d 1261, 1271 (C.D. Cal. 2001), discovery is not meaningful where the evidence sought is irrelevant to the issue of fact or opinion of the speech in question. One key example for the need for plaintiff's discovery prior to adjudication of an anti-SLAPP motion is where essential knowledge held by the defendant or available witnesses to support plaintiff's case in chief are not yet obtained. *Lafayette Morehouse, Inc. v. Chronicle Publishing Company*, 37 Cal. App. 4th 855, 868, 44 Cal. Rptr. 2d 46 (1995).

PageRank, originating from one of Google's founders, is the result of a computer algorithm known only to Google. The means and method of computing PageRank for KS.com and all the Websites of other Class members is performed exclusively by Google on its own computers with its own staff of engineers. For these reasons, the test of whether PageRank is chosen by a human decision-maker on a case-by-case basis or generated by an algorithm within a computer is only ascertained by reasonable discovery of Google's business processes and data for KSC and this Court to consider. Such discovery addresses the factual dispute underlying the defamation claim whether PageRank is an opinion or a provably false statement of value. Procedurally, if Google believes there is no merit to the defamation count, the court ought to

OPPOSITION TO DEFENDANT'S SPECIAL MOTION  Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16            - 14 -

allow discovery on the disputed factual issue prior to deciding on the likelihood of success. Further, it makes entirely equitable sense. When a defendant as Google would use an extraordinary weapon as anti-SLAPP to continue defaming a competitor with a '0' PageRank as in the case of KSC, it would be patently unfair to block the truth behind a calculation of '0' PageRank which lies in the hands of no other actor but Google. Accordingly, Plaintiff KSC is prepared to notice and file a Motion for Discovery of Facts behind PageRank determination.

## V. **CONCLUSION**.

Plaintiff's causes of action at issue in no way discourage or hinder public participation or discussion by Google on important public issues. A grant of this anti-SLAPP motion would not merely overstep legislative intent. It would perpetuate the defeat of free speech by a once thriving, robust Website and competing search engine. PageRank is commercial speech used in a defamatory manner. Blockage is not even speech. Therefore, plaintiff KSC urges that the Court deny the motion in its entirety. If there is any serious factual issue required to establish the likelihood of success on the defamation count, KSC requests a continuance of the motion to allow sufficient discovery concerning PageRank.

Dated:  June 9, 2006                              GLOBAL LAW GROUP

                                                  By:____s/s Gregory J. Yu_____
                                                        Gregory J. Yu, Esq.
                                                  Attorney for Plaintiff KinderStart.com LLC and
                                                        for the proposed Class and Subclasses