| | |
|---|---|
| 1 | DAVID H. KRAMER, State Bar No. 168452 |
|   | LISA A. DAVIS, State Bar No. 179854 |
| 2 | BART E. VOLKMER, State Bar No. 223732 |
|   | WILSON SONSINI GOODRICH & ROSATI |
| 3 | Professional Corporation |
|   | 650 Page Mill Road |
| 4 | Palo Alto, CA 94304-1050 |
|   | Telephone: (650) 493-9300 |
| 5 | Facsimile: (650) 565-5100 |
|   | DKramer@wsgr.com |
| 6 | |
| 7 | JONATHAN M. JACOBSON |
|   | WILSON SONSINI GOODRICH & ROSATI |
| 8 | Professional Corporation |
|   | 12 East 49th Street, 30th Floor |
| 9 | New York, NY 10017-8203 |
|   | Telephone: (212) 999-5800 |
| 10 | Facsimile: (212) 999-5899 |
|   | JJacobson@wsgr.com |
| 11 | Attorneys for Defendant |
|   | Google Inc. |
| 12 | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| KINDERSTART.COM, LLC, a California limited liability company, on behalf of itself and all others similarly situated, | ) ) ) | CASE NO.: C 06-2057 JF (RS) |
| | ) ) | **REPLY IN SUPPORT OF DEFENDANT GOOGLE INC.'S SPECIAL MOTION TO STRIKE PURSUANT TO CCP § 425.16** |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Before: Hon. Jeremy Fogel |
| GOOGLE INC., a Delaware corporation, | ) ) | Date: June 30, 2006 |
| | ) ) | Time: 9:00 a.m. |
| Defendant. | ) ) | Courtroom: 3 |
| | ) ) ) ) | |

REPLY I/S/O GOOGLE'S MOTION TO STRIKE
CASE NO. C 06-2057 JF (RS)

Anti-SLAPP Reply.doc

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    A.    KinderStart's Claims for Relief "Arise From" Google's Exercise of its Free Speech Rights ................................................................................................. 2

    B.    Google's Speech Concerns a Matter of Public Interest ......................................... 3

        1.    The Public Interest Requirement Is Satisfied Whether KinderStart's Action Challenges Google's Expression About Sites in General or Its View on KinderStart's Site Alone. ......................................................... 3

        2.    KinderStart's Discussion of a Public Controversy Requirement is Inapposite. .................................................................................................. 6

    C.    The Commercial Speech Exception to the Anti-SLAPP Statute is Inapplicable. ........................................................................................................ 7

        1.    The Commercial Speech Exception is Inapplicable Because Google is Engaged in the Creation and Dissemination of a Literary Work. ........... 7

        2.    The Commercial Speech Exception is Inapplicable Because Google's Speech Consists of Opinions Not Facts. ..................................... 8

    D.    KinderStart Cannot Demonstrate a Probability of Prevailing on its Claims ......... 11

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569 (2005) .................................................................. 5

*Blatty v. New York Times Co.*, 42 Cal. 3d 1033 (1986) ............................................................. 2, 3, 8

*ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993 (2001) ...................................................... 6

*Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468 (2000) ...................................... 3, 5

*Du Charme v. Int'l Bhd. of Elec. Workers, Local 45*, 110 Cal. App. 4th 107 (2003) ................. 6, 7

*Fontani v. Wells Fargo Invs., LLC*, 129 Cal. App. 4th 719 (2005) .................................................. 5

*Found. for Taxpayer & Consumer Rights v. Garamendi*,
    132 Cal. App. 4th 1375 (2005) .................................................................................................. 8

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
    63 F. Supp. 2d 1127 (N.D. Cal. 1999) ................................................................................... 5, 6

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*,
    515 U.S. 557 (1995) .................................................................................................................... 3

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, --- Cal.Rptr.3d ---, No.
    G036080, 2006 WL 1629391 (Cal. App. 4 Dist. June 14, 2006) .......................................... 5, 7

*Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*,
    175 F.3d 848 (1999) .................................................................................................................... 9

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) ...................................................................................... 8

*Lomax v. Sellenthin*, No. C98-2588, 1999 WL 281120 (N.D. Cal. Apr. 26, 1999) ........................ 8

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ............................................ 4, 8

*Scognamillo v. Credit Suisse First Boston LLC*, No. C03-2061,
    2005 WL 2045807 (N.D. Cal. Aug. 25, 2005) .......................................................................... 8

*Search King, Inc. v. Google Tech., Inc.,* No. CIV-02-1457, 2003 WL 21464568
    (W.D. Okla. May 27, 2003) ...................................................................................... 6, 7, 9, 10, 11

*Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798 (2002) ......................................................... 5

*Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226 (1999) ................................................. 5

*Wood v. McEwen*, 644 F.2d 797 (9th Cir. 1981) ........................................................................... 11

*Wooley v. Maynard*, 430 U.S. 705 (1977) ...................................................................................... 3

## STATUTES

Cal. Civ. Proc. Code § 425.16(b)(1) .................................................................................... 11

Cal. Civ. Proc. Code § 425.16(e)(4) ...................................................................................... 3

Cal. Civ. Proc. Code § 425.16(g) ......................................................................................... 11

Cal. Civ. Proc. Code § 425.17(c) .................................................................................. 7, 8, 9

Cal. Civ. Proc. Code § 425.17(c)(1) ...................................................................................... 8

Cal. Civ. Proc. Code § 425.17(d)(2) ...................................................................................... 8

## MISCELLANEOUS

Eric Goldman, *Search Engine Bias and the Demise of Search Engine Utopianism*,
    Yale Journal of Law and Technology 111 (Spring 2006) ............................................ 9, 10

**INTRODUCTION**

In its opening brief, Defendant Google demonstrated that plaintiff KinderStart's claims in this action, particularly its free speech, defamation and tortious interference claims, arise from Google's exercise of its First Amendment rights. Google also established that its views on the relative importance of websites, expressed through its search results and in PageRank, constitute speech by Google on a matter of public interest. As Google explained, under California's anti-SLAPP statute, its showing, and KinderStart's inability to establish a probability of success on its claims, warrant striking the claims and awarding Google the expenses it incurred in addressing them.

KinderStart's rambling opposition ignores much of Google's showing and fails to rebut any of it.

**<u>KinderStart's claims arise from Google's exercise of its free speech rights</u>**. As Google demonstrated in its opening brief, both the search results it chooses to display and the PageRanks it assigns to sites constitute Google's protected expression. KinderStart admits that its claims against Google arise from Google's search results and PageRanks. Google has thus satisfied the requirement that KinderStart's claims arise from Google's speech. KinderStart's repeated assertion that Google only addressed PageRank in its moving papers is bewildering and wrong.

**<u>Google's speech concerns a matter of public interest</u>**. Untold millions of people rely upon Google for its opinions about the relative importance of websites; KinderStart challenges Google's right to speak to the public on these matters. The statutory requirement that Google's speech concern a matter of public interest is thus satisfied. The requirement remains satisfied even if the case were deemed to concern Google's view of only KinderStart's site, as KinderStart claims the site was viewed millions of times a month and that a substantial majority of these viewers were influenced by Google's opinion. Separately, the proposition advanced by KinderStart, that Google's speech must be directed to a matter of ongoing controversy, is simply false, as that requirement is triggered only where speech is directed to a small segment of the public, not the public at large.

REPLY I/S/O GOOGLE'S MOTION TO STRIKE         -1-                      Anti-SLAPP Reply.doc
CASE NO. C 06-2057 JF (RS)

**Google's speech does not fall within the "Commercial Speech" exception to the anti-SLAPP statute**. While purporting to rely on the commercial speech exception to the anti-SLAPP statute, KinderStart offers no response whatsoever to the fact that the exception is inapplicable because Google's speech take place in the context of its creation and dissemination of a literary work. KinderStart's failure to respond on this point amounts to a concession. While the Court need go no further, the commercial speech exception is also inapplicable because Google's views about the relative importance of websites are matters of opinion, not fact.

**KinderStart has not demonstrated a probability of prevailing on its claims**. As set forth in detail in Google's accompanying motion to dismiss, KinderStart's claims not only lack a probability of success, but actually fail as a matter of law. At bottom, KinderStart cannot overcome the First Amendment protection accorded to Google's speech. But KinderStart's claims suffer from additional fatal deficiencies as well.

Because Google has carried its burden under California's anti-SLAPP statute, and because KinderStart has failed to meet its burden, Google respectfully requests that the Court grant Google's motion in its entirety.

## ARGUMENT

### A.    KinderStart's Claims for Relief "Arise From" Google's Exercise of its Free Speech Rights

As Google's demonstrated in its moving papers, based upon KinderStart's own allegations, KinderStart's claims arise from Google's speech. Google's showing was addressed both to its decision to exclude KinderStart's website from its search results, and the PageRank Google assigned to (and displayed for) KinderStart's site. *See* Google's Special Motion to Strike ("Mot.") at 3:13-4:16.

At several points in its opposition, KinderStart inexplicably contends that Google failed to explain how its search results are protected speech. *See, e.g.,* KinderStart's Opposition ("Opp.") at 1:14, 6:10-13, 10:6-7. That is simply not so. As Google stated, and as the California Supreme Court made clear in *Blatty v. N.Y. Times*, "Google's choice regarding which websites to include in the index and the results it presents to users of its search engine are absolutely

1  protected by the First Amendment." Mot. at 3-4; *Blatty v. New York Times Co.*, 42 Cal. 3d 1033

2  (1986). KinderStart's claims arise directly from this protected speech.[1] Accordingly, this aspect

3  of Google's required showing under the anti-SLAPP statute is satisfied.

### B. Google's Speech Concerns a Matter of Public Interest

#### 1. The Public Interest Requirement Is Satisfied Whether KinderStart's Action Challenges Google's Expression About Sites in General or Its View on KinderStart's Site Alone.

The anti-SLAPP requirement that the speech at issue concern a matter of public interest is also easily met in this case, as Google's speech "impacts a broad segment of society." *See Damon v. Ocean Hills Journalism Club,* 85 Cal. App. 4th 468, 479 (2000) ("public interest" requirement is to be broadly construed). According to KinderStart's Complaint, Google's views on the significance of particular websites are of critical public importance. *See, e.g.,* First Amended Complaint ("FAC") ¶ 40 ("Defendant Google is vested with a public trust in that the only reasonable means of the public to identify and access millions Websites across the worldwide web is to utilize a search engine that purportedly offers and delivers the most relevant and useful search results."), ¶¶ 56, 105. Indeed, KinderStart's entire case is predicated on the notion that Google's assessments of websites carry significant weight with the public.

---

[1] KinderStart repeatedly invokes the terms "censorship" and "blockage" in describing Google's decision not to include KinderStart's site in its search results. But KinderStart does not and could not allege that Google exercises any control over content on the KinderStart site, let alone the power to censor it. And KinderStart does not and cannot allege that Google has any ability to prevent users who wish to visit the KinderStart site from doing so. KinderStart's false hyperbole thus appears intended to convince the Court to view Google's exercise of its editorial discretion as something improper. In reality, Google's decision not to include a site in its search results is speech, and is accorded the same First Amendment protection as its decision to include (and thus recommend) other sites to users. *See Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 573-74 (1995) ("'Since all speech inherently involves choices of what to say and what to leave unsaid,' one important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say'. . . .") (citations omitted); *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ("the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all."). When KinderStart calls this speech "conduct" in the hopes of avoiding the anti-SLAPP statute, it is thus badly misguided. In any event, the anti-SLAPP statute actually extends to any "conduct in furtherance of the exercise of . . . the constitutional right of free speech . . . ." *See* Cal. Civ. Proc. Code § 425.16(e)(4). Accordingly, the statute's requirements would be satisfied even if Google's exercise of its editorial control were deemed to be "conduct."

1  KinderStart's own allegations thus refute its new position that Google's search results and
2  PageRanks are not matters of public interest.

3  Facing an anti-SLAPP motion, KinderStart now asks the Court to believe that this case is
4  merely directed to Google's speech about the KinderStart site alone.  But that is not what
5  KinderStart told the Court in its Complaint.  There, KinderStart made clear it sought to challenge
6  Google's ability to express its view on sites generally.  *See, e.g.,* FAC ¶ 1 ("Such violations,
7  individually and together warrant declaratory and injunctive relief as well as monetary damages
8  . . . .").  Indeed, KinderStart purports to bring this action on behalf of every site about whom
9  Google has ever expressed a "negative view."  *See, e.g.*, *id*. ¶¶ 79-80, 88-100.  Class allegations
10 aside, if KinderStart is in any way successful, Google will face a constant stream of litigations in
11 which site operators demand that courts, rather than Google, determine the appropriate rankings
12 for their sites.  Google's opinions on the relative importance of the sites – the opinions that have
13 brought it the popularity it today enjoys – would cease to matter.  Under the same circumstances,
14 the Central District of California found that a defendant's speech, while ostensibly concerning
15 only a specific party, implicated the defendant's right to speak generally and satisfied the public
16 interest requirement of the anti-SLAPP statute.  *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d
17 1090, 1106 (C.D. Cal. 2004) (where plaintiff alleged it was harmed by defendant's labeling of it
18 as "spyware," court granted anti-SLAPP motion because defendant's right to express its views
19 on spyware *generally* would be chilled by allowing action to proceed).  That same result is
20 appropriate here.

21 In addition, because the speech in question reflects Google's view of the relative
22 importance of websites, any alteration Google is compelled to make regarding its opinion of one
23 site necessarily has implications for Google's view of others.  Thus, for example, if KinderStart
24 succeeded in forcing Google to list its site first in response to a particular search query, the
25 position of the millions of other sites Google deemed responsive for that query would be
26 decreased.  Again, the speech challenged by KinderStart's Complaint has wide-ranging
27 implications that affect the public interest.
28

But even if the Court were to accept KinderStart's position that the only speech in question is Google's view of the KinderStart site, the public interest requirement would still be satisfied. KinderStart's own allegations again forcefully make the point. According to KinderStart, it suffered "cataclysmic" harm once Google deemed the KinderStart site unimportant. FAC ¶¶ 74-75. Specifically, KinderStart alleges that it formerly had more than 10,000,000 visits to pages of its site each month, and that the total dropped by seventy percent after Google expressed its opinion. *Id.* ¶¶ 20, 74-75.[2] These numbers demonstrate that Google's speech about the KinderStart site concerned a matter of public interest under any measure, but especially when gauged against California precedents on this issue. *See Fontani v. Wells Fargo Invs., LLC*, 129 Cal. App. 4th 719, 733 (2005) (statement in regulatory filing concerned "conduct capable of affecting a significant number of investors" and thus was matter of public interest); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576-77 (2005) (Internet postings about corporate activity of publicly-traded company concerned public interest); *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 807 (2002) ("on-air discussion between [] talk-radio cohosts and their on-air producer about a television show of significant interest to the public and the media" concerned a matter of public interest); *Damon*, 85 Cal. App. 4th at 475-80 (communications regarding "the manner in which a large residential community would be governed" concerned issues of public interest); *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 238 (1999) ("allegations of physical and verbal abuse against a prominent media strategist by two former wives" concerned a public issue).[3]

---

[2] The Declaration of Glenn Canady, submitted by KinderStart, provides additional grist for the mill, describing how Google's view of his site not only caused a decrease in public access to his website, but also was of interest to actual and potential business partners. *See* Canady Declaration ¶¶ 3, 5. Again, Google's opinion concerning a single site is of considerable public interest.

[3] Claiming that it is a Google competitor, KinderStart argues that Google's speech about it does not concern the public interest, because speech about competitors cannot satisfy that requirement. Opp. 7 citing *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999). But just days ago, the California Court of Appeals made clear that statements about a competitor can satisfy the public interest requirement, and that each case must be decided on its own unique facts. *Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, --- Cal.Rptr.3d ---, No. G036080, 2006 WL 1629391, at *5 (Cal. App. 4 Dist. June 14, 2006) (discussing *Globetrotter* and declining to adopt its per se rule regarding speech about

(continued...)

As the *Search King* court put it succinctly in evaluating the import of Google's ranking of a single site, Google's "PageRanks relate to matters of public concern . . . ." *Search King, Inc. v. Google Tech., Inc.,* No. CIV-02-1457, 2003 WL 21464568, at *4 (W.D. Okla. May 27, 2003).[4]

### 2. KinderStart's Discussion of a Public Controversy Requirement is Inapposite.

KinderStart devotes most its discussion on the "public interest" element of the anti-SLAPP statute to an analysis of *Du Charme v. Int'l Brotherhood* and its purported requirement that speech concern a matter in controversy in order to satisfy the statute. *See* Opp. at 6-9. But KinderStart misunderstands *Du Charme* which has no application here. *See Du Charme v. Int'l Bhd. of Elec. Workers, Local 45*, 110 Cal. App. 4th 107 (2003).

*Du Charme* held that a statement posted on a labor union's local Web site announcing that the local's business manager had been removed because of financial mismanagement did not concern a public issue because it was directed only to a limited group, the union members. As the court explained, in cases, "where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public, . . . the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion." *Id.* at 119. As examples of when this requirement would apply, the court cited speech to "a 3,000-member homeowners association . . . [or] a 10,000-member union." *Id.* at 118. The court contrasted that

---

(...continued from previous page)
competitors); see also *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1008 (2001) (distinguishing *Globetrotter* and holding public interest requirement satisfied, in part, because comments by one company about potential merger partner were not directed at potential customers); *cf. Globetrotter,* 63 F. Supp. 2d at 1129 (expressing concern with affording anti-SLAPP protection to comments made "in the context of commercial competition."). Here, even accepting KinderStart is a true competitor, Google's speech to ordinary Internet users occurs outside of any competitive setting. Google is not alleged to have made any statements about the quality or utility of KinderStart's search services or its products, but instead, Google reports its view of the relative popularity of the KinderStart website in relation to the millions of other websites that Google evaluates.

[4] While it is understandable that KinderStart would attempt to distinguish the *Search King* precedent given the court's conclusions, the attempt is unpersuasive. KinderStart argues that no weight should be given to "findings of fact" made by the *Search King* court. Opp. at 9:5-18. But the *Search King* opinion was issued in the context of a motion to dismiss. The court's statement that "PageRanks are a matter of public concern" was a legal conclusion that was a key part of the
(continued...)

1 situation with matters "of widespread public interest," providing as examples, increased traffic and
2 natural drainage impacts of a proposed mall, a television show that generated considerable media
3 debate, and issues concerning domestic violence or child molestation, all of which would be of
4 interest to general audiences. *Id.* at 117. As to these matters which "impact a broad segment of
5 society," there simply is no ongoing controversy requirement. *Id.* at 117-18; *Integrated*
6 *Healthcare Holdings*, 2006 WL 1629391, at *6 (discussing *Ducharme's* controversy requirement
7 and finding it inapposite: "we have no difficulty placing the financial survival of four hospitals
8 within the county into the category of 'widespread public interest,' and thus not subject to the
9 'ongoing controversy' rule enunciated in *Du Charme*."). In this case, the speech in question is "of
10 widespread public interest." Google's opinions about the relative importance of websites in
11 general or KinderStart's site in particular are not directed to or consumed by a narrow audience or
12 group. The opinions are directed to the public at large, and consumed by a far greater audience
13 than most any speech deemed of "widespread public interest" under the anti-SLAPP statute. *See*
14 *Du Charme*, 110 Cal. App. 4th at 117-18; *see also* collected authorities on "public interest"
15 requirement, *supra* at 5. Accordingly, Google's speech need not concern a matter in controversy
16 in order to merit anti-SLAPP protection.

17     **C.    The Commercial Speech Exception to the Anti-SLAPP Statute is Inapplicable.**
18
19     KinderStart also contends that Google's anti-SLAPP motion fails because of the
20 commercial speech exception to the statute. *See* Cal. Civ. Proc. Code § 425.17(c). Again,
21 KinderStart is wrong.

22         **1.    The Commercial Speech Exception is Inapplicable Because Google is Engaged in the Creation and Dissemination of a Literary Work.**
23
24     Google has explained that the commercial speech exception is inapplicable here because
25 Google's speech came in the context of its creation and dissemination of a "literary work," that

---

27    (...continued from previous page)
28 court's holding. *Search King*, 2003 WL 21464568, at **3-4 (noting that court was assessing protectability of PageRanks as matter of law).

1  is, a "work of a kind that might be subject to copyright protection." Mot. 12:16- 13:26, *citing*

2  Cal. Civ. Proc. Code § 425.17(d)(2) and *Found. for Taxpayer & Consumer Rights v. Garamendi*,

3  132 Cal. App. 4th 1375, 1391 (2005). KinderStart offered no response whatsoever to this

4  argument in its opposition. Courts in this circuit construe the failure to oppose an argument as a

5  concession that the argument has merit. *Lomax v. Sellenthin*, No. C98-2588, 1999 WL 281120,

6  at *3 (N.D. Cal. Apr. 26, 1999) ("Plaintiff's failure to oppose the other elements of defendants'

7  motion is tantamount to a concession that there are no genuine issues warranting a trial as to the

8  underlying causes of action."); *Scognamillo v. Credit Suisse First Boston LLC*, No. C03-2061,

9  2005 WL 2045807, at *7 (N.D. Cal. Aug. 25, 2005). Whether or not the Court chooses to

10 substantively consider this "literary work" issue, the outcome should be the same – the

11 commercial speech exception to the anti-SLAPP statute does not apply in this case.

12       **2.    The Commercial Speech Exception is Inapplicable Because Google's Speech Consists of Opinions Not Facts.**

13

14       Google has also shown that the commercial speech exception is inapplicable because

15 Google's speech concerning the relative significance of websites is a matter of opinion, not fact,

16 and the exception is triggered only by *factual* representations. *See* Cal. Civ. Proc. Code §

17 425.17(c)(1); *see also Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 946 (2002) (to qualify as commercial

18 speech, "the *factual content* of the message should be commercial in character") (emphasis

19 added).[5]

20

---

21  [5] KinderStart spends much of its discussion of the commercial speech exception arguing that Google is engaged in commerce and that Google sells goods and services. Opp. at 4. That
22  much is obvious and Google conceded the point in its Motion. What KinderStart fails to address, however, is the fact that not all speech by commercial enterprises is commercial speech. Rather,
23  as Google explained, KinderStart must show that Google's speech came as it was "engaged in the business of selling or leasing goods or services." Cal. Civ. Proc. Code § 425.17(c).
24  According to the California Supreme Court, the fact that Google has an overarching "commercial motivation does not transform noncommercial speech into commercial speech." *Blatty*, 42 Cal.
25  3d at 1048 n.3 (newspaper's commercial objectives did not transform its bestseller list into commercial speech). The speech in question here, Google's view of sites, is akin to that at issue
26  in *Lavasoft*, a case that KinderStart actually cites with approval. *Lavasoft*, 356 F. Supp. 2d at 1103-04; Opp. at 7 (court "correctly applied anti-SLAPP"). Like Lavasoft, which shared its
27  views of third party software in a computer program that it typically gave away for free, Google makes its assessments of websites freely available, with only some fraction of Google users
28  electing to patronize Google's advertisers. Accordingly, like the speech in *Lavasoft*, Google's speech at issue here does not occur while it is "primarily engaged in the business of selling or
(continued...)

As KinderStart itself suggests, its claims challenge two aspects of Google's speech – first, where (if at all) Google chooses to display a particular site in its search results, and second, the PageRank Google displays for a particular site through its "toolbar." With respect to Google's search results, even KinderStart does not suggest that they are anything other than Google's opinion of which sites are most likely to be of relevance to a user, given a particular search query. Google's search results are no different than a newspaper's recommendations of books to read on a particular topic or a tour guide's view of worthy Italian restaurants in a particular area. These are statements of opinion, not fact, and the commercial speech exception is inapplicable to them.

As for Google's PageRanks, KinderStart vehemently asserts that they are representations of fact, advancing the very same arguments that the *Search King* court considered and rejected in holding that "PageRanks are opinions" and "do not contain provably false connotations." *Search King*, 2003 WL 21464568, at \*\*4-5. The *Search King* court was correct.

It is undisputed that Google uses a computer algorithm to help it assess the relative significance of websites. But that is simply a process used by Google in reaching its ultimate opinion. *See Search King*, at \*3 (plaintiff "ignores the important distinction between process and result."). Google's subjective views are injected into the process from the start when it decides which of countless possible factors it wishes to include in its algorithm and how much weight each of the selected factor should be accorded. *See Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 855 (1999) (holding that defendant's bond ratings were matter of subjective opinion as different assessors could reach different conclusions: "the difference in the evaluators' assessments of the bonds could result from differing views about the relative weight to be assigned to those factors or from other philosophical or theoretical disagreements. . . ."). As Professor Eric Goldman explains in a recent article in the *Yale Journal of Law and Technology*:

---

(...continued from previous page)
leasing goods or services" as required by Section 425.17(c). For this reason as well, the commercial speech exception to the anti-SLAPP statute should be inapplicable.

> Ranking algorithms obviate the need for humans to make individualized ranking decisions for the millions of search terms used by searchers, but they do not lessen the role of human editorial judgment in the process. Instead the choice of which factors to include in the ranking algorithm, and how to weight them, reflects the search engine operators' editorial judgments about what makes content valuable.

Eric Goldman, *Search Engine Bias and the Demise of Search Engine Utopianism*, Yale Journal of Law and Technology 111, 114 (Spring 2006).[6]

Moreover, as KinderStart itself makes clear, Google does not simply report the output of an algorithm as a site's PageRank. Rather, Google is constantly assessing the quality of sites using its own, subjective stated and unstated guidelines and setting sites' PageRanks accordingly. FAC at ¶¶ 61, 64 (alleging Google takes quality guidelines into account in setting PageRanks); ¶¶ 44-45 (describing impact of quality standards on PageRank); ¶ 132 (alleging Google assigns PageRanks to induce and deter certain site behaviors).

Ultimately, Google displays an abstract number, on a scale of 0 – 10 that reflects its view of the relative importance of a site, though it could just as easily report a site is "unimportant," "modestly important," "very important," "essential". . . etc. *See* FAC ¶ 56 (PageRank is a "relative measure of the appeal, popularity and relevance of a website on the Internet."). As the *Search King* court recognized, other search engines utilize wholly different processes, and reach widely varying results. *Search King*, 2003 WL 21464568, at **4-5. A site deemed important by one observer may be deemed unimportant by another, and none of these assessments of "importance" is "correct."[7] Google's ultimate view on the relative importance of a site cannot

---

[6] The original patent on PageRank highlights the subjective discretion accorded to the creator of the algorithm: "Consistent with the present invention, there are several ways that this method can be adapted or altered for various purposes. . . . A modification to avoid drawing unwarranted attention to pages with artificially inflated relevance is to ignore local links between documents and only consider links between separate domains. . . . A simpler approach is to weight links from pages contained on the same web server less than links from other servers. . . . Links can also be weighted by their relative importance within a document. For example, highly visible links that are near the top of a document can be given more weight. Also, links that are in large fonts or emphasized in other ways can be given more weight. . . . In many cases it is appropriate to assign higher value to links coming from pages that have been modified recently since such information is less likely to be obsolete." U.S. Patent No. 6,285,999 (filed Jan. 9, 1998).

[7] If, as KinderStart seems to suggest, Google purported to present an accurate count of the links to the KinderStart site, and Google then under-reported the actual figure, KinderStart might have a claim that Google had made a false statement of fact. But Google does not purport to

(continued...)

be proven true or false, regardless of whether an algorithm is used in the process. *Id.*[8] It is a matter of opinion and outside the commercial speech exception to the anti-SLAPP statute.

### D. KinderStart Cannot Demonstrate a Probability of Prevailing on its Claims

In light of Google's showing that KinderStart's claims arise from Google's speech on a matter of public interest, to maintain its claims, KinderStart is obligated to demonstrate a probability of prevailing on them. Cal. Civ. Proc. Code § 425.16(b)(1). But as Google has shown in this Motion, and in its briefs supporting its Motion to Dismiss, KinderStart's free speech, defamation and tortious interference claims all fail as a matter of law based on the pleadings alone. The claims are not only barred by the First Amendment, but also suffer from fatal pleading infirmities.[9] Accordingly, KinderStart has failed to carry its burden and its claims should be stricken.

---

(...continued from previous page)
present a count of the links to the KinderStart site. Rather, it presents its view of the site's "importance," a determination that is necessarily subjective.

[8] The *Search King* court also addressed the plaintiff's claims that Google had characterized PageRank as objective, explaining: "Just as the alchemist cannot transmute lead to gold, Google and [founder Larry] Page's statements as to the purported objectivity of the PageRank system cannot transform a subjective representation into an objectively verifiable fact.'" 2003 WL 21464568, at *4.

[9] For this reason, and several others, KinderStart's demand for discovery is meritless. Because Google's anti-SLAPP motion rests solely on KinderStart's Complaint, it raises no disputed issues of fact. Google is not, by this motion, testing KinderStart's ability to prove its claims. Rather, given KinderStart's allegations, Google submits that no claim is stated in the first place. KinderStart is not entitled to wide-ranging discovery in the hope that it might some day be able to state one. *Wood v. McEwen*, 644 F.2d 797, 801-02 (9th Cir. 1981) (court may continue discovery stay where there is a genuine question regarding whether plaintiff states a valid claim). Moreover, exposing Google to the burden of discovery at this stage would undermine one of the central objectives of the anti-SLAPP statute which imposes an automatic discovery stay to protect defendants from undue expense. *See* Cal. Civ. Proc. Code § 425.16(g).

**CONCLUSION**

For the foregoing reasons, Defendant Google Inc. respectfully requests that the Court grant its anti-SLAPP motion in its entirety, striking KinderStart's claims for free speech, defamation and tortious interference, and awarding Google all of the expenses it incurred in defending against those claims.

Dated:  June 16, 2006

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ David H. Kramer
         David H. Kramer

Attorneys for Defendant
Google Inc.