DAVID H. KRAMER, State Bar No. 168452
COLLEEN BAL, State Bar no. 167637
LISA A. DAVIS, State Bar No. 179854
BART E. VOLKMER, State Bar No. 223732
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
DKramer@wsgr.com

JONATHAN M. JACOBSON
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12 East 49th Street, 30th Floor
New York, NY 10017-8203
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
JJacobson@wsgr.com

Attorneys for Defendant
Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KINDERSTART.COM, LLC, a California limited liability company, on behalf of itself and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE INC., a Delaware corporation,<br><br>　　　　　Defendant. | CASE NO.: C 06-2057 JF (RS)<br><br>**DEFENDANT GOOGLE INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Before: Hon. Jeremy Fogel<br>Date: June 30, 2006<br>Time: 9:00 a.m.<br>Courtroom: 3 |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A.  KinderStart States No Claim Under the First Amendment or the California Constitution ....................................................................................................... 1

        1.  Google is Not a State Actor under the First Amendment ........................... 1

        2.  The California Free Speech Claim Should be Decided No Differently ............................................................................................. 4

        3.  Google's First Amendment Rights Would be Violated if Plaintiff's First Amendment Claim Were to Proceed ................................................. 5

    B.  KinderStart States No Claim for Defamation or Libel ............................................ 6

    C.  KinderStart States No Claim for Negligent Interference with Prospective Economic Advantage .......................................................................................... 8

    D.  KinderStart States No Claim Under the Sherman Act ............................................ 9

    E.  KinderStart States No Claim Under Cal. B & P Code Section 17045 ................... 10

    F.  KinderStart States No Claim Under the Communications Act ............................. 12

    G.  KinderStart States No Claim Under Cal. B & P Code Section 17200 *et. seq.* ....... 13

    H.  KinderStart States No Claim for Breach of the Implied Covenant ....................... 15

III. CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ABC Int'l Traders, Inc. v. Matsushita Elec. Corp. of Am.*, 14 Cal. 4th 1247 (1997) .................... 12

*Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536 (9th Cir. 1991) ................................ 10

*Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106 (2003) ............................................................ 5

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ...................................... 8

*Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666 (1998) ............................................ 2

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) ................................. 10

*Blatty v. New York Times Co.*, 42 Cal. 3d 1033 (1986) ............................................................ 6, 9

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) ............... 2, 3

*Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205 (9th Cir. 2002) .............................. 3

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ................... 14

*Cyber Promotions, Inc. v. American Online, Inc.*, 948 F. Supp. 436 (E.D. Pa. 1996) .................... 4

*Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376 (1995) ......................................... 9

*FCC v. Midwest Video Corp.*, 440 U.S. 689 (1979) .................................................................... 12

*Golden Gateway Center v. Golden Gateway Tenants Ass'n*,
    26 Cal. 4th 1013 (2001) ........................................................................................................ 2, 4

*Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006) .......................................................... 3

*Harris v. Capitol Records Distrib. Corp.*, 64 Cal. 2d 454 (1966) ................................................ 11

*Hirsch v. Bank of America*, 107 Cal. App. 4th 708 (2003) .......................................................... 14

*Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000) ............................................... 4, 13

*Hudgens v. NLRB*, 424 U.S. 507 (1975) ........................................................................................ 1

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*,
    515 U.S. 557 (1995) .................................................................................................................. 9

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) ........................................................ 3, 4

*Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*,
    175 F.3d 848 (10th Cir. 1999) ................................................................................................. 10

*Kentmaster Mfg. Co. v. Jarvis Prods. Corp.*, 146 F.3d 691 (9th Cir. 1998),
    *amended on other grounds by* 164 F.3d 1243 (9th Cir. 1999) ............................................... 12

*Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003) .................................................................. 2, 4

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) ...................................... 14

*Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116 (2000) ........................................................ 14

*Lee v. Katz*, 276 F.3d 550 (9th Cir. 2002) .................................................................................... 4

*Margarita Cellars v. Pacific Coast Packaging, Inc.*,
    189 F.R.D. 575 (N.D. Cal. 1999) .......................................................................................... 9

*MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124 (9th Cir. 2004),
    *cert. denied*, 544 U.S. 1049 (2005) .................................................................................. 9, 10

*Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676 (1994) .............................................. 6

*Nike, Inc. v. Kasky*, 539 U.S. 654 (2003) .................................................................................... 14

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) ...................................................... 13

*Robins v. Pruneyard Shopping Center*, 23 Cal. 3d 899 (1979),
    *aff'd*, 447 U.S. 74 (1980) ....................................................................................................... 4

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) ....................................................................... 6

*Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194 (9th Cir. 1998) ................................................ 8

*Scognamillo v. Credit Suisse First Boston LLC*, No. C03-2061,
    2005 WL 2045807 (N.D. Cal. Aug. 25, 2005) ..................................................................... 15

*Search King Inc. v. Google Technology, Inc.*, No. CIV-02-1457-M,
    2003 WL 21464568 (W.D. Okla. May 27, 2003) ............................................................ 6, 7, 9

*SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*,
    88 F.3d 780 (9th Cir. 1996) ................................................................................................... 9

*Stolz v. Wong Commc'ns Ltd. P'ship*, 25 Cal. App. 4th 1811 (1994) ....................................... 8, 9

*Table Bluff Reservation v. Philip Morris, Inc.*, 256 F.3d 879 (9th Cir. 2001) ............................ 11

*Trader Joe's Co. v. Progressive Campaigns, Inc.*, 73 Cal. App. 4th 425 (1999) .......................... 5

*U.S. v. American Library Ass'n, Inc.*, 539 U.S. 194 (2003) ........................................................ 2

*U.S. v. United Foods, Inc.*, 533 U.S. 405 (2001) ........................................................................... 5

*Verizon Commc, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ............ 9, 10

## STATUTES

47 U.S.C. § 223(e)(6) .................................................................................................................. 13

47 U.S.C. § 230 ........................................................................................................................... 13

47 U.S.C. § 231 .................................................................................................................. 13

47 C.F.R. § 64.702(a) ........................................................................................................ 13

Cal. Bus. & Prof. Code § 17045 ........................................................................................ 11

Cal. Bus. & Prof. Code § 17200 ........................................................................................ 14

**MISCELLANEOUS**

2 *Moore's Federal Practice* § 12.34[2] (Matthew Bender 3d ed.) ................................... 7

I.  **INTRODUCTION**

Plaintiff KinderStart offers nothing in its opposition to suggest that this case is anything other than an attempt to force Google to speak as KinderStart would like. Remarkably, KinderStart never justifies what would be a severe violation of Google's First Amendment rights. KinderStart's case founders on this fundamental flaw, and its outlandish allegations only compound the problem. According to KinderStart, Google is at once the government, a common carrier and a monopolist; it also is price discriminating through its free service and interfering with its own contract. As a matter of law, none of its legal theories states a viable claim. Accordingly, KinderStart's complaint should be dismissed with prejudice.

II.  **ARGUMENT**

    A.  **KinderStart States No Claim Under the First Amendment or the California Constitution**

        1.  **Google is Not a State Actor under the First Amendment**

In its novel effort to require Google, a private party, to comply with Constitutional free speech guarantees, KinderStart appears to argue that Google satisfies the state action requirement for three reasons: (1) Google's private search engine is allegedly "a public speech forum"; (2) Google is "heavily entwined with government in key state-like functions"; and (3) Google is engaging in a traditional public function when operating its search engine. Each of these positions is squarely foreclosed by longstanding Supreme Court precedent.

*State Action Based on the Status of Private Property*

In support of its contention that Google maintains a public forum, plaintiff argues that: "[s]tate action is present when open space is free, open and dedicated to public use where free speech can and should thrive." KinderStart's Opposition to Motion to Dismiss ("Opp.") at 3. That is a misstatement of law. Decades ago the Supreme Court held that private property owners are *not* subject to the First Amendment by virtue of their property being "open to the public." *See Hudgens v. NLRB*, 424 U.S. 507 (1975). The *Hudgens* Court categorically rejected the notion of a First Amendment right to access private property for speech. *See id.*, 424 U.S. at 520 (where a party claimed the right to speak in a publicly accessible, but privately owned shopping

center, "the constitutional guarantee of free expression has no part to play"). Thus, under federal First Amendment law, there is no state action exception for property open to the public. *See Golden Gateway Center v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013, 1019 (2001).[1]

Even if there were an exception for property open to the public, KinderStart's claim would still fail because Google's search results are not themselves open to the public *in any regard*. Google alone speaks through its search results and has complete dominion over them. Google indexes the web; *ranks* websites using proprietary algorithms; and provides *its view* of the most relevant web pages in response to user queries. Google's private search engine has become popular precisely because *Google* makes editorial decisions about the relevance of websites to particular search queries. The fact that *Google's* speech is freely accessible to the public does not transform its private search results into a public forum.

### *State Action Based on Entanglement/Entwinement*

Plaintiff alternatively claims that Google is subject to First Amendment regulation because it is allegedly "entangled" with the government. In *Brentwood Academy*, the Supreme Court noted that "state action may be found if, *though only if*, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citations and quotations omitted) (emphasis added). Whether an entity is so "entangled" to meet this test is routinely determined on a motion to dismiss. *See, e.g, Kirtley v. Rainey*, 326 F.3d 1088, 1094-95 (9th Cir. 2003) (affirming dismissal where defendant's alleged actions not fairly attributable to the state under *Brentwood*). Here, the most basic elements of the "entanglement" exception preclude its application.

---

[1] Plaintiff repeatedly refers to Google's search engine as a "dedicated public forum" and cites cases where the state action requirement is not questioned and the sole issue is whether the government's action violated a plaintiff's free speech rights. *See, e.g., U.S. v. American Library Ass'n, Inc.*, 539 U.S. 194 (2003). Because Google is not a state actor, the Court need not engage in an analysis of which species of government property Google's search engine would constitute if it were owned by the government: a public forum, a designated public forum or a non-public forum. *See Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 667 (1998) (describing the three classifications). These classifications are used to determine the level of scrutiny to apply *once state action has been established*, not to determine whether state action exists in the first instance.

KinderStart challenges Google's private business decisions regarding which websites to include in its index and how Google decides to rank those websites. The "government" unequivocally has no role in this process. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679 (N.D. Cal. 2006) (describing Google challenge to a subpoena by the U.S. Department of Justice seeking data related to the content of Google's index and queries from Google's users). Indeed, KinderStart does not allege any such role. The acts that KinderStart points to as "entanglement" reveal nothing more than that Google, a publicly-traded company with thousands of employees and a substantial market valuation, occasionally has dealings with government entities. *See* Opp. at 6-7 (Google links to government websites, government publications mention Google, and Google has contracts with government-owned libraries).[2] According to KinderStart, Google is thereby "entwined" with the government and has ceded its ability to make business decisions without first considering their First Amendment ramifications for every United States citizen.[3] The proposition is both radical and preposterous.

### *State Action Based on Traditional Public Function*

Plaintiff also argues that Google is a state actor because it "operates for the public benefit." Opp. at 6. However, KinderStart's allegations do not come close to demonstrating the requisite public function. In *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974), the Supreme Court held that a private utility company was not required to accord due process when terminating a customer's utility service, even though the government extensively regulated the

---

[2] KinderStart makes much of Google's library digitization project, but nowhere alleges that the library project is in any way related to the issue before the Court: whether Google should be subject to First Amendment scrutiny based on its search results for Internet web pages. Neither this nor any other allegation of entanglement comes close to meeting the *Brentwood* test, which requires "a close nexus between the State and the challenged action." *Brentwood Acad.,* 531 U.S. at 295.

[3] KinderStart also broadly claims that "a private actor engages in state action when conferring upon a government entity a windfall of benefits." Opp. at 6. However, its own authority demonstrates that this would apply only if the benefit conferred were indispensable to the government's financial viability. *Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205, 1214 (9th Cir. 2002) (finding no state action where plaintiff "did not allege that the Humane Society and [private defendant] were financially integrated. Nor did she allege the [defendant] rendered any service indispensable to the Humane Society's continued financial viability."). In this case, KinderStart identifies no windfall of benefits, let alone a windfall that is indispensable to the government's viability.

1  industry, defendant was a monopolist, and defendant provided a necessary service as required by

2  law. *Id*. at 350-51. As the Court explained, private conduct will only be deemed state action

3  when the private entity engages in "powers traditionally exclusively reserved to the State." *Id*. at

4  352. Moreover, the Court rejected the "broad principle that all businesses 'affected with the

5  public interest' are state actors in all their actions." *Id*. at 353.

6  To state the test from *Jackson* is to refute its application here. Google's provision of

7  Internet search services does not constitute "powers traditionally exclusively reserved to the

8  State" under any formulation of the public function test.[4] The public function doctrine is

9  inapplicable to the operation of Google's search engine as a matter of law.

10  **2.   The California Free Speech Claim Should be Decided No Differently**

11  As the analysis above demonstrates, Google is not a state actor and its business

12  operations are not subject to First Amendment scrutiny. The result is the same under California

13  law. Under *Golden Gateway Center*, 26 Cal. 4th at 1022-31, the state action requirement applies

14  to claims under the free speech clause of the California Constitution. The only possible

15  exception to this doctrine is when a privately owned, publicly accessible shopping center

16  functions as a town square. *See Robins v. Pruneyard Shopping Center*, 23 Cal. 3d 899, 910

17  (1979), *aff'd*, 447 U.S. 74 (1980). KinderStart offers no allegations or authority remotely

18  suggesting that Google's intangible search results operate as the functional equivalent of a town

19  square. *See* Google's Motion to Dismiss ("MTD") at 7-8.

20  Moreover, KinderStart acknowledges that under *Golden Gateway*, private property

21  cannot be considered "a traditional public forum for purposes of California's free speech clause"

---

[4] *See Kirtley v. Rainey*, 326 F.3d at 1093 (guardian ad litem appointed in custody disputes does not perform traditional or exclusive governmental functions; affirming motion to dismiss); *Howard v. America Online Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (rejecting argument that AOL is a state actor because it is a "quasi-public utility" that "involv[es] a public trust"; affirming motion to dismiss); *Cyber Promotions, Inc. v. American Online, Inc.*, 948 F. Supp. 436, 441 (E.D. Pa. 1996) ("AOL exercises absolutely no powers which are in any way the prerogative, let alone the *exclusive* prerogative, of the State . . . this Court previously found that no single entity, including the State, administers the Internet"; granting summary judgment for defendant). The only case cited by KinderStart in which a court found state action based on the public function test demonstrates how narrowly the exception is applied. *See Lee v. Katz*, 276 F.3d 550, 553-57 (9th Cir. 2002) (lessee of publicly accessible commons owned by the state deemed a state actor where it conceded that property at issue was a public forum and the state had delegated a speech regulation function to the lessee).

if it is "not freely open to the public." Opp. at 12. Yet KinderStart ignores the import of that decision. Again, while Google's index and search results are *accessible* to the public, they are not open for the public's *speech*. Finally, Plaintiff simply ignores Google's authorities demonstrating that the holding of *Pruneyard* has been limited to its unique facts. *See Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106 (2003); *Trader Joe's Co. v. Progressive Campaigns, Inc.*, 73 Cal. App. 4th 425, 432-437 (1999). In sum, like its claim under the First Amendment, KinderStart's claim under the California Constitution is not viable.

### 3. Google's First Amendment Rights Would be Violated if Plaintiff's First Amendment Claim Were to Proceed

KinderStart relegates to a single footnote its contention that *Google's* First Amendment rights would not be violated if Google were compelled to include KinderStart's website in its search results. *See* Opp. at 4 n.3. Plaintiff first contends that Google does not present its own message or expression of opinion through its search results. That is nonsense. Google's unique opinion regarding the significance of websites is the very reason for the enormous popularity of its search engine. Google's expression of its opinion in the form of its results is protected speech in the same way that a newspaper's "Best Sellers" or "Recommended Reading" list is protected. MTD at 8. Next, KinderStart claims that Google can simply "disavow itself" of its search results. This too is absurd. If Google were forced, against its will, to include a website in its search results, the very nature of that compelled speech would be inextricably bound with Google's endorsement. Indeed, KinderStart's objective in this case is to force Google to provide that endorsement so KinderStart can freely enjoy the benefits of promotion by Google. The "compelled speech doctrine" prohibits the Court from requiring Google to provide such an endorsement. MTD at 8-9. This is true whether or not Google's speech is deemed "commercial speech." *See* Opp. at 10-11; *U.S. v. United Foods, Inc.*, 533 U.S. 405 (2001) (striking down law

1  under compelled speech doctrine requiring company to engage in commercial speech: the

2  promotion of mushroom sales).[5]

### B.  KinderStart States No Claim for Defamation or Libel

KinderStart acknowledges, as it must, that a claim for defamation or libel can only be premised on a provably false statement of fact, not mere opinion. Opp. at 13; *see* MTD at 9-10. KinderStart therefore labors to characterize PageRank as a verifiable fact. The effort is meritless. The allegations of KinderStart's own complaint make abundantly clear that PageRank constitutes Google's *subjective opinion* concerning the relative importance of a website, not merely a count of the number of links attached to the website as KinderStart now contends. ¶ 56 (PageRank "has become the most widely accepted measure of the appeal, popularity and relevance" of a website), ¶ 33 (PageRank "measur[es] and assess[es] the quantity and depth" of links), ¶¶ 44-45 (referencing Google's quality standards in assigning PageRanks), ¶ 132 (referencing Google's assigning of PageRanks to reward or penalize certain sites for their "behavior"). By itself, this requires dismissal of KinderStart's claim. *See Search King, Inc. v. Google Tech., Inc.*, No. CIV-02-1457-M, 2003 WL 21464568 (W.D. Okla. May 27, 2003) (dismissing claims arising from allegedly defamatory PageRank that Google assigned to plaintiff's website because PageRank is a matter of opinion).[6] KinderStart's claim fails for the

---

[5] KinderStart also suggests that Google's opinion regarding the importance of websites is "commercial speech" subject to only limited First Amendment protection. Opp. at 11. However, the commercial speech doctrine discussed in the case relied upon by KinderStart, *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995), merely describes the circumstances in which the government may regulate speech in a commercial setting. This case does not concern government regulation and, therefore, the doctrine is inapplicable. Plaintiff also suggests that Google's speech is not protected at all because it is "defamatory." Opp. at 11. Not so. Google's search results, whether commercial or not, are fully protected opinions under the First Amendment, expressing Google's recommendations of particular sites in response to user queries. As a matter of law, they cannot be defamatory. *See Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1044-45 (1986).

[6] KinderStart makes no effort to distinguish the *Search King* case, but instead argues only that this Court may not accept as true the factual findings of *Search King*. Opp. at n.8. KinderStart misses the point. KinderStart's *own* factual allegations demonstrate that PageRank constitutes a subjective opinion and therefore cannot support its defamation/libel claim. Moreover, it is beyond dispute that this Court can rely upon *Search King* as persuasive legal precedent. Whether a published statement constitutes a provably false statement of fact is a question of law. *Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 686-87 (1994). On this issue, *Search King* reached the legal conclusion that PageRank constitutes a constitutionally-protected opinion that is not provably false, and granted Google's motion to dismiss. *Search King*, 2003 WL 21464568, at *4.

related reason that PageRank is constitutionally-protected speech, and therefore cannot provide a basis for tort liability. *Search King,* 2003 WL 21464568, at *4.

In its opposition, KinderStart argues that PageRank constitutes a verifiable "fact" because it is expressed as a number from 0 to 10 and is arrived at by Google in part through use of a computer algorithm. *See* Opp. at 13-14. Here again, it is misguided. Even if PageRank were entirely determined by an algorithm, which KinderStart's own allegations make clear it is not (*see, e.g.*, ¶¶ 33, 44, 56, 61, 128), the creation of that algorithm would reflect the Google programmers' subjective assessment of the factors that lend to a website's relative significance and the weight to be accorded each factor; *see* MTD at 11 (citing cases demonstrating that ratings and evaluations are inherently subjective and not verifiable facts). And, as KinderStart itself acknowledges, Google's PageRank of a website often differs from the rankings assigned by other search engines, which would not be the case if a ranking were an objective fact. ¶ 80; *see also Search King*, 2003 WL 21464568, at **3-4 ("[E]very algorithm employed by every search engine is different, and will produce a different representation of the relative significance of particular web site depending on the various factors, and the weight of the factors, used to determine whether a web site corresponds to a search query."). PageRank is no less Google's expression of opinion about the "appeal, popularity and relevance" of a website (¶ 56) than a movie review using a scale of: "I hated it," "I didn't like it," "I liked it," or "I loved it." No one could properly label the movie review as false or wrong, even if the reviewer's assessment relied in part on an algorithm that measured the number of scene changes, car crashes and kisses in the film. As the *Search King* court recognized, the same is true of Google's PageRank. *Search King*, 2003 WL 21464568, at **3-4 (plaintiff "ignores the important distinction between process and result").[7] That same reasoning and result should apply here and bar KinderStart's defamation claim.

---

[7] KinderStart's claim that one can judge the "truth" or "falsity" of PageRank by comparing the outcome of the algorithm employed by Google with Google's ultimately-assigned PageRank is meritless. See Opp. at 13 n.9. As an initial matter, it ignores the subjectivity of Google's ranking algorithm. Moreover, KinderStart's argument assumes that the output of the algorithm is PageRank and that any further evaluation by Google is somehow improper. But the complaint itself refutes that argument, as it alleges

(continued...)

C.  **KinderStart States No Claim for Negligent Interference with Prospective Economic Advantage**

KinderStart's claim titled "Negligent Interference with Prospective Economic Advantage" charges that Google deprived KinderStart of benefits it expected to receive under its contract with Google. Google showed that such a claim fails as a matter of California law. MTD at 11-12. KinderStart therefore attempts to recast the claim in its opposition papers. It now obtusely argues that Google is allegedly interfering in relationships between KinderStart and unidentified sites that link to KinderStart by excluding these other sites from Google's search results. Opp. at 15. But the new "allegations" in KinderStart's opposition brief cannot save its claim, since only the allegations of the complaint are properly at issue on a motion to dismiss. *See Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197, n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a motion to dismiss.") (citing 2 *Moore's Federal Practice* § 12.34[2] (Matthew Bender 3d ed.)).

Even if the new "allegations" could be properly considered, they do not cure the defect Google identified. Under some impossibly speculative theory, Google's ranking of other sites might reduce visits to KinderStart's website and thus revenues attributable to users visiting ads on that site. But at bottom, KinderStart still is complaining that Google's alleged misconduct is depriving it of revenues that it would receive under *its Adsense contract with Google*. Opp. at 10. No matter how Google is alleged to have deprived KinderStart of the benefits of the parties' contract, its allegations fail to state a claim in tort. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994).[8]

---

(...continued from previous page)
that Google continuously assesses the quality of sites using both stated and unstated guidelines in the process of assigning them a PageRank. ¶¶ 61, 64 (alleging Google takes quality guidelines into account in setting PageRanks); ¶¶ 44-45 (describing impact of quality standards on PageRank); ¶ 132 (alleging Google assigns PageRanks to induce and deter certain site behaviors).

[8] Even if KinderStart's complaint could be read as asserting a claim for negligent interference with a relationship between KinderStart and *third parties*, the claim would still fail. Negligent interference only arises when the defendant owes the plaintiff a duty of care. Opp. at 14; *Stolz v. Wong Commc'ns Ltd. P'ship*, 25 Cal. App. 4th 1811, 1825 (1994). As Kinderstart's alleged competitor (¶¶ 113, 114), Google

(continued...)

1    KinderStart also fails to satisfy the "independently wrongful" requirement for a negligent

2 interference claim set forth in *Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376,

3 393 (1995).  Again, the interference it alleges – choosing not to include the KinderStart website

4 in Google's search results – is *as a matter of law* not independently wrongful because Google's

5 right to speak (or not speak) through its search results is absolutely protected speech.[9]

6         **D.     KinderStart States No Claim Under the Sherman Act**

7    Google's motion established that dismissal of KinderStart's antitrust claims is warranted

8 because of its failure to allege anticompetitive or exclusionary conduct, an essential element of

9 both its claim for monopolization and its claim for attempted monopolization. MTD at 12-15.

10 KinderStart asserts, however, that because its complaint labels Google's activities as

11 "anticompetitive," Opp. at 16, its allegations are sufficient to avoid dismissal.  That is not the

12 law.  As the Ninth Circuit explained in the case on which KinderStart relies most heavily,

13 "[w]hether specific conduct is anticompetitive is a question of law . . . ."  *MetroNet Servs. Corp.*

14 *v. Qwest Corp.*, 383 F.3d 1124, 1130 n.11 (9th Cir. 2004), *cert. denied*, 544 U.S. 1049 (2005)

15 (quoting *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir.

16 1996)).  And, indeed, the Supreme Court's decision in *Verizon Communications Inc. v. Law*

17 *Offices of Curtis V. Trinko*, *LLP*, 540 U.S. 398 (2004), approved a Rule 12(b)(6) dismissal on the

18 ground that the conduct in issue was not appropriately characterized as exclusionary under

19 applicable principles of antitrust law.  The same result is appropriate here.

---

(...continued from previous page)
owes KinderStart no duty of care.  *Stolz*, 25 Cal. App. 4th at 1825 ("The complaint did not allege such a duty, nor could it, since it was plain that plaintiff and defendants were competitors.").  Further, KinderStart does not identify any particular third party with whom KinderStart (or the purported class members) had a relationship that was supposedly interfered with by Google, but generically refers to "sites that link to those sites carrying Adsense ads from Google." Opp. at 15.  Nor does it allege that Google had knowledge of KinderStart's (or the purported class') relationships with these unidentified sites.  For these additional reasons, KinderStart fails to state a claim for negligent interference. *Margarita Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 582 (N.D. Cal. 1999).

[9]*See Blatty*, 42 Cal. 3d at 1045-48 (First Amendment bars tortious interference claim); *Search King*, 2003 WL 21464568, at *4 (same); s*ee also Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 573-74 (1995) ("'Since all speech inherently involves choices of what to say and what to leave unsaid,' one important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say'. . . .") (citations omitted).

1    KinderStart's defense of its antitrust allegations largely ignores Google's arguments. First, Google explained that, even if the essential facilities doctrine survives the *Trinko* case (an issue the *MetroNet* case does not resolve), its search engine cannot be characterized as "essential" because there is no allegation that "control of the facility [*i.e.*, the search engine] carries with it the power to *eliminate* competition in the downstream market," as is required under *Alaska Airlines, Inc. v. United Airlines, Inc*., 948 F.2d 536, 543-44 (9th Cir. 1991). Not only is the required allegation missing, but the allegations KinderStart actually supplies fully demonstrate that Google has no such power. *See* ¶¶ 54, 58 (describing presence of Microsoft and Yahoo as competitors in the market); Opp. at 14 (describing the "20,000-plus back links . . . KS.com has"). Second, Google explained that, under *Jefferson County School District No. R-1 v. Moody's Investor's Services, Inc*., 175 F.3d 848, 859-60 (10th Cir. 1999), "the First Amendment does not allow antitrust claims to be predicated solely on protected speech." KinderStart does not even cite, let alone discuss, the *Moody's* case in its opposition. Third, and perhaps most importantly, KinderStart does not articulate any basis for concluding that the antitrust laws impose on Google a duty to assist its competitor, KinderStart, by granting it the prominent PageRank and visibility in search results that KinderStart desires. KinderStart's complaint itself makes clear, and common sense confirms, that Google has an entirely legitimate interest in ensuring that its search results display those sites that are most likely to be of interest to its users. ¶¶ 44-45 (Google guidelines favoring sites with safe, responsive, and original content). Accordingly, there is not here, as there was in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp*., 472 U.S. 585 (1985), activity that makes no economic sense at all for Google other than to harm competition. *See MetroNet*, 383 F.3d at 1131-34. As both the Supreme Court and the Ninth Circuit have explained, absent such a showing, "insufficient assistance in the provision of service to rivals is not a recognized antitrust claim under the [Supreme] Court's existing refusal-to-deal precedents." *Id*. at 1131 (quoting *Trinko*, 540 U.S. at 407-10).

**E.    KinderStart States No Claim Under Cal. B & P Code Section 17045**

KinderStart alleges in its complaint that Google engaged in "price discrimination" against it (and other class members) by supposedly giving undeserved higher search result placements

1   to unidentified other websites. ¶ 156. As Google pointed out in its motion, KinderStart's
2   allegations fail to state a claim under § 17045 because KinderStart cannot allege that it
3   "purchased" PageRank or placement in search results, much less on like terms and conditions as
4   those unidentified other websites that purportedly received the favored rankings. MTD at 15-16.

5         KinderStart's opposition paints a different picture. Highlighting conclusory allegations
6   from the background section of the complaint, KinderStart now contends that Google gives
7   better search rankings to certain advertisers who purchase advertising placement through
8   Google's AdWords program and lowers the search rankings of those advertisers who eliminate
9   or reduce their advertising purchases. Opp. at 19. Even if one could read the Complaint as
10  encompassing this new theory, the claim is still fatally defective. First, KinderStart nowhere
11  alleges that *it* ever purchased advertising placement from Google, much less "upon like terms
12  and conditions" as other purchasers. It therefore has no standing to bring a claim on behalf of
13  some putative class of purchasers supposedly harmed by Google's conduct. *Table Bluff*
14  *Reservation v. Philip Morris, Inc.*, 256 F.3d 879 (9th Cir. 2001) (affirming dismissal where
15  plaintiff alleged members of the class were injured but failed to allege personal injury in fact.).

16        Second, KinderStart does not allege that any advertiser affected by Google's supposed
17  discrimination actually purchased advertising from Google "upon like terms and conditions" as
18  the advertisers Google supposedly favored. KinderStart alleges the opposite: that Google gave
19  higher search rankings to advertisers who purchased more advertising from Google and lowered
20  the search rankings of the advertisers who purchased less. ¶¶ 68-69. KinderStart's own
21  allegations thus undermine any argument that supposed benefits in ranking were denied to
22  advertisers who purchased on like terms and conditions as those who supposedly received them.
23  For this additional reason, KinderStart fails to state a claim. *See Harris v. Capitol Records*
24  *Distrib. Corp.*, 64 Cal. 2d 454, 463 (1966) (affirming summary judgment for defendants because
25  same discounts were extended to all who purchased on like terms and conditions).[10]

26  ―――――――――

27     [10] Additionally, KinderStart alleges no facts to support its legal conclusion that Google's conduct "tends to destroy competition" as it must to state a claim. Cal. Bus. & Prof. Code § 17045. Indeed, the
28  only reference in KinderStart's lengthy complaint to alleged discrimination against certain advertisers appears in two paragraphs (¶¶ 68 and 69), which make no mention of any alleged resulting harm.
    (continued...)

**F.     KinderStart States No Claim Under the Communications Act**

KinderStart's Communications Act claim remains frivolous. The Communications Act only applies to "common carriers," like telephone companies, that provide facilities for the public to transmit their own information. *FCC v. Midwest Video Corp.*, 440 U.S. 689, 701 (1979) (defining "common carrier"). As Google explained in its motion, Google is not subject to the Communications Act because (i) it is not a "common carrier"; (ii) it provides "enhanced" not "basic" services; and (iii) the Communications Act does not govern interactive computer services like Google. MTD at 16-19.

KinderStart's argument that Google's search engine is a "mere conduit" is nonsense. According to KinderStart, Google's search results function solely to link a user to third party websites and contain no original content. Opp. at 22. But Google's search results *are* original content, expressing Google's opinion of the relative significance of websites. *See, e.g.,* ¶¶ 2, 56. Were they otherwise, KinderStart would have little reason for this lawsuit, which is predicated on the importance to KinderStart of a favorable placement from Google.

KinderStart also cannot allege that Google's search engine performs the function of a common carrier: enabling the public "to communicate [material] of their own design and choosing to others." *FCC*, 440 U.S. at 701. To the contrary, Google exercises complete control over the information that appears on its search engine. *See* ¶¶ 2, 34, 36, 46-48. The fact that Google's search engine provides links to other sites cannot possibly transform it into a common carrier, or virtually every website would warrant that designation. *See*  MTD at 17-18.

In addition, KinderStart concedes that Google would not be a common carrier if it provides "enhanced services." Opp. at 21. While KinderStart argues that Google's search

---

(...continued from previous page)
Nowhere does KinderStart allege that any supposed discrimination affected competition at all, much less that the supposed practice "tends to destroy competition." See ¶¶ 68-69; 154-158. KinderStart's failure to allege this essential element of the claim provides yet another basis for dismissal. *Kentmaster Mfg. Co. v. Jarvis Prods. Corp.*, 146 F.3d 691 (9th Cir. 1998), amended on other grounds by 164 F.3d 1243 (9th Cir. 1999) (dismissing 17045 claim where plaintiff failed to allege injury to competition) (citing *ABC Int'l Traders, Inc. v. Matsushita Elec. Corp. of Am.*, 14 Cal. 4th 1247 (1997)).

engine does not provide such services, its own allegations refute that point. The parties agree that an enhanced service is defined as follows:

> "[E]nhanced service" shall refer to services . . . which employ computer processing applications that act on the format, content, code, protocol or similar aspects of the subscriber's transmitted information; provide the subscriber additional, different, or restructured information; or involve subscriber interaction with stored information.

47 C.F.R. § 64.702(a); *see* Opp. at 21. And KinderStart itself alleges that Google's search engine provides all three categories of enhanced services:

- "Employs computer processing application that act on the format, content, code, protocol or similar aspects of the subscriber's transmitted information." ¶ 2 (searches are based on key words input by user), ¶ 27 (results generated using one or more computer algorithms), ¶ 34 (search queries acted on without requiring human recall of URL or website address).

- "Provides the subscriber additional, different, or restructured information." ¶ 2 (results provided in response to user queries), ¶ 70 (Google monitors the output and content of its results)

- "Involves subscriber interaction with stored information." ¶ 34 (search engine generates and processes search queries of webpages indexed on its servers).

By KinderStart's own admissions, Google provides enhanced services. It is therefore not a common carrier and not subject to the Communications Act. *Howard*, 208 F.3d at 752.[11]

**G.     KinderStart States No Claim Under Cal. B & P Code Section 17200 *et. seq*.**

KinderStart has failed to demonstrate the unlawful, unfair or fraudulent conduct by Google required to state a claim under § 17200. KinderStart cannot satisfy the "unlawful" prong of the test by relying on its other causes of action because, as Google has shown, these other claims are fatally flawed. KinderStart's claim that Google's conduct was "unfair" is also

---

[11] Google also pointed out that Congress clearly does not believe interactive computer services like Google are common carriers, since in amending the Communications Act to provide immunity to interactive computer services, it expressly stated that the amendment should not be construed to mean the services should be treated as common carriers. *See* MTD at 18 (citing 47 U.S.C. § 230). KinderStart's response on this point is impenetrable, focusing, for some reason, on a different (and inoperative) statute. Opp. at 21 (discussing 47 U.S.C. § 231 rather than § 230). Moreover, its discussion of "interactive computer services" and its claim that the recent *Parker v. Google* case somehow "enlarged" the definition could not be more wrong. *Parker v. Google , Inc*., 422 F. Supp. 2d 492 (E.D. Pa. 2006). Google is, and has always been, an "interactive computer service," and precisely the type of service which Congress said it did not intend to have treated as a common carrier. *See* 47 U.S.C § 230(f)(2) (defining "interactive computer service" as: a service that "provides or enables computer access by multiple users to a computer server"); § 223(e)(6) (stating Congress' intent).

inadequate because KinderStart has failed to identify "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws..." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999). Rather, as discussed above, KinderStart's antitrust allegations come nowhere close to stating a claim. Finally, in the face of Google's motion, KinderStart abandoned any effort to show that it relied on (and was thus harmed by) supposedly deceptive representations by Google. MTD at 20-21. KinderStart has thus failed to satisfy even the threshold requirement for a § 17200 claim.

KinderStart's claim is also subject to dismissal because it has failed to identify any injury that is redressable through restitution or an injunction under § 17200. MTD at 19-20; *Nike, Inc. v. Kasky*, 539 U.S. 654, 667 (2003). KinderStart contends that it may seek "restitution" of advertising revenues that it would have made under its AdSense agreement with Google if Google had not reduced its search ranking. Opp. at 23. But restitution under § 17200 is limited to the return of money in which the plaintiff has an ownership interest. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) ("The remedy sought by plaintiff . . . is not restitutionary because plaintiff does not have an ownership interest in the money it seeks to recover from defendants."). KinderStart plainly does not seek the return of money in which it had any interest, but rather seeks money it claims it *would have earned* absent Google's alleged conduct. As the California Supreme Court explained in *Korea Supply,* a claim seeking recovery for a lost business opportunity seeks damages, not restitution, and it is not cognizable under § 17200. *Korea Supply*, 29 Cal. 4th at 1150-51 (dismissing restitution claim for commissions plaintiff alleged he would have received if the defendants had not caused government contract at issue to be awarded to third party).[12] Injunctive relief is likewise unavailable to KinderStart

---

[12] Kinderstart's restitution theory also fails because it does not allege, as it must, that Google obtained any money from Kinderstart by reducing KinderStart's search ranking. *See Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126-27 (2000) ("In our ensuing discussion of the UCL, when we refer to orders for restitution, we mean orders compelling a UCL defendant to *return* money obtained through an unfair business practice *to those persons in interest from whom* the property was taken . . .") (emphasis added). Here, Google has obtained nothing from Kinderstart, directly or indirectly. It has nothing to return. *Cf Hirsch v. Bank of America*, 107 Cal. App. 4th 708, 722 (2003) (relied upon by Kinderstart, but easily distinguished, as the defendant banks were alleged to have received a financial benefit at plaintiffs' expense by charging excessive fees to title companies who passed those excessive fees through to plaintiffs).

1 because, as Google explained, the injunction sought by KinderStart would violate the protections
2 afforded to Google under the First Amendment.  MTD at 20.  KinderStart nowhere addresses this
3 deficiency, and its failure to do so constitutes a concession that Google's argument is
4 meritorious.  *See, e.g., Scognamillo v. Credit Suisse First Boston LLC*, No. C03-2061, 2005 WL
5 2045807, at *7 (N.D. Cal. Aug. 25, 2005) (granting motion to dismiss).

### H. KinderStart States No Claim for Breach of the Implied Covenant

Google identified two fundamental flaws in KinderStart's claim for breach of the implied covenant:  (1) its hypothetical covenant is at odds with the express provisions of the AdSense Agreement; and (2) nothing in the text of the Agreement can be read to imply the covenant KinderStart has concocted.  MTD at 23-25.  KinderStart's only argument in opposition, that Google's reliance on the contract improperly imposes an "affirmative defense," is nonsensical.  As demonstrated by the cases Google cited, which were not challenged by KinderStart, Google's resort to the Agreement is appropriate in light of KinderStart's reference to it in the Complaint, and the claim is properly dismissed as a matter of law.  MTD at 24-25.

### III. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss the Amended Complaint in its entirety, with prejudice.

Dated: June 16, 2006

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Colleen Bal
     Colleen Bal

Attorneys for Defendant
Google Inc.