1  DAVID H. KRAMER, State Bar No. 168452
   COLLEEN BAL, State Bar No. 167637
2  LISA A. DAVIS, State Bar No. 179854
   BART E. VOLKMER, State Bar No. 223732
3  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
4  650 Page Mill Road
   Palo Alto, CA 94304-1050
5  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
6  DKramer@wsgr.com

7  JONATHAN M. JACOBSON
   WILSON SONSINI GOODRICH & ROSATI
8  Professional Corporation
   12 East 49th Street, 30th Floor
9  New York, NY 10017-8203
   Telephone: (212) 999-5800
10 Facsimile: (212) 999-5899
   JJacobson@wsgr.com
11
   Attorneys for Defendant
12 Google Inc.

13
                        UNITED STATES DISTRICT COURT
14
                       NORTHERN DISTRICT OF CALIFORNIA
15
                              SAN JOSE DIVISION
16

17
   KINDERSTART.COM, LLC, a California          )  CASE NO.: C 06-2057 JF (RS)
18 limited liability company, on behalf of itself )
   and all others similarly situated,           )  **DEFENDANT GOOGLE INC.'S**
19                                              )  **NOTICE OF MOTION AND SPECIAL**
                   Plaintiffs,                  )  **MOTION TO STRIKE PURSUANT TO**
20                                              )  **CCP § 425.16**
           v.                                   )
21                                              )  Before:    Hon. Jeremy Fogel
   GOOGLE INC., a Delaware corporation,         )  Date:      October 27, 2006
22                                              )  Time:      9:00 a.m.
                   Defendant.                   )  Courtroom: 3
23                                              )
                                                )
24                                              )
                                                )
25

26

27

28

GOOGLE'S SPECIAL MOTION TO STRIKE SAC
CASE NO. C 06-2057 JF (RS)

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................... 1

POINTS AND AUTHORITIES .............................................................................................. 1

I. INTRODUCTION ......................................................................................................... 1

II. STATEMENT OF THE CASE ..................................................................................... 2

III. ARGUMENT ................................................................................................................ 4

    A. Background of California's Anti-SLAPP Statute ..................................................... 4

    B. KinderStart's Free Speech Claim "Arises From" Google's Exercise of its Free Speech Rights ................................................................................................ 5

    C. Google's Protected Speech Took Place In A Place Open to the Public and In Connection with a Public Issue or an Issue of Public Interest ................................ 6

    D. KinderStart Cannot Demonstrate a Probability of Prevailing on its Claim ............ 9

    E. Section 425.17 Does Not Apply to this Case ......................................................... 11

        1. The Section 425.17(b) Public Interest Exemption Does Not Apply ......... 11

        2. The Section 425.17(c) Commercial Speech Exemption Does Not Apply ........................................................................................................ 12

        3. The Entirety of Section 425.17 Is Inapplicable Because Google Is Engaged in the Creation of a Literary Work ............................................ 13

    F. Google Requests All Attorney's Fees Incurred Defending Against KinderStart's Free Speech Claim ............................................................................ 14

IV. CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106 (2003) ................................................................ 9

*America Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851 (E.D. Va. 1999) ............................ 10

*Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569 (2005) ................................................................ 8

*ARP Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc.*,
    138 Cal. App. 4th 1307 (2006) ................................................................................................ 5

*Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322 (2004) ............................ 8

*Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903 (2004) ....................................................... 11

*Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033 (1986) .................................................................... 5, 12

*Blumenthal v. Drudge*, 992 F. Supp. 44 (D.C. Cir. 1998) ............................................................ 10

*Carver v. Bonds*, 135 Cal. App. 4th 328 (2005) ............................................................................. 8

*Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468 (2000) ...................................... 6, 8

*DuPont Merck Pharm. Co. v. Superior Court*, 78 Cal. App. 4th 562 (2000) ................................ 7

*Feist Pub'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .................................................... 14

*Fontani v. Wells Fargo Invs., LLC*, 129 Cal. App. 4th 719 (2005) ................................................ 8

*Foundation for Taxpayer & Consumer Rights v. Garamendi*,
    132 Cal. App. 4th 1375 (2005) .............................................................................................. 13

*George v. Pacific-CSC Work Furlough*, 91 F.3d 1227 (9th Cir. 1996) ....................................... 10

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
    63 F. Supp. 2d 1127 (N.D. Cal. 1999) ................................................................................. 4, 5

*Golden Gateway Center v. Golden Gateway Tenants Ass'n*,
    26 Cal. 4th 1013 (2001) ........................................................................................................... 9

*Green v. America Online, Inc.*, 318 F.3d 465 (3d Cir. 2003) ....................................................... 10

*Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000) .................................................... 10

*Ingels v. Westwood One Broad. Servs. Inc.*, 129 Cal. App. 4th 1050 (2005) ............................... 11

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) ................................................................................. 13

*King v.* Atiyeh, 814 F.2d 565 (9th Cir. 1987) ............................................................................... 15

*Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972) ................................................................................. 9

*London v. Cooper & Lybrand*, 644 F.2d 811 (9th Cir. 1981) .......................................................... 15

*New.Net, Inc. v. Lavasoft,* 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ........................................ 7, 8, 9

*Paradise Hills Assoc. v. Procel*, 235 Cal. App. 3d 1528 (1991) ....................................................... 7

*Pfeiffer Venice Props. v. Bernard*, 101 Cal. App. 4th 211 (2002) ................................................. 14

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*,
    136 Cal. App. 4th 464 (2006) ................................................................................................... 9

*Search King Inc. v. Google Tech., Inc.*, No. CIV-02-1457,
    2003 WL 21464568 (W.D. Okla. 2003) ................................................................... 5, 12, 14

*Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798 (2002) ............................................................ 8

*Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226 (1999) .................................................... 8

*Trader Joe's Co. v. Progressive Campaigns, Inc.*, 73 Cal. App. 4th 425 (1999) ........................... 9

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................................... 4, 5

*Vogel v. Felice*, 127 Cal. App. 4th 1006 (2005) ............................................................................... 6

**STATUTES**

17 U.S.C. § 101 ................................................................................................................................ 12

17 U.S.C. § 102(a)(1) ....................................................................................................................... 13

47 U.S.C. § 230(c)(2) ......................................................................................................................... 2

Cal. Civ. Proc. Code § 425.16 ................................................................................................*passim*

Cal. Civ. Proc. Code § 425.17 ........................................................................................... 11, 12, 13

**MISCELLANEOUS**

1 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 2.04
    (Dec. 2005) ................................................................................................................................ 13

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on October 27, 2006 at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 280 South First Street, Courtroom 3, 5th Floor, San Jose, California, 95113, in the courtroom of the Honorable Jeremy Fogel, defendant Google Inc. ("Google") will and hereby does move the Court, pursuant to Cal. Civ. Proc. Code § 425.16, for an order striking the claim for relief from the Second Amended Complaint ("SAC") of plaintiff KinderStart LLC ("KinderStart") alleging a violation of the First Amendment and the California Constitution ("Count Four"). Google will renew and hereby renews its prior motion to the Court for an order striking from KinderStart's First Amended Complaint ("FAC") its claim for negligent interference with prospective economic advantage ("Count Nine").

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Matthew Cutts, the pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

**POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

In its SAC, KinderStart continues to pursue a frivolous claim against Google for alleged violations of KinderStart's right to free speech. It does so despite the Court's express skepticism of the claim, and despite dismissal of the same claim from KinderStart's First Amended Complaint ("FAC"). Once again, KinderStart's claim turns free speech guarantees on their head, asking the Court to hold Google liable for exercising its own right to speak freely in recommending (or not recommending) particular websites in its highly popular search results.

Given that KinderStart's claim arises from Google's exercise of free speech rights on a matter of public interest, under California's anti-SLAPP statute, California Civil Procedure Code Section 425.16, the claim must be stricken unless KinderStart can establish a probability of success on the claim. KinderStart cannot carry that burden. Its free speech claim fails as a matter of law both because Google is not a state actor and because Google's right to exclude

sites from its search results is protected by a federal statutory immunity, 47 U.S.C. § 230(c)(2). Accordingly, the free speech claim should be stricken and Google should be awarded its attorney's fees and costs incurred in defending against the claim.

## II.      STATEMENT OF THE CASE

The background of this case has been described in Google's Motions to Dismiss KinderStart's FAC (Doc. No. 11) and the SAC (filed concurrently herewith). Rather than repeat that general discussion, Google incorporates the memorandums supporting those motions by reference here.

KinderStart's fourth claim for relief in its SAC, entitled "Violation of Rights of Free Speech" challenges what KinderStart calls – "Blockage" – Google's exclusion of certain Internet web sites from its database (or "index") of websites and its election not to recommend such sites to users in response to their search queries. *See*, *e.g.*, SAC ¶ 257 (basing Google's supposed liability on the allegation that "Google . . . blocks Engine results showing Website Content and Speech Content of Plaintiff KSC"). In its Original Complaint in this action ("Compl."), KinderStart alleged that Google's decision on which sites to exclude "is presumably based on either stated or unstated 'quality guidelines.'" Compl. ¶ 23. *See also* FAC at ¶¶ 61, 64 (alleging Google takes quality guidelines into account in its displaying search results); FAC ¶¶ 44-45 (describing impact of quality standards on search results); SAC ¶ 153 (noting that Google discloses that it manually removes websites from the index that do not conform to its quality standards and that Google does not "offer an exhaustive list of practices that can cause removal."). As set forth in the accompanying Declaration of Matthew Cutts ("Cutts Decl."), KinderStart's assumption – that Google employs quality guidelines to remove sites from its search results – is correct:

> Google's highly popular Internet search engine is at the center of Google's corporate mission to organize the world's information. Through its search engine, Google supplies millions of Internet users with recommendations on websites that in Google's view will be of interest to them given their particular search query. Given the enormity of the World Wide Web, Google relies heavily on automated processes to generate its database (or "index") of websites, and to select from that index those sites it believes to be most relevant for a given query.

When someone attempts to subvert how a search engine ranks the relevance of documents, that practice is called "webspam" in the search industry. Webspam strikes at the heart of one of Google's advantages: the quality (i.e. relevance) of our search results for users. If Google's quality suffers, competing search engines are only a few keystrokes away. Accordingly, Google considers webspam to be extremely serious and highly objectionable. As it explains in detail in quality guidelines on its site, when Google believes a site is engaged in or is supporting webspam, Google may remove the site from its index and search results (or take other actions including lowering its assessed value) to prevent the webspam from corrupting Google's search results with pages that Google's users will not find relevant.

Google uses over 100 different factors in assessing the relevance of a particular web page to a user's query. One important component in selecting which web pages to recommend is a page's "reputation." Google assesses a page's reputation in many ways, including the use of algorithms to understand the quality and quantity of other sites linking to (and thus seemingly recommending) the page. Unfortunately, because search engines use links to help assess reputation, unscrupulous site operators often engage in web spamming, attempting to gather as many illegitimate links as possible from all over the web. Some operators pay sites to link to them, while others generate automated messages in locations all over the web containing links to their sites. Google has made clear publicly that it is a violation of Google's quality guidelines to participate in link schemes designed to increase rankings of sites, and that specifically includes hosting links to sites that appear to be gaming Google's search results processes.

When a site is linking to multiple low-quality sites, or is hosting links to suspect or "spammy" sites having nothing to do with the subject matter of its own, the original site is itself highly suspect, and may run afoul of Google's quality guidelines. One reason why that is so, is that if a site does not care to police its outbound links to promote a good user experience, it is also not likely to care very much about the content on its site.

Google's analysis of "webspam" links is affected by at least two elements: how long the links remain, and how many links there are to "spammy", off-topic sites. The more such links there are, and the longer they stay up on a site, the more objectionable the linking is to Google.

So, for example, when a site like KinderStart, ostensibly directed to young children or parents of young children, hosts hundreds of links to hardcore pornography sites for months at a time, that is a strong indicator that the KinderStart site is either not well-maintained, or that the site is "selling out" and hosting links to these other sites in an effort to game Google's search engine. Either way, it is a serious strike against the reputation of a site.[1]

* * *

---

[1] By way of example only, the Cutts Declaration attaches a page from the KinderStart site as it appeared on March 25, 2005 (approximately when Kinderstart complains it was "inexplicably" barred from Google's search results). As the page shows, KinderStart's forums were home to members like "incestsex21" and "xxxrated" who for months or years KinderStart permitted to post countless, duplicative links to sites such as "firstincest.pervertedtaboo.com," "1adult-sex.com," and "xxxfree.sexjur.com" among many others *See* Cutts Decl., ¶7, Ex. A.

> In such situations, as Google makes abundantly clear, to preserve the integrity of its search results, Google may remove sites hosting these links from its index or take steps to reduce the deleterious impact they have on Google and its users. When it does so, it is acting to restrict access to content it believes is objectionable and content that it believes its users would find objectionable.

Cutts Decl. at ¶¶ 2-9.[2]

According to KinderStart, when Google expresses itself through its search results and elects not to recommend the KinderStart site to its millions of users, Google is violating *KinderStart's* free speech rights. KinderStart thus proposes a regime under which Google "must carry" all websites in its index, no matter how objectionable, in order to ensure that the free speech rights of those websites are protected. KinderStart's radical claim is unsupportable, and its attempt through this action to compel Google to speak violates Google's free speech rights.

## III. ARGUMENT

### A. Background of California's Anti-SLAPP Statute

California's anti-SLAPP statute, found in California Civil Procedure Code Section 425.16, was enacted "to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." Cal. Civ. Proc. Code § 425.16(a). The statute provides that a claim for relief "shall be subject to a special motion to strike" if it "aris[es] from any act . . . in furtherance of that person's right of . . . free speech under the United States Constitution or California Constitution . . . ." California's legislature has made clear in the statute's text that the protections of this statute are to be "construed broadly." Cal. Civ. Proc. Code § 425.16(b)(1).[3]

---

[2] As Mr. Cutts also explains: "Google's objection for purposes of its anti-webspamming operations, is not to the content of the sites to which KinderStart links (although individuals may certainly have such objections). Google's problem would be the same if the links flooding KinderStart's site were related to diet pills sites . . . or sites promoting debt consolidation. Google's issue is that the links are to sites that are attempting to game Google's search engine processes and that the site hosting those links is complicit in such efforts either because it is receiving consideration for hosting the links, or does not care to police the links from its site." Cutts Decl. ¶ 9.

[3] "California and federal courts have repeatedly permitted defendants to move to strike under the anti-SLAPP statute despite the fact that they were neither small nor championing individual interests." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (affirming grant of special motion to strike with respect to the motion of two corporate defendants against an individual plaintiff).

1  "A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry. First, a defendant 'must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech.'" *Vess*, 317 F.3d at 1110, *citing Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999). "[O]nce the defendant has made a prima facie showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Id*. If the plaintiff cannot carry this evidentiary burden, the claims at issue should be stricken.

### B. KinderStart's Free Speech Claim "Arises From" Google's Exercise of its Free Speech Rights

Google easily carries its burden to demonstrate that KinderStart's free speech claim "arises from" Google's protected speech because the claim seeks to hold Google liable for its decision not to include KinderStart in the results that Google communicates to users of its search engine. Indeed, KinderStart challenges Google's ability to independently "find[], index[] and rank[] . . . Websites on the Internet" and present the results of that process to its users. SAC ¶ 256. When Google indexes websites, ranks them and provides recommendations regarding their relevance in relation to particular keyword queries, it is unequivocally engaged in protected speech.

This speech is qualitatively the same as a New York Times book review, a Consumer Reports ranking for a new car or a Zagat restaurant review. KinderStart's claim here is no different than an author, automobile manufacturer or restaurant owner filing suit in an effort to compel a private party to (favorably) review its product on First Amendment grounds. KinderStart plainly takes issue with Google's *protected speech* in recommending (or failing to recommend) particular websites and asks the Court to compel Google to alter its speech regarding KinderStart's website. *See Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1048 (1986) (the California Supreme Court holding that a newspaper cannot be held liable for failing to include a book on its "Best Sellers" list because the paper's speech in choosing whom to include on the list is protected by the First Amendment); *Search King Inc. v. Google Tech., Inc.*, No. CIV-02-1457,

2003 WL 21464568, at *4 (W.D. Okla. May 27, 2003) (finding that Google's "opinions of the significance of particular web sites as they correspond to a search query" are protected speech) (erroneously referred to as being uncitable under the Local Rules by plaintiff's counsel); *ARP Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc.*, 138 Cal. App. 4th 1307, 1322-23 (2006) ("refusal to comply with the compelled speech requirement of the statute is an act in furtherance of respondents' right of free speech" under the anti-SLAPP statute).  Because KinderStart's claims arise directly from Google's protected speech, this aspect of Google's required showing under the anti-SLAPP statute is satisfied.

### C. Google's Protected Speech Took Place In A Place Open to the Public and In Connection with a Public Issue or an Issue of Public Interest

The anti-SLAPP statute also requires that Google show that its speech occurred in a place open to the public and that it was in connection with an issue of public interest.  *See* Cal. Civ. Proc. Code § 425.16(e)(3) (speech within the purview of the anti-SLAPP statute includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest").  Section 425.16(e)(4) further extends the anti-SLAPP statute to "*any other conduct* in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest" (emphasis added). These requirements are also easily satisfied.

KinderStart's SAC expressly concedes that Google's speech at issue occurred "in a place open to the public" under California Civil Procedure Code § 425.16(e)(3).  *See* SAC ¶ 91 ("Anyone with Internet access can go to Defendant's own website or any number of thousands of other Websites having a 'Google Search Box' as provided by Google to use the Engine without payment or charge"); ¶ 251 ("Google created and now manages, with the largest search engine in history, a freely accessible, nationwide public forum . . . ."); *see also Vogel v. Felice*, 127 Cal. App. 4th 1006, 1015 (2005) (speech made on the Internet is open to the public for the purposes of California's anti-SLAPP statute).

The speech challenged by KinderStart's claims and Google's related conduct were also made "in connection with an issue of public interest" because Google's speech "impacts a broad

1 segment of society." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479-80

2 (2000) (the public interest requirement has been "broadly construed"). Indeed, KinderStart's

3 own allegations demonstrate the applicability of the public interest prong:

- Google's rankings "effectively influence[] millions of users, businesses and organizations regarding the evaluation and goodwill of millions of Websites across the Internet." SAC ¶ 51.

- "The Engine accepts text-based queries and other search criteria over the Internet from millions of users weekly across the U.S. These queries cover the widest possible range of topics, expression, and opinions on all facets of society, culture, and human experience, including politics and religion." SAC ¶ 83.

- "Defendant Google has created and now controls as the sole steward the Engine, which is a public forum for the expression, transfer and flow of information, opinions, ideas and speech among millions of users, Websites and members of the public. The Engine operates 24-7 to allow any user to perform a search for Websites and Web Content and viewing and receiving speech and information of all forms." SAC ¶ 91.

- "[T]he Engine of Google has become the dominant information source for teens and students." SAC ¶ 97.

Those allegations amply demonstrate that Google's speech concerns a matter of public interest. *See*, *e.g.*, *DuPont Merck Pharm. Co. v. Superior Court*, 78 Cal. App. 4th 562, 567 (2000) (finding public interest requirement satisfied based on plaintiff's own allegations).

Confirming this, KinderStart makes clear in its SAC that it seeks to challenge Google's ability to express its view on Internet sites generally across a wide "class" of plaintiffs. Indeed, KinderStart seeks to represent all websites which have been removed or "blocked" from Google's search results and those websites which have been penalized or given a "lower priority on Google's Search Results" because they failed to comply with Google's quality guidelines. SAC ¶ 191. KinderStart's claim is not an isolated legal dispute between two companies, but a facial attack on the way Google runs its search engine, which is the most popular search engine in the world. KinderStart's demand that the Court compel Google to change its views on hundreds or thousands of websites is certainly a matter of public import. *Paradise Hills Assocs. v. Procel*, 235 Cal. App. 3d 1528, 1544 (1991) ("[c]ourts have recognized the importance of the public's access to consumer information").

GOOGLE'S SPECIAL MOTION TO STRIKE         -7-                                    2958511_1.DOC
CASE NO. C 06-2057 JF (RS)

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) addresses this issue directly. There, defendant Lavasoft distributed software that detected and allowed users to remove what Lavasoft determined to be harmful programs (*e.g.*, "spyware") from their personal computers. *Id*. at 1095-96. When the Lavasoft software detected a New.net program and identified it as potentially harmful, New.net sued Lavasoft for (1) unfair competition; (2) trade libel; (3) and tortious interference with prospective economic advantage. *Id*. at 1097. Lavasoft responded with an anti-SLAPP motion, claiming it was being sued for exercising its free speech rights. *Id*. at 1099. On the question of whether Lavasoft's speech – its identification of the New.net software as harmful – concerned a matter of public interest, the court explained: "Because the issue of public awareness of, and protection from, the unknown are at the heart of the public information service Defendant provides and because that service is of public significance, speech in this area should not be chilled by litigation brought by Plaintiff who seeks to stifle speech to enhance its profits." *Id*. at 1106. The court went on to grant Lavasoft's anti-SLAPP motion. *Id*. at 1114-15.

Google's speech here is similarly protected. Given its breadth, the Internet would be far less useful without effective search tools. Google's search results allow web users to find web pages that Google believes are relevant in response to their queries. Google's search engine is popular precisely because users have found that Google's opinion regarding the relative importance of websites is an effective way to locate content they are looking for on the Internet. Google's ability to freely express these opinions to users – like Lavasoft's ability to freely express its views about potentially harmful software on users' computers – is undoubtedly important to the public at large, and thus concerns a matter of public interest within the meaning of the anti-SLAPP statute. *See also Carver v. Bonds*, 135 Cal. App. 4th 328, 344 (2005) (newspaper article that "served as a warning against [a doctor's] method of self-promotion" involved a matter of public concern); *Fontani v. Wells Fargo Invs., LLC*, 129 Cal. App. 4th 719, 733 (2005) (statement in a regulatory filing concerned "conduct capable of affecting a significant number of investors" and thus was a matter of public interest); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576-77 (2005) (Internet postings about corporate activity of a publicly traded

1  company concerned the public interest); *Bernardo v. Planned Parenthood Fed'n of Am.*, 115
2  Cal. App. 4th 322 (2004) (statements contained on an organization's website regarding abortion
3  concerned a matter of public interest); *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 807
4  (2002) ("on-air discussion between [] talk-radio cohosts and their on-air producer about a
5  television show of significant interest to the public and the media" concerned a matter of public
6  interest); *Damon*, 85 Cal. App. 4th at 475-480 (communications regarding "the manner in which
7  a large residential community would be governed" concerned issues of public interest); *Sipple v.*
8  *Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 238 (1999) ("allegations of physical and verbal
9  abuse against a prominent media strategist by two former wives" concerned a public issue).
10 Ultimately, KinderStart's entire case is premised on the notion that Google's assessments of
11 websites carry significant weight with the public. For these reasons, Google's speech falls
12 within the purview of the anti-SLAPP statute.

13     **D.**    **KinderStart Cannot Demonstrate a Probability of Prevailing on its Claim**

14 As Google has carried its burden under the anti-SLAPP statute, KinderStart's claim must
15 be stricken "unless the court determines that [KinderStart] has established that there is a
16 probability that [it] will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). "In making
17 its determination, the court shall consider the pleadings, and supporting and opposing affidavits
18 stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code §
19 425.16(b)(2). "In order to establish a probability of prevailing on the claim a plaintiff
20 responding to an anti-SLAPP motion must state and substantiate a legally sufficient claim."
21 *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Ass'n*, 136 Cal. App. 4th 464, 476
22 (2006) (citations and internal quotations omitted). That is, the plaintiff must demonstrate that its
23 claims are not only adequately pled, but demonstrate with *evidence* that the claims are
24 "'supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the
25 evidence submitted by the plaintiff is credited.'" *Id.*; *Lavasoft,* 356 F. Supp. 2d at 1099.
26 Here, KinderStart cannot prevail on its "free speech" claim as a matter of law for at least
27 two reasons both of which are detailed more fully in Google's Motion to Dismiss the SAC.
28 First, only state actors are bound by the First Amendment or the free speech clause of the

1  California constitution.  *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 567 (1972); *Golden Gateway*

2  *Center v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013 (2001).[4]  Google is not a state actor;

3  rather, Google is a corporation owned by its shareholders.  *See* SAC ¶¶ 15 (Google is a Delaware

4  corporation); 43-44 (Google filed 10-Ks with the SEC; discussing Google's annual revenues).

5  Because Google is not a state actor, KinderStart's free speech claim cannot succeed.  *See*

6  *Howard v. America Online Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (affirming dismissal of First

7  Amendment claim against Internet service provider on ground that it was not a state actor);

8  *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1231 (9th Cir. 1996) (affirming dismissal

9  of complaint based on the First Amendment which failed to "plead a nexus between the

10 government and the complained-of action").

11       Second, 47 U.S.C. § 230(c)(2)(A) bars any claims arising from an interactive service

12 provider's determination to restrict access to any site that the provider deems objectionable.

13 Courts have deferred to service providers' determinations as to what is "objectionable" content,

14 applying Section 230(c)(2), for example, to shield a provider from liability for restricting access

15 to email that the provider determined was undesirable "spam".  *See Green v. America Online,*

16 *Inc.* 318 F.3d 465, 473 (3d Cir. 2003) (relying on § 230(c)(2) to find AOL immune from false

17 advertising claim for restricting user access to email that AOL considered objectionable "spam");

18 *America Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851, 864 (E.D. Va. 1999) (relying on §

19 230(c)(2) to find that "blockage" of spam is "encouraged by federal law" and thus not wrongful);

20 *see also Blumenthal v. Drudge*, 992 F. Supp. 44, 52 n.13 (D.C. Cir. 1998) (explaining that while

21 § 230(c)(2) "primarily addresses obscenity and violent material, it also references material that is

22 'otherwise objectionable,' a broad enough category to cover defamatory statements as well").

23

---

24   [4] California's narrow exception to the state action doctrine – for a shopping center serving as the functional equivalent of a traditional public forum – certainly does not apply in this case.  *See*
25  *Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106 (2003) (rejecting claim that major supermarket should be treated as state actor; California's exception to state action requirement does not apply
26  merely because property is open to the public; rather, property must function as equivalent to traditional public forum); *Trader Joe's Co. v. Progressive Campaigns, Inc.*, 73 Cal. App. 4th
27  425, 432-437 (1999) (stand alone grocery store does not have a public character with respect to speech and therefore the free speech clause of the California constitution does not govern its
28  conduct).

1  Here, KinderStart's claims are predicated on Google's alleged blockage of sites that Google
2  determines are objectionable (and that its users will find objectionable) because they contain
3  "web spam" and threaten the efficacy of Google's search engine. SAC ¶ 257. As a matter of
4  law, Google enjoys federal immunity for such a claim. For this reason as well, KinderStart
5  cannot possibly prevail on its free speech claim.

**E.    Section 425.17 Does Not Apply to this Case**

7  Google's special motion to strike satisfies all of the requirements of Section 425.16. The
8  only question remaining is whether the recently-enacted exemption to the anti-SLAPP statute,
9  embodied in Section 425.17, removes this action from the statute's protections. The answer is no
10 because: (1) KinderStart's claims are not brought solely in the public interest; (2) the commercial
11 speech exemption does not apply; and (3) Google is engaged in the creation and dissemination of
12 a literary work.

**1.    The Section 425.17(b) Public Interest Exemption Does Not Apply**

14 "Section 425.16 does not apply to any action brought solely in the public interest." Cal.
15 Civ. Proc. Code § 425.17(b). It is obvious, however, that this is not such an action. Here,
16 KinderStart seeks monetary recovery for itself and its motivation in bringing this action is plainly
17 personal gain. *See* SAC ¶ 175 (noting that the lawsuit stems from a "precipitous fall by over
18 80%" in KinderStart's advertising revenue). This alone is fatal to the public interest exemption
19 of Section 425.17(b). *See Ingels v. Westwood One Broadcasting Services*, 129 Cal. App. 4th
20 1050, 1066 (2005) ("Because appellant alleges and seeks recovery of damages personal to
21 himself, his claim fails to meet the first requirement set out in section 425.17, subdivision (b)"
22 and quoting legislative history: "public interest" lawsuits are filed "without an injured plaintiff"
23 and by "people [who] are acting only in the public interest as private attorneys general, *and are*
24 *not seeking any special relief for themselves*.") (emphasis in original); *Blanchard v. DIRECTV,*
25 *Inc.*, 123 Cal. App. 4th 903, 913-17 (2004) (action not subject to public interest exemption where
26 it was motivated by personal gain).[5]

27
28      [5] In addition, KinderStart cannot meet *any* of the three other requirements for application
of Section 425.17(b)'s public interest exemption. *See* Cal. Civ. Code § 425.17(b)(1)
(continued...)

### 2.     The Section 425.17(c) Commercial Speech Exemption Does Not Apply

The anti-SLAPP statute also does not apply to certain actions arising from commercial speech. Cal. Civ. Proc. Code § 425.17(c). This exception, however, is inapplicable to Google in this case because the exception is solely directed to "representations of *fact* about [a] person's or a business competitor's business operations, goods, or services." The speech challenged by KinderStart here does not consist of assertions of *fact* at all. Rather, the challenged speech expresses Google's protected opinion regarding the relative importance of websites. Specifically, with respect to Google's search results, KinderStart concedes that they are Google's opinion of which sites are most likely to be of relevance to a user, given a particular search query. *See* SAC ¶ 3 ("Search Results list [links to websites] *in an order chosen by Defendant*") (emphasis added). Google's search results are no different than a newspaper's recommendations of books to read on a particular topic or a tour guide's view of worthy Italian restaurants in a particular area. *See also* SAC ¶ 256 ("Defendant Google enjoys and exercise [sic] complete and arbitrary discretion on the form, content, and application of the [sic] its Web Recommendations as to the finding, indexing and ranking of Websites on the Internet."). These are statements of opinion, not fact, and the commercial speech exception is inapplicable to them. *Search King Inc.*, 2003 WL 21464568, at *4.

The California Supreme Court's decision in *Blatty* is instructive in this regard. *Blatty*, 42 Cal. 3d at 1048 n.3. The plaintiff in *Blatty* challenged the New York Times' publication of its "Best Sellers" list, claiming its work was wrongfully left off the list. The plaintiff argued that the newspaper's list was merely "commercial speech" and not subject to full First Amendment protection. *Id.* The Supreme Court disagreed: "That the Times is alleged to have marketed the list for its newspaper profit does not affect the result: commercial motivation does not transform noncommercial speech into commercial speech." *Id*. Google's index of the relative importance

---

(...continued from previous page)
(exception does not apply if plaintiff seeks relief "greater than or different from" the general public or the class); § 425.17(b)(2) (exception only applies to those actions which "would enforce an important right affecting the public interest, and would confer a significant benefit . . . on the general public"); § 425.17(b)(3) (exception only applies where "[p]rivate enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter").

of websites is even more subjective than the "Best Sellers" list in *Blatty* and more closely resembles a "recommended reading" list than a best sellers list. The fact that Google generates its index for commercial purposes does not transform the index or Google's opinions into commercial speech. This result is in accord with California law regarding the character of commercial speech, which must concern *factual* representations, not statements of opinion. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 946 (2002) (to qualify as commercial speech, "the *factual content* of the message should be commercial in character") (emphasis added).

Because the challenged speech here does not consist of facts, but rather of Google's protected opinion, the commercial speech exemption to the anti-SLAPP statute does not apply.

### 3. The Entirety of Section 425.17 Is Inapplicable Because Google Is Engaged in the Creation of a Literary Work

Under Cal. Civ. Proc. Code § 425.17(d)(2), the exemption to the anti-SLAPP statute is inapplicable in "[a]ny action against any person or entity based upon the creation, dissemination, exhibition . . . or other similar promotion of any . . . literary . . . work . . . ." In *Foundation for Taxpayer & Consumer Rights v. Garamendi*, 132 Cal. App. 4th 1375, 1391 (2005), the California Court of Appeal explained that the types of works that are subject to Section 425.17(d)(2) are those "work[s] of a kind that might be subject to copyright protection."

Here, Google is being sued for the creation and distribution of its web index and the search results that are displayed based on that index. Google's index and its search results reflect Google's creative expression and certainly qualify as "literary works" under the Copyright Act. *See* 17 U.S.C. § 101 ("'Literary works' are works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied."); 1 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 2.04[B] (Dec. 2005) ("[t]he definition of 'literary works' . . . is broad enough to include catalogs and directories, and this was, indeed, the legislative intent"); *Id*. at § 2.04[C] ("[t]he statutory definition of 'literary works' is broad enough to include computer data bases and programs").

1  As the present case demonstrates, in developing its index of websites and the search
2  results generated from it, Google is engaged in a process of assessing and ranking the
3  significance of those websites and sharing that information with the world.  There are myriad
4  creative decisions made by Google in this process, from its choice of what attributes its
5  algorithms should consider in evaluating a particular site, to how much weight each selected
6  attribute should be given by the algorithm, to whether sites should be removed from the index or
7  have their importance reduced.  *Search King*, 2003 WL 21464568, at *3. ("[E]very algorithm
8  employed by every search engine is different, and will produce a different representative of the
9  relative significance of a particular web site depending on the various factors, and the weight of
10 the factors, used to determine whether a web site corresponds to a search query.").  These
11 editorial decisions imbue Google's web index and the search results it produces with creative
12 expression, rendering the index and results fully subject to copyright protection as a literary
13 work.  *See* 17 U.S.C. § 102(a)(1) ("Copyright protection subsists . . . in original works of
14 authorship . . . .  Works of authorship include . . . literary works"); *Feist Pub'n, Inc. v. Rural Tel.*
15 *Serv. Co.*, 499 U.S. 340, 348 (1991) ("even a directory that contains absolutely no protectible
16 written expression, only facts, meets the constitutional minimum for copyright protection if it
17 features an original selection or arrangement").  KinderStart concedes that there is selection and
18 arrangement within Google's search results.  *See* SAC ¶ 3 (search results are displayed "*in an*
19 *order chosen by Defendant*") (emphasis added).  Because this is an action against Google based
20 upon its "creation, dissemination, exhibition . . . or other similar promotion of any . . . literary . . .
21 work," the exemption of Section 425.17 is inapplicable, and the protections of California's anti-
22 SLAPP statute remain in full force.

23  **F.  Google Requests All Attorney's Fees Incurred Defending Against KinderStart's Free Speech Claim**
24

25  Under California Civil Procedure Code § 425.16(c), a defendant who prevails on an anti-
26 SLAPP motion "shall be entitled to recover his or her attorney's fees and costs."  An award of
27 attorney fees to a prevailing defendant on a special motion to strike is mandatory. *See Pfeiffer*
28 *Venice Props. v. Bernard*, 101 Cal. App. 4th 211, 215 (2002).  This is the second time that

Google has had to move to strike KinderStart's free speech claim. The total fees that Google will ultimately incur in defense of the claims at issue here cannot be determined until this motion and Google's motion to dismiss are resolved. At that point, Google will submit evidence to support a claim for its expenses at a time and in a manner that is convenient for the Court.[6]

## IV.   CONCLUSION

For the foregoing reasons, Defendant Google Inc. respectfully requests that the Court grant its anti-SLAPP motion, strike KinderStart's free speech claim (count four) from its SAC and its negligent interference claim (count nine) from its FAC, and award Google all of the fees and costs it incurred in responding to the claims.

Dated:  September 22, 2006
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ David H. Kramer
       David H. Kramer

Attorneys for Defendant
Google Inc.

---

[6] Through this motion, Google also renews the Special Motion to Strike it filed on May 2, 2006 (the "Original Special Motion") as to KinderStart's negligent interference claim (count eight) in KinderStart's First Amended Complaint ("FAC"). In its Order dated July 13, 2006 (the "Order"), the Court granted Google's Motion to Dismiss the FAC with leave to amend, and deferred consideration of the Original Special Motion. *See* Order at 22-23, KinderStart dropped the negligent interference claim entirely from its SAC. The basis for the renewed motion is straightforward. In its Original Special Motion, Google met its burden under California's anti-SLAPP statute of establishing that KinderStart's negligent interference claim arose from Google's exercise of its free speech rights on a matter of public interest. *See* Original Special Motion at 3-6, Original Reply at 2-5. Having done so, and having demonstrated that no exceptions to the statute applied, Google imposed upon KinderStart the burden of proving that it had a probability of success on its negligent interference claim. *See* Original Special Motion at 3, 7, 10-13. KinderStart failed to carry that burden in opposition to Google's Original Special Motion. Moreover, having now dropped its negligent interference claim from the case entirely, KinderStart has conceded that it did not have a probability of success on the merits of the claim. *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("It has long been the rule in this circuit that a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *King v. Atiyeh*, 814 F.2d 565 (9th Cir. 1987) (same). Accordingly, Google is entitled to an Order granting its Original Special Motion on KinderStart's negligent interference claim, and awarding Google the attorney's fees it incurred in defending against that claim as well.