1  Gregory J. Yu (State Bar No. 133955)
   GLOBAL LAW GROUP
2  2015 Pioneer Court, Suite P-1
   San Mateo, CA 94403
3  Telephone: (650) 570-4140
   Facsimile: (650) 570-4142
4  E-mail: glgroup [at] inreach [dot] com

5  Attorney for Plaintiffs and Proposed Class and Subclasses

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

| | |
|---|---|
| KINDERSTART.COM LLC, a California limited liability company, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>Defendant. | Case No. C 06-2057 JF<br><br>**OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CCP § 425.16**<br><br>Judge:    Hon. Jeremy Fogel<br>Date:     October 27, 2006<br>Time:     9:00 a.m.<br>Courtoom: 5th Floor, Room 3 |

OPPOSITION TO DEFENDANT'S SPECIAL MOTION        Case No. C 06-2057 JF
TO STRIKE UNDER CCP § 425.16

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

    A.   Google's Motion Urges a Strike Against Free Speech Itself. ............................1

    B.   Issues Presented by the Motion. .......................................................................1

II.  UNDERLYING FACTS. .....................................................................................1

III. THE SPECIAL MOTION FALLS OUTSIDE OF ANTI-SLAPP BOUNDARIES.....2

    A.   Website Blockage does not Touch Public Interest or a Public Issue. ................2

    B.   Plaintiffs have a Probability of Prevailing on Their Free Speech Claim. .........6

    C.   The Communications Decency Act Cannot Repel Plaintiffs' Free Speech. ......6

        *1.   Google Cannot Use the First Amendment to Protect its Vague and Overbroad Guidelines.* ...........................................................................7

        *2.   California Free Speech Supports the Balancing of Burdens in Plaintiffs' Favor.* ...........................................................................11

IV.  AN ASSESSMENT OF "REASONABLE PROBABILITY" OF SUCCESS MAY REQUIRE DISCOVERY OF EVIDENCE WITHIN GOOGLE'S CONTROL. .......13

V.   DEFENDANT HAS NO GROUNDS FOR LEGAL FEES. ....................................14

VI.  CONCLUSION. ...............................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Albertson's, Inc. v. Young*, 107 Cal.App.4th 106, 117-18 (2003), *review denied*, 2003 Cal. LEXIS 3975 (Cal., Jun. 18, 2003) ................................................................................................ 12

*Bates v. State of Arizona*, 433 U.S. 350, 380-81, 97 S. Ct. 269, 153 L. Ed. 2d 810 (1977) ........... 8

*Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) ................................................................ 6

*Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033 (1986) (en banc), *cert. denied*, 485 U.S. 934, 99 L. Ed. 2d 268, 108 S. Ct. 1107 (1988) ........................................................................................ 5

*Costco Companies, Inc. v. Gallant*, 96 Cal. App. 4th 740, 754-55, 117 Cal. Rptr. 2d 344 (2002) ................................................................................................................................. 12

*Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000) ................................. 5

*Dombrowski [v. Pfister]*, 380 U.S. 479, 486-87, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965) ............. 7

*Du Charme v. International Brotherhood of Electrical Workers, Local 45*, 110 Cal App. 4th 107, 1998 ........................................................................................................................ 3

*Ex parte Jackson*, 96 U.S. 727, 733, 24 L. Ed. 877 (1878) ......................................................... 8

*Glendale Associates, Ltd., v. N.L.R.B.*, 347 F.3d 1145 (9th Cir. 2003) ...................................... 12

*Global Telemedia International, Inc. v. Does 1-35*, 132 F. Supp. 2d 1261, 1271 (C.D. Cal. 2001) ............................................................................................................................... 13

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127 (N.D. Cal. 1999) ................................................................................................................................ 4

*Green v. America Online, Inc.*, 318 F.3d 465 (3rd Cir. 2003) ..................................................... 9

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 566, 115 S. Ct.2338, 132 L. Ed. 2d 487 (1995) ..................................................................... 10

*Lafayette Morehouse, Inc. v. Chronicle Publishing Company*, 37 Cal. App. 4th 855, 868, 44 Cal. Rptr. 2d 46 (1995) ................................................................................................ 13

*Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 769, 108 S. Ct. 2138, 100 L. Ed. 2d 771 (1981) ............................................................................................................................... 8

*Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984) ............................................................................. 7

*Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258, 94 S. Ct. 2831, 41 L. Ed. 2d 730 (1974) ............................................................................................................................. 11

*N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988) ............................................................................................................................... 7

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ............................................ 3

*Pacific Gas & Elec. Co. v. Public Util. Comm'n of Cal.*, 475 U.S. 1, 20-21, 106 S. Ct. 903, 90 L. Ed. 2d 1 (1986) (plurality opinion) .................................................................................. 11

*Papachristou v. City of Jacksonville*, 405 U.S. 156, 168, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972)........................................................................................................................................ 8

*Rivero v. American Federation Of State, County And Municipal Employees*, 105 Cal. App. 4th 913, 130 Cal. Rptr. 2d. 81 (2003) ............................................................................................ 2

*Robins v. Pruneyard Shopping Ctr.*, 23 Cal.3d 899, 908, 910, 153 Cal. Rptr. 854, 592 P.2d 341 (1979), ....................................................................................................................... 12

*Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 171 F.3d 1208, 1217-18 (9th Cir. 1999), *republish.* 190 F.3d 963 (1999), *cert. denied.*, 530 U.S. 1203, 120 S. Ct. 2196, 147 L. Ed. 2d 232 (2000)................................................................................................................................... 13

*Rumsfeld v. Forum for Acad. and Inst. Rights*, 126 S. Ct. 1297, 1309, 164 L. Ed. 2d 156, 2006 U.S. LEXIS 2025 (2006) ............................................................................................... 10

*Virginia v. Hicks*, 539 U.S. 113, 119, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003) ........................ 7

*Weinberg v. Feisel*, 110 Cal. App. 4th 1122 , 1132-33 (2003)......................................................... 5

*Wilbanks v. Wolf*, 121 Cal. App. 4th 883, 897, 17 Cal. Rptr. 3d 497 (1st App. Dist. 2004) ........ 12

*Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000)........................... 12

*Wyatt v. Terhune*, 315 F. 3d 1108, 1113-14 (9th Cir. 2002) ........................................................... 5

**STATUTES**

*47 U.S.C.* § 230............................................................................................................................... 6

47 U.S.C. § 230(c)(2)(A) ............................................................................................................ 7, 9

California Code of Civil Procedure ("CCP") §§ 425.16 *et seq.* ..................................................... 1

*CCP* § 425.16(b)(1) .......................................................................................................................... 2

CCP § 425.16(e) .............................................................................................................................. 3

Federal Rule of Evidence 201.......................................................................................................... 5

**OTHER AUTHORITIES**

Note, "Neutral Rules of General Applicability: Incidental Burdens on Religion, Speech, and Property, 115 Harv. L. Rev. 1713 (Apr. 2002)........................................................................... 8

## I. INTRODUCTION

### A. Google's Motion Urges a Strike Against Free Speech Itself.

Google, Inc. ("Google"), has the world's dominant search engine (the "Engine"), which has evolved into the largest public Internet forum for speech and information. Google polices and punishes arbitrarily chosen websites in its master index for content deemed unworthy for site inclusion. Somehow, it still insists that discipline and punishment of sites amount to participation in public issue or public interest speech. As such, Google's conduct and arbitrary behavior do not deserve anti-SLAPP protection, much less free speech protection.

Google cannot cross two vital independent thresholds to warrant an anti-SLAPP remedy[1] against KinderStart.com LLC ("KinderStart") and its own free speech. First, speech is expressed by third party Websites through search engine results. Google stresses the publicity and universality of the Engine and its results, the more likely the Engine is properly deemed a public forum for free speech by all. As a result, anti-SLAPP would become a procedural and financial penalty against KinderStart merely trying to seek protection of its *own* speech against censorship and vague and overbroad regulations by Google. Second, these practices do not amount to or become participation in a public interest matter as a matter of course. Google claims that managing Web content for search is a challenge. This does not convert conduct as this against Plaintiffs into a public issue.

### B. Issues Presented by the Motion.

(1) Does blocking websites by Google's search engine equate to speaking or participation on a public issue or public interest matter?

(2) Is there reasonable probability that Plaintiff Websites will prevail on their First Amendment and California free speech claims against Google in operating the Engine?

## II. UNDERLYING FACTS.

Google is a worldwide, commercial enterprise enjoying a market capitalization of over $100 billion. Its search engine drives over 98% of its U.S. advertising revenues, which eclipsed

---

[1] Anti-SLAPP refers to a preemptive strike against a "Strategic Lawsuit Against Public Participation", first codified under California Code of Civil Procedure ("CCP") §§ 425.16 *et seq.*

OPPOSITION TO DEFENDANT'S SPECIAL MOTION                                    Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16                - 1 -

1  $3.3 billion in 2005.  Like Google, KinderStart itself is a search engine and index, so they are in
2  the same industry.  During relevant periods, Google saddled www.kinderstart.com with a '0'
3  PageRank in spite of its 20,000-plus Webpage links.  KinderStart has further endured wholesale
4  blockage of its site by Google to keep it hidden from view in searches by visitors interested in
5  parent-children subjects and related content.

6  **III.  THE SPECIAL MOTION FALLS OUTSIDE OF ANTI-SLAPP BOUNDARIES.**

7  Anti-SLAPP law was amended with CCP § 425.17(a) to address "a disturbing abuse of
8  Section 425.16 . . . [that] has undermined the exercise of the constitutional rights of freedom of
9  speech and petition for the redress of grievances, contrary to the purpose and intent of Section
10 425.16."  A concrete anti-SLAPP motion carries the dual threshold of two elements for success:
11 (i) The defendant must have been engaged in "an act in furtherance of a person's right of petition
12 or free speech under the United States Constitution or California constitution in connection with
13 a public issue"; and (ii) Once the first condition is satisfied, the plaintiff must fail to establish
14 that there is a probability of prevailing on the underlying cause of action.  CCP § 425.16(b)(1).
15 If the underlying defendant cannot pass the first threshold, a court need not pass on the
16 probability of success on the merits.  *Rivero v. American Federation of State, County And*
17 *Municipal Employees*, 105 Cal. App. 4th 913, 130 Cal. Rptr. 2d. 81 (2003).

18 **A.  Website Blockage does not Touch Public Interest or a Public Issue.**

19 Since Google no longer advances PageRank publication as free speech for anti-SLAPP
20 protection, Google rests the basis for this motion as a First Amendment right to remove sites
21 from view on the Engine.  However, the omission and punishment of Websites and web content
22 is the opposite of expression or participation on a public issue.  Google cannot pretend its way
23 into a public issue or controversy with censorship or arbitrary application of vague and
24 overbroad webmaster guidelines of its own creation.  Plaintiffs' free speech claims challenge
25 Google's conduct, not speech.  In the very best light, Google exercises a deep-seeded reluctance
26 to make certain Web content increasingly irrelevant or unreachable, even to the point of
27 punishing all other Websites associated with such sites.  At the very worst, censorship, if proven
28 by Plaintiffs in the underlying cause of action, in no way deserves an anti-SLAPP remedy.

Only two of the four classifications of public speech under CCP § 425.16(e) are relevant in this motion. To apply either clause (3) (statement on public interest issue) and clause (4) (other conduct on public issues or public interest), a court must focus precisely on a matter of public interest. It is not enough that speech occurred in public or was published but what is to be protected speech under the statute. A California Court of Appeal enunciated the boundaries of such speech:

> We therefore hold that in order to satisfy the public issue/issue of public interest requirement of section 425.16, subdivision (e)(3) and (4) of the anti-SLAPP statute, in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance.

*Du Charme v. International Brotherhood of Electrical Workers, Local 45*, 110 Cal App. 4th 107, 119, 1 Cal. Rptr. 4d 501 (2003) (emphasis in original). The requirement of public interest is not something being made public. The Court of Appeal properly pinpointed the underlying purpose of anti-SLAPP – a cause of action should be stricken only if the activity realizes the public policy of encouraging "participation" in public issues. The legislative intent is plain – an issue means something is being disputed and of public concern. Speech and conduct should be protected when linked to an "ongoing controversy, dispute or discussion." *Id.*

Contrary to Google's theory, merely presenting information over the Internet in public view does not on its own create a public issue or public interest matter. Only when the Internet speech *itself* covers matters of public importance does a CCP § 425.16 remedy seem proper. The Central District in *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004), correctly applied anti-SLAPP to speech about Ad-aware. Although Google relies on *Lavasoft* for the motion, New.Net and Lavasoft were simply not competitors in any sense. The Court handily confirmed an ongoing public controversy brewing at the time -- the surreptitious, pernicious downloading of software (of *plaintiff* New.Net's *own* creation) that invades one's PC privacy. KinderStart has done nothing to generate a public controversy other perhaps having to

OPPOSITION TO DEFENDANT'S SPECIAL MOTION  Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16                - 3 -

1 file this action to seek a remedy. Nor has it done anything to create a controversy by causing

2 harm or damage to other companies, or their respective computer networks or Websites.

3 In sum, Google offers no such public "controversy, dispute or discussion" encircling

4 Blockage. As in *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127

5 (N.D. Cal. 1999), public interest within Google's conduct is nowhere in sight. All seven Court

6 of Appeal cases cited by Google on public interest involve or cover some topic or activity that

7 garnered media attention. It cannot even point to any harm akin to New.Net that has been

8 propounded by www.kinderstart.com, a parents and kids-oriented site. Further, the motion is

9 silent on Blockage as a "public issue" or Google's "participation" on the issue.

10 Google cannot suddenly make out the operation of a search engine covering all available

11 topics on the Internet a "public interest" matter. The fact that this free speech defendant is in the

12 business of making certain information publicly accessible or inaccessible through its search

13 engine does not *ipso facto* convert any and all of its conduct and communications into anti-

14 SLAPP speech. Google's motion explains that search engines go online to access content on any

15 range of subjects. Google has not shown itself, through the search results and practices

16 themselves, that this is a matter of public import or policy. Indeed, participation, dialogue and

17 debate concerning censorship and Blockage[2] could conceivably become a matter of public

18 interest, but not merely the use of these practices.

19 The real issue for the Anti-SLAPP Motion then is Blockage and censorship of Websites

20 as conduct, not speech as Google would prefer. No participation concerning a public issue is at

21 risk for Google. Google's alleged "speech" here is ranking, indexing, removing, and punishing

22 Websites. If the case proceeds on the merits of the free speech claim, Google is in no way

23 "chilled" to use genuine speech in the form of public policymaking, public participation, or

24

25 ─────────────────────

26 [2] Google could argue now in its reply that Blockage is actually "speech" under anti-SLAPP. If Google now engaged in public debate or participation about censorship or Blockage of Websites

27 here in the U.S. (as it did so with censorship of sites on www.google.cn before Congress -- *see Plaintiffs' Motion for Preliminary Injunction*, on file herein, p. 23, n.11), it should remain free

28 from anti-SLAPP actions. However, censorship in the form of Blockage against Class members cannot possibly be considered free speech for anti-SLAPP purposes.

OPPOSITION TO DEFENDANT'S SPECIAL MOTION                                    Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16              - 4 -

1  political activity surrounding its alleged right to continue these practices.

2        One case exemplifies a genuine purpose of anti-SLAPP to protect the petitioning rights

3  of a participant in public matters or public policy. In *Damon v. Ocean Hills Journalism Club*, 85

4  Cal. App. 4th 468, 479 (2000), the Court of Appeal granted anti-SLAPP protection to a

5  residential management organization because its statements tied directly to how the planned

6  community was handling the living conditions of a very interested group – the residents of the

7  community. Another Court of Appeal noted that public interest is not "mere public curiosity or

8  a broad amorphous public interest", but some "political, legal or criminal controversy" at stake.

9  *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132-33 (2003). For Google, its Blockage of

10 www.kinderstart.com is out in public, but a select group of stakeholders dealing with some level

11 of controversy is not present here.

12       Google continues its dependence upon the unreported case of *Search King*. As such, it

13 cannot serve as precedent here. Any findings of fact made from the Western District of

14 Oklahoma in that case regarding PageRank do not bind this Court's assessment of speech

15 concerning Blockage of Websites or the '0' PageRank here. The Ninth Circuit under *Wyatt v.*

16 *Terhune*, 315 F. 3d 1108, 1113-14 (9th Cir. 2002) held that a court may not accept as true the

17 factual findings of another court.[3]  *Search King* is of no aid to Google because anti-SLAPP

18 protection was not at issue.

19       Also cited by Google is *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033 (1986) (en banc), *cert.*

20 *denied*, 485 U.S. 934, 108 S. Ct. 1107, 99 L. Ed. 2d 268 (1988), where the California Supreme

21 Court protected the First Amendment right of a newspaper to omit an author's book from its best

22 sellers list. This decision, however, was rendered prior to California's anti-SLAPP law in 1993,

23 which requires that the speech cover a public issue or matter of public importance. Excluding an

24 item from a best sellers list is hardly a public issue. *Blatty* may protect a newspaper's editorial

25 rights in some instances, but it fails to support an anti-SLAPP motion.

---

[3] Federal Rule of Evidence 201 allows judicial notice of a fact not subject to reasonable dispute if (1) "generally known" within the territorial jurisdiction of the trial court and (2) capable of accurate and ready determination.

### B. Plaintiffs have a Probability of Prevailing on Their Free Speech Claim.

Even if Google were to somehow carry the burden of establishing that Blockage is its own speech on a public issue, Plaintiffs establish that their free speech claim under both the Federal and California Constitutions has a "reasonable probability" of success. In support, Plaintiffs incorporate by reference herein the argument and points and authorities set forth in Section II.F of their concurrently filed Opposition to Google's Rule 12(b)(6) motion ("*MTD*"). Under the First Amendment, Google's status as a state actor is based on entwinement and symbiosis with public universities and libraries. As to California free speech, Google has dedicated the Engine for public use, and the Engine and search results have become a ubiquitous public forum for speech, open to all to use and connect with websites. The common harm under both federal and state law is Google's exercise of arbitrary and discriminatory control over the flow of speech in and through this public forum.

### C. The Communications Decency Act Cannot Repel Plaintiffs' Free Speech.

The Communications Decency Act (the "CDA") does not, by definition, dispose of First Amendment rights of publishers and Websites over the Internet. A provider of an interactive service gets immunity only for carrying content of a third party or for removing content in good faith from access or availability. 47 U.S.C. § 230. Nevertheless, Google demands blanket immunity to dispense with Plaintiffs' First Amendment and California free speech rights. However, the CDA dispels liability only arising under conflicting state or local law. Accordingly, the CDA lends no aid in defending against Plaintiffs First Amendment claim. An interactive computer service is still under scrutiny under the First Amendment if it is a state actor. *Green v. America Online*, 318 F.3d 465, 472 (3rd Cir. 2003) (CDA led to dismissal of only state tort claims).

As for Plaintiffs' California free speech claim, the Ninth Circuit applies the CDA to parties editorializing content taken from another source. *Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003), *cert. denied*, 541 U.S. 1085 (2004) ("a central purpose of the Act was to protect from liability service providers and users who take some affirmative steps to edit the material posted"). Since wholesale Blockage of sites takes Google far beyond the role of editor, immunity under the CDA simply does not apply. Google admits that there are a hundred "good"

sites that should not be Blocked. *SAC* ¶ 158. Moreover, Google cannot meet the express statutory standard for immunity. Section 230(c)(2)(A) protects an interactive computer service (ICS) for "*any action taken in good faith* to restrict access to or availability of material" that the provider considers to objectionable. (Emphasis added.) Google lacks good faith when using punishment and retaliation against Websites. *SAC* ¶¶ 58, 60(g), 186. Even if its own PageRank system to impose 0-PRs was considered editorializing, the specter of defamation based on Google's *own* content puts the CDA out of reach. Google repeatedly cites allegations about its claimed reasons for Blockage and PageRank Deflation (*MTD* at 8), but they are qualified in the SAC as "purported" reasons exercised in "absolute and internal discretion." *SAC* ¶ 144. Google knowingly punishes thousands of Websites and Webpages that do not in actuality have Inferior Page Quality." *SAC* ¶ 145. Google is devoid of good faith and undeserving of CDA immunity.

       *1.*     *Google Cannot Use the First Amendment to Protect its Vague and Overbroad Guidelines.*

In its separate opposition to the MTD, KinderStart sets out the foundation for Google's role as a state actor. *Opposition to MTD*, section II.F. On that basis, then, the central objection to Blockage of sites is that Google's webmaster guidelines are unduly vague or overbroad. The U.S. Supreme Court has observed that the First Amendment bar against overbreadth is "an exception to our normal rule regarding the standards for facial challenges" against a law or statute. *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984). The danger of this type of restriction is that it actually can and will "chill" constitutionally protected speech. The result is quite plain:

> Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech, *Dombrowski [v. Pfister]*, 380 U.S. 479, 486-87, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965) – harming not only themselves but society as a whole, which is deprived of an uninhibited market place of ideas.

*Virginia v. Hicks*, 539 U.S. 113, 119, 123 S. Ct. 2191, 156 L. Ed. 2d 148 (2003). To succeed, "[t]o overbreadth claimant bears the burden of demonstrating, 'from the text of the [law] and from actual fact,' that substantial overbreadth exists. *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988)." *Virginia* 539 U.S. at 122. Where the

speech constrained is commercial speech, such as advertising that is to be published, then it is less likely that overbreadth applies. *Bates v. State of Arizona*, 433 U.S. 350, 380-81, 97 S. Ct. 269, 153 L. Ed. 2d 810 (1977).

Additionally, speech regulations facially valid can be void-for-vagueness in violation of the First Amendment if applied arbitrarily. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 168, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972). That is, a particular law or regulation may not block speech based on specific content, but it allows uneven or arbitrary application that is unfair to the speaker.[4] Content and conditions assessed according to the sole discretion of a single actor raises runs afoul of the First Amendment. In *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 769, 108 S. Ct. 2138, 100 L. Ed. 2d. 771 (1981), the Supreme Court found unconstitutional the discretion of the city mayor to place newsracks around the city according to "such other terms and conditions deemed necessary and reasonable by the Mayor." Indeed, he could "require the newsrack to be placed in an inaccessible location without providing any explanation whatever." *Id.* The Court stated that the "'liberty of circulating is as essential to [freedom of expression] as liberty of publishing; indeed, *without the circulation, the publication would be of little value*.' [quoting *Ex parte Jackson*, 96 U.S. 727, 733, 24 L. Ed. 877 (1878)." (Emphasis added.)

Google's First Amendment claim based on its arbitrary guidelines against sites fails the test of neutrality and fairness. Google faces two very troubling indicia of overbredth. First, as stated on Google's own website, it refuses to list all of the reasons that can trigger website "removal". *SAC* ¶ 153. This catch-all provision is overbroad and vague. In fact, there is no guarantee about "if or when" a re-inclusion request would ever be honored, should Plaintiff submit one. Such a re-inclusion effort might be totally futile. *Declaration of Randall McCarley* ¶ 4 attached hereto as <u>Exhibit 1</u>. Second, Google imposes upon Plaintiff KinderStart a near total ban of its Website. *Declaration of Victor B. Goodman* ¶ 6, attached hereto as <u>Exhibit 2</u>. Left to

---

[4] For a more detailed analysis of neutrality of laws that may affect free speech rights, see Note, "Neutral Rules of General Applicability: Incidental Burdens on Religion, Speech, and Property, 115 Harv. L. Rev. 1713 (Apr. 2002).

OPPOSITION TO DEFENDANT'S SPECIAL MOTION        Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16         - 8 -

1  their own devices and complete discretion, Google engineers are loaded with blanket authority to
2  apply the "Webmaster Guidelines" and punish at will.  Notice, recourse and remedies for
3  Websites as KinderStart are non-existent.  As the case was with completely arbitrary discretion
4  for the speech regulator in *Lakewood*, Google's First Amendment rights seem qualified by its
5  own use of the guidelines to impinge on speech of others in the Engine as a public forum.

6      Inasmuch that Google asserts its rights to impose its will upon the mass of Websites, the
7  Webmaster guidelines stretch the bounds of reasonableness.  In support of policing undesirable
8  content, Google relies upon *Green v. America Online, Inc.*, 318 F.3d 465 (3rd Cir. 2003).  The
9  gravamen of the complaint was defendant's failure to stop deviate practices to disrupt the
10 computer use altogether of a participant in an AOL chat room. Also, plaintiff complained of
11 AOL's lawsuits to curtail spam, which is "sending unlawful bulk, unsolicited e-mail." *Id.* at
12 473.  Google justifies its Webmaster guidelines by labeling them as anti-spam efforts.  In a
13 declaration of a Google engineer, so-called "webspam" somehow stems from certain links or
14 off-topic links. This supposedly enhances a "good user experience." *Declaration of Matt Cutts*
15 *in Support of Google's Special Motion to Strike* ("*Cutts Decl.*") ¶¶ 5, 6.  Even if there were a
16 deleterious impact of www.kinderstart.com upon the Web, it would have to rise to the level of
17 disrupting and infiltrating operations of a computer system or network as in the case of *Green*.
18 Google does not produces any explanation pointing to harm caused by KinderStart to the search
19 engine, or Internet use, much less the computer systems and networks of Google or any third
20 party.  On the whole, webspam may seems troublesome to Google.  But it reacts in a punitive
21 way without notice or recourse for the benefit of Websites.  Google has near total discretion.
22 *SAC* ¶ 151.  Blockage is often indiscriminate and without a major, significant channel, speech of
23 Websites is substantially suppressed.  *SAC* ¶¶ 154, 158.

24     The CDA and case law do not validate Google's behavior.  The CDA validates the
25 regulation of e-mail spam or junk mail, which can fairly be deemed "obscene, lewd, lascivious,
26 filthy, excessively violent, harassing or otherwise objectionable."  47 U.S.C. § 230(c)(2)(A).
27 The Third Circuit in *Green* construed Section 230(c)(2) to recognize the need for fairness and
28 equity.  Providers of interactive computer services may "voluntarily make good faith efforts to

OPPOSITION TO DEFENDANT'S SPECIAL MOTION                               Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16         - 9 -

1  restrict access to material they consider to be objectionable, for *example*, " 'obscene,'
2  'excessively violent,' or 'harassing,'" which would constitute "standards of decency." *Id.* at 472
3  (emphasis added).

4  Google now realizes that it needs the help of the CDA to classify "webspam" as
5  indecency. Even if a search engine produced irrelevant or duplicative content, this does not
6  under any definition rise to the level of indecency.[5] Google affixes a label of "indecency" on its
7  actions now to avoid liability with the CDA. Google fails to meet the statutory standard of
8  "good faith" when sweeping through the index to punish often undeserving sites, such as
9  www.kinderstart.com.[6] Webmaster guidelines fall dangerously into the realm of vagueness and
10 overbreadth. On these grounds, Plaintiffs, having their Web content abridged and blocked from
11 easy view and access by patrons and visitors, should prevail on their First Amendment claim.
12 The Webmaster guidelines are vague and overbroad and should be tempered. Furthermore,
13 content-driven censorship as may be proven by Plaintiffs raises even greater scrutiny by a court.
14 *SAC* ¶¶ 166-67.

15 Finally, Google objects to a must-carry rule requiring it to carry or present the speech of
16 another. In *Rumsfeld v. Forum for Acad. and Inst. Rights*, 126 S. Ct. 1297, 1309, 164 L. Ed. 2d
17 156, the U.S. Supreme Court noted, "We have also in a number of instances limited the
18 government's ability to force one speaker to host or accommodate another speaker's message.
19 See *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557,

---

[5] CDA immunity makes far more sense if a user sued Google liable presenting search results reflecting indecent or objectionable content on its own site or KinderStart's site.

[6] Google now labels www.kinderstart.com as "webspam" and attempts to impugn Plaintiffs' site as objectionable because of links to pornography sites. *Cutts Decl.* ¶ 8. However, as made clear by KinderStart's founder, these emerged (rarely) only from unwanted and improper third-party postings that landed inside in a forum created by the Website for use by willing visitors. Never has there been an objection from a visitor or parent, and the links appeared only in the *forum* and never as an outbound link or searchable content within the key word search bar of KinderStart's engine. Once discovered, such postings in the forums were immediately removed by KinderStart. None of these entries were placed or allowed there by KinderStart itself to increase its rankings or results in Google's Engine. *Goodman Decl.* ¶ 4. Any visit to www.kinderstart.com does not yield and indeed cannot yield access to pornographic or "objectionable" material. KinderStart's site was indeed removed but Google is necessarily ambivalent on whether what was "objectionable," the existence of the links or the content at the end of the link. At best, Google's declaration masks the real reasons for punishment. Indeed, it demonstrates the very heart of KinderStart's complaint – vagueness and overbreadth.

566, 115 S. Ct.2338, 132 L. Ed. 2d 487 (1995) . . . ; *Pacific Gas & Elec. Co. v. Public Util. Comm'n of Cal.*, 475 U.S. 1, 20-21, 106 S. Ct. 903, 90 L. Ed. 2d 1 (1986) (plurality opinion) . . .; *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258, 94 S. Ct. 2831, 41 L. Ed. 2d 730 (1974) . . . ." In all these cases, the "complaining speaker's own message *was affected by the speech it was forced to accommodate*." *Rumsfeld*, 126 S. Ct. at 1309 (emphasis added). *Rumsfeld* was a constitutional challenge of a group of law schools to federal law (the "Solomon Amendment") that required law schools to allow military recruiters access to recruiting in order to receive federal funding. The Supreme Court held that the Solomon Amendment did not burden the speech of law schools while recruiting because "the schools are not speaking when they host interviews and recruiting receptions." Further, "the accommodation [of recruiting services] does not sufficiently interfere with any message of the school." *Id.* In support, the Court relied on the holding of the shopping mall case of *Robins, infra*, where there was little likelihood that the protesters' views would be associated with the mall owner. *Rumsfeld*, 126 S. Ct. at 1310.

Requiring Google to include a site in the index (without guaranteeing a certain results position) fairly accommodates the speech of KinderStart. Cessation of Blockage is even less of a "must-carry" requirement where it was previously used as punishment by the medium. Inclusion of www.kinderstart.com in the index does not force the appearance of the site in a certain location or position. Certainly the appearance anywhere in search results does not confuse KinderStart's opinions with those of Google by means of search results. At stake is the normal operation of Google's algorithm to be free of human intervention and interpretation. These results could not possibly interfere with what the public or listener sees or thinks as to Google's own speech about a particular subject.

### 2. California Free Speech Supports the Balancing of Burdens in Plaintiffs' Favor.

Google's search engine is always open and ready use by the public without charge. As a result, its own rights under the First Amendment must be weighed against Plaintiffs' rights under

OPPOSITION TO DEFENDANT'S SPECIAL MOTION                                      Case No. C 06-2057 JF
STRIKE PURSUANT TO CCP § 425.16            - 11 -

the California constitution.[7]  The Ninth Circuit recently reaffirmed that, "the California Constitution is 'more protective, definitive and inclusive of rights to expression and speech' than the First Amendment to the United States Constitution. *Robins v. Pruneyard Shopping Ctr.*, 23 Cal.3d 899, 908, 910, 153 Cal. Rptr. 854, 592 P.2d 341 (1979), *aff'd*, 447 U.S. 74, 64 L. Ed. 2d 741, 100 S. Ct. 2035 (1980)." *Glendale Associates, Ltd., v. N.L.R.B.*, 347 F.3d 1145 (9th Cir. 2003).  A California Court of Appeal considers the Internet as a massive public forum for speech.

> In a sense, the Web, as a whole, can be analogized to a public bulletin board. A public bulletin board does not lose its character as a public forum simply because each statement posted there expresses only the views of the person writing that statement. It is public because it posts statements that can be read by anyone who is interested, and because others who choose to do so, can post a message through the same medium that interested persons can read.

*Wilbanks v. Wolf*, 121 Cal. App. 4th 883, 897, 17 Cal. Rptr. 3d 497 (2004).

Accordingly, as a general rule KinderStart's California free speech rights outweigh the alleged First Amendment speech rights of Google.  By indexing all sites of the Web not merely as a compiled phone book but a dynamic linking of one to many destinations, Google has a coveted yet obligatory role.  Beyond this, Google does little if anything to synthesize or reformulate these voices through its search engine.  They are simply presented to the user.

Based on *Robins*, the California constitution requires more of an owner of a sizable physical forum such as a shopping mall.  The owner must allow speech to occur and be exchanged, with clear obligations to speakers within the forum.  Ultimately, the property owner's speech rights are balanced against Websites' speech rights.  *Albertson's, Inc. v. Young*, 107 Cal.App.4th 106, 117-18 (2003), *review denied*, 2003 Cal. LEXIS 3975 (Cal., Jun. 18,

---

[7] The test of a party's First Amendment rights against the broader California free speech rights would not appear to raise a preemption issue.  It is undisputed that California free speech rights are *greater* that the First Amendment.  *See Robins, supra.* The Ninth Circuit notes that there are three categories of preemption: "(1) *express preemption* – 'where Congress explicitly defines the extent to which its enactments preempt state law'; (2) *field preemption* – 'where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy'; and (3) *conflict preemption* – 'where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).  None of these apply in this balancing test of rights.

2003); *Costco Companies, Inc. v. Gallant*, 96 Cal. App. 4th 740, 754-55, 117 Cal. Rptr. 2d 344 (2002).

Balancing the rights should take into account the size and breadth of the Engine as the world's largest search engine. The obligations of Google toward speech should be fair and balanced with reasonable guidelines. Any measurable burden upon KinderStart reinclusion can be considered in accordance with how California courts of appeal have tested and balanced rights of retail stores and locations. The gain for free speech is KinderStart's rights among thousands of parents and caregivers who previously visited the site. The deficiency here are Webmaster guidelines capable of fair interpretation, application and enforcement to allow speech to flow..

### IV. <u>AN ASSESSMENT OF "REASONABLE PROBABILITY" OF SUCCESS MAY REQUIRE DISCOVERY OF EVIDENCE WITHIN GOOGLE'S CONTROL</u>.

A CCP § 425.16 motion should not proceed in certain cases where all the facts lie within the purview and control of a defendant seeking to strike the cause of action. Citing the Ninth Circuit, a California federal court held:

> [I]f a defendant desires to make a special motion to strike based on the plaintiff's lack of evidence, the defendant may not do so until discovery has been developed sufficiently to permit summary judgment under Rule 56. Once the nonmoving party has been given the opportunity to conduct discovery, the special motion can be heard and attorney's fees will be available as provided in § 425.16(c).

*Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999) (*citing United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 171 F.3d 1208, 1217-18 (9th Cir. 1999), *republish.* 190 F.3d 963 (1999), *cert. denied.*, 530 U.S. 1203, 120 S. Ct. 2196, 147 L. Ed. 2d 232 (2000). Certainly, under *Global Telemedia International, Inc. v. Does 1-35*, 132 F. Supp. 2d 1261, 1271 (C.D. Cal. 2001), discovery is not meaningful where the evidence sought is irrelevant to the issue of fact or opinion of the speech in question. One key example for the need for plaintiff's discovery prior to adjudication of an anti-SLAPP motion is where essential knowledge held by the defendant or available witnesses to support plaintiff's case in chief are not yet obtained. *Lafayette Morehouse, Inc. v. Chronicle Publishing Company*, 37 Cal. App. 4th 855, 868, 44 Cal. Rptr. 2d 46 (1995).

There are at least four areas of discovery to assess the reasonable probability of prevailing on the merits of Plaintiffs' free speech claims. First, under the First Amendment the test of entwinement and symbiosis depends heavily upon the facts of the relationship between Google and the two public university libraries in question. With the Google project and partnership, appropriated and commercialized copyrights of this scale makes the two libraries indispensable in the short tem. On the flip side, the outcome and potential liability for copyright infringement requires indemnification. This means heavy financial dependence, which is likely a fact issue. Second, Plaintiffs allege that there has been content discrimination with Blockage based on arbitrary political, religious and other subject matter-driven reasons. *SAC* ¶¶ 60(g), 167-68. Through independent investigation, Plaintiffs have examples of such conduct and motive by Google. Ultimately, this requires discovery on a number of actions taken by Google in punishing targeted sites. Such evidence is largely within Google's possession and access. Third, the test for whether the webmaster guidelines are vague and overbroad is a factual issue. *N.Y. State Club Ass'n*, 487 U.S. at 14. Plaintiffs must have the opportunity to secure the true reasons on exactly how the guidelines were enforced against various sites. Discovery will establish the actual motive for punishing a obviously popular and valued site for parents and kids. Finally, for California free speech, while Google is unlikely to be impaired in its operations by re-indexing all Websites owned and managed by California Subclass I Plaintiffs, discovery from both parties may indeed be required. Essentially all proof of impairment would emerge from sources within Google's control.

V. **DEFENDANT HAS NO GROUNDS FOR LEGAL FEES.**

Google is not entitled for recovery of fees because it does not exercise free speech rights that are superior in all cases against Plaintiffs. Omitting content arbitrarily without good faith does not earn CDA immunity. Google's conduct here is not participation in a public issue or public interest matter. Moreover, without a reasonable probability of prevailing on both the First Amendment and California free speech claims, no recovery is allowable on this ground either. Google seeks fees related to the original negligent interference claim, but that was dismissed without prejudice. An anti-SLAPP remedy as to any count remains tied to Google's

participation in a public issue or matter.  The act of allowing the disruption of relationships between KinderStart and its partners is not the kind of participation the California legislature sought to protect with the anti-SLAPP law.  Defense costs should be disallowed.

## VI. <u>CONCLUSION</u>.

Plaintiff's free speech claim under the First Amendment and California constitution against Google in no way discourages or hinders public participation or discussion by Google on important public issues.  A grant of this anti-SLAPP motion would not merely overstep legislative intent.  It would perpetuate the defeat of free speech and further penalize a once thriving, robust Website with native and linked content about parents and kids.  Censorship and blockage of websites and their content are the furthest thing from free speech.  Therefore, KinderStart urges the court to deny the motion in its entirety.

Dated:  October 13, 2006                           GLOBAL LAW GROUP


                                                   By:     /s/ Gregory J. Yu
                                                           Gregory J. Yu, Esq.
                                                   Attorney for Plaintiff KinderStart.com LLC and
                                                        for the proposed Class and Subclasses