1  DAVID H. KRAMER, State Bar No. 168452
   COLLEEN BAL, State Bar. No. 167637
2  LISA A. DAVIS, State Bar No. 179854
   BART E. VOLKMER, State Bar No. 223732
3  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
4  650 Page Mill Road
   Palo Alto, CA 94304-1050
5  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
6  DKramer@wsgr.com

7  JONATHAN M. JACOBSON
   WILSON SONSINI GOODRICH & ROSATI
8  Professional Corporation
   12 East 49th Street, 30th Floor
9  New York, NY 10017-8203
   Telephone: (212) 999-5800
10 Facsimile: (212) 999-5899
   JJacobson@wsgr.com
11
   Attorneys for Defendant
12 Google Inc.

13
14                          UNITED STATES DISTRICT COURT
15                         NORTHERN DISTRICT OF CALIFORNIA
16                                SAN JOSE DIVISION
17

| | |
|---|---|
| KINDERSTART.COM, LLC, a California limited liability company, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC., a Delaware corporation,<br><br>Defendant. | CASE NO.: C 06-2057 JF<br><br>**REPLY IN SUPPORT OF DEFENDANT GOOGLE INC.'S SPECIAL MOTION TO STRIKE PURSUANT TO CCP § 425.16**<br><br>Before: Hon. Jeremy Fogel<br>Date: October 27, 2006<br>Time: 9:00 a.m.<br>Courtroom: 3 |

REPLY I/S/O GOOGLE'S MOTION TO STRIKE
CASE NO. C 06-2057 JF

2975108_3.DOC

Dockets.Justia.com

# INTRODUCTION

KinderStart.com, LLC ("KinderStart") offers only two arguments in opposing Google Inc.'s ("Google") Special Motion to Strike. First, it contends that Google's speech – its recommendations of which websites are most likely to be of interest to its users – is not speech in connection with a matter of public interest. But that contention cannot be squared with KinderStart's own allegations regarding the importance and impact of Google's recommendations generally and Google's views of KinderStart's site in particular. In reality, Google's speech falls squarely within the protections of California's anti-SLAPP statute.

Second, KinderStart asserts that it has probability of success on the merits of its free speech claim. But as discussed in Google's Motion to Dismiss, KinderStart's free speech claim fails as a matter of law because Google is not a state actor. Moreover, both the First Amendment and 47 U.S.C. § 230(c)(2) guarantee Google's right to control its recommendations and remove sites from them as it sees fit.

Because Google has demonstrated that KinderStart's free speech claim arises from Google's exercise of its First Amendment rights in connection with a matter of public interest, and because KinderStart is unable to establish a probability of success on the claim, the claim should be stricken and Google should be awarded the expenses it incurred in responding to it.

# ARGUMENT

**A.   Google's Speech Is In Connection With a Matter of Public Interest**

   **1.   The Public Interest Requirement Is Satisfied Whether KinderStart's Action Challenges Google's Expression About Sites in General or Its View on KinderStart's Site Alone.**

The anti-SLAPP statute's requirement that the speech at issue be made in connection with a matter of public interest is easily met in this case, as Google's speech "impacts a broad segment of society." *See Damon v. Ocean Hills Journalism Club,* 85 Cal. App. 4th 468, 479 (2000) ("public interest" requirement is to be broadly construed). According to KinderStart's Complaint, Google's views on the significance of particular websites are of critical public importance. *See, e.g.*, Second Amended Complaint ("SAC") ¶ 152 ("Defendant Google is vested with a public trust in that the only reasonable means of the public to identify and access

millions Websites across the worldwide web is to utilize a search engine that purportedly offers and delivers the most relevant and useful search results."), ¶ 83. Indeed, KinderStart's entire case is predicated on the notion that Google's assessments of websites carry significant weight with the public.[1] KinderStart's own allegations thus refute its new position that Google's search results are not matters of public interest.

KinderStart cannot claim by this class action lawsuit that Google has dedicated its search engine for public use in a manner that requires Google to comply with the First Amendment and then try to recast its claim as a run-of-the-mill business dispute with no impact on the public when faced with an anti-SLAPP motion. The nature of KinderStart's claim demonstrates the applicability of the public interest prong, because it attacks the very way in which Google's search engine operates. *See* SAC ¶ 1 ("This action is brought to challenge and remedy pervasive past and ongoing unlawful practices of Defendant Google to interrupt, suspend and destroy the flow of accurate and valued information, the fair trade conducted through interstate commerce, and the flow of free speech."). Moreover, KinderStart purports to bring this action on behalf of every site about whom Google has ever expressed a negative view. *See, e.g.*, *id*. ¶¶ 187-214. Class allegations aside, if KinderStart is in any way successful, Google will face a constant stream of litigations in which site operators demand that courts, rather than Google, determine the appropriate placement of their sites in Google's search results. Google's opinions on the relative importance of the sites – the opinions that have brought it the popularity it today enjoys – would cease to matter. Under the same circumstances, the Central District of California found that a defendant's speech, while ostensibly concerning only a specific party, implicated the

---

[1] KinderStart half-heartedly contends that Google's removal of a site from its search results is not speech, but conduct to which the First Amendment does not apply. The position is unsupportable. *See Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc.*, 515 U.S. 557, 573-74 (1995) ("'Since all speech inherently involves choices of what to say and what to leave unsaid,' one important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say,'…") (citations omitted); *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ("the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all."). In any event, the anti-SLAPP statute actually extends to any "conduct in furtherance of the exercise of … the constitutional right of free speech.…" *See* Cal. Civ. Proc. Code § 425.16(e)(4). Accordingly, the statute's requirements would be satisfied even if Google's exercise of its editorial control were deemed to be "conduct."

defendant's right to speak generally and satisfied the public interest requirement of the anti-SLAPP statute. *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1106 (C.D. Cal. 2004) (where plaintiff alleged it was harmed by defendant's labeling of it as "spyware," court granted anti-SLAPP motion because defendant's right to express its views on spyware *generally* would be chilled by allowing action to proceed). That same result is appropriate here.[2]

In addition, because the speech at issue reflects Google's view of the relative importance of websites, any alteration Google is compelled to make regarding its opinion of one site necessarily has implications for Google's view of others. Thus, for example, if KinderStart succeeded in forcing Google to list its site first in response to a particular search query, the position of the millions of other sites Google deemed responsive for that query would be decreased. Further, if Google were prohibited from addressing the undisputed "webspamming" activity that Matt Cutts explains was taking place on KinderStart's site, the deleterious impact on the relevance of Google's results would be felt by its millions of users. *See* Declaration of Matt Cutts ("Cutts Decl.") ¶¶ 3-5, 7-9. Again, the expression by Google that KinderStart challenges comes "in connection with a matter of public interest" – the effective operation of Google's search engine. That is all Google must show. *See* Cal. Civ. Proc. Code § 425.16(c)(3).

But even if the Court were to accept KinderStart's position that the only speech in question is Google's view of the KinderStart site, the public interest requirement would still be satisfied. KinderStart's own allegations again forcefully make the point. According to KinderStart, its website was:

> one of the choicest Internet destinations for thousands of parents, caregivers, educators, non-profit and advocacy representatives, and federal, state and local organizations and officials in the United States and worldwide to access vital information about infants and toddlers….

FAC ¶ 19. KinderStart further claims that its site was so important to the public that it had more than 10,000,000 visits to pages of the site each month. FAC ¶ 20. And according to KinderStart,

---

[2] While KinderStart expressly purports to act on behalf of others in this case, there was no suggestion in *Lavasoft* that the plaintiff was acting in a representative capacity. Nevertheless, the *Lavasoft* court recognized that the principle the plaintiff sought to establish had far-reaching implications. The same is true, and the ramifications far greater, here.

because of the editorial decision by Google which KinderStart challenges in this case, visits to its once-prominent site dropped by seventy percent. SAC ¶¶ 174-175.[3] These allegations, indeed the number of lost visits alone, demonstrate that Google's speech about the KinderStart site itself was "in connection with a matter of public interest," especially when gauged against California precedents on this issue. *See Fontani v. Wells Fargo Invs., LLC*, 129 Cal. App. 4th 719, 733 (2005), *disapproved on other grounds by*, *Kibler v. Northern Inyo County Local Hosp. Dist.*, 39 Cal. App. 4th 192 (2006) (statement in regulatory filing concerned "conduct capable of affecting a significant number of investors" and thus was matter of public interest); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576-77 (2005) (Internet postings about corporate activity of publicly-traded company concerned public interest); *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 807 (2002) ("on-air discussion between [] talk-radio cohosts and their on-air producer about a television show of significant interest to the public and the media" concerned a matter of public interest); *Damon*, 85 Cal. App. 4th at 475-80 (communications regarding "the manner in which a large residential community would be governed" concerned issues of public interest); *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 238 (1999) ("allegations of physical and verbal abuse against a prominent media strategist by two former wives" concerned a public issue).

### 2. KinderStart's Discussion of a Public Controversy Requirement is Inapposite.

KinderStart mischaracterizes *Du Charme v. International Brotherhood* in an effort to impose upon Google a requirement to show that the speech at issue concerns a "matter in controversy" before the anti-SLAPP statute will apply. *See* Opp. at 3. *Du Charme*, however, has no application here. *See Du Charme v. Int'l Bhd. of Elec. Workers, Local 45*, 110 Cal. App. 4th 107 (2003).

---

[3] The Declaration of Glenn Canady, previously submitted by KinderStart (Docket No. 27), provides additional grist for the mill, describing how Google's view of his site not only caused a decrease in public access to his website, but also was of interest to actual and potential business partners. *See* Canady Declaration ¶¶ 3, 5. Again, Google's opinion concerning a single site is of considerable public interest.

*Du Charme* held that a statement posted on a labor union's local Web site announcing that the local's business manager had been removed because of financial mismanagement did not concern a public issue because it was directed only to a limited group, the union members. As the court explained, in cases, "where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public, … the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion." *Id.* at 119. As examples of when this requirement would apply, the court cited speech to "a 3,000-member homeowners association … [or] a 10,000-member union." *Id.* at 118. The court contrasted that situation with matters "of widespread public interest," providing as examples, increased traffic and natural drainage impacts of a proposed mall, a television show that generated considerable media debate, and issues concerning domestic violence or child molestation, all of which would be of interest to general audiences. *Id.* at 117. As to these matters which "impact a broad segment of society," there simply is no ongoing controversy requirement. *Id.* at 117-18; *Integrated Healthcare Holdings v. Fitzgibbons*, 140 Cal. App. 4th 515, 524 (2006) (discussing *Ducharme's* controversy requirement and finding it inapposite: "we have no difficulty placing the financial survival of four hospitals within the county into the category of 'widespread public interest,' and thus not subject to the 'ongoing controversy' rule enunciated in *Du Charme*."). In this case, the speech in question is "of widespread public interest." Google's opinions about the relative importance of websites in general or KinderStart's site in particular are not directed to or consumed by a narrow audience or group. The opinions are directed to the public at large, and consumed by a far greater audience than most any speech deemed of "widespread public interest" under the anti-SLAPP statute. *See Du Charme*, 110 Cal. App. 4th at 117-18; *see also* collected authorities on "public interest" requirement, *supra* at 4. Accordingly, Google's speech need not concern a matter in controversy in order to merit anti-SLAPP protection.

**B.      KinderStart Cannot Demonstrate a Probability of Prevailing on its Claim**

In light of Google's showing that KinderStart's claim arises from Google's speech in connection with a matter of public interest, to maintain its claim, KinderStart is obligated to demonstrate a probability of prevailing on it. Cal. Civ. Proc. Code § 425.16(b)(1). But as Google has shown in this Motion, and in its briefs supporting its Motion to Dismiss, KinderStart's free speech claim fails as a matter of law based on the pleadings alone. The claim is also barred by the First Amendment and 47 U.S.C. § 230(c)(2).

KinderStart's free speech claim fails because Google is a private company owned by its shareholders, not a state actor. KinderStart seeks to overcome this fatal flaw by arguing that Google is a state actor based on "entwinement and symbiosis with public universities and libraries." Opp. at 6:6-7. However, KinderStart has not even stated, let alone substantiated, a claim that Google is entwined with the government in the operation of its search engine under *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295 (2001). The opposite is true: the government has played no role in the operation of the Google search engine, let alone in Google's decision to exclude KinderStart's site from its search results.[4] KinderStart has likewise not pled state action based on a "symbiotic relationship" because KinderStart has not pled (and could not possibly plead) facts showing that Google has conferred benefits which are "indispensable" to the success of the government. *See Brunette v. Humane Soc'y of Ventura County*, 294 F.3d 1205, 1213 (9th Cir. 2002). KinderStart's final state action theory – that Google has its opened its private property to the public – was rejected by the U.S. Supreme Court thirty years ago. *See Hudgens v. NLRB*, 424 U.S. 507, 522 (1976) (where a party claimed the right to speak in a publicly accessible, but privately-owned shopping center, "the constitutional guarantee of free expression has no part to play").

KinderStart's California free speech claim fails because the California Supreme Court case of *Robins v. Pruneyard Shopping Ctr.*, 23 Cal. 3d 899, 910 (1979), *aff'd*, 447 U.S. 74 (1980)

---

[4] Indeed, the U.S. Department of Justice filed a motion to compel documents in this Court in order to obtain documents from Google about the operation of its search engine. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679 (N.D. Cal. 2006).

applies only to property which is the functional equivalent of a town square. In that narrow circumstance, a private property owner might be required to accommodate the free speech of third parties. Google's search results, however, are nothing like the shopping center in *Pruneyard*. They are not open to the public in any regard. Google, and Google alone, speaks through them and has complete dominion over them. Indeed, this lawsuit is motivated by the fact that KinderStart has no right to control if and where it will appear in Google's search results.[5]

KinderStart's claim under the California free speech clause also fails under 47 U.S.C. § 230(c)(2) which immunizes an interactive computer service provider like Google for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be … otherwise objectionable, whether or not such material is constitutionally protected."[6] To demonstrate a probability of success on a California free speech claim, KinderStart must plead and offer evidence showing that Section 230(c)(2) does not apply here. *See Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Ass'n*, 136 Cal. App. 4th 464, 476 (2006) (plaintiff must plead and substantiate a legally sufficient claim). KinderStart cannot carry this burden.

KinderStart has alleged that Google's removal of sites from its search results is "based on either stated or unstated 'quality guidelines.'" Original Complaint at ¶ 23. The Declaration of Matt Cutts supporting this Motion demonstrates that with respect to KinderStart's site, the allegation is correct. When Google removed KinderStart's site from its search results, the site was rife with objectionable "spam" links to websites such as firstincest.pervertedtaboo.com, 1adult-sex.com, xxxfree.sexjur.com, sites promoting diet pills and many more. Cutts Decl. ¶¶ 7-9

---

[5] To the extent that any balancing is required under the California free speech clause to determine if private property is subject free speech obligations, that balance tips entirely in Google's favor. *See Trader Joe's Co. v. Progressive Campaigns, Inc.*, 73 Cal. App. 4th 425, 433 (1999). Google has built a successful company because users value its recommendations of websites that are likely to be relevant to them. Any societal interest here lies in encouraging private parties to use their property to share such valuable opinions, not in supplanting them with those arrived at through the litigation process.

[6] KinderStart appears to confuse Sections 230(c)(2)(A) and 230(c)(1). The latter, which is not at issue in this case, immunizes an interactive computer service provider for liability from statements made by third parties. *See* Reply in Support of Google's Motion to Dismiss at 3-4.

("While a complete count of the number of these illegitimate links could take days, the total number is easily into the hundreds."). Google views such content as objectionable, and it is a clear violation of Google policies. Cutts Decl. ¶ 9 ("to preserve the integrity of its search results, Google may remove sites hosting these links from its index or take steps to reduce the deleterious impact they have on Google and its users. When it does so, it is acting to restrict access to content it believes is objectionable and content that it believes its users would find objectionable."); *id.* at ¶ 4 ("Google has made clear publicly that it is a violation of Google's quality guidelines to participate in link schemes designed to increase rankings of sites, and that specifically includes hosting links to sites that appear to be gaming Google's search results processes."). KinderStart's own declarants confirm that the website contained this objectionable material. Declaration of Victor Goodman ¶ 4 ("I learned that some unnamed contributors noted some posted links that seemed inappropriate."); *see also id.* at ¶ 5 (noting the presence of "inappropriate links intentionally getting dropped into our forums"), Declaration of Randall McCarley ¶ 6 (KinderStart's website contained "objectionable," "inappropriate" and "unsuitable" links).

To defeat Google's anti-SLAPP motion, KinderStart was obligated to offer evidence to overcome Google's Section 230(c)(2) immunity. *Premier Med.*, 136 Cal. App. 4th at 476. Far from doing so, KinderStart has actually offered evidence supporting application of the immunity here. Accordingly, for this reason as well, KinderStart cannot demonstrate a probability of prevailing on its free speech claim under California law and the claim should be stricken.[7]

---

[7] KinderStart has offered no opposition to Google's renewal of the Special Motion to Strike it filed on May 2, 2006 (the "Original Special Motion"), which was addressed to KinderStart's negligent interference claim (count eight) in KinderStart's First Amended Complaint ("FAC"). Google has carried its anti-SLAPP burden with respect to that claim, and KinderStart cannot possibly demonstrate a probability of success on it. *See* Special Motion to Strike at 1, 15, n. 6. Accordingly, that claim should be stricken as well.

## CONCLUSION

For the foregoing reasons, Defendant Google Inc. respectfully requests that the Court grant its anti-SLAPP motion in its entirety, strike KinderStart's free speech claim (count four) from its SAC and its negligent interference claim (count nine) from its FAC, and award Google all of the fees and costs it incurred in responding to the claims.


Dated:  October 20, 2006

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: /s/ David H. Kramer
        David H. Kramer

Attorneys for Defendant
Google Inc.