Gregory J. Yu (State Bar No. 133955)
GLOBAL LAW GROUP
2015 Pioneer Court, Suite P-1
San Mateo, CA  94403
Telephone: (650) 570-4140
Facsimile:  (650) 570-4142
E-mail:  glgroup [at] inreach [dot] com

Attorney for Plaintiffs and Proposed Class and Subclasses

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KINDERSTART.COM LLC, a California limited liability company, on behalf of itself and all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>     Defendant. | Case No. C 06-2057 JF<br><br>**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT GOOGLE, INC. AND ITS LEGAL COUNSEL DAVID H. KRAMER PURSUANT TO FED. R. CIV. P. 11**<br><br>Judge:     Hon. Jeremy Fogel<br>Date:      January 19, 2007<br>Time:     9:00 a.m.<br>Courtroom: 3, 5th Floor |

## BACKGROUND

Defendant Google, Inc. ("Google") has three pending motions before the Court – a motion to dismiss the Second Amended Complaint ("SAC") based on Federal Rule of Civil Procedure ("Rule") 12(b)(6) (the "MTD"), a motion to strike based on California Code of Civil Procedure § 425.16 (the "425.16 Motion"), and a motion to dismiss/strike the SAC under Rule 8(a), 8(e), and 41(b) and Rule 12(f) and 15(a) (the "Rule 8 Motion").  Nonetheless, Google has decided that now is the opportune time to discipline Plaintiff KinderStart.com LLC ("KinderStart") and its legal counsel for pursuing resolution of its rights.  Google audaciously presumes that there simply is no factual foundation to the SAC.  Since Google's motion under Rule 11 is so bereft of foundation at law and in fact, KinderStart brings its own Rule 11 motion

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST
GOOGLE AND DAVID H. KRAMER UNDER RULE 11

Dockets.Justia.com

1    against Google and its legal counsel.  In short, Google has filed a baseless Rule 11 motion.

2    **ARGUMENT**

3        Rule 11 provides, in relevant part,

4        Representations to Court.  (b) By presenting to the court (whether by signing, filing,
submitting, or later advocating) a pleading, written motion, or other paper, an attorney
or unrepresented party is *certifying that to the best of the person's knowledge,*
*information, and belief, formed after an inquiry reasonable under the circumstances,*--

       (1) it is *not being presented for any improper purpose*, such as to harass or to cause
unnecessary delay or needless increase in the cost of litigation;

       (2) the claims, defenses, and other legal contentions therein are warranted by existing
law or by a nonfrivolous argument for the extension, modification, or reversal of
existing law or the establishment of new law;

       (3) *the allegations and other factual contentions have evidentiary support* or, if
specifically so identified, are likely to have evidentiary support after a reasonable
opportunity for further investigation or discovery; and

       (4) the denials of factual contentions are warranted on the evidence or, if specifically
so identified, are reasonably based on a lack of information or belief.

13    Fed.R.Civ.P. 11(b) (emphasis added).  Under Rule 11, if a "complaint is the primary focus of

14    Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether

15    the complaint is legally or factually baseless from an objective perspective, and (2) if the

16    attorney has conducted a reasonable and competent inquiry before signing and filing it."

17    *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation

18    omitted).  Thus, it must be clear that the movant can carry both requirements before a Rule 11

19    motion is truly warranted for consideration.

20        **1.    Google Improperly Uses Other Motions to Present Notice to the Court of an**
             **Impending Rule 11 Motion.**

22        Rule 11 has a safe harbor to require that Google's Rule 11 motion "shall not be filed or

23    presented to the court, unless, within 21 days after service of the motion the challenged paper,

24    claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."

25    Rule 11(c)(1)(A).  One of the purposes of the safe harbor is to avoid burdening the Court with

26    unnecessary issues that can be first resolved by independent compliance to Rule 11.  Google has

27    chosen to accelerate the process and violate the safe harbor by first readying the court to

28    consider such a motion.  In two of the pending motions filed on September 22, 2006, Google

1    already advised the court in a footnote and in its brief that certain allegations are "sanctionable".

2    *MTD* at 29 n. 13 ("This allegation, which reflects *sanctionable* misconduct, should be rejected

3    out of hand" (emphasis added)); *Rule 8 Motion* at 4 ("Google . . . makes the reckless and

4    *sanctionable* allegation that Google 'blocks' websites based on political and religious reasons . .

5    . " (emphasis added)).  In both instances, Google makes a veiled request or a strong threat to the

6    Court and to plaintiffs that a Rule 11 motion is forthcoming.  It appears that both these instances

7    constitute a request "presented" by Google to the Court.

8          Two other federal districts have found that a reference in an underlying motion to seek

9    sanctions violates the safe harbor of Rule 11.  *Estate of Miles Davis v. Shukat et al.*, 287 F.

10   Supp. 2d 455 (S.D.N.Y. 2003) (plaintiff lodged a successful Rule 11 cross-motion against

11   defendant for its baseless Rule 11 motion); *Tardd v. Brookhaven National Laboratory et al.*,

12   407 F. Supp. 2d 404, 421-22 (E.D.N.Y. 2006) (upon initiating a request for Rule 11 sanctions in

13   a footnote in its opposition brief in violation of the court's local rules, plaintiff violated the 21-

14   day safe harbor and had its Rule 11 motion denied).  Google has violated the spirit of the safe

15   harbor.[1]  By personally serving its Rule 11 motion upon plaintiffs' counsel six calendar days

16   after the underlying motions were filed against KinderStart, Google clearly demonstrates that it

17   knew of the 21-day harbor to *first notify* KinderStart's counsel before presenting anything to the

18   Court.  It is apparent that Google's plan was to preemptively present to the Court Google's

19   intent and request to press for Rule 11 sanctions.

20         Google has lodged its Rule 8 Motion to strike content if there is a danger of material that

21   is not suitable or appropriate.  Google has already challenged in this motion its objection to

22   "sanctionable" allegations about Google's conduct based on political and religious reasons.

23   *Rule 8 Motion* at 4.  However, instead of allowing the court to first act upon this motion,

24   Google's separate Rule 11 motion is a bare threat to intimidate and harass KinderStart's

25   counsel.  This is simply an effort to cause plaintiffs to surrender certain allegations that are

26

27

28

[1] Google actually served its Rule 11 motion personally upon plaintiffs' legal counsel on
September 28, 2006, six days after its motions containing references to "sanctionable"
allegations.

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST
GOOGLE AND DAVID H. KRAMER UNDER RULE 11
                                          -3-                        Case No. C 06-2057 JF

1  indeed meritorious based on previously performed reasonable investigations.  Google has

2  nothing of the sort to claim that no factual foundation exists.  While Google has full opportunity

3  to deny and challenge those allegations if the case continues beyond the MTD, it simply wishes

4  to litigate them now while the discovery stay remains in effect.  This can prove to merely raise

5  the litigation costs among the parties before discovery has even begun.

6          **2.**      **Google's Pleading of Frivolousness of Allegation Regarding Search Results**

7          Rule 11 sanctions must be predicated upon a finding that a pleading was objectively

8  frivolous when it was filed, not whether it is "later found lacking in evidentiary foundation,"

9  *Cunningham v. County of Los Angeles*, 859 F.2d 705, 714 (9th Cir. 1988), or ultimately fails on

10  the merits.  *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987).

11  The Ninth Circuit has stated, "in determining whether a pleading is frivolous, the proper scope of

12  inquiry is the *entire* pleading; the court must determine whether the pleading as a whole, not

13  merely "a particular argument or ground for relief," is frivolous within the meaning of the Rule.

14  *Townsend v. Holman Consulting Corp.*, 881 F.2d 788, 792 (9th Cir. 1989) (emphasis in original),

15  *quoting Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540 (1989)).

16          Google objects to the allegation that the results of the search engine are skewed by the

17  receipt of consideration by Google.  *SAC* ¶¶ 130, 131, 135.  The fundamental flaw in Google's

18  attempt to wield Rule 11 against KinderStart and its counsel is to read these several allegations

19  in total isolation and have them expunged under duress.  However, Google's Rule 11 motion is

20  a bald attempt to flush out facts and evidence prematurely to its advantage, even before an

21  answer or discovery has been had.  It is beyond dispute that Rule 8 applies to the SAC, which is

22  to say that no heightened pleading standard under Rule 9(b) applies here.  The three

23  paragraphed allegations only point to the occurrence of a transaction or exchange of

24  consideration.  Intent, scienter or fraud are absent.  In fact, Google complains not of the form of

25  the allegation, given that notice pleading is all that is required.  Instead, Google has flatly

26  denied the truth of these allegations by producing an employee's declaration to contest these

27  allegations.    In the event that the Court were to deny the MTD, then the entire set of claims of

28  objectivity and fair representations will come to light with discovery propounded by all parties.

1    A proper Rule 11 motion from Google would require it to argue that the allegations are

2    "factually baseless from an objective perspective" by viewing the complaint as a whole.

3    Google's counsel must have performed a reasonable inquiry that there were no instances of any

4    sales of natural search results positions.  The problem is the face of the SAC already furnishes

5    notice for Google that the Federal Trade Commission ("FTC") has warned of search results and

6    listings that are sold for consideration within the industry.[2]  *SAC* ¶ 137.  Given that the industry

7    is fraught with such risk, Google and its counsel would or should be thoroughly aware that this

8    risk and practice that misleads search users.  This warning to consumer is *not* that search

9    listings *could* be sold without disclosure, because through the use of "paid placement" they

10   indeed are sold.  The FTC asks that there be clear disclosure when search results are indeed

11   sold.  Here, the FTC warns of the very same phenomenon raised in the SAC of not disclosing

12   when results are "paid."

13   Google's premature but vehement denial clearly shows that Google understands

14   precisely the allegation.  If it chooses to contest this, the proper vehicle is an answer to the

15   SAC, not a Rule 11 motion to begin factual disputes and harass and threaten KinderStart and its

16   counsel for sanctions.  Furthermore, the declaration of Matt Cutts is supported by one thing

17   alone – his belief that results are not sold.  *Cutts Decl.* ¶ 2.  He is silent as to the degree and

18   strength of his belief.  Mr. Cutts makes no mention of the investigation he invested or

19   consultation of other staff to verify his belief.  He shows no affirmation that he has consulted

20   with the marketing or technical groups and teams within Google about this crucial issue.  The

21   only marginally relevant duty mentioned in his declaration is the role of posting "publicly

22   available explanations of Google's policies and procedures" regarding the operation of the

23   engine.  Without more, this strongly suggests that the dispute on factual grounds for Google's

24   Rule 11 request is objectively baseless.  Clearly, counsel here has failed to perform due

25   diligence required of him under Rule 11.

26

27

28

---

[2] KinderStart separately and concurrently requests for judicial notice of the FTC Consumer Alert, "Being Frank about Search Engine Rank", September 2002.  *Request for Judicial Notice in Support of Plaintiffs' Motion for Sanctions Against Google Inc. and its Counsel*, ¶ 2.

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST
GOOGLE AND DAVID H. KRAMER UNDER RULE 11

Case No. C 06-2057 JF

1    Finally, KinderStart's attorney affirms hereby that investigation underlying these

2    allegations was performed and that plaintiffs will produce suitable evidence that a top search

3    listing was guaranteed by Google in exchange for consideration.

4

5        **3.    Google's Pleading of Frivolousness of Allegation on Removal of Results**

6    Google cites its policy on search results removal in relevant part:

7        It is Google's policy not to censor search results. However, in response to local
        laws, regulations, or policies, we may do so. When we remove search results for these
8        reasons, we display a notice on our search results pages. Please note: For some older
        removals (before March 2005) we may not show a notice at this time.

9
10    *Declaration of Matt Cutts in Support of Defendant's Motion for Sanctions*, ¶ 3. While Google

11    believes that the omission of certain language "contradicts the true record," Google produces no

12    grounds that a contradiction exists. *Motion for Sanctions* at 4. Its claim of contradiction is that

13    the omission somehow creates an actual conflict in the verity or falsehood of one or more of the

14    stated guidelines and policies within Google's website.

15    The language used by Google itself in its own censorship policy is ambiguous at best,

16    and itself contradictory at worst. No other party except Google is responsible for the choice of

17    words and phrases in promulgating its own webmaster guidelines, rules and general policies.

18    For example, Plaintiffs allege that the guidelines themselves are arbitrary, vague and overbroad.

19    In other words, Plaintiffs have not attempted to restate the factual record, but merely to assess

20    and evaluate what the censorship and webmaster guidelines mean to the reader and Website

21    owner in the first place. These alleged deficiencies focus on the ambiguous and circuitous

22    wording and meanings that emanate from Google's website content.

23    A censor is defined as a "person authorized to examine books, films, or other material

24    and to remove or suppress what is considered morally, politically, or otherwise objectionable."[3]

25    The verb "censor" means to "examine and expurgate."[4]  Google effectively uses the Webmaster

26
27    [3] censor. (n.d.). *The American Heritage® Dictionary of the English Language, Fourth Edition.*
      Retrieved October 18, 2006, from Dictionary.com website:
      http://dictionary.reference.com/browse/censor
28    [4] *Id.*

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST
GOOGLE AND DAVID H. KRAMER UNDER RULE 11
                              -6-                                    Case No. C 06-2057 JF

1    guidelines to study and dissect the content, meaning and intention of the speaker (i.e., the

2    Webmaster) to perform censorship and expurgation.  In the declaration of Google's engineer,

3    Google claims, "for an extended period leading up to its exclusion from Google's search results,

4    KinderStart hosted hundreds of illegitimate and duplicative links to hardcore pornography sites.

5    *Cutts Decl.* ¶ 8.  Google clearly intimates that such links were brought on by "a directory of

6    'members' who joined KinderStart."  *Id.* at ¶ 7.  From this declaration, it appears Google

7    exercised censorship in its practices, but it falls short of confirming the cause for exclusion in

8    the instance of www.kinderstart.com.  It is but one example of how Google can censor without

9    admitting to it.

10          When the SAC is read as a whole, a gravamen as to several of the counts is that

11   Google's guidelines are amorphous and ambiguous.  This is precisely how Google can censor

12   with complete impunity by relying on vague and overbroad webmaster guidelines.  For

13   example, Google represents that it removes a Website from its index if engages in Website

14   removal "(a) upon request of the webmaster of the Website, (b) in the case of "spamming" the

15   index, or (c) as required by law."  *SAC* ¶ 87.  Clause (c) is explicit by specifying a mandate that

16   the content be removed by law, which suggests compelled censorship.  But turning to its policy

17   on censorship, Google states merely that removal is done "in response to local laws,

18   regulations, or policies."  It fails to make any distinction as to the authorship of those policies or

19   whether the policies themselves must originate from a third party or government entity.  When

20   one uncovers local policies, Google itself specifies its own polices -- Webmaster guidelines and

21   rules for U.S. sites – can be violated and lead to Website removal.  This is censorship for

22   content.  Indeed, Google's policies on its Website demonstrate that it confers upon itself total

23   and arbitrary discretion to remove Websites, *for any reason.  SAC* ¶ 153.  In a way, this is part

24   and parcel of the overall policy that Google reviews and examines each Website for context of

25   the policy and decides who and what to remove from the index.  This is, in sum, no less that the

26   act of censoring for content based on Google's review of the Website in question.

27          This broad, sweeping entitlement to censor at will is further evidenced by Google's own

28   argument in its motion to dismiss regarding claimed coverage under the Communications

1   Decency Act.  There, Google goes on record and on the offensive in stating that its immunity

2   from liability is derived from attaching to anything its label of "objectionable."  *MTD* at 8.

3   Plainly, this is censorship on Google's own terms and conditions, and a policy of its own right

4   that leads to removal of Websites from its index.

5         Finally, Google's *stated* policy on censorship itself has shifted in less than two weeks.

6   As of September 28, 2006, this section as claimed in the *Matt Cutts Declaration in Support of*

7   *Defendant's Motion for Sanctions Against KinderStart.com and Gregory J. Yu Pursuant to Fed.*

8   *R. Civ. P. Rule 11,* carried the following additional sentence, "**Please note:  For some older**

9   **removals (before March 2005) we may not show a notice at this time**."   However, as of

10  October 12, 2006, this sentence has completely disappeared from Google's Website, at least in

11  this section on website removal.  *Declaration of Titus Lin*, ¶ 2, attached hereto as <u>Exhibit 1</u>.

12        The addition and then the subsequent deletion of this sentence allows for multiple

13  objective inferences.  First, by inserting this qualification for older removals having taken place,

14  the original representation and promise in the past about disclosure of site removal might have

15  been in fact false.  The insertion also directly admits that there are undisclosed site removals

16  which are not disclosed at all in substance or form.  Second, its subsequent removal from

17  Google's website suggests that removals for search results will be disclosed in full on a

18  prospective basis.  Or, it could mean that Google has now elected to confirm for all future users

19  that the policy of disclosure was in fact never violated in the past and all such results fully

20  disclosed Website removal when the results were produced in the past for view.

21        It is the mere fact that the stated censorship policy is subject to change at Google's will

22  and control brings cause for the underlying problem.  The parties and the court may face

23  ongoing difficulty at arriving what is really the factual record of Google's representations that

24  can be tested for legality.  All this brings serious questions as to what policies are truly being

25  disclosed by Google to the user, the court, and the webmasters at any given time.  The fact that

26  this change occurred in such a short span of time actually reflects potential sanctionable conduct

27  against Google and perhaps its counsel.  Google is, on the fly, apparently changing important

28

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST
GOOGLE AND DAVID H. KRAMER UNDER RULE 11
Case No. C 06-2057 JF

1  contents of this key representation in its Website.[5]

2      Google also improperly raises a request for sanctions by concluding that an allegation

3  that website removal must have been known by KinderStart and its counsel to be false.  *SAC* ¶

4  89.  KinderStart did in fact perform reasonable diligence for this allegation.  *Declaration of*

5  *Randall McCarley*, attached as Exhibit 2.

6          **4.     Google's Pleading of Frivolousness as to Discriminatory Punishment.**

7      Again, as in the first instance, Google wants details which may induce KinderStart to

8  potentially violate Rule 8(a).  Plainly, Google wants evidence now in the SAC of political and

9  religious discrimination in treatment of Websites in the engine's operation and in search results

10  and website removal.  By the glossing over details in the SAC, Google presumes that these

11  allegations must assuredly be "reckless and false."  However, Plaintiffs specifically allege that

12  Web Recommendations (as defined in *SAC* ¶ 160) were used by Google to selectively target and

13  punish a "site carrying certain political content and views."  *SAC* ¶ 60(g)(3).  In fact, Google's

14  counsel makes direct, factual assertions that the allegations in the SAC are false but without

15  sufficient necessary foundation.[6]  Google and its counsel are free to personally make such

16  presumptions of denial, but they certainly should not land in a Rule 11 motion.

17          **5.     Google's Continued Violations of Local Rule 3-4 for Uncertified Opinions.**

18      Under Local Rule ("L.R.") 3-4(e), no uncertified opinion may be cited to the Court.

19  Google continues to cite to the Court the unreported decision of *Search King v. Google*, which

20  is an opinion out of the Western District of Oklahoma of the Tenth Circuit.  MTD at 3-4, 425.16

21  Motion at 5, 12, 14.  This federal district[7] does not have a rule for having an opinion or order

22  designated as "Not for Citation", which might be considered the equivalent of the L.R. 3-4(e).

23

24  ─────────────────

[5] When one visits http://web.archive.org/web/*/http://google.com, unfortunately the latest
25  archived site for www.google.com only goes to April 1, 2005 and no later.
[6] A Google engineer states, "To my knowledge, Google has never blocked web search results or
26  lowered PageRanks based on 'discriminatory political or religious content.'"  Somehow,
however, the declarant chooses to elevate the force of this assertion by, as to the entire
27  declaration, that it "is true and correct to the best of my knowledge."  *Cutts Decl.* ¶ 5.
[7] The local rules of the federal court in the Western District of Oklahoma at
28  http://www.okwd.uscourts.gov/files/lrules.pdf, make no reference to unpublished or uncited
opinions and orders.

1    However, the Tenth Circuit does designate whether its opinions are published or unpublished.

2    See accompanying Request for Judicial Notice, ¶ 2, attached hereto as <u>Exhibit 3</u>.  Further, under

3    its rules, the Tenth Circuit disfavors citations to unpublished opinions.[8]  Although the *Search*

4    *King* case appears within the electronic databases of Westlaw and Lexis, they are not considered

5    officially published by either of these services.  *Gregory J. Yu Decl.,* attached hereto as <u>Exhibit</u>

6    <u>4</u> ("*Yu Decl.*").

7        This is not the first time.   In the oral argument on the first motion to dismiss,

8    KinderStart's counsel and the court had the following dialogue:

9        MR. YU:  "And <u>Search King</u> we believe under the local rules [sic], 3-4, the appellate
          rules and the Supreme Court, we should not even be touching or looking at the Search
10        King case. . . .

11        THE COURT:  I'm not going to use unreported cases in making my decision.

12    *Transcript of Proceedings before the Court* on June 30, 2006, pp. 37-38.  As if this were not

13    sufficient warning, Google continues to violate the Local Rules.  As the rule is sufficient for the

14    Court to observe, Google chooses to continue repeated violations throughout its new motions.

15    The record of the case in the electronic databases such as Lexis or Westlaw does *not* constitute

16    an official reporting of the case.  *Yu Decl.,* ¶¶ 3-5.  Further, Google recently cited the very same

17    rule to charge a violation *against* its opponent in another case before the Northern District of

18    California.  *Google, Inc. and Lee v. Microsoft Corporation*, 415 F. Supp. 2d 1018, 1021 n.3

19    (N.D. Cal. 2005).   Google should now be charged with responsibility for knowing and

20    complying with this rule.  As Google's violation here is repeated, intentional, and with clear

21    notice from the Court and with knowledge of the very same rule relied upon by Google against

22    another party, this is sanctionable conduct by Google.

23    **CONCLUSION**

24        In light of the above, the accompanying declaration and the documents and pleadings on

25    file herein, KinderStart respectfully requests the Court to impose sanctions in its discretion to

26    (1) first deny the Rule 11 motion of Google in its entirety, and (2) render a sanction of a

27    

28    ---
      [8] The Tenth Circuit's rules of appellate practice are at
      http://www.ck10.uscourts.gov/downloads/rules2006.pdf, 10 Cir. R. 36.3.

1  monetary nature to reflect the legal fees and costs that KinderStart and its counsel have incurred

2  to bring this cross-motion for Rule 11 sanctions against Google and its counsel.

3  Dated: November 13, 2006                    GLOBAL LAW GROUP

4

5                                              By:    ___/s/ Gregory J. Yu_____
                                                      Gregory J. Yu, Esq.
6                                              Attorney for Plaintiff KinderStart.com LLC and
                                                      for the proposed Class and Subclasses
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28