Gregory J. Yu (State Bar No. 133955)
GLOBAL LAW GROUP
2015 Pioneer Court, Suite P-1
San Mateo, CA  94403
Telephone: (650) 570-4140
Facsimile:  (650) 570-4142
E-mail:  glgroup [at] inreach [dot] com

Attorney for Plaintiffs and Proposed Class and Subclasses

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KINDERSTART.COM LLC, a California limited liability company, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>Defendant. | Case No. C 06-2057 JF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS AGAINST KINDERSTART.COM LLC AND ITS LEGAL COUNSEL UNDER FED. R. CIV. P. 11**<br><br>Judge:     Hon. Jeremy Fogel<br>Date:      December 8, 2006<br>Time:      9:00 a.m.<br>Courtroom: 3, 5th Floor |

**OVERVIEW**

Defendant Google, Inc. ("Google") already has three pending motions before the Court – a motion to dismiss the Second Amended Complaint ("SAC") based on Federal Rule of Civil Procedure ("Rule") 12(b)(6) (the "MTD"), a motion to strike based on California Code of Civil Procedure § 425.16 (the "425.16 Motion"), and a motion to dismiss/strike the SAC under Rule 8(a), 8(e), and 41(b) and Rule 12(f) and 15(a) (the "Rule 8 Motion").  The MTD was argued before the Court on October 27, 2006, and taken under submission.  This motion for sanctions under Rule 11 (the "Google Rule 11 Motion") against KinderStart.com LLC ("KinderStart") and its legal counsel is not just opposed, but required KinderStart to serve and then file its own Rule 11 motion against Google and its legal counsel (the "Rule 11 Cross-Motion").

**ARGUMENT**

Under Rule 11, if a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted). Attorneys need to seek and review credible information consisting of direct evidence or reasonable inferences from other evidence in hand. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987). As explained below, Google fails to carry both requirements. Google should not have filed this motion in the first place simply to intimidate or test the legal sufficiency of plaintiff's allegations. *See Committee Notes on Amendments to Federal Rules of Civil Procedure,* 146 F.R.D. 401, 590 (1993). Google may use Rule 11 only to exclude baseless filings and deter abusive or dilatory pretrial tactics by KinderStart. *Golden Eagle Distributing Corp v. Burroughs Corp.*, 801 F.2d 1531, 1542 (9th Cir. 1986). This is simply not the case here.

**1.    The Google Rule 11 Motion Violated the Safe Harbor Required of Google.**

Google's request for sanctions was "not be filed or presented to the court, unless, within 21 days after service of the motion the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Rule 11(c)(1)(A). The safe harbor saves the Court from being burdened with unnecessary issues that can be first resolved by independent compliance with Rule 11. In principle, Google ignored this requirement in its briefs for two of its motions filed on September 22, 2006. First, Google already advised the court in a footnote within its brief that certain allegations of plaintiffs are "sanctionable". *MTD* at 29 n. 13 ("This allegation, which reflects *sanctionable* misconduct, should be rejected out of hand" (emphasis added)). Continuing this theme, Google did the same in another brief: *Rule 8 Motion* at 4 ("Google . . . makes the reckless and *sanctionable* allegation that Google 'blocks' websites based on political and religious reasons . . . " (emphasis added)). In both motions, Google handily predisposed the Court of an impending Rule 11 motion. Google had no qualms

by having "presented" to the Court a warning of sanctions.

Two other federal districts found a request for sanctions in an underlying motion to be repugnant to the safe harbor of Rule 11. *Estate of Miles Davis v. Shukat et al.*, 287 F. Supp. 2d 455 (S.D.N.Y. 2003) (plaintiff lodged a successful Rule 11 cross-motion against defendant for its baseless Rule 11 motion); *Tardd v. Brookhaven National Laboratory et al.*, 407 F. Supp. 2d 404, 421-22 (E.D.N.Y. 2006) (plaintiff that buried a request for Rule 11 sanctions in a footnote in an opposition brief violated the 21-day safe harbor and had its Rule 11 motion denied). Google violated the spirit of the safe harbor.[1] Only six days passed between Google's bald warning of sanctions against KinderStart in two motions and Google's personal service of the Rule 11 motion itself. Thus, Google already mapped out its plan to ignore the 21-day harbor to first notify KinderStart's counsel before presenting *anything* to the Court. In waiting just days after its other three motions were filed on September 22, 2006, Google made no gainful attempt to mitigate damages from legal costs and fees here. Google was in a hurry.

The Rule 8 Motion sought to strike content deemed by the Court not to be suitable or appropriate, but Google tagged certain content within the SAC as "sanctionable" allegations. *Rule 8 Motion* at 4. However, instead of allowing the Court to adjudicate this motion, Google thought that a separate Rule 11 motion would better serve its ends. It was used to intimidate and harass KinderStart's counsel into surrendering its claim of religious and political discrimination in treatment of Websites. Google had already prepared the contents of a declaration of one of its engineers to "deny" this allegation, but made no attempt whatsoever to share the veracity or foundation for this categorical, yet untested, denial of this lone employee. All this amounts to an unseemly use of Rule 11 to escape discovery of evidence that supports this allegation. This motion therefore serves to obtrusively block litigation of the merits and raise the litigation costs among the parties where discovery is perhaps ready to commence.

**2.    Google's Pleading of Frivolousness of Allegation Regarding Search Results**

Rule 11 sanctions must be predicated upon a finding that a pleading was objectively

---

[1] Google actually served the Google Rule 11 Motion personally upon plaintiffs' legal counsel on September 28, 2006, six days after its motions were filed on September 22, 2006, of which two of them contain references to plaintiffs' "sanctionable" allegations.

PLAINTIFFS' OPPOSITION TO GOOGLE'S
MOTION FOR SANCTIONS UNDER RULE 11    -3-    Case No. C 06-2057 JF

frivolous when it was filed, not whether it is "later found lacking in evidentiary foundation," *Cunningham v. County of Los Angeles*, 859 F.2d 705, 714 (9th Cir. 1988), or ultimately fails on the merits. *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987). The Ninth Circuit has stated, "in determining whether a pleading is frivolous, the proper scope of inquiry is the *entire* pleading; the court must determine whether the pleading as a whole, not merely "a particular argument or ground for relief," is frivolous within the meaning of the Rule. *Townsend v. Holman Consulting Corp.*, 881 F.2d 788, 792 (9th Cir. 1989) (emphasis in original), *quoting Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540 (1989)).

Google objects to the allegation that the results of the search engine are skewed by the receipt of consideration by Google. *SAC* ¶¶ 130, 131, 135. Google wields this Rule 11 motion against KinderStart and its counsel is to have them expunge these several allegations under duress. Rather than advance a plausible argument, Google urges the Court to swallow an attorney's circuitous declaration: "These allegations are false, and therefore cannot have been based on *any* evidence uncovered by counsel for KinderStart, since no such evidence exists. *Google Rule 11 Motion* at 3 (italicized emphasis in the original; underscored emphasis added). The lone evidence comes from an engineer's claim that he "regularly post[s] publicly available explanations of Google's policies and procedures in connection with the operation of Google's search engine." *Declaration of Matt Cutts in Support of Defendant's Motion for Sanctions ("Cutts Decl.")*, ¶ 1. As Mr. Cutts is silent about any role in generating search results, advertising relationships, or sales, he is in no position to guarantee to Google's legal counsel that nary a single search position was ever sold off. The declaration in question is supported by one thing alone – the belief of a rather biased observer. *Cutts Decl.* ¶ 2. Mr. Cutts makes no mention of the investigation he invested or consultation with other staff, review of algorithms or questioning of any Google advertising partner. Nor does he say he consulted with the marketing or technical groups and teams within Google about this. Google's request for sanctions itself is objectively baseless and ought to fail.

As to the SAC, no heightened pleading standard under Rule 9(b) applies here. The three paragraphed allegations only point to the occurrence of a transaction or exchange of

PLAINTIFFS' OPPOSITION TO GOOGLE'S
MOTION FOR SANCTIONS UNDER RULE 11       -4-                          Case No. C 06-2057 JF

consideration. Intent, scienter or fraud are neither required nor alleged. With the existence of a single organic position listing being sold, this Rule 11 motion in this respect should go no further. Even without such discovery, allegations of this sort inside the SAC were not gratuitous. If proven that search results were sold or manipulated for gain, objectivity as claimed by Google disappears. Accordingly, Google's search engine never deserved to be set upon a plateau in the first place. This predicates in part the claims of antitrust violations, unfair competition and false advertising.

As Google refuses to view the SAC as a whole, it is unable to taint plaintiffs' allegations as "factually baseless from an objective perspective." Google's counsel was required to have performed a reasonable inquiry that *since the launch of Google's engine in 1998*, *there were never any* instances of any sales of natural search results positions. The SAC furnished clear notice to Google and its counsel of this phenomenon in the industry. The Federal Trade Commission ("FTC") has warned of search results and listings that are sold for consideration within the industry.[2] *SAC* ¶ 137. The industry is fraught with such a risk. Google and its counsel would or should have been thoroughly aware that search listings *could* be sold without disclosure and mislead search users. This warning is highly credible because "paid placement" of results does happen without consumer knowledge, and the FTC had to make the public aware. Finally, KinderStart's attorney affirms hereby that investigation underlying these allegations was performed and that plaintiffs will produce suitable evidence to support this allegation. *Declaration of Gregory J. Yu,* attached hereto as Exhibit 1, ¶ 5.

**3.    Google's Pleading of Frivolousness of Allegation on Removal of Results**

Google looks at its own statements on its Website about censorship and attempts to narrow any ambiguities to muster its Rule 11 motion. Google cites its policy on search results removal in relevant part:

> It is Google's policy not to censor search results. However, in response to local laws, regulations, or policies, we may do so. When we remove search results for these reasons, we display a notice on our search results pages. Please note: For some older

---

[2] KinderStart separately and concurrently requests for judicial notice of the FTC Consumer Alert, "Being Frank about Search Engine Rank", September 2002. *Request for Judicial Notice in Support of Plaintiffs' Motion for Sanctions Against Google Inc. and its Counsel*, ¶ 2.

PLAINTIFFS' OPPOSITION TO GOOGLE'S
MOTION FOR SANCTIONS UNDER RULE 11      -5-                  Case No. C 06-2057 JF

removals (before March 2005) we may not show a notice at this time. *Cutts Decl.* ¶ 3. While Google believes that the omission of certain language "contradicts the true record," Google produces no grounds that a contradiction exists. *Google Rule 11 Motion* at 4. Its claim of contradiction is that the omission somehow creates an actual conflict in the verity or falsehood of one or more of the stated guidelines and policies within Google's website.

Google believes that only one treatment and reading of its statements is possible. Since it refuses to consider the interpretation chosen by KinderStart below, Google uses this motion simply to reject an interpretation it does not favor. Through its legal counsel, KinderStart is given latitude by the Ninth Circuit to pursue aggressive and favorable factual and legal theories to support its claims against Google. *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987). As to the omitted phrase on censorship in the SAC, Google insists on its importance, but KinderStart finds that it actually lacks credible import in view of the stated policies and actual practices of Google.

This language in Google's own censorship and disclosure policy is ambiguous at best and contradictory at worst. No party but Google sets, discloses, practices, and violates its own webmaster guidelines, rules and general policies. Indeed, Plaintiffs allege that the guidelines themselves are arbitrary, vague and overbroad. Plaintiffs have not attempted to restate the factual record, but to articulate the meaning and practice the censorship and webmaster guidelines for the reader and Website owner. Google alone is responsible.

A censor is defined as a "person authorized to examine books, films, or other material and to remove or suppress what is considered morally, politically, or otherwise objectionable."[3] The verb "censor" means to "examine and expurgate."[4] Google effectively uses the Webmaster guidelines to study and dissect the content, meaning and intention of the speaker (i.e., the Webmaster) to perform censorship and expurgation. Google claims "for an extended period leading up to its exclusion from Google's search results, KinderStart hosted hundreds of illegitimate and duplicative links to hardcore pornography sites." *Cutts Decl.* ¶ 8. Google

---

[3] censor. (n.d.). *The American Heritage® Dictionary of the English Language, Fourth Edition*. Retrieved October 18, 2006, from Dictionary.com website: http://dictionary.reference.com/browse/censor

[4] *Id*.

PLAINTIFFS' OPPOSITION TO GOOGLE'S
MOTION FOR SANCTIONS UNDER RULE 11    -6-    Case No. C 06-2057 JF

1  clearly intimates that such links were brought on by "a directory of 'members' who joined
2  KinderStart." *Id.* at ¶ 7.  From this declaration, it appears Google exercised censorship in its
3  practices, but it falls short of admitting the true cause for exclusion and de-indexing of
4  www.kinderstart.com.  It is but one example of how Google censors without admitting to it.
5       When the SAC is read as a whole, the gravamen behind several of the claims is that
6  Google's guidelines are amorphous and ambiguous.  This is precisely how Google can censor
7  with complete impunity by relying on vague and overbroad webmaster guidelines.  For
8  example, Google represents that it removes a Website from its index if engages in Website
9  removal "(a) upon request of the webmaster of the Website, (b) in the case of "spamming" the
10 index, or (c) as *required* by law." *SAC* ¶ 87 (emphasis added).  Clause (c) is explicit by
11 specifying a mandate that the content be removed by law, which means compelled censorship.
12 But turning to its policy on censorship, Google states merely that removal is done "in response
13 to local laws, regulations, or policies."  It fails to specify the author(s) of those policies or
14 whether the policies originate from Google, a third party or a government entity.
15      Therefore, the scope and origin of "policies" lacks definition.  Google itself specifies its
16 own polices -- Webmaster guidelines and rules for U.S. sites – can be violated and lead to
17 Website removal.  Without clarity from Google, the reader can only expect added confusion or
18 obfuscation.  This is censorship for content.  Indeed, Google's policies on its Website
19 demonstrate that it confers upon itself total and arbitrary discretion to remove Websites, *for any*
20 *reason.* *SAC* ¶ 153.  In a way, this is part and parcel of the overall policy that Google reviews
21 and examines each Website for context of the policy and decides who and what to remove from
22 the index.  Censorship performed by Google is hidden from view.
23      This broad, sweeping entitlement to censor at will is further evidenced by Google's own
24 argument in its motion to dismiss regarding claimed coverage under the Communications
25 Decency Act.  There, Google demands immunity from liability is derived from attaching to
26 anything its label of "objectionable." *MTD* at 8.  Plainly, this is censorship on Google's own
27 rules – a deliberate policy to remove Websites from its index and from view by the public.
28      Finally, Google's *stated* policy on censorship itself has shifted in less than two weeks.

PLAINTIFFS' OPPOSITION TO GOOGLE'S
MOTION FOR SANCTIONS UNDER RULE 11   -7-   Case No. C 06-2057 JF

As of September 28, 2006, this section carried the following additional sentence, "**Please note: For some older removals (before March 2005) we may not show a notice at this time**." *Cutts Decl.* at Exhibit A. However, as of October 12, 2006, this sentence has completely disappeared[5] from Google's Website, at least in this section on website removal. *Declaration of Titus Lin*, ¶ 2, attached hereto as Exhibit 2. The sudden omission exemplifies an arbitrary side to Google's practices and perhaps highlights the underlying problem. The parties and the Court may struggle to lock down the wording of Google's online representations for testing their legality. All this means that on the fly, Google changes important components of its stated censorship and disclosure policies to the point that continued reliance is undeserving.[6]

Google also improperly asks for sanctions by assuming knowledge of outright falsity was held by KinderStart and its counsel. *SAC* ¶ 89. KinderStart did in fact perform reasonable diligence for this allegation. *Declaration of Randall McCarley*, attached as Exhibit 3.

**4.    Google's Pleading of Frivolousness as to Discriminatory Punishment.**

Google, as a corporate entity, refuses to believe that any of its 6,000-plus employees have *ever* targeted, punished or censored a Website a single time for political and religious reasons. Naturally, all private corporations share a belief that their staff never discriminates in hiring or firing in violation of Title VII, but that is no defense. Here, Google asks a single declarant to assert that "these allegations [of KinderStart] are baseless" but it completely rests on his own "knowledge." *Cutts Decl.* ¶ 5. He offers no hints that he performed any investigation, due diligence or evaluation to support this factual denial. The Court has just a thin suggestion of a test that "one need only search at random for any political or religious topic" to see a "full gamut of religious and political perspectives" in Google's search results.

---

[5] The addition and the subsequent deletion of this sentence allows for multiple objective inferences. First, this exception for older removals suggests that the original representation about disclosure of site removal might have been in fact false. Google also directly admits that there are undisclosed site removals which are not disclosed at all in substance or form. Second, this belated adjustment of policies on Google's website suggests that removals for search results will be disclosed in full in the future. Or, it could mean that Google has now elected to confirm for all future users that the policy of disclosure was in fact never violated in the past and all such results fully disclosed Website removal when the results were produced in the past for view.
[6] When one visits http://web.archive.org/web/*/http://google.com, the earliest archived Website for www.google.com does not reach back before April 1, 2005.

PLAINTIFFS' OPPOSITION TO GOOGLE'S
MOTION FOR SANCTIONS UNDER RULE 11    -8-    Case No. C 06-2057 JF

Google and Mr. Cutts lack conclusive proof that the engine never discriminates for wrongful or unethical reasons. This denial does not even make sense. Finding a range of opinions in search results does not negate the possibility that at least once discriminatory punishment of a site took place. Mr. Cutts' conclusory denial does not empower a court reflexively conclude, without more, that there is a "total lack of evidentiary support." *Google Rule 11 Motion* at 5.

Once again, Google glosses over the SAC's details. It presumes that these allegations must assuredly be "reckless and false." However, Plaintiffs specifically allege that Web Recommendations (as defined in *SAC* ¶ 160) were used by Google to selectively target and punish a "site carrying certain political content and views." *SAC* ¶ 60(g)(3). In fact, Google's counsel makes direct, factual assertions that the allegations in the SAC are false but without sufficient necessary foundation.[7] KinderStart's counsel properly and reasonably performed diligence to verify that at least one site suffered punishment from Google for its politically-charged content. *Yu Decl.* ¶ 3. Google is troubled for the lack of detail in the allegations in the SAC as to discrimination. But the fear and intimidation of sites to volunteer their identities chills both their speech and their willingness to come forward now in the very earliest stages of this litigation. *Yu Decl.* ¶ 4. Accordingly, Plaintiffs urge the Court to exercise discretion to allow details to be withheld by KinderStart at this time to avoid jeopardizing these sites that are subjugated to Google's engine. Google's concerns for detail do not warrant Rule 11 sanctions.

### 5. Even if KinderStart Violated Rule 11, Sanctions are not Suitable.

The Ninth Circuit has declared that Rule 11 sanctions are "reserved for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). It later observed: "Rule 11 is an extraordinary remedy, one to be exercised with *extreme caution.*" *Conn v. CSO Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992) (emphasis added). Thus, it is not merely a monetary issue for an attorney.

---

[7] Google's engineer states, "To my knowledge, Google has never blocked web search results or lowered PageRanks based on 'discriminatory political or religious content.'" Somehow, however, the declarant chooses to elevate the force of this assertion by, as to the entire declaration, that it "is true and correct to the best of my knowledge." *Cutts Decl.* ¶ 5.

1    Without question, this action focuses on unusual behavior and conduct pervading a
technology and an environment that did not exist a decade ago. Google is assuredly testing the
boundaries of the law where it is free of regulation by Congress and the FCC and enjoys wide
deference from judges, politicians and the market at large. The SAC admittedly contains
certain unprecedented allegations, but that does not make them objectively false. Google itself
believes that its behavior is unassailable as it tenuously reaches for a variety of theories,
defenses and immunities. In plaintiffs' view, Google's arguments behind its three other
motions in some instances are rather marginal. In a rather duplicitous fashion, though, Google
employs this Rule 11 motion to ask the Court to punish the vigorous prosecution of a set of
complex claims. Therefore, sanctions should not lie, particularly where the law and the Court
are challenged in addressing the underlying merits of the allegations as a matter of law.

**CONCLUSION**

In light of the above, the accompanying declarations and the documents and pleadings on file herein, KinderStart respectfully requests the Court in its discretion to (1) deny the Rule 11 motion of Google in its entirety, and/or (2) either in a consolidated hearing[8] or subsequent hearing for KinderStart's Rule 11 Cross-Motion against Google and its legal counsel, render sanctions against Google and its counsel for legal fees and costs incurred by KinderStart and its counsel for its opposition to the Google Rule 11 Motion, and for filing and arguing the Rule 11 Cross-Motion.

Dated: November 17, 2006            GLOBAL LAW GROUP


                                    By:    /s/ Gregory J. Yu
                                           Gregory J. Yu, Esq.
                                    Attorney for Plaintiff KinderStart.com LLC and
                                         for the proposed Class and Subclasses

---

[8] KinderStart filed the Rule 11 Cross-Motion for sanctions against defendant and its counsel on November 16, 2006, and is calendared for a January 19, 2006 hearing. Since three of five grounds for the Rule 11 Cross-Motion overlap those raised by the Google Rule 11 Motion, a consolidated hearing and adjudication may be a more efficient use of the Court's resources. KinderStart is amenable to a consolidated hearing date for both motions on January 19, 2007, in the absence of prejudice in deferring the hearing date of the Google Rule 11 Motion.