DAVID H. KRAMER, State Bar No. 168452
COLLEEN BAL, State Bar No. 167637
LISA A. DAVIS, State Bar No. 179854
BART E. VOLKMER, State Bar No. 223732
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
DKramer@wsgr.com

JONATHAN M. JACOBSON
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12 East 49th Street, 30th Floor
New York, NY 10017-8203
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
JJacobson@wsgr.com

Attorneys for Defendant
Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KINDERSTART.COM, LLC, a California limited liability company, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC., a Delaware corporation,<br><br>Defendant. | CASE NO.: C 06-2057 JF (RS)<br><br>**DEFENDANT GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS AGAINST KINDERSTART.COM AND GREGORY J. YU PURSUANT TO FED. R. CIV. P. RULE 11**<br><br>Before:   Hon. Jeremy Fogel<br>Date:     December 8, 2006<br>Time:     9:00 a.m.<br>Courtroom: 3, 5th Floor |

**INTRODUCTION**

Google's Rule 11 motion highlighted several false and inflammatory allegations in KinderStart's Second Amended Complaint ("SAC"), and explained that KinderStart could not have had the requisite good faith basis for those allegations. KinderStart's opposition confirms the propriety of sanctions. It makes plain that KinderStart had (and has) no evidentiary basis for its allegations that, for example:

- Google has "intentionally offered and delivered top positions in search results . . . to companies, firms, advertisers and advertising agencies . . . in exchange for certain conditions and consideration as accepted by Google."

- "Google regularly, intentionally and repeatedly [removes pages from its search results] based on discriminatory political and religious content . . . ."

Rather than offering support for its charges, KinderStart argues that Google has failed to disprove them. But Google has no such obligation. Rather, KinderStart must show it had support for these allegations in the first place. Its inability to make that showing and its refusal to withdraw the allegations is precisely the behavior Rule 11 is intended to prevent.

Equally deserving of sanction is KinderStart's use of ellipses to misrepresent a Google statement about its policy to give notice in certain cases when it removes a page from its search results. KinderStart makes no attempt to explain why it felt it necessary or proper to edit Google's actual statement. But the explanation is obvious: KinderStart edited the statement to alter its meaning in the hopes of manufacturing a claim. Such misconduct cannot be countenanced.

Rule 11 motions should be the rare exception, not the rule. But here, KinderStart and its counsel have disregarded the Rule's important safeguards on the litigation process. In so doing, they have substantially increased the expense of this case for Google. Moreover, given the media attention this case has received, KinderStart's unsubstantiated falsehoods have already reached a large audience -- making it important for Google to refute them directly. The allegations should thus be stricken, and Google should be awarded the expenses it has been forced to incur.

# ARGUMENT

## I. GOOGLE FULLY COMPLIED WITH THE RULE 11 SAFE HARBOR

KinderStart's first claim in its opposition is that Google violated Rule 11's safe harbor by mentioning the sanctionable nature of KinderStart's allegations in its earlier-filed motion to dismiss. The argument is meritless, made more so by KinderStart's misrepresentation of the cases it cites.

To comply with the safe harbor requirements of Rule 11, a party seeking sanctions must serve its moving papers at least 21 days in advance of filing them with the Court. Fed. R. Civ. P. 11(c)(1)(A). The point of this safe harbor is to give the opposing party an opportunity to remedy the misconduct before seeking judicial relief. *See* Fed. R. Civ. P. 11, Adv. Comm. Notes, 1993 Amend.

Google satisfied this requirement. It served, but did not file, its motion papers on KinderStart on September 28, 2006. Declaration of David H. Kramer ("Kramer Decl.") at ¶ 2. Google's motion papers highlighted numerous sanctionable deficiencies in KinderStart's SAC. KinderStart made no effort to address these issues in the allotted time (and still has done nothing about them). Google proceeded to file its motion papers with the Court on October 20, 2006, 22 days after serving them. *Id.* Thus, Google honored Rule 11's safe harbor. *See* Fed. R. Civ. P. 11(c)(1)(A).[1]

---

[1] KinderStart portrays Google as desirous of pursuing a Rule 11 motion. The portrayal is false. Google's interest all along has simply been to deter KinderStart from making frivolous allegations. When Google learned from the popular press that KinderStart intended to proceed following dismissal of its original complaint, it wrote to KinderStart's counsel on July 20, 2006 (a month *before* the SAC was even filed):

> Greg: Reading your comments to the press, it appears that you intend to file a Second Amended Complaint . . . . While I'm sure you are aware of your obligations under Rule 11, please keep those obligations in mind as you set out your amended allegations. We had difficulty seeing how there was a good faith basis for some of the allegations KinderStart made in the past.

Kramer Decl., Ex. B; *see also* Kramer Ex. A (news article quoting KinderStart's counsel regarding KinderStart's intent to file an SAC). KinderStart ignored that caution, advanced the specious allegations at issue here and then refused to withdraw them, leaving Google with no means of attacking the allegations other than through Rule 11.

1    KinderStart, however, claims that Google violated the safe harbor by informing the Court of some of the sanctionable aspects of the SAC in a motion to dismiss which it filed September 22, 2006, before the Rule 11 motion was even served. That is, according to KinderStart, the Rule 11 safe harbor functions as an all purpose "gag rule," barring a party from describing allegations as "sanctionable" in any context at any time, even if it does not then seek the imposition of sanctions.[2] Rule 11 says no such thing.

Nor do the cases cited by KinderStart come anywhere close to supporting such an intrusion on a party's ability to advocate. In *Tardd v. Brookhaven Nat. Laboratory,* 407 F. Supp. 2d 404, 421-22 (E.D.N.Y. 2006), the court denied plaintiffs' motion for Rule 11 sanctions on the grounds that the motion was both meritless and procedurally deficient. Among other things, the plaintiffs purported to make their unsuccessful Rule 11 motion in a footnote in their opposition brief to defendants' motion for judgment on the pleadings, thereby violating the safe harbor requirement that a motion for sanctions not be filed until twenty-one days after the motion is served upon the opposing party.[3] *Tardd* has no application here, where it is undisputed that Google filed its stand-alone Rule 11 motion 22 days after serving it on KinderStart. The *Tardd* case nowhere discusses, much less prohibits, describing an opposing party's arguments as "sanctionable" in a prior-filed brief. Likewise inapposite is the only other case cited by KinderStart to support its argument that Google somehow violated the safe harbor provision of Rule 11, *Estate of Miles Davis v. Trojer*, 287 F. Supp. 2d 455 (S.D.N.Y. 2003). There, the court granted plaintiff's cross-motion for Rule 11 sanctions on the ground that defendant's Rule 11 motion – which the Court had explicitly advised the defendant not to file – was baseless. 287 F. Supp. 2d at 456. *Trojer* nowhere mentions the safe harbor requirement of Rule 11, much less

---

[2] Google had every reason to apprise the Court of KinderStart's sanctionable allegations in its Motion to Dismiss the SAC. While Google does not believe Kinderstart could state a claim even if these particular allegations were credited, if the allegations somehow gave the Court pause, Google wanted to assure the Court that it would be seeking to strike them under Rule 11.

[3] The *Tarrd* plaintiffs' Rule 11 footnote "motion" also violated the requirement that a motion for sanctions be made "separately from other motions or requests" (Fed. R. Civ. P. 11(c)(1)(A)), and the court's local rules prohibiting footnotes. *Tardd,* 407 F. Supp. 2d at 421-22.

applies it in any way help to KinderStart. In sum, Google did not violate the Rule 11 safe harbor. Its motion is entirely proper.

## II. KINDERSTART AND ITS COUNSEL VIOLATED RULE 11 BY MAKING AND MAINTAINING ALLEGATIONS FOR WHICH THEY HAVE NO EVIDENTIARY SUPPORT

Throughout its opposition, KinderStart argues that it cannot be sanctioned for its reckless allegations because Google has not disproven those allegations. *See, e.g.,* Opp. at 4-5 ("Google's counsel was required to have performed a reasonable inquiry that *since the launch of Google's engine in 1998, there were never any* instances of any sales of natural search results positions."), 8-9. The argument reflects a complete misunderstanding of Rule 11.

KinderStart and its counsel apparently believe that they are free to proffer whatever outlandish allegations they wish, without regard to whether they have evidence to support those allegations. In their view, KinderStart may proceed with discovery in the hopes of finding some support for its allegations unless and until Google disproves those allegations. KinderStart could not be more wrong. Under Rule 11, KinderStart and its counsel bear an initial burden to ensure that there is an evidentiary basis for their allegations when they make them. Fed. R. Civ. P. 11 (b)(3). Indeed, the Court said exactly that at the hearing on Google's initial Motion to Dismiss. June 30, 2006 Hearing Tr. at 12:3-8. ("[T]he way litigation works is you can't just file a blanket lawsuit saying we think we're going to find some stuff and we want to take discovery. You have to have a good faith basis for asserting the claim . . . ."). KinderStart and its counsel have simply ignored both the Rule and the Court's admonishment.

### A. Allegations of Payment in Return for Search Result Positioning

KinderStart points to no evidence supporting its irresponsible charges that Google has repeatedly sold placement in its search results. SAC ¶¶ 131, 130, 135. That is no surprise. As Google's Mr. Cutts unambiguously states in his declaration, "[t]hese allegations are false." Cutts Decl. at ¶ 2.

Lacking the requisite evidentiary basis, KinderStart tries to water down its actual allegation in its opposition brief. It argues that to satisfy Rule 11, it need only show a single instance in which Google sold a position in its search results. Opp. at 5 ("With the existence of a single

organic position listing being sold, this Rule 11 motion in this respect should go no further."). KinderStart has no evidence for even this position.[4] But that is beside the point, as it is a far cry from what KinderStart actually alleged. According to the SAC, Google has sold placement in its search results multiple times to multiple entities and conceals this practice from the public:

> Defendant has intentionally offered and delivered top positions in search results on Google's Search Results to companies, firms, advertisers and advertising agencies ("Listing Parties") in exchange for certain conditions and consideration as accepted by Google; and . . . Defendant fails to disclose to the public and to search users that search elements on Search Results are influenced by delivery of various benefits and consideration to Google.

SAC ¶ 131. KinderStart and its counsel had no support for such allegations when they made them, they have no support for them now, and they failed to withdraw them despite ample opportunity. Such behavior should be sanctioned under Rule 11. *See West Coast Theatre Corporation v. City of Portland*, 897 F.2d 1519, 1527-28 (9th Cir. 1990) (affirming sanctions where "complaint [was] a collection of bare accusations unsupported by allegations of fact"); *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568 (5th Cir. 2006) (affirming sanctions award where the district court had found a "puzzling lack of legal *or factual* support articulated for the pleadings").

**B. Allegations that Google Blocks Results and Deflates PageRanks for Political and Religious Reasons**

KinderStart similarly has failed to proffer any evidence to support its allegations that "Google regularly, intentionally and repeatedly [removes pages from its search results] based on

---

[4] KinderStart's counsel claims to have talked to someone who talked to someone else who claimed to have once received "a top listing for delivering consideration to Google." Declaration of Gregory Yu ("Yu Decl.") at ¶ 5. Such hearsay upon hearsay proves nothing, and falls far short of satisfying Rule 11. *See Chapman & Cole v. Itel Container Int'l*, 865 F.2d 676, 684 n.11 (5th Cir. 1989) (counsel's reliance on "unverified hearsay" without questioning witness about underlying facts and circumstances did not constitute a reasonable factual inquiry for Rule 11 purposes). Hearsay aside, the declaration is so totally lacking in specificity as to be meaningless. It affords neither Google nor the Court any ability to assess whether counsel's conclusion bears a resemblance to actual events. *See* Civil L.R. 7-5(b) (requiring declarations to state facts and "avoid conclusions and argument"). Indeed, the lack of information counsel provides shows just how lacking any supposed "investigation" was. *See Terran v. Kaplan*, 109 F.3d 1428, 1435 (9th Cir. 1997) (affirming award of sanctions where certain claims were filed "without a reasonable inquiry").

discriminatory political and religious content . . . ." SAC ¶¶ 99, 166, 167 and 257. Here too, the lack of evidence is to be expected, given that the allegations are baseless. *See* Cutts Decl at ¶ 5.

Once again, KinderStart attempts to back away from its actual allegations, claiming in its opposition brief that it need only show a single instance of these behaviors to satisfy Rule 11. Opp. at 8-9. But as before, KinderStart is simply ignoring what it actually pled. If KinderStart has the audacity to claim Google "regularly" and "repeatedly" discriminates based on political and religious viewpoints, it must have evidence to show such "regular" and "repeated" conduct. If it does not have such evidence, then it was required to withdraw the allegations when given the opportunity.

In truth, KinderStart does not offer evidence showing even a single instance of supposedly discriminatory conduct by Google. KinderStart's counsel declares that he "consulted two different websites that took controversial political stands and faced punishment by as a result by Google." Yu Decl. at ¶ 4. But such conclusory "testimony" is not evidence of anything. Counsel offers no facts to support the assertion that the sites took "controversial political stands," let alone that Google "punished" them for that reason (indeed, he does not even say that the sites actually were "punished"). The only fact counsel truly offers is that he "consulted" two web sites (i.e. that he visited them). It is spurious to suggest, as KinderStart does, that this "investigation" somehow satisfies Rule 11. Given its total lack of evidence, KinderStart should never have alleged what it did, and should have withdrawn its allegations upon receipt of Google's Rule 11 motion before the motion was filed.[5] Instead, KinderStart maintains its allegation to this day. Both KinderStart and its counsel should be sanctioned for such misconduct.

---

[5] KinderStart's "evidence" of Google's supposed "religious discrimination" is simply frivolous. Its counsel claims only that he "personally investigated how a certain religious sect faced a loss of traffic and referrals from Google." Yu Decl. at ¶ 4. Counsel offers no insight into his supposed investigation. There is no evidence that Google removed the unidentified sect's pages from its search results at all, much less that it did so because of some religious bias (and less still that it acts on religious biases "regularly" and "repeatedly" as KinderStart actually alleged).

**C.    Allegations Concerning Notice of Removal of a Listing from Search Results**

In the SAC, KinderStart attributed the following statement to Google: "When we remove search results . . . , we display a notice on our search results pages."  Google has shown that KinderStart has used ellipses in order to fabricate a representation that Google never made: that it would provide notice each time a website was removed from its search results.  In response, KinderStart argues that it has been "given latitude by the Ninth Circuit to pursue aggressive and favorable factual and legal theories."  Opp. at 6.  The case cited by KinderStart, *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987), does not support KinderStart's misleading use of ellipses.  *Greenberg* simply explained that factual errors contained in a complaint should not automatically lead to sanctions "if the litigant has conducted a reasonable inquiry into the facts."  *Id.* at 887.  Here, KinderStart has not made an innocent error of fact.  It materially altered Google's statement and then based claims for relief on the altered statement.  Such misconduct certainly has not been approved by the Ninth Circuit.

In an attempt to justify its use of ellipses, KinderStart engages in an unfocused discussion of alleged "censorship" occurring in Google's search results.  Opp. at 6-8.  While difficult to parse, KinderStart appears to argue that under its "interpretation" of the relevant statement from Google's website, the meaning of the statement is not changed by omitting the "for these reasons" language.  Under KinderStart's view, Google has stated that it would display a notice of removal each time it removed a website pursuant to its own internal guidelines (and hence every removal must be accompanied by a notice).  The plain language of the statement in question cannot support KinderStart's reading.  On the contrary, Google's website states that it will display a notice when removal takes place "in response to local laws, regulations, or policies."  *See* Cutts Decl., ¶ 3 ("It is Google's policy not to censor search results.  However, in response to local laws, regulations, or policies, we may do so.  When we remove search results for these reasons, we display a notice on our search results pages.").  Google plainly states that it will provide notice when removal occurs in response to the laws, regulations or policies of a *particular locality*.  If Google were stating that it would display a notice each time it removed a website from its search results pursuant to its own general policies, Google would simply state as

1  much. Indeed, a contrary reading would render the key phrase at issue here -- "for these
2  reasons" -- superfluous.[6] KinderStart's tortured reading of the statement at issue must be
3  rejected.

4  Finally, Google noted in its opening brief that KinderStart alleged "on information and
5  belief" that Google has never disclosed removal of websites from its search results displayed in
6  the United States. Google showed that this allegation was demonstrably false. *See* Cutts Decl., ¶
7  4. KinderStart has not even attempted to justify the allegation in its opposition, yet has left it
8  untouched in its SAC. This unrebutted ground provides yet another basis for the imposition of
9  Rule 11 sanctions.

10  **D.    KinderStart's and Mr. Yu's Rule 11 Violations Justify Both Monetary and Non-Monetary Sanctions**
11

12  KinderStart and its counsel have invented inflammatory allegations without a good faith
13  basis for believing them to be true. When their conduct was challenged, they failed to withdraw
14  the allegations or to offer any justification for them. Accordingly, KinderStart and its counsel
15  have violated Rule 11, and put Google to considerable expense as a result. Further, given the
16  publicity surrounding this case, KinderStart's allegations have received widespread attention,
17  notwithstanding their complete lack of merit. At this point, Google's Rule 11 motion is its only
18  means of refuting these allegations. Accordingly, Google requests that the Court

19      1.    Strike the allegations from the SAC; and

20      2.    Order KinderStart and Mr. Yu to reimburse Google for all of its reasonable
21  attorneys' fees attributable to the instant motion for sanctions, and a portion of the fees
22  attributable to Google's motions to dismiss and strike the SAC.[7]

23  ---

24  [6] It is not clear what point, if any, KinderStart seeks to make by attacking Google for modifying the message on its site regarding when it will post a notice for removing certain pages
25  from its search results. Previously, Google stated that it would post a notice upon removing a page because of local laws, regulations and policies, with the caveat that it could not ensure such
26  notices would be posted for removals pre-dating March, 2005. Google subsequently removed that caveat believing it could post a notice even for the older removals. These actions have no
27  impact on the present motion or this case.

28  [7] In its opposition, KinderStart suggested that the Court reschedule the hearing on Google's Rule 11 motion to January 19, 2007 so that it can be heard with KinderStart's own motion.

(continued...)

### III. CONCLUSION

For the reasons set forth herein, Google respectfully asks the Court to strike the allegations from the following paragraphs from the SAC: ¶¶ 60(c), 89, 99, 130, 131, 135, 136, 147, 166, 167, 238, 243, 257 and 266(f). Google also requests that the Court impose monetary sanctions on KinderStart and its counsel as set forth above.

Dated: November 22, 2006

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ David H. Kramer
　　　David H. Kramer

Attorneys for Defendant
Google Inc.

---

(...continued from previous page)
Opp. at 10, n.8. Google thus telephoned KinderStart and offered to stipulate to such a continuance. Despite having suggested the continuance in the first place, KinderStart refused to stipulate, claiming it did not "want to go on record" as supporting one. Kramer Decl. ¶ 5. Google remains willing to continue the hearing, but is fully prepared to proceed as scheduled on December 8, 2006.