Kinderstart.Com, LLC v. Google, Inc.                                                                                            Doc. 75 Att. 4

EXHIBIT D

Dockets.Justia.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARL E. PERSON,

                        Plaintiff,                        06 Civ. 4683 (RPP)

      - against -                        OPINION AND ORDER

GOOGLE INC.,

                        Defendant.
------------------------------------------------------------X

ROBERT P. PATTERSON, JR., U.S.D.J.

      By motion dated July 27, 2006, Defendant, Google INC. ("Google"), moved to dismiss the Complaint pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") all counts of Plaintiff, Carl E. Person's ("Person"), Complaint for violation of Sections 1 and 2 of the Sherman Antitrust Act, the Donnelly Act, Sections 349(a) and 350 of New York's General Business Law, and Section 16720 of the California Cartwright Act.

      For the reasons that follow, Defendant's motion to dismiss for improper venue is granted.

## BACKGROUND

**A. Procedural Posture**

      Plaintiff filed a Complaint with the Court on June 19, 2006. He filed a Motion for Preliminary Injunction on June 27, 2006. Defendant filed a Notice of Motion to Dismiss on July 27, 2006. Plaintiff filed his Reply, along with a Cross-Motion for Leave to Amend Complaint and Alternative Cross-Motion to Transfer to California on August 3, 2006. Defendant filed a Reply to Plaintiff's Cross-Motion on August 31, 2006. Arguments on Defendant's Motion to Dismiss were heard on September 13, 2006. Plaintiff moved to amend his Complaint again on

September 14, 2006. His Motion to File an Amended Complaint was denied on September 20, 2006.

Count One of the Complaint charges Google with monopolization or attempted monopolization, along with a conspiracy to monopolize under Section 2 of the Sherman Act (15 U.S.C. § 2). Count Two charges a conspiracy to fix prices and restrain trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). Count Three alleges a conspiracy to restrain trade in violation of New York's Donnelly Act (New York General Business Law § 340). Counts Four and Five allege deceptive acts and false advertising in violation of Sections 349(a) and 350 of the General Business Law of the State of New York. Count Six alleges a conspiracy in violation of the California Cartwright Act Section 16720.

**B. Parties**

Plaintiff, Person, is a 70-year-old attorney and businessperson who lives in New York. He is running for Attorney General in the November 2006 election. (Pl. Compl. ¶ 7.) Defendant is a Delaware Corporation with its principal place of business in California, and with a place of business in New York. (Id. ¶¶ 4, 9, 10.)

**C. Statement of Facts**

Google's internet search technology offers the world's largest online index of websites and to anyone with an internet connection, free of charge. Google derives its primary revenue from businesses that advertise their products and services on its website. (Id. ¶ 11.) Thousands of advertisers pay Google to advertise their websites on its search page. (Id.) Google's AdWords program is used by businesses to promote their products and services with targeted advertising. (Id.) Ads appear either to the right of or above a searcher's displayed results on Google's main website; these ads are designated "sponsored." (Id. ¶ 23.) The ads are linked to certain

keywords chosen by the advertisers. When a Google user searches for a particular term, only the ads linked to that term will appear in the sponsored section. (Pl.'s Mem. in Opp'n. to Def.'s Mot. to Dismiss at 20.) Advertisers are charged each time a user clicks the link that is displayed along with their advertisement. (Id.)

In August 2005, Google created its quality score analysis, which automatically evaluates whether or not to publish, and at what price to publish ads for businesses wishing to make use of a particular keyword. (Pl. Compl. ¶ 31.) The quality score is based on a number of factors, including "ad text and click through rate (CTR) on Google, relevance of . . . ad text, historical keyword performance on Google, the quality of [the business' ads] landing page and other relevancy factors," in particular the "content and layout of the page linked from [the proposed ad]." (Id.)

Plaintiff claims that Google uses these factors engages in order to maintain its monopoly over "keyword targeted internet advertising." (Id. ¶ 12.) Plaintiff is running for New York Attorney General in the November 2006 election and believes that, through advertising on Google, he can build a voter list of more than 100,000 New York residents. (Decl. of Carl E. Person ¶ 3, August 2, 2006.) He alleges that he has been thwarted in this quest by Defendant's discriminatory pricing scheme. (Id. ¶ 16.) He charges that there is a hidden set of rules and software instructions that deny Plaintiff and other small business users the ability to find and use any keywords at the advertised minimum prices. He alleges that these prices are reserved for high volume advertisers such as eBay! and other alleged co-conspirators. (Id. ¶ 25). Plaintiff recently sought to take advantage of Google's offered minimum price-per-click by using keywords that no other advertiser was bidding on. He found 25 English words that when used in a search returned no advertisements. (Id. ¶ 54.) Plaintiff then immediately tried to bid on these

words as keywords, but was advised by AdWords that these words were not available for keyword use. (Id. ¶ 55-6.) He alleges that this is due to a specific effort by Google to keep him from advertising on its website. (Id. ¶ 58.)

Plaintiff alleges that even though Defendant uses software to regulate the content and relevancy of the ads that are linked to particular keywords, the software is designed to overcharge its smaller customers (Plaintiff included), and reduce costs for high-volume advertisers. (Pl. Compl. ¶ 18.) Plaintiff contends that Defendant uses its "quality score" to weed out advertisers that it believes will not be profitable to them. (Pl. Opp'n. Mem. 7.) He claims that this subjective judgment directly contradicts Defendant's claim that the bidding process for keywords by advertisers is an "auction," in which bidders receive placement on Google's search page in relation to the price they bid, not the quality or relevance of their landing page. (Id. at 6.)

The Complaint further alleges that Defendant has conspired with its large-volume advertisers: eBay, Schwab&Co., John Hancock Life Insurance Co., Lexus, Honda, Travelocity, Orbitz, Priceline, Expedia, Circuit City, Amazon PriceGrabber, AOLShopping, Toshiba Direct, and Best Buy, among others, to "reduce not eliminate the profitable use of AdWords by the Plaintiff and other small businesses" (Pl. Compl. ¶¶ 35-40), and that Defendant is able to do this without repercussion because its major competitors, Yahoo! and MSN, are "poor, undesirable substitutes." (Id. ¶ 30A.)

Defendant asserts that as a condition of using the AdWords program, all users, including Plaintiff, enter into a contract with a forum selection clause, and should be held to that contract. (Def. Mem. 4.) Plaintiff does not dispute that he entered into such a contract. (Pl. Opp'n. Mem. 4.) Because Defendant's motion to dismiss for improper venue is granted, the other grounds of its Motion to Dismiss will not be addressed.

4

**DISCUSSION**

**A. Jurisdiction**

The Court has original jurisdiction over the claims arising out of the Sherman Act. See 13 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."). The Court has jurisdiction over the state claims because there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

**B. Standard of Review**

A threshold issue for a motion to dismiss based on a forum selection clause is whether the motion should be considered under Rule 12(b)(3) or Rule 12(b)(6). The Second Circuit has produced no definitive ruling on the issue. See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 28 (2d Cir. 1997) ("[N]o consensus [has] developed as to the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause."). Here, the issue will be considered under Fed. Civ. P. Rule 12(b)(3) because that is how it was framed by the parties. See J.B. Harris, Inc. v. Razei Bar Industries, Inc., 37 F.Supp.2d 186, 189 (E.D.N.Y. 1998) ("The Court does not decide whether this issue might more properly have been raised by way of Rule 12(b)(6), as the issue is squarely framed by Defendant under Rule 12(b)(3) and Plaintiff does not argue that this is an improper procedural mechanism.").

Upon a motion to dismiss under Rule 12(b)(3) the Plaintiff has the burden of pleading venue. However, "the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in [plaintiff's] favor." Caremark Therapeutic Servs. v. Leavitt, 405 F.Supp.2d 454, 457 (S.D.N.Y. 2005).

5

C. <u>**Forum Selection Clause**</u>

Defendant moves to dismiss based on a forum selection clause contained in a contract signed by all users of AdWords. (Def. Repl. Mem. 1.) Initially, Defendant produced a copy of the current agreement. (<u>See</u> Decl. of Sarah Ciarelli Ex. A, July 27, 2006.) Plaintiff, however, objected that the 2006 agreement is not the same as the one he signed when he became an AdWords customer in 2003. (Pl. Opp'n. Mem. 4.) In response, Defendant produced a copy of the contract users were asked to sign in 2003. Both contracts contain a forum selection clause stating that disputes or claims arising out of the contract are to be adjudicated in Santa Clara County, California.

Although Plaintiff now contends that the 2003 contract exhibited by Defendant may not be an exact replica of the one he signed, (he did not produce a copy of the contract he allegedly signed and did not allege that he would be able to do so if given the opportunity. (<u>See</u> Transcript of Sept. 13, 2006 Hearing ("09/13 Tr.") 17-8 (THE COURT: "If you want more time to respond to the reply papers . . . I would  . . . consider allowing you . . . more time to file a surreply." MR. PERSON: "Your Honor, I don't have any additional information than what I'm saying.").)

Furthermore, the only difference he claims between the contract Defendant's exhibit and the one he allegedly signed is that there were boxes on the latter for him to acknowledge his consent. (<u>Id.</u>) Plaintiff does not dispute that he signed an agreement in November, 2003. (<u>See</u> <u>id.</u> ("I went ahead and assented to whatever it was they gave me. I don't know what it was, but I did assent to it.").) Nor does he allege that the agreement he signed was different, in substance, from the 2003 contract exhibited by Defendant; he argues only that Defendant's proffered contract is not a copy of the specific agreement he signed. (<u>Id.</u> at 18.) However,  prior to using AdWords, every customer must click on a box acknowledging that they agree to the terms and

6

conditions of Defendant's contract.  (Decl. of David DiNucci ¶ 5, August 31, 2006.)  Thus, Plaintiff's very existence as an AdWords customer is evidence that he agreed to the 2003 form contract proffered by Defendant.  Even given the generous factual standard applied on a Rule 12(b)(3) motion, without more from Plaintiff, it appears that the contract Plaintiff signed did indeed contain the forum selection clause appearing in the 2003 contract proffered by Defendant.

The mere existence of a contract with a forum selection clause is not the end of an inquiry into proper venue; these clauses must be examined for accuracy and fairness.  Forum selection clauses were once uniformly rejected by the federal courts.  They are now, however, uniformly upheld.  As the Second Circuit has stated, aversion to such clauses is "simply a vestigial remainder of an outmoded doctrine."  Bense v. Interstate Battery Sys. of Am., Inc., 683 F.2d 718, 721 (2d Cir. 1982).

Forum selection clause language must, however, be mandatory to be enforced.  John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distrib., Inc.,  22 F.3d 51 (2d Cir. 1994).  In Boutari, the Second Circuit overturned a dismissal based on a forum selection clause giving the courts of Greece jurisdiction because that contract could be read to permit, rather than insist on, Greece as a venue.  Id. at 53.  However, the court made clear that where, as here, "mandatory venue language is employed, the clause will be enforced."  Id.  The contract from 2003, at issue here, states that "[any] dispute or claim arising out of or in connection with this Agreement *shall* be adjudicated in Santa Clara County, California."  (DiNucci Decl. Ex. B Sec. 15 (emphasis added).)  Thus, it is clear that the venue clause at issue in this case was meant to be mandatory rather than permissive.

According to the Supreme Court, mandatory forum selection clauses "should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the

7

circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). The Second Circuit has made clear that reasonableness will be presumed unless the plaintiff can make a strong showing otherwise. This "presumption of validity" regarding a forum selection clause can only be overcome:

> (1) if [the clause's] incorporation into the agreement was the result of fraud or overreaching . . . ; (2) if the complaining party "will for all practical purposes be deprived of his day in court," due to the grave inconvenience or unfairness of the selected forum . . . ; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy . . . ; or (4) if the clauses contravene a strong public policy of the forum state.

Roby v. Corporation of Lloyds, 996 F.2d 1353, 1363 (2d Cir. 1993) (quoting M/S Bremen, 407 U.S. at 18).

**1. Fraud or Overreaching**

Plaintiff's sole claim of contractual fraud is his allegation of false advertising by Defendant. (Pl. Compl. ¶¶ 152-58.) He claims that calling the process by which AdWords' customers obtain keywords an "auction" is misleading because it fails to acknowledge the subjective component of Defendant's selection of ads. (Pl. Opp'n. Mem. 20.) In other words, Plaintiff claims he was seduced into doing business with defendant based on a false claim of an auction process, characterized by objective awards based solely on bidding price. Id. Even if Plaintiff could make out a colorable claim of false advertising, which he cannot,[1] the fraudulent actions capable of overcoming the presumption of validity for a forum selection clause must be directly related to that clause, not the contract more generally. See A.I. Credit Corp. v. Liebman, 791 F.Supp. 427, 430 (S.D.N.Y. 1992)("A party may not, however, avoid the effect of a forum

---

[1] Defendant produced a printout from its AdWords website, which made quite clear that the bidding process for keywords was not a typical auction, and that the awarding of keywords was based on an examination of the relevance of the chosen word to the advertiser's website, the advertiser's click through rate, and several other factors. (See Ciarelli Decl. at Ex. B.) Thus, it does not appear that Plaintiff was misled, by the suggestion that he was entering a typical auction, into doing business with Defendant.

8

selection clause by merely alleging fraud or coercion in the inducement of the contract at issue. Rather, the party must show that "the inclusion of that clause in the contract was the product of fraud or coercion.") (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974)(emphasis in the original)).  Plaintiff does not claim that the inclusion of the forum selection clause in the AdWords agreement was the product of fraud.  He has not met that ground for rejecting the forum selection clause.

### 2. **Deprivation of Plaintiff's Day in Court**

Plaintiff claims that dismissing this case for improper venue will deprive him of his right to a meaningful hearing because he is running for Attorney General of New York in November 2006 and needs to compile a voter list in advance of his election bid. (Person Decl. ¶¶ 3-6.)  He alleges that he brought this case in New York because it is where he lives, and is a more convenient forum.  While Plaintiff's urgency is understandable, it does not rise to the level of deprivation meriting a refusal to honor a forum selection clause.  See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995) (Plaintiff's allegations of inconvenience of Greece as forum did not "deprive [plaintiff] her day in court within the traditional meaning of the . . . phrase."); Olsen v. Muskegon Piston Ring Co., 117 F.2d 163, 165 (6th Cir. 1941) ("[T]he right to a day in court means not the actual presentation of the case, but the right to be duly cited to appear and to be afforded an opportunity to be heard.").

Plaintiff does not assert that he was unable to initiate this suit in California.  He claims only that New York is a more convenient forum and that there is urgency to his Complaint. However, as stated in his Complaint, Plaintiff has been a customer of AdWords since 2003, and Defendant has been using its allegedly discriminatory pricing scheme since at least December 2005. (Pl. Compl. ¶ 8, 32.)  Plaintiff did not bring this suit until June 2006.  In view of his

9

failure to act promptly, he cannot now allege that it would be this court's dismissal for improper venue that denied him his urgent remedy.[2] Furthermore, he is seeking damages as well as injunctive relief. (Id. ¶ 97-8.) His damages claim will remain viable even after the election has taken place.

### 3. Fundamental Fairness

Plaintiff alleges that he assented to the agreement, only because it was a prerequisite to becoming an AdWords user. Unlike the contracts at issue in Bremen, and Roby, the AdWords contract is not the product of an arms-length negotiation. Instead it is an agreement that was drawn up entirely by Defendant, and signed by every AdWords customer. Plaintiff alleges that the agreement is a "contract of adhesion." (See 09/13 Tr. 25 ("THE COURT: You're arguing it's a contract of adhesion." MR. PERSON: "I'm sorry, yes, adhesion, a contract of adhesion.").) Such contracts require a more "refined" scrutiny for fairness. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991) ("In evaluating the reasonableness of the forum clause at issue in this case, we must refine the analysis of The Bremen to account for the realities of form passage contracts.").

According to the Second Circuit, "[t]ypical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change the contract's terms." Klos v. Polskie Linie Lotnicze, 133 F.3d 164, 168 (2d Cir.1997). It should be noted at the outset that Plaintiff does not match the picture of a victim of a contract of adhesion painted by the Second Circuit. He cannot claim to be "unrepresented, uneducated and needy" since he is an experienced lawyer, who, as is clear from his complaint and supporting memorandum, is

---

[2] A definitive ruling on Defendant's 12(b)(6) motion would similarly fail to meet Plaintiff's time table given the multiple claims he has asserted and his desire to amend his complaint for a second time. (See Letter of September 18, 2006 (requesting leave to file a second amendment).)

10

highly intelligent and should be well able to understand the terms of a form contract.  Google, on the other hand, is certainly a large, economically powerful company.  Moreover, as mentioned earlier, in order to do business of any kind with AdWords, a user must sign an agreement drafted entirely by Defendant.  Thus, it is appropriate in this dispute to treat this contract as one of adhesion, and scrutinize it more carefully to ensure the fairness of the forum choice.

      As Judge Baer noted in Caremark, "[a]ny review of a forum selection clause for 'fundamental fairness' must begin with the seminal case of Carnival Cruise Lines, Inc." 385 F.Supp. at 198.  In Carnival, the Supreme Court dealt with a forum selection clause included on a passenger ticket for a commercial cruise. The Court disapproved of the language in the lower court opinion, which stated that a "nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining," id. at 593. The Court ruled that the terms of the forum selection clause were "subject to judicial scrutiny for fundamental fairness." Id. at 595.  Among the factors the Court considered were (i) whether or not Carnival Cruise was forum shopping when it selected Florida as a venue; (ii) whether or not the passenger's assent to the contract was the product of "fraud or overreaching" and: (iii) whether the passengers had notice of the forum selection clause.  See id.

      **a. Forum Shopping**

Plaintiff contends that Defendant selected the forum because they believe it will give them an edge in antitrust litigation – that they are, in essence, forum shopping.  (See Pl. Opp'n. Mem. at 4 ("Google . . . effectively select[s] its judge in antitrust cases.").)  Plaintiff, however, presents no reason to believe that federal judges in California have any reason to be prejudiced in favor of Defendants. He only asserts that Google's headquarters are located in the area.  The fact that Defendant is located in California suggests another, highly plausible, reason why it would

include a forum selection clause – in order to locate the myriad suits inevitably brought against a such a sizeable company in a single, convenient forum. See Carnival Cruise, 499 U.S. at 595 (forum shopping claim belied by the fact that "Petitioner has its principal place of business in Florida.").

Furthermore, Plaintiff has requested a transfer to the Northern District of California should the motion to dismiss for improper venue be granted. (Pl. Opp'n. Mem. at 25.). Apparently, he has not reached the conclusion that the courts in California will decide in favor of Defendant if he wishes to pursue his complaint there.

### b. Fraud or Overreaching

As indicated above, Plaintiff has made no claim of fraud or overreaching in obtaining his assent to the forum selection clause.

### c. Notice

Finally, there is no indication that Plaintiff did not have notice that the forum for suits against Defendant were to be brought in Santa Clara County. In order to do business with AdWords, Plaintiff had to assent to the terms of its contract. (See DiNucci Decl. ¶ 5 ("Before an advertiser's account will be activated, the advertiser [must agree to] the AdWords agreement.").) By clicking on a link, a user is taken to the agreement before assenting to its terms. Id. In Carnival, passengers were not notified of the terms of the agreement until they had their ticket in hand since the agreement was the ticket. See 499 U.S. at 587 ("The face of each ticket, at its left-hand lower corner, contained [the forum selection clause]."). Here, Plaintiff had more notice than the Carnival plaintiffs did since he had an opportunity to view and reject Defendant's terms before spending any money with AdWords.

Scrutiny of the contract between Plaintiff and Defendant does not uphold Plaintiff's

allegations of unfairness.

### 4. Against Public Policy of Forum

The Supreme Court has said that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." Bremen, 407 U.S. at 18. It is clear, from Second Circuit precedent, however, that far from being against public policy in this Court's jurisdiction, forum selection clauses are considered "presumptively valid." Roby, 996 F.3d at 1363. Thus, the fourth factor of the test for reasonableness is also resolved in Defendant's favor.

### 5. Conflict with Anti-Trust Laws

Finally, Plaintiff claims that allowing Defendant to contractually designate a forum for antitrust claims, such as this one, will "emasculate the federal statutes providing antitrust plaintiffs with a greater choice of venue than provided to plaintiffs in other types of cases." (Pl. Opp'n. Mem. 4-5.) However, the Second Circuit has addressed this point directly and decided to the contrary in Bense, 683 F.2d 718. There, the plaintiff argued that the "congressional purpose underlying the broad venue provision of [federal antitrust laws] was to promote vigorous private enforcement of the antitrust laws, and he contend[ed] that this precludes enforcement of contractual forum-selection clauses." Id. at 720. The Second Circuit was not persuaded by this argument, noting in particular that "[the plaintiff] . . .[has] made no showing that his antitrust action could not be prosecuted as vigorously in Texas as in Vermont, nor has he demonstrated that the Congressional purpose would be subverted by enforcement of forum-selection clauses." Id.

13

Similarly, here, Plaintiff has made no showing that a federal court in California would be less likely to give credence to his claims than a court in New York, nor has he shown that the forum selection clause at issue in this case tends to subvert the purpose of federal antitrust enforcement.

**D.  Plaintiffs' Cross Motion to Transfer**

In his reply to Defendant's Motion to Dismiss, Plaintiff cross motions the Court to transfer his Complaint to the Northern District of California, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).  (Pl. Opp'n. Mem. 25.)  Defendant contends that Plaintiff's method of raising this issue was not proper.  (See Def. Repl. Mem. 3 n.1. (Claim presented without "any formal motion papers . . . evidence nor argument in support of . . . motion.).)

Even if Defendant's allegation is true, it is immaterial.  Courts dismissing for improper venue can transfer a complaint without motion from either party "in the interest of justice."  28 U.S.C. §1406(a).  The Second Circuit has stated that "[c]ourts enjoy considerable discretion when deciding whether to transfer a case in the interests of justice."  Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005).  However, a court should not "waste judicial resources by transferring a case that is clearly doomed."  Id. at 436 (quoting Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999)).  Though it does appear that Plaintiff's claims will be

difficult to sustain, it does not appear that they are "clearly doomed." Thus, the dispute is hereby transferred to the Northern District of California at San Jose, which is in Santa Clara County, the forum selected by the contract.

IT IS SO ORDERED.

Dated: New York, New York
October 11, 2006

_____
Robert P. Patterson, Jr.
U.S.D.J.

Copy of this Opinion and Order sent to:

*Plaintiff*

Carl E. Person
325 W. 45th Street
Suite 201
New York, NY 10036
Tel: 212 307-4444
Fax: 212 307-0247

*Counsel for Defendant, Google INC.*

Wilson, Sonsini, Goodrich & Rosati, PC
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
attn: Jonathan M. Jacobson
Tel: 212-999-5858
Fax: 212 999-5899