Gregory J. Yu (State Bar No. 133955)
GLOBAL LAW GROUP
2015 Pioneer Court, Suite P-1
San Mateo, CA  94403
Telephone: (650) 570-4140
Facsimile:  (650) 570-4142
E-mail:  glgroup [at] inreach [dot] com

Attorney for Plaintiffs and Proposed Class and Subclasses

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| KINDERSTART.COM LLC, a California limited liability company, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, INC., a Delaware corporation,<br><br>Defendant. | Case No. C 06-2057 JF<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT GOOGLE, INC. AND ITS LEGAL COUNSEL DAVID H. KRAMER PURSUANT TO FED. R. CIV. P. 11**<br><br>Judge:       Hon. Jeremy Fogel<br>Date:        January 19, 2007<br>Time:        9:00 a.m.<br>Courtroom: 3, 5th Floor |
|---|---|

With a plain reading of the Second Amended Complaint (the "SAC") within its four corners, Google, Inc. ("Google") could have refrained from even contemplating a motion for sanctions under Federal Rule of Civil Procedure ("Rule") 11 against Plaintiff KinderStart.com LLC ("KinderStart") and its legal counsel. Google's opposition to the cross-motion fundamentally misreads the application of Rule 11 to Google's own Rule 11 motion. KinderStart never advances an argument that once the initial Rule 11 motion fails on the merits, the movant ought to be automatically sanctioned. Instead, Rule 11 required of Google in its Rule 11 motion to certify that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -- (1) it [i.e., Google's Rule 11 motion] is not being presented for an improper purpose or to cause unnecessary delay or

1  needless increase in the cost of litigation." Google hastily pressed itself and its counsel into
2  Rule 11 to facilitate its desire not to ever have to litigate key allegations in the SAC. However,
3  Google enjoys and maintains complete mastery over how its search results are generated, and
4  what are the precise grounds, causes and agents involved in Website punishment and results
5  removal. The crux of Google's opposition rests upon one employee's bare, untested
6  statements to question certain of KinderStart's allegations in the SAC. The rush to use Rule 11
7  is not excusable when it emerges from careless, inadequate due diligence of Google's own
8  operations, employees' conduct, and search results.

9  **1.    Google Remains Silent on Why it Ignored the Rule 11 Safe Harbor.**

10  The opposition is silent on how and why Google chose to forewarn the Court of
11  "sanctionable" actions and allegations of KinderStart within Google's moving papers under
12  Rules 12(b)(6) and 8. The constructive violation of the safe harbor, still lacking in cause or
13  colorable explanation by Google, warrants a finding that its own Rule 11 motion is itself
14  sanctionable.

15  **2.    Google Remains Silent on the FTC Notice of Paid Search Placement.**

16  Google completely ignores the import of the allegation in the SAC on the FTC warning
17  to consumers on paid placement. Either it was unaware of the FTC notice in the first place, or
18  it ignores it altogether within the SAC when claiming KinderStart's allegation of sold search
19  placement results lacked an objective basis. In either case, this strongly suggests Google and
20  its legal counsel filed the Rule 11 motion to threaten and harass KinderStart from making its
21  case on this key issue of misleading the user and harming competition. This is sanctionable.

22  **3.    Google Changed Its Site on Results Removal in Midstream.**

23  Instead of a fair reading of its own Website representations on the claimed absence of
24  censorship in its search results, Google went the opposite direction. It failed to explain why its
25  results removal policy as stated was modified or qualified during the pendency of this
26  litigation. This overt conduct merely compounds the elusiveness of what was both said and
27  meant to users of Google's engine. Google's legal counsel simply should have contained its
28  eagerness to find fault with the allegations on censorship. Rule 11 sanctions on this point

should lie.

### 4. Google Perpetuates its Ignorance of Allegations on Discrimination.

Once again, Google's opposition fails to respond to the Rule 11 cross-motion on Google's challenge of the alleged discriminatory, punitive use of Webmaster guidelines against a political site. Overlooking this specific allegation within the SAC in order to file its Rule 11 motion is sanctionable against Google and its counsel.

### 5. Google Fails to Explain its Violation of Local Rule 3-4(e)

By now, Google is fully aware of the risk of citing unreported cases to the Court in violation of L.R. 3-4(e). Google's unbridled use of *Search King* presumes that every older, electronically reported (but not officially reported) case outside of the Ninth Circuit, lacking the exclusory label or the equivalent, is citable to the Court. Even when the issue was raised during the oral argument of the parties before the Court on June 30, 2006, Google's legal counsel forcefully proceeded to assume mean Rule 3-4(e) could not possible apply to Google as to *Search King*. Further, Google makes no distinction as to opinions that never reach official reporters but happen to have been picked up in various legal electronic databases such as Lexis or Westlaw.

The only real defense offered by Google is that KinderStart in its briefs has cited *recently* published cases that have not yet appeared in *official* reporters. In *Dennis v. Brown*, 361 F. Supp. 2d 1124, 1131 (N.D. Cal. 2005), the Court addressed the content of an unpublished decision of Judge Ilston of this district.[1] That electronically published decision out of this district was not marked as "Not for Citation," and therefore could be cited to the court by the litigant under L.R. 3-4(e). The other cases cited by Google where the judge cites to an electronically published case are inapposite. Neither case tested or adjudicated whether a litigant (and *not* a court) violates L.R. 3-4(e) in citing to the court an unpublished decision. *Online Policy Group v. Diebold, Inc.,* 337 F. Supp. 2d 1195 (N.D. Cal. 2004); *Yahoo!, Inc. v.*

---

[1] Indeed, this Court's opinion in that case recognizes the basic principle that a decision appearing only in an electronic database (and not in an official reporter) is an "unpublished decision." *Id.*

PLAINTIFFS' REPLY TO GOOGLE'S OPPOSITION
TO MOTION UNDER RULE 11                -3-                Case No. C 06-2057 JF

Case 5:06-cv-02057-JF    Document 81    Filed 01/03/2007    Page 4 of 4

*La Ligue Contre Le Racisme et L'Antisemitisme*, 169 F. Supp. 2d. 1181 (N.D. Cal. 2001), *rev'd on other grounds,* 379 F.3d 1120 9th Cir. Cal., 2004), *rehearing, rev'd on other grounds,* 2006 U.S. App. LEXIS 668 (9th Cir. Cal., Jan. 12, 2006).

L.R. 3-4(e) applies not to the Court but only to litigants (such opinions or orders "may not be cited to this Court").  When this Court or other courts publish opinions or orders that cite unreported cases, it is judicial discretion.  This bench practice does not allow Google to ignore Rule 11 and liberally cite decisions out of an electronic database (as in *Search King*) that, for good reason, never make their way into an official reporter.

**CONCLUSION**

KinderStart respectfully requests the Court to grant its cross-motion on these five independent grounds, and render a sanction of an appropriate nature and sum against Google and its legal counsel.

Dated:  January 3, 2007					GLOBAL LAW GROUP


							By:	   /s/ Gregory J. Yu
								Gregory J. Yu, Esq.
								Attorney for Plaintiff KinderStart.com LLC and
								   for the proposed Class and Subclasses

TO MOTION UNDER RULE 11                    -4-                    Case No. C 06-2057 JF