EXHIBIT A

**E-Filed 3/16/2007**

NOT FOR CITATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| KINDERSTART.COM, LLC, on behalf of itself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>GOOGLE INC.,<br><br>                    Defendant. | Case Number C 06-2057 JF (RS)<br><br>ORDER[1] GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS AGAINST KINDERSTART.COM AND GREGORY J. YU PURSUANT TO FED. R. CIV. P. 11, AND DENYING CROSS-MOTION FOR SANCTIONS AGAINST GOOGLE INC. AND DAVID H. KRAMER PURSUANT TO FED. R. CIV. P. 11<br><br>[re: docket no. 60, 69] |

   Defendant Google Inc. ("Google") and Plaintiff KinderStart.com, LLC ("KinderStart") bring cross-motions for sanctions under Fed. R. Civ. P. 11 against each other and their respective legal counsel, David H. Kramer ("Kramer") and Gregory J. Yu ("Yu").  For the reasons discussed below, Google's motion will be granted in part and denied in part, and KinderStart's

---

   [1] This disposition is not designated for publication and may not be cited.

Case No. C 06-2057 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS AGAINST KINDERSTART.COM AND GREGORY J. YU PURSUANT TO FED. R. CIV. P. 11, AND DENYING CROSS-MOTION FOR SANCTIONS AGAINST GOOGLE INC. AND DAVID H. KRAMER PURSUANT TO FED. R. CIV. P. 11
(JFLC1)

motion will be denied.

## I. BACKGROUND

On March 17, 2006, KinderStart filed the instant action on behalf of itself and others similarly situated. On April 12, 2006, KinderStart filed a First Amended Complaint ("FAC"). The Court dismissed the FAC with leave to amend on July 13, 2006. On September 1, 2006, KinderStart filed a Second Amended Complaint ("SAC"), asserting six claims for relief: (1) attempted monopolization in violation of the Sherman Act; (2) monopolization in violation of the Sherman Act; (3) false representations in violation of the Lanham Act; (4) violation of free speech rights under the United States and California Constitutions; (5) unfair competition in violation of California Business & Professions Code §§ 17200 *et seq*.; and (6) defamation and libel. On September 22, 2006, Google moved to dismiss the complaint, to strike the complaint, and to strike claims within the complaint. The Court heard oral argument on October 27, 2006. These motions are disposed of by an order filed concurrently herewith.

On October 20, 2006, Google moved for sanctions against KinderStart and Yu under Rule 11 of the Federal Rules of Civil Procedure ("Google Motion"). Google claims that the SAC "contains specious allegations that lack any factual foundation and were made without a reasonable and competent inquiry." Google Motion 1. Google asserts that three sets of allegations are frivolous: (i) allegations that Google skews its search results and reserves top placement for entities that compensate Google; (ii) allegations that Google represents that it will always display a notice when it removes a listing from its search results, but does not do so; (iii) allegations that Google removes certain websites from its search engine results and lowers PageRanks for political and religious reasons. Google Motion 1-2. Google asks the Court to impose monetary and non-monetary sanctions on KinderStart and its counsel. On November 16, 2006, KinderStart moved for sanctions against Google and Kramer under Rule 11 of the Federal Rules of Civil Procedure ("KinderStart Motion"). KinderStart claims that Google has filed a baseless Rule 11 motion. KinderStart Motion 1-2. Both motions are opposed.

2

Case No. C 06-2057 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS AGAINST KINDERSTART.COM AND GREGORY J. YU PURSUANT TO FED. R. CIV. P. 11, AND DENYING CROSS-MOTION FOR SANCTIONS AGAINST GOOGLE INC. AND DAVID H. KRAMER PURSUANT TO FED. R. CIV. P. 11
(JFLC1)

The Court heard oral argument on both motions on January 19, 2007. On January 22, 2007, the Court ordered KinderStart to submit further declarations in support of its opposition to Google's motion. KinderStart submitted those declarations for *in camera* review on February 21, 2007.[2]

## II. LEGAL STANDARD

Rule 11 provides for the imposition of sanctions when a motion is frivolous, legally unreasonable, without factual foundation, or brought for an improper purpose. *Conn v. Borjorquez*, 967 F.2d 1418, 1420 (9th Cir. 1992); *Operating Engineers Pension Trust v. A-C Company*, 859 F.2d 1336, 1344 (9th Cir. 1988). Possible Rule 11 violations are evaluated under a standard of objective reasonableness. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830-31 (9th Cir. 1986). When "a complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). The presence of one non-frivolous claim in the complaint does not insulate the remainder of the complaint from a motion for Rule 11 sanctions. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990).

## III. DISCUSSION

1. Google's Motion for Sanctions

   a. Compliance with the Rule 11(c)(1)(A) Safe Harbor Provision

Preliminarily, KinderStart argues that Google has failed to comply with the safe harbor provision of Rule 11(c)(1)(A). Under that provision, a party seeking sanctions must serve its moving papers on the opposing party at least twenty-one (21) days before filing them with the

---

[2] On January 27, 2007, Google filed objections to the declarations and KinderStart filed a response to the objections. The Court did not solicit objections from Google and concludes that they are unnecessary to the Court's resolution of this matter.

3

Case No. C 06-2057 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS AGAINST KINDERSTART.COM AND GREGORY J. YU PURSUANT TO FED. R. CIV. P. 11, AND DENYING CROSS-MOTION FOR SANCTIONS AGAINST GOOGLE INC. AND DAVID H. KRAMER PURSUANT TO FED. R. CIV. P. 11
(JFLC1)

Court in order to allow the opposing party to withdraw or correct the pleading. KinderStart does not contest that Google served its moving papers on September 28, 2006, and filed them on October 20, 2006, twenty-two (22) days later. KinderStart asserts, nonetheless, that Google violated the safe harbor rule by *referring* to an anticipated motion for sanctions in other pleadings submitted to the Court. Rule 11(c)(1)(A) does not prohibit a party from making such limited references to its expectation that it will move for sanctions at a later date.[3] Accordingly, the Court concludes that Google did not violate the safe harbor provision of Rule 11(c)(1)(A).[4]

        b.        Allegations of Skewed Results and Compensated Reservation of Top Placement

Google asserts that allegations contained in the SAC that Google skews its web search results and reserves top placement on the basis of compensation "are false, and therefore cannot have been based on *any* evidence uncovered by counsel for KinderStart, since no such evidence exists." Google Motion 3. Such allegations include the following:

> 130. The statements on Defendant's Website and the publicly sworn statements of its officers in Google's public securities filings with the SEC are inaccurate, false and misleading in at least three respects: (a) Defendant's search results are not objective and not based solely on a computer algorithm, as confirmed and admitted to by Defendant's legal counsel on June 30, 2006 before this Court; (b) Defendant has intentionally offered and delivered top positions in search results on Google's Search Results to companies, firms, advertisers and advertising agencies ("Listing Parties") in exchange for certain conditions and consideration as accepted by Google; and (c) Defendant fails to disclose to the public and to search users that search elements on Search Results are influenced by delivery of various benefits and consideration to Google.
> 131. In cooperation and in concert with Listing Parties, Google has as early as 2002, accepted various forms of consideration to reserve the number one top position on Search Results based on key words to various parties and advertisers. This unnatural skewing and offering of the top Search Results position denied the Engine of any claim of objectivity or absence of human intervention.
> . . .
> 135. On information and belief, never in a single instance has Defendant Google disclosed on its Search Results or on its Website that search results actually appeared in a position because various benefits and consideration was tendered to

---

[3] These earlier references actually expanded the safe harbor period in this case, as they gave KinderStart additional time within which to remove the challenged allegations.

[4] The cases from other districts cited by KinderStart, *see* Opp. to Google Motion 3, do not suggest a different result.

4
Case No. C 06-2057 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS AGAINST KINDERSTART.COM AND GREGORY J. YU PURSUANT TO FED. R. CIV. P. 11, AND DENYING CROSS-MOTION FOR SANCTIONS AGAINST GOOGLE INC. AND DAVID H. KRAMER PURSUANT TO FED. R. CIV. P. 11
(JFLC1)

and received by Google from Listing Parties and their agents in fact.

SAC ¶¶ 130-31, 135.

KinderStart responds through Yu's declaration that:

> The allegations in the SAC that a top search listing was guaranteed by Google in exchange for consideration are indeed supported by investigation by me prior to the filing of the SAC on September 1, 2006. I twice personally interviewed a witness who received such an admission from the CEO of a Website that received a top listing from Google for delivering consideration to Google.

Yu Decl. in Opp. to Google Motion ¶ 5. In his supplemental declaration submitted *in camera*, Yu identifies two witnesses with whom he spoke about allegations that Google accepts payment for top placement in its search results. *See* Yu Decl. Under Seal ¶¶ 2, 9-10. While it appears that he has made a reasonable effort to do so, Yu has failed to secure declarations from either of these witnesses regarding these allegations. Yu's statements about his conversations with these witnesses are hearsay. Moreover, even if the two witnesses had testified as Yu suggests they would, their testimony would have had little or no weight. The first witness apparently would have provided the hearsay testimony that *another individual* told him that Google gave his site a high ranking in exchange for non-monetary consideration. Yu Decl. Under Seal ¶ 9, Ex. H. Under Seal ¶ 4(c)-(d). This third party is not identified by anything other than his gender, and there is no indication that Yu spoke with him directly. The second witness apparently would have testified that the site he operates "mysteriously returned to high listings on Google organic search results" after the company purchased AdWords keywords at Google's instruction. Yu Decl. Under Seal ¶ 10. Such vague testimony provides meager support for the serious allegations made by KinderStart in the SAC.

The Court concludes that the allegation that Google sells priority placement in its results should not have been made based upon the limited information identified by Yu. As presented to the Court on this motion, Yu's purported evidence is either double hearsay or hearsay speculation as to the "mysterious" causes of improvement in a website's position in Google's search results. Yu provides no evidence that would support KinderStart's broad attacks on the objectivity of

5

Case No. C 06-2057 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS AGAINST
KINDERSTART.COM AND GREGORY J. YU PURSUANT TO FED. R. CIV. P. 11, AND DENYING CROSS-
MOTION FOR SANCTIONS AGAINST GOOGLE INC. AND DAVID H. KRAMER PURSUANT TO FED. R. CIV.
P. 11
(JFLC1)

Google's search results contained in SAC ¶¶ 130-31, 135. The Court concludes that the allegations are sanctionable under Rule 11 because they are factually baseless and because Yu failed to perform an adequate investigation before filing them.

  c.  Allegations that Google Represents that it will Display a Notice when Removing Results

Google asserts that KinderStart misrepresents Google's policy for providing notice when it removes a website from its search results. Google cites the SAC as attributing the following quotation to Google: "When we remove search results, . . . we display a notice on our search results pages." Google Motion 4; *see* SAC ¶¶ 60(c), 89, 136, 238, 243, and 266(f). Google states that the full text of the policy gives a different impression than that provided by the quoted segment:

> It is Google's policy not to censor search results. However, in response to local laws, regulations, or policies, we may do so. When we remove search results for these reasons, we display a notice on our search results pages. Please note: For some older removals (before March 2005), we may not show a notice at this time.

Cutts Decl. in Supp. of Google Motion Ex. A. Google interprets KinderStart's abbreviated quotation of its policy as a purposeful misrepresentation to the Court. KinderStart responds that Google simply has a different interpretation of the import of its policy, arguing that the abbreviated version provided in the SAC accurately describes the policy. Opposition to Google Motion 6. While KinderStart no doubt could have avoided confusion by including a full quotation of the policy, the Court concludes that KinderStart's apparent interpretation of the policy is not frivolous. Evidently, KinderStart reads the policy as suggesting that Google never censors results except in response to local laws, regulations, or policies, and that when it does, it provides a notice of any removal. Under such a reading, a reasonable and competent attorney might conclude that the quote "[w]hen we remove search results, . . . we display a notice on our search results pages" accurately reflects Google's policy. This interpretation of Google's policy, while certainly debatable, does not warrant Rule 11 sanctions.

6

Google also challenges KinderStart's allegation that "not once has the [Google search e]ngine ever produced Search Results viewed within the [United States] that disclose or notify users that Speech Content, URLs or Websites have been removed from the results." Google Motion 5. Google offers examples of notices of removal following a complaint under the Digital Millennium Copyright Act. KinderStart responds by citing the declaration of Randall McCarley, the sole proprietor of a firm called 14th Colony, who has used Google regularly since 1999 without finding a notice of removal of results. Such a declaration is not evidence that Google has never given notice, but it is evidence that Google does not provide notice frequently. While KinderStart may have over-reached to say that Google has *never* produced search results that disclose removal, the Court will not resort to the extraordinary remedy of Rule 11 sanctions when KinderStart appears to have made at least some inquiry into Google's practice of providing notice of the removal of search results from results pages.

        d.      Allegations of Political and Religious Motivations for Google's Actions

Finally, Google moves for Rule 11 sanctions on the basis of KinderStart's claim that Google removes search entries and deflates PageRanks for political and religious reasons. Google Motion 5. The relevant assertions in the SAC are as follows:

> 99. [Google does not sufficiently disclose] the practice and propensity of censorship, Blockage and/or PageRank Deflation to occur in Search Results or Webpage views based on discriminatory political or religious content or vague and/or overbroad content guidelines known as Web Recommendations (as defined in paragraph 160 below).
> . . .
> 166. On information and belief, Defendant Google willfully and arbitrarily enforces its Web Recommendations against a multitude of Class members to use Blocking to depress and suppress their Websites based on discriminatory political reasons that are not otherwise disclosed in public or on Defendant's Website.
> 167. On information and belief, Defendant Google willfully and arbitrarily enforces its Web Recommendations against a multitude of Class members to use Blocking to depress and suppress their Websites based on discriminatory religious reasons that are not otherwise disclosed in public or on Defendant's Website.
> . . .
> 257. Defendant Google regularly, intentionally and repeatedly Blocks, based on discriminatory political and religious content and/or other criteria, Engine results showing Website Content and Speech Content of Plaintiff KSC and other Class III and California Subclass I members . . . .

7

Case No. C 06-2057 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS AGAINST KINDERSTART.COM AND GREGORY J. YU PURSUANT TO FED. R. CIV. P. 11, AND DENYING CROSS-MOTION FOR SANCTIONS AGAINST GOOGLE INC. AND DAVID H. KRAMER PURSUANT TO FED. R. CIV. P. 11
(JFLC1)

SAC ¶¶ 99, 166, 167, 257. Google asserts that these allegations are reckless and false, and that KinderStart lacks any details to support them. *Id.* KinderStart responds by criticizing the declarations supporting Google's statement of its practice of not removing search entries or deflating PageRanks for political and religious reasons, and provides the Court with the following description of Yu's inquiry into Google's treatment of religious and political content:

> 3. I affirm that I personally conducted investigation underlying the allegations related to discrimination of search results and Website blockage on political and religious grounds in SAC ¶¶ 99, 166, 167 and 257. As to political grounds, I consulted two different Websites that took controversial political stands and faced punishment as a result by Google. As to religious grounds, I personal [sic] investigated how a certain religious sect faced a loss of traffic and referrals from Google.
> 4. Overall, in repeated instances in my investigation behind the allegations set forth in the SAC, potential class members and witnesses expressed fear of retaliation for exposing their identity and that of their Websites to Defendant Google. Given that there is a stay on discovery and any subpoenas by KinderStart, specific details are limited as to what search results based on key words are being sold for consideration, what and when censorship is to be disclosed by Google, and how and why certain sites carrying various political and religious content are inequitably being punished and isolated from search or view by users.

Yu Decl. in Opp. to Google Motion ¶¶ 3-4.

Yu provides more detail of his investigations of these allegations in his declaration filed *in camera* and in six supporting declarations filed under seal. The first declaration speaks in general terms of the existence of ten websites that allegedly experienced negative treatment at the hands of Google and refers to them as "targeted sites." Ex. B Under Seal ¶¶ 5-6. This declaration provides no evidence of and makes no reference to political or religious discrimination. The second, fourth, fifth, and sixth declarations, provided by the operators of politically-oriented websites, offer testimony that these individuals believe that pernicious motives exist for changes in Google's search results. *See* Exs. C, E, F, G Under Seal. The third declaration states that the website operator "received an email from the Help Desk at Google News that [the] site was banned from the Google News index by Google and it was labeled as promoting 'Hate Speech'. Our site almost immediately became unsearchable through the Google

8

Case No. C 06-2057 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS AGAINST
KINDERSTART.COM AND GREGORY J. YU PURSUANT TO FED. R. CIV. P. 11, AND DENYING CROSS-
MOTION FOR SANCTIONS AGAINST GOOGLE INC. AND DAVID H. KRAMER PURSUANT TO FED. R. CIV.
P. 11
(JFLC1)

Search index." Ex. D Under Seal ¶ 4.[5] The fifth declaration includes the only passing reference to religious discrimination. Ex. F Under Seal ¶¶ 6-7.

A class has not been formed at this stage of the proceedings, and KinderStart does not appear to allege that KinderStart itself suffered any discrimination by Google for political or religious reasons. While it is not clear that KinderStart would have standing to make these controversial allegations, such ambiguity does not constitute sanctionable conduct. However, the Court concludes that the challenged allegations are factually baseless with respect to KinderStart and that Yu conducted an insufficient investigation prior to alleging religious and political discrimination. It is true that Yu spoke with a number of people who *believe* that Google engages in religious or political discrimination, but a reasonable, competent investigation requires more than suspicions or belief. Yu had a professional responsibility to refrain from filing such allegations if he did not have appropriate supporting evidence.

e.    Appropriate Sanctions

Rule 11(c)(2) allows the Court to grant monetary and non-monetary sanctions, limited to what is "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." While Yu has brought a novel challenge to a major corporation, it is apparent that to some extent he has overreached in doing so. In particular, Yu should have removed the allegations of sold search rankings and discrimination from the SAC, and Google is entitled to reasonable compensation for having to defend against these claims. Accordingly, Google shall file a motion for attorney's fees within fourteen (14) days of the issuance of this order identifying the fees associated with its motion for sanctions and with other motion practice related to the sanctionable allegations. The Court will determine the amount of monetary sanctions after receiving Google's submission and Yu's response.

---

[5] The SAC does not include detailed allegations regarding the Google News index, its governing policies, or its relationship with the Google search index. The SAC's only reference to Google News is a general description of it as a "major media force" that can assign priority to certain stories. SAC ¶ 50.

2. KinderStart's Motion for Sanctions

As discussed above, the Court concludes that Google's motion for sanctions has merit. To the extent that the motion is denied, it is not unreasonable or baseless. Accordingly, the Court will deny KinderStart's cross-motion for sanctions.[6]

### IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that:

(1) Google's Motion for Sanctions is GRANTED in part and DENIED in part. Google shall file a motion for attorney's fees within fourteen (14) days of the issuance of this order.

(2) KinderStart's Motion for Sanctions is DENIED.

DATED: March 16, 2007.

_____
JEREMY FOGEL
United States District Judge

---

[6] The Court will not grant Rule 11 sanctions on the basis of Google's citation of *Search King v. Google*, 2003 WL 21464568 (W.D. Okla. May 27, 2003). *See* KinderStart Motion 9-10; Opp. to KinderStart Motion 2-4.

10
Case No. C 06-2057 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS AGAINST KINDERSTART.COM AND GREGORY J. YU PURSUANT TO FED. R. CIV. P. 11, AND DENYING CROSS-MOTION FOR SANCTIONS AGAINST GOOGLE INC. AND DAVID H. KRAMER PURSUANT TO FED. R. CIV. P. 11
(JFLC1)

1  This Order has been served upon the following persons:

2  Colleen Bal                     cbal@wsgr.com, eminjarez@wsgr.com

3  David H. Kramer                 dkramer@wsgr.com, dgrubbs@wsgr.com

4  Bart Edward Volkmer , Esq       bvolkmer@wsgr.com

5  Gregory John Yu                 glgroup@inreach.com, gjy@abcye.com

11
Case No. C 06-2057 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS AGAINST
KINDERSTART.COM AND GREGORY J. YU PURSUANT TO FED. R. CIV. P. 11, AND DENYING CROSS-
MOTION FOR SANCTIONS AGAINST GOOGLE INC. AND DAVID H. KRAMER PURSUANT TO FED. R. CIV.
P. 11
(JFLC1)